Rick A. Waltman (State Bar No. 306463)
Andrew T. Katseanes (State Bar No. 351638)
Nicholas J. Ferraro (State Bar No. 306528)
Lauren N. Vega (State Bar No. 306525)
Ferraro Vega Employment Lawyers, Inc.
3333 Camino del Rio South, Suite 300
San Diego, California 92108
(619) 693-7727 main / (619) 350-6855 facsimile
rick@ferrarovega.com / andrew@ferrarovega.com
nick@ferrarovega.com / lauren@ferrarovega.com

*Attorneys for Plaintiff Shayna Hill*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

SHAYNA HILL, on behalf of others similarly situated,

Plaintiff,

vs.

MARTIN MARIETTA MATERIALS, INC. and DOES 1 through 50, inclusive,

Defendants.

Case No. 3:26-cv-04529-LL-VET

**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF PAID SICK LEAVE DATA FOR THE PERIOD BEFORE SEPTEMBER 26, 2025**

Magistrate Judge: Hon. Valerie E. Torres
Submitted on the papers (ECF No. 16)

*[Filed concurrently with Motion to Compel and Declaration of Andrew T. Katseanes]*

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

Pursuant to Federal Rule of Evidence 201, Plaintiff Shayna Hill requests that the Court take judicial notice of the following documents filed in *Shwiyhat v. Martin Marietta Materials, Inc.*, No. STK-CV-UOE-2025-0010132 (San Joaquin Super. Ct.) (“*Shwiyhat*”), true and correct copies of which are attached as Exhibits 1 through 5:

Exhibit 1: Class and Representative Action Complaint, filed July 25, 2025.

Exhibit 2: Declaration of Leonard Emma in Support of Plaintiffs’ Motion for Preliminary Approval of Class Action Settlement, executed August 29, 2025, and filed September 2, 2025.

Exhibit 3: Class Action and PAGA Settlement Agreement, including the Class Notice attached to it as Exhibit B, filed as Exhibit A to the Emma Declaration.

Exhibit 4: February 26, 2026, Minute Order confirming the Order for Final Approval.

Exhibit 5: Declaration of Bryn Bridley on Settlement Distribution, filed October 6, 2026.

**MEMORANDUM OF POINTS AND AUTHORITIES**

A court may judicially notice a fact that is not subject to reasonable dispute because it “can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.” Fed. R. Evid. 201(b)(2). Courts “may take judicial notice of court filings and other matters of public record.” *Reyn’s Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). That includes documents on file in state courts. *Harris v. County of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012).

Each exhibit is a record filed in the San Joaquin County Superior Court in *Shwiyhat*. Plaintiff offers them to show the claims pleaded, the terms of the settlement and its release, the dates of preliminary approval and judgment, and what class counsel represented to that court, not for the truth of any disputed matter asserted in them. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001). Defendant was a party

to *Shwiyhat* and relies on that settlement as its basis for withholding the discovery at issue, so it cannot reasonably dispute the existence or contents of these records. Plaintiff therefore requests that the Court take judicial notice of Exhibits 1 through 5.

Dated: November 4, 2026

***Ferraro Vega Employment Lawyers, Inc.***

*/s/ Andrew T. Katseanes*
Rick A. Waltman
Andrew T. Katseanes
*Attorneys for Plaintiff Shayna Hill*

# Exhibit 1

$1435 | #1056480

FILED
SUPERIOR COURT
2025 JUL 25 PM 12: 16
STEPHANIE BOHRER, CLERK
BY ____ DEPUTY

EMPLOYMENT LAWYERS
LEONARD EMMA (SBN 224483)
lemma@employment-lawyers.com
CODY STROMAN (SBN 303413)
cstroman@employment-lawyers.com
1999 Harrison Street, 18th Floor
Oakland, CA 94612
Tel: (415) 362-1111
[Additional Attorneys Listed On Next Page]

Attorneys for Plaintiffs
AUSTEN SHWIYHAT and
WALTER RAINES

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN JOAQUIN**

| | |
|---|---|
| AUSTEN SHWIYHAT and WALTER RAINES, on behalf of themselves, all others similarly situated, and the State of California as private attorneys general,<br><br>Plaintiff,<br><br>vs.<br><br>MARTIN MARIETTA MATERIALS, INC.; MARTIN MARIETTA NORTHERN CALIFORNIA AGGREGATES, LLC; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. STK-CV-UOE-2025-10132<br><br>**CLASS AND REPRESENTATIVE ACTION COMPLAINT**<br><br>1. **FAILURE TO PAY OVERTIME WAGES (Lab. Code §§ 200-204, 218.6, 512, 558, 1194, 1198);**<br>2. **FAILURE TO COMPENSATE FOR ALL HOURS WORKED (Lab. Code §§ 200-204, 216, 225.5, 226, 500, 510, 558, 1197, 1198);**<br>3. **FAILURE TO PROVIDE MEAL PERIODS (Lab. Code §§ 226.7, 512);**<br>4. **FAILURE TO PROVIDE REST PERIODS (Lab. Code § 226.7);**<br>5. **FAILURE TO MAINTAIN ACCURATE RECORDS (Lab. Code §§ 1174, 1174.5);**<br>6. **FAILURE TO FURNISH COMPLIANT WAGE AND HOUR STATEMENTS (Lab. Code §§ 226(e), 226.3);**<br>7. **FAILURE TO PAY FINAL WAGES ON TIME (Lab. Code §§ 201-204);**<br>8. **FAILURE TO REIMBURSE BUSINESS EXPENSES (Lab. Code § 2802);**<br>9. **UNFAIR BUSINESS PRACTICES (Bus. & Prof. Code § 17200 *et seq.*); &**<br>10. **PRIVATE ATTORNEYS GENERAL ACT (Lab. Code § 2698, *et seq.*)**<br>**JURY TRIAL DEMANDED** |



EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

Joseph Lavi, Esq. (SBN 209776)
Email: jlavi@lelawfirm.com
Vincent C. Granberry, Esq. (SBN 276483)
vgranberry@lelawfirm.com
Alexander J. Aroeste, Esq. (SBN 332653)
aboal@lelawfirm.com
**LAVI & EBRAHIMIAN, LLP**
8889 W. Olympic Boulevard, Suite 200
Beverly Hills, California 90211
Telephone: (310) 432-0000
Facsimile: (310) 432-0001

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

Plaintiffs AUSTEN SHWIYHAT and WALTER RAINES (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated ("Class Members"), bring this Complaint against their former employers, Defendants MARTIN MARIETTA MATERIALS, INC., MARTIN MARIETTA NORTHERN CALIFORNIA AGGREGATES, LLC, and DOES 1-100, inclusive ("Doe Defendants") (collectively "Defendants") and hereby demand a jury trial on all causes of action. Plaintiffs' allegations are as follows:

**PLAINTIFFS**

1. At all times material herein, Plaintiff AUSTEN SHWIYHAT was and is a competent adult and resident of the State of California. During all times relevant to this Complaint, Plaintiff SHWIYHAT was employed by Defendants as a non-exempt hourly employee.

2. At all times material herein, Plaintiff WALTER RAINES was and is a competent adult and resident of the State of California. During all times relevant to this Complaint, Plaintiff RAINES was employed by Defendants as a non-exempt hourly employee.

**DEFENDANTS**

3. At all times material herein, Defendant MARTIN MARIETTA MATERIALS, INC. was and is a corporation doing business in the State of California.

4. At all times material herein, Defendant MARTIN MARIETTA NORTHERN CALIFORNIA AGGREGATES, LLC was and is a limited liability company doing business in the State of California.

5. The Defendants identified as DOES 1 through 100, inclusive, were, at all times herein-mentioned, agents, business affiliates, successors- and/or predecessors-in-interest, officers, directors, partners, and/or managing agents of some or each of the remaining Defendants. Plaintiffs are informed and believe and, on that basis, allege that, at all times herein-mentioned, each of the Defendants identified as DOES 1 through 100, inclusive, employed, and/or exercised control over the wages, hours, and/or working conditions of Plaintiffs and Class Members throughout California. In doing the acts herein alleged, each Defendant is liable and responsible to Plaintiffs and Class Members for the acts of every other Defendant. The true names and

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

capacities of the Doe Defendants, whether individual, corporate, associate or otherwise, are unknown to Plaintiffs who therefore sue such Doe Defendants by fictitious names pursuant to California Code of Civil Procedure § 474. Plaintiffs are informed and believe that the Doe Defendants are residents of the State of California. Plaintiffs will amend this complaint to show such Doe Defendants' true names and capacities when they are known.

6. Plaintiffs are informed and believe and thereon allege that, unless otherwise indicated, each Defendant was the agent and/or employee of every other Defendant within the course and scope of said agency and/or employment, with the knowledge and/or consent of said Defendant.

7. Plaintiffs are informed and believe and, based thereon, allege that, from June 20, 2022 through March 31, 2025 (the "Class Period"), Defendants have employed over five hundred Class Members who are entitled to timely payment for all hours worked, including minimum wages and overtime rate of pay, meal and rest periods, accurate timekeeping and payroll documents, and reimbursement for business expenses, among other things.

**JURISDICTION AND VENUE**

8. This Court is the proper Court, and this action is properly filed in the Superior Court for the State of California, County of San Joaquin, because Plaintiffs performed work for Defendants in the County of San Joaquin and Defendants employ Class Members in this County.

9. This Court has jurisdiction over the Plaintiffs' and Class Members' claims for unpaid wages, meal and rest period violations, failure to reimburse business expenses, interest thereon, related penalties, injunctive and other equitable relief, and attorneys' fees and costs pursuant to, *inter alia*, the applicable California Industrial Welfare Commission, Wage Order, Title 8 of the California Code of Regulations, Labor Code §§ 202, 203, 226, 226.7, 510, 512, 558, 1194, 1197, 1198, 2802, 2698-99, *et seq*., and/or California Code of Civil Procedure section 1021.5.

10. This Court also has jurisdiction over the Plaintiffs' and Class Members' claims for injunctive relief and restitution of ill-gotten benefits arising from Defendants' unlawful, unfair, and/or fraudulent business practices under California Business and Professions Code § 17200 *et*

*seq.*

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff AUSTEN SHWIYHAT satisfied all administrative requirements prior to adding a claim pursuant to the Private Attorneys General Act, California Labor Code § 2698 *et seq.* On August 31, 2022, Plaintiff SHWIYHAT gave written notice by online filing to the Labor and Workforce Development Agency ("LWDA") of Defendants' violations of various provisions of the California Labor Code as alleged in this First Amended Complaint. On August 31, 2022, Plaintiff SHWIYHAT gave written notice by certified mail to Defendants of Defendants' violations of various provisions of the California Labor Code as alleged in this Complaint. Cal. Lab. Code § 2699.3(a)(1). Plaintiff SHWIYHAT has also paid the $75.00 filing fee to the LWDA. By November 4, 2022 – 65 days after Plaintiff SHWIYHAT gave written notice to the LWDA - the LWDA did not respond. Cal. Lab. Code § 2699.3(a)(2)(A). Plaintiff SHWIYHAT is therefore entitled to pursue his penalty claims pursuant to California Labor Code section 2699 *et seq.*, the Private Attorneys General Act. Cal. Lab. Code § 2699.3(a)(2)(C).

12. On June 5, 2023, Plaintiff WALTER RAINES gave written notice by certified mail to the LWDA and Defendants of Defendants' violations of various provisions of the California Labor Code as alleged in this Complaint. Plaintiff RAINES is therefore entitled to pursue his penalty claims pursuant to California Labor Code section 2699 *et seq.*, the Private Attorneys General Act. Cal. Lab. Code § 2699.3(a)(2)(C).

## FACTS COMMON TO PLAINTIFFS' CLASS ACTION CAUSES OF ACTION

13. At all times relevant to the Complaint, Plaintiffs were employed by Defendants as non-exempt hourly employees in California.

14. At all times relevant, Plaintiffs and Class Members were non-exempt hourly employees. As such, Plaintiffs and Class Members were and are eligible for minimum wages and overtime compensation.

15. Plaintiffs and Class Members were not properly paid for all hours that they spent working, including for off-the-clock work, reporting time pay, hours, and overtime hours worked, despite routinely and consistently working more than 8 hours per day and 40 hours per week in

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

violation of the California Labor Code.

16. At all times relevant, Plaintiffs and Class Members were required to be paid for all hours worked but Defendants rounded their clock-in and clock-out times to the benefit of Defendants. In addition, Defendants required Plaintiffs and Class Members to call in prior to the start of their shift to determine whether or not they were scheduled to work for that day but did not pay Plaintiffs and Class Members for reporting time pay. Accordingly, Defendants failed to pay all wages owing to Plaintiffs and Class Members, and Plaintiffs and Class Members were underpaid.

17. At all times relevant, Defendants required Plaintiffs and Class Members to work through meal and rest periods to assist Defendants' customers, including when Plaintiffs and Class Members were "clocked out" for meal periods.

18. Plaintiffs and Class Members were frequently not provided with an opportunity to take a legally compliant meal period prior to the end of their fifth hour of work. Plaintiffs and Class Members never received second meal periods when they worked shifts of 10 hours or more.

19. At all times relevant, Defendants failed to relieve Plaintiffs and Class Members of employer control during rest periods. Plaintiffs and Class Members never received third rest periods when they worked shifts of 10 hours or more.

20. Pursuant to California law, an employee is entitled to one ten-minute rest period if required to work at least three and one-half hours, two ten-minute rest periods if required to work more than six hours, and three ten-minute rest periods if required to work more than ten hours. Pursuant to California law, an employee is entitled to one thirty-minute meal period if required to work at least five hours and two thirty-minute meal periods if required to work at least ten hours.

21. Defendants did not consistently provide meal and rest periods because business needs took precedence, routinely interfering with what should be break periods. If Plaintiffs or Class Members failed to address business needs at any time, including during breaks, they were subject to discipline. Despite these policies and practices, Defendants have not paid any missed meal or rest period premiums to Plaintiffs or Class Members.

22. By requiring Plaintiffs and Class Members to work off-the-clock during meal

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

periods, Defendants failed to pay Plaintiffs and Class Members for all hours worked.

23. Defendants also failed to provide Plaintiffs and Class Members with accurate semimonthly itemized statements of the total number of hours worked by each, and all applicable hourly rates in effect during each pay period, in violation of California Labor Code § 226 and/or 1174(d). In doing so, Defendants have not only failed to pay their workers the full amount of compensation due, they have, until now, effectively shielded themselves from their employees' scrutiny for their unlawful conduct by concealing the magnitude (e.g., the full number of hours worked) and financial impact of their wrongdoing.

24. Defendants also failed to reimburse Plaintiffs and Class Members for business expenses that they incurred related to, among other things, the required use of their personal cellular telephones and purchase of work materials for work-related purposes in violation of California Labor Code § 2802.

25. All policies and practices described herein were in place at all of Defendants' business locations in California. As such, all Class Members were subject to these same policies in violation of California law. Plaintiffs are informed and believe that Defendants knowingly failed to pay all wages owed (including overtime, minimum, and meal and rest period premium payments), failed to provide meal and rest periods, failed to reimburse for business expenses, failed to maintain and provide accurate time and payroll records, and failed to pay final wages to Class Members whose employment has ended, thereby enjoying a significant competitive edge over other companies within its industry. Even after Plaintiffs and Class Members were terminated or voluntarily resigned, Defendants still failed to pay all wages owed upon separation, despite the penalty provisions of California Labor Code §§ 201-204. More than 30 days have passed since certain Class Members have left Defendants' employ, entitling those Class Members to the maximum penalties.

26. In sum, Defendants failed to maintain time records accurately setting forth the amount of hours that Plaintiffs and Class Members worked. Defendants failed to pay for all hours worked, including overtime hours worked. Defendants failed to provide meal and rest periods and failed to make premium payments for missed meal and rest breaks. Defendants failed to issue

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

wage statements accounting for the number of hours actually worked by Plaintiffs and Class Members. Defendants failed to timely pay all wages owing upon separation of employment. Defendants also failed to reimburse Plaintiffs and Class Members for business expenses that they incurred.

27. As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiffs and Class Members have sustained damages, as described above, including loss of earnings for hours worked and for unreimbursed business expenses, in an amount to be established at trial. As a further direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiffs and Class Members are entitled to recover penalties/wages for failure to pay wages owed upon termination (pursuant to California Labor Code §§ 201-204 and 227.3), for failure to maintain and provide semimonthly itemized wage statements of hours worked and all applicable hourly rates (pursuant to California Labor Code § 226 and/or 1174) in an amount to be established at trial. As a further direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiffs and Class Members are also entitled to recover attorneys' fees, litigation costs, restitution of ill-gotten gains, and injunctive relief, pursuant to statute.

## CALIFORNIA CLASS ACTION ALLEGATIONS

28. Plaintiffs bring this action on behalf of themselves and as a class action on behalf of the following Classes and Subclass:

> Class: *All persons employed by Defendants in the State of California in a non-exempt position who performed work for Defendants at any time from June 20, 2022, through March 31, 2025.*

> Terminated Subclass: *All persons who are eligible for membership in the Class and who are no longer employed by Defendants at any time from June 20, 2022, through March 31, 2025.*

29. Defendants and their officers and directors are excluded from any class defined in the preceding paragraphs.

30. This action has been brought and may properly be maintained as a class action under California Code of Civil Procedure § 382 because there is a well-defined community of interest in the litigation and the proposed Classes are easily ascertainable. The classes and subclasses defined herein satisfy all class action requirements:

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

a. Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy. The Class Members are so numerous that joinder of all Class Members is impractical, if not impossible, insofar as Plaintiffs are informed and believe and, on that basis, allege that the total number of Class Members is, at least, in the hundreds of individuals. Membership in the Classes will be determined by and upon analysis of employee and payroll records, among other records maintained by Defendants.

b. Commonality: Plaintiffs and Class Members share a community of interest in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

1) Whether Defendants violated one or more of California's Wage Orders, the California Labor Code and/or California Business and Professions Code § 17200 *et seq.* by failing to pay overtime wages due to Plaintiffs and Class Members at the proper rate of pay;
2) Whether Defendants violated one or more of California's Wage Orders, the California Labor Code and/or California Business and Professions Code § 17200 *et seq.* by failing to pay minimum wages due to Plaintiffs and Class Members at the proper rate of pay and failure to pay reporting time pay;
3) Whether Defendants violated one or more of California's Wage Orders, the California Labor Code and/or California Business and Professions Code § 17200 *et seq.* by failing to authorize and permit meal periods;
4) Whether Defendants violated one or more of California's Wage Orders, the California Labor Code and/or California Business and Professions Code § 17200 *et seq.* by failing to authorize and permit rest periods;
5) Whether Defendants violated one or more of California's Wage Orders, the California Labor Code and/or California Business and Professions Code § 17200 *et seq.* by failing to pay Plaintiffs and Class Members for all hours worked, including overtime hours worked;
6) Whether Defendants violated California Labor Code § 1174 by failing to maintain records of hours worked by Plaintiffs and Class Members;
7) Whether Defendants violated California Labor Code §§ 201-204 by failing to pay all wages due and owing to Plaintiffs and Class Members upon separation of employment;
8) Whether Defendants violated California Labor Code § 226 by failing to provide accurate semi-monthly itemized wage statements to Plaintiffs and Class Members stating the total hours worked and all applicable hourly rates in effect during each relevant pay period, among other things;
9) Whether Defendants violated California Labor Code § 2802 and/or California Business and Professions Code § 17200 *et seq.* by failing to reimburse Plaintiffs and Class Members for necessary business expenses that they incurred.

c. Typicality: Plaintiffs' claims are typical of the claims of the Class Members. Plaintiffs and all Class Members sustained injuries and damages arising out of and caused by Defendants' common course of conduct in

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

violation of state law, as alleged herein.

d. Superiority of Class Action: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes, or may make it, impractical for Class Members to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought by each individual Class Member, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of other Class Members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests. Additionally, a class action will allow resolution of multiple claims in one forum where evidence is shared which will conserve judicial resources and the resources of the parties.

e. Adequacy of Representation: Plaintiffs are adequate representatives of the Classes, in that Plaintiffs' claims are typical of those of the Classes and Plaintiffs have the same interests in the litigation of this case as Class Members. Plaintiffs are committed to vigorous prosecution of this case and have retained competent counsel experienced in wage and hour litigation in California. Plaintiffs are not subject to any individual defenses unique from those conceivably applicable to the Classes as a whole. Plaintiffs anticipate no management difficulties in this litigation.

31. This action is appropriate and practical as a class action because the prosecution of individual actions for each Class Member would likely result in inconsistent and varying rulings that could and likely would impede the interests of other Class Members in protecting their rights, as well as potentially establishing incompatible patterns of conduct for Defendants.

## FIRST CAUSE OF ACTION
## FAILURE TO PROPERLY PAY OVERTIME WAGES

(Lab. Code §§ 200-204, 218.6, 512, 558, 1194, 1198; IWC Wage Orders)
(*On behalf of Plaintiffs and Class Members against Defendants*)

32. Plaintiffs and Class Members incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

33. Plaintiffs and Class Members were employed by Defendant within the State of California.

34. Labor Code § 510 defines a day's work as 8 hours and states that any work in excess of 8 hours in one workday and any work in excess of 40 hours in any one workweek must be compensated at the rate of no less than one and one-half times the regular rate of pay. Pursuant

to Labor Code § 1194(a), a plaintiff may bring a civil action for overtime wages to recover wages, interest, penalties, attorney's fees, and costs.

35. Plaintiffs and Class Members are not exempt from receiving overtime compensation. Defendants required Plaintiffs and Class Members to work in excess of 8 hours per day, and/or in excess of 40 hours per week without paying the applicable overtime rates.

36. Plaintiffs and Class Members were entitled to receive one-and-one half times their regular rate of pay for each hour worked past 8 hours in one day, one-and-one half times their regular rate of pay for each hour worked past 40 hours in one week, and twice the regular rate of pay for each hour worked past 12 hours in one day and for all hours over 8 during their seventh consecutive day of work in one week. Plaintiffs and Class Members were entitled to receive overtime pay calculated using the appropriate regular rate of pay calculations under all applicable laws.

37. Defendants violated Labor Code §§ 510, 1194, and 1198 and IWC Wage Orders when they failed to pay Plaintiffs and Class Members the proper overtime rate for work performed in excess of 8 hours per day and/or for work performed in excess of 40 hours per week, within the time frame set forth under the law. By requiring Plaintiffs and Class Members to work off-the-clock, by underpaying overtime, by not properly calculating the regular rate of pay, or by not properly prorating all non-discretionary compensation into the regular rate of pay for overtime, Defendants violated these same provisions. As a consequence for violating Labor Code §§ 510, 1194, 1198, and IWC Wage Orders, Defendants are liable to Plaintiffs and Class Members for unpaid overtime wages.

38. At all relevant times, Defendants were aware of, and were under a duty to comply with, the wage and overtime provisions of the California Labor Code, including, but not limited to California Labor Code §§ 200 *et seq.*, 510, 1194, and 1198. Defendants violated Labor Code § 204 when they failed to pay Plaintiffs and Class Members all wages earned for labor in excess of the normal work period no later than the pay day for the next regular payroll period.

39. Plaintiffs and Class Members seek and are entitled to interest on all due and unpaid wages pursuant to Labor Code § 218.6.

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

40. Pursuant to Labor Code § 1194, Plaintiffs and Class Members seek to recover in a civil action the unpaid balance of the full amount of and and all unpaid wages and overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

**SECOND CAUSE OF ACTION**
**FAILURE TO COMPENSATE FOR ALL HOURS WORKED**
(Lab. Code §§ 200-204, 216, 225.5, 226, 500, 510, 558, 1197, 1198 and IWC Wage Order)
(*On behalf of Plaintiffs and Class Members against Defendants*)

41. Plaintiffs and Class Members incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

42. Defendants were required to compensate Plaintiffs and Class Members for all hours worked, including reporting time pay, pursuant to the applicable Industrial Welfare Commission Wage Order and Labor Code §§ 200-204, 216, 225.5, 500, 510, 558, 1197, and 1198.

43. Plaintiffs and Class Members routinely performed work for Defendants "off-the-clock" which resulted in Defendants underpaying Plaintiffs and Class Members because they did not accurately record the hours that Plaintiffs and Class Members spent working. In addition, Defendants failed to pay Plaintiffs and Class Members reporting time pay when they reported to work for their shift but did not work their entire scheduled shift.

44. Defendants refused to compensate Plaintiffs and Class Members for some and/or all of the wages earned (including overtime and minimum wages), in violation of the applicable California Wage Order, Title 8 of the California Code of Regulations and the California Labor Code.

45. At all relevant times, Defendants were aware of, and were under a duty to comply with, the wage and overtime provisions of the California Labor Code, including, but not limited to California Labor Code §§ 200-204, 216, 225.5, 500, 510, 558, 1197, and 1198. Plaintiffs and Class Members have been deprived of their rightfully earned compensation as a direct and proximate result of Defendants' failure and refusal to pay said compensation. Plaintiffs and Class Members are entitled to recover compensation for all hours worked, in addition to reasonable attorney's fees and costs of suit.

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

46. As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiffs and Class Members have sustained damages, including loss of earnings for hours worked, including overtime hours worked, on behalf of Defendants, in an amount to be established at trial, and are entitled to recover attorneys' fees and costs of suit.

**THIRD CAUSE OF ACTION**
**FAILURE TO PROVIDE MEAL PERIODS**
(Lab. Code §§ 226.7, 512; IWC Wage Orders)
(*On behalf of Plaintiffs and Class Members against Defendants*)

47. Plaintiffs and Class Members incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

48. At all relevant times, Defendants were aware of, and were under a duty to comply with, California Labor Code §§ 226.7 and 512.

49. California Labor Code § 226.7(b-c) provides that "(b) [a]n employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission. . . . (c) If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."

50. California Labor Code § 512(a) provides that "[a]n employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer shall not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

period was not waived."

51. Section 11 of the applicable Wage Order provides that "(A) [n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes . . . (B) [a]n employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes . . . and (D) [i]f an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided."

52. Defendants routinely failed to authorize and permit meal periods by failing to inform Plaintiffs and Class Members of their entitlement to meal periods. Despite Plaintiffs and Class Members routinely missing their meal periods or having to take short or interrupted meal periods in order to complete their work, Defendants never provided Plaintiffs and Class Members with meal period premium payments.

53. By failing to provide uninterrupted and unrestricted meal periods, Defendant violated California Labor Code §§ 226.7 and 512, and section 11 of the applicable IWC Wage Order.

54. By failing to consistently (1) provide meal breaks within the first five hours of a work shift, and (2) provide uninterrupted thirty-minute meal periods, Defendants violated the California Labor Code and section 11 of the applicable IWC Wage Order.

55. At all relevant times herein, Defendants required Plaintiffs and Class Members to work shifts of more than ten (10) hours without a second meal period of not less than 30 minutes. Defendants thus required Plaintiffs and Class Members to work for longer hours than those fixed, or under conditions prohibited by order of the IWC, in violation of those orders.

56. Despite failing to authorize and permit compliant meal periods, Defendants failed to compensate Plaintiffs and Class Members for missed meal periods as required by Cal. Labor Code §§ 226.7, 512, and other applicable sections of the Labor Code and applicable Industrial Wage Order. Plaintiffs are informed and believe, and on that basis allege, that Defendants have

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

never paid one hour of premium compensation to Plaintiffs and/or Class Members for missed meal periods.

57. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Class Members have sustained damages, including unpaid meal period premiums, in an amount to be established at trial.

58. Plaintiffs and Class Members are not exempt from meal period requirements.

59. Plaintiffs and Class Members did not willfully waive, through mutual consent with Defendants, any such meal periods.

60. Plaintiffs and Class Members have been deprived of their rightfully earned compensation for meal periods as a direct and proximate result of Defendants' failure and refusal to pay said compensation. Plaintiffs and Class Members are entitled to recover such amounts pursuant to California Labor Code § 226.7(b), plus interest thereon, attorneys' fees, and costs of suit.

**FOURTH CAUSE OF ACTION**
**FAILURE TO PROVIDE REST PERIODS**
(Lab. Code § 226.7; IWC Wage Orders)
(*On behalf of Plaintiffs and Class Members against Defendants*)

61. Plaintiffs and Class Members incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

62. At all relevant times, Defendants were aware of and were under a duty to comply with California Labor Code § 226.7.

63. California Labor Code § 226.7(b-c) provides that "(b) [a]n employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission. . . . (c) If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

64. Section 12 of the applicable Wage Order provides that "(A) [e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof . . . (B) [i]f an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the ret period is not provided."

65. Defendants routinely failed to authorize and permit rest periods by failing to inform Plaintiffs and Class Members of their entitlement to rest periods and also by requiring them to work through rest periods.

66. By failing to provide uninterrupted and unrestricted rest periods, Defendants violated California Labor Code § 226.7, and section 12 of the applicable IWC Wage Order.

67. At all relevant times herein, Defendants required Plaintiffs and Class Members to work for shifts of more than ten (10) hours without a timely third rest period. Defendants failed to compensate Plaintiffs and Class Members for missed rest periods as required by Cal. Labor Code § 226.7, and other applicable sections of the Labor Code and applicable Industrial Wage Order. Defendants thus required Plaintiffs and Class Members to work for longer hours than those fixed, or under conditions prohibited by order of the IWC, in violation of those orders.

68. Despite failing to authorize and permit compliant rest periods, Defendants refused to provide Plaintiffs and Class Members with one hour of compensation for these violations as mandated by California law.

69. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Class Members have sustained damages, including unpaid rest period premiums, in an amount to be established at trial.

70. Plaintiffs and Class Members are not exempt from rest period requirements.

71. Plaintiffs and Class Members have been deprived of their rightfully earned compensation for rest periods as a direct and proximate result of Defendants' failure and refusal to pay said compensation. Plaintiffs and Class Members are entitled to recover such amounts

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

pursuant to California Labor Code § 226.7(b), plus interest thereon, attorneys' fees, and costs of suit.

**FIFTH CAUSE OF ACTION**
**FAILURE TO MAINTAIN ACCURATE RECORDS**
(Lab. Code §§ 1174, 1174.5)
(*On behalf of Plaintiffs and Class Members against Defendants*)

72. Plaintiffs and Class Members incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

73. California Labor Code § 1174(d) provides that every person employing labor in this state shall keep, at a central location in the state, payroll records showing the hours worked daily by, and the wages paid to, employees. These records must be kept in accordance with rules established by the IWC, and must be kept on file for not less than three years.

74. Defendants failed to maintain accurate records of the hours worked and the wages paid to Plaintiffs and Class Members.

75. Plaintiffs and Class Members were injured by Defendants' failure to maintain accurate records because, as alleged above, Plaintiffs and Class Members were not paid for all hours worked and did not receive proper compensation for all overtime hours worked, and thus suffered monetary damages due to Defendants' policies described above.

76. Based on Defendants' conduct as alleged herein, Defendants are liable for damages and statutory penalties pursuant to California Labor Code §§ 1174, 1174.5, and other applicable provisions in amounts to be established at trial, as well as attorneys' fees and costs, pursuant to statute.

**SIXTH CAUSE OF ACTION**
**FAILURE TO FURNISH ACCURATE WAGE AND HOUR STATEMENTS**
(Lab. Code §§ 226(e), 226.3)
(*On behalf of Plaintiffs and Class Members against Defendants*)

77. Plaintiffs and Class Members incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

78. California Labor Code § 226(a) requires an employer to furnish its employees with

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

accurate itemized wage statements in writing, showing: (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece rate units earned and any applicable piece-rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

79. Defendants failed to provide Plaintiffs and Class Members with timely and accurate wage and hour statements showing: (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece rate units earned and any applicable piece-rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer, and/or (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

80. Plaintiffs and Class Members were injured by Defendants' failure to provide accurate itemized wage statements, because, *inter alia*, Plaintiffs and Class Members were not paid for all hours worked at the appropriate rate of pay, including overtime hours worked, Plaintiffs and Class Members were not paid premiums for missed meal and rest breaks, and thus suffered monetary damages due to Defendants' policies and practices alleged herein.

81. Defendants are liable for damages and statutory penalties pursuant to California Labor Code § 226, in amounts to be established at trial, as well as attorneys' fees and costs, pursuant to statute.

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

**SEVENTH CAUSE OF ACTION**
**FAILURE TO PAY FINAL WAGES ON TIME**
(Lab. Code §§ 201-204)
(*On behalf of Plaintiffs and Terminated Subclass Members against Defendants*)

82. Plaintiffs and Class Members incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

83. California Labor Code § 201 provides that all earned and unpaid wages of an employee who is discharged are due and payable immediately at the time of discharge. California Labor Code § 202 provides that all earned and unpaid wages of an employee who resigns are due and payable immediately if the employee provided at least seventy-two hours' notice; otherwise, wages of an employee who resigns are due within seventy-two hours of resignation.

84. At all relevant times herein, Defendants failed to pay Terminated Subclass Members, including Plaintiffs, all accrued wages and other compensation owing immediately upon termination or within seventy-two hours of resignation, as required by the California Labor Code.

85. Based on Defendants' conduct as alleged herein, Defendants are liable for statutory penalties pursuant to California Labor Code § 203 in amounts to be established at trial, as well as attorneys' fees and costs, pursuant to statute.

**EIGHTH CAUSE OF ACTION**
**FAILURE TO REIMBURSE BUSINESS EXPENSES**
(Lab. Code §2802)
(*On behalf of Plaintiffs and Class Members against Defendants*)

86. Plaintiffs and Class Members incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

87. California Labor Code § 2802 requires an employer to reimburse its employees for all necessary business expenditures incurred by the employee in direct consequence of the discharge of his or her job duties or in direct consequence of his or her obedience to the direction of the employer.

88. Defendants have intentionally and willfully failed to reimburse Plaintiffs and Class

Members for all necessary business related expenses and costs. Plaintiffs and Class Members are entitled to recover from Defendants their business related expenses and costs incurred during the course and scope of their employment, plus interest accrued form the date on which the employee incurred the necessary expenditures at the same rate as judgments in civil actions in the State of California.

**NINTH CAUSE OF ACTION**
**UNFAIR BUSINESS PRACTICES**
(Bus. & Prof. Code § 17200 *et seq.*)
(*On behalf of Plaintiffs and Class Members against Defendants*)

89. Plaintiffs and Class Members incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

90. Plaintiffs -- on behalf of themselves, on behalf of the general public, and on behalf of Class Members -- bring this unfair business practices claim pursuant to Business & Professions Code § 17200, *et seq.* The conduct of Defendants as alleged in this Complaint has been and continues to be unfair, unlawful, and harmful to Plaintiffs, the general public, and Class Members. Plaintiffs seek to enforce important rights affecting the public interest within the meaning of Cal. Code of Civil Procedure § 1021.5.

91. Plaintiffs are "persons" within the meaning of Business & Professions Code § 17204, and therefore have standing to bring this cause of action for injunctive relief, restitution, and other appropriate equitable relief.

92. Business & Professions Code § 17200, *et seq.* prohibits unlawful and unfair business practices.

93. California's wage and hour laws express fundamental public policies. Providing employees with proper wages and compensation are fundamental public policies of the State of California. Labor Code § 90.5(a) articulates the public policies of California to enforce vigorously minimum labor standards, to ensure that employees are not required or permitted to work under substandard and unlawful conditions, and to protect law-abiding employers and their employees from competitors who lower their costs by failing to comply with minimum labor standards.

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

94. Defendants have violated statutes and public policies as alleged herein. Through the conduct alleged herein, Defendants have acted contrary to these public policies, have violated specific provisions of the Labor Code, and have engaged in other unlawful and unfair business practices in violation of Business & Professions Code § 17200, *et seq.*, depriving Plaintiffs, and all persons similarly situated, and all interested persons of rights, benefits, and privileges guaranteed to all employees under law.

95. Defendants' conduct, as alleged hereinabove, constitutes unfair competition in violation of Business & Professions Code § 17200, *et seq.*

96. Defendants, by engaging in the conduct herein alleged, either knew or in the exercise of reasonable care, should have known that the conduct was unlawful. As such, it is a violation of Business & Professions Code § 17200, *et seq.*

97. As a proximate result of Defendants' conduct, Plaintiffs and Class Members have been damaged in a sum as may be proven.

98. Unless restrained, Defendants will continue to engage in the unlawful conduct as alleged above. Pursuant to the Business & Professions Code, this Court should make such orders or judgment, including the appointment of a receiver, as may be necessary to prevent the use or employment by Defendants, their agents, or employees, of any unlawful or deceptive practices prohibited by the Business & Professions Code, and/or, including by not limited to, restitution and disgorgement of profits which may be necessary to restore Plaintiffs and Class Members the money Defendants have unlawfully failed to pay.

**TENTH CAUSE OF ACTION**
**VIOLATIONS OF THE PRIVATE ATTORNEYS GENERAL ACT ("PAGA")**
(Lab. Code § 2698 *et seq.*)
*(On behalf of Plaintiffs and Class Members against Defendants)*

99. Plaintiffs and Class Members incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

100. Plaintiffs are "aggrieved employees" under the California Labor Code Private Attorneys General Act ("PAGA") as they were employed by Defendants during the applicable

statutory period and suffered one or more of the Labor Code violations alleged herein. As such, they seek to recover, on behalf of themselves and all other current and former aggrieved employees of Defendants, the civil penalties provided by PAGA, plus reasonable attorney's fees and costs.

101. Plaintiffs seek to recover the PAGA civil penalties through a representative action as permitted by PAGA and the California Supreme Court in *Arias v. Superior Court*, 46 Cal. 4th 969 (2009).

102. Plaintiffs allege that Defendants violated the provisions detailed herein, and thus seek to enforce civil penalties against Defendants for these violations. The PAGA allows a private individual to recover civil penalties previously only recoverable by the State. Although some of the labor provisions referenced herein do not themselves provide the amount of any penalty, the PAGA states that for all provisions of the Labor Code for which no civil penalty is established, including but not limited to the provisions referenced herein, the penalty shall be one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation, and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation. Accordingly, these are the penalties that Plaintiffs seek to enforce to the extent civil penalties are not already provided for in the Labor Code. If the Labor Code already provides penalties for particular violations, Plaintiffs seek those penalties.

103. Plaintiffs are also entitled to recover for themselves, other aggrieved employees, and the State of California, civil penalties pursuant to California Labor Code § 210 in the amount of $100 per employee per initial violation of the timely payment requirements of California Labor Code § 204 and $200 per employee for each subsequent violation, plus 25% of the amount unlawfully withheld. Plaintiffs seek to pursue remedies pursuant to PAGA for these violations.

104. California Labor Code § 226.3 imposes a civil penalty in addition to any other penalty provided by law of two hundred fifty dollars ($250) per aggrieved employee for the first violation, and one thousand dollars ($1,000) per aggrieved employee for each subsequent violation under California Labor Code § 226(a).

105. Pursuant to California Labor Code § 203, for an employer who willfully fails to

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

pay any wages of an employee who is discharged or quits, that employee's wages shall continue as a penalty from the due date at the same rate until paid, but shall not continue for more than thirty (30) days. California Labor Code § 256 imposes a civil penalty in an amount not exceeding thirty (30) days pay as waiting time under the terms of California Labor Code § 203.

106. California Labor Code § 558 provides: "Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (3) Wages recovered pursuant to this section shall be paid to the affected employee."

107. Under California Labor Code § 1174.5, Defendants are subject to a civil penalty of five hundred dollars ($500) for failing to keep records as required by section 1174(d).

108. California Labor Code § 2698 *et seq.* imposes a civil penalty of one hundred dollars ($100) per pay period, per aggrieved employee for the initial violation of California Labor Code §§ 204, 510, 512, 1174, 1194, 1198, and 2802 and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

109. Plaintiffs have fully complied with the procedural requirements specified in California Labor Code § 2699.3 as to each of the alleged violations. Plaintiffs are therefore entitled to pursue his penalty claims pursuant to California Labor Code section 2699 *et seq.*, the Private Attorneys General Act. Cal. Lab. Code § 2699.3(a)(2)(C).

110. Enforcement of statutory provisions to protect workers and to ensure proper and prompt payment of wages is a fundamental public interest. Plaintiffs' successful enforcement of important rights affecting the public interest will confer a significant benefit upon the general public. Private enforcement of these rights is necessary, as no public agency has pursued enforcement.

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

111. As a result of the violations alleged, Plaintiffs, as aggrieved employees on behalf of themselves and other similarly situated employees employed by Defendants, seeks all civil penalties available pursuant to California Labor Code § 2699, including all civil penalties, attorneys' fees, expenses, and costs of suit.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment for themselves and all others on whose behalf this suit is brought against Defendants, jointly and severally, as follows:

1. For an order certifying this action as a class action on behalf of the classes defined herein;

2. For an order designating Plaintiffs as representative of the Classes as described herein;

3. For an order appointing Counsel for Plaintiffs as Class Counsel;

4. That this Court award damages, restitution, statutory penalties, and civil penalties to be paid by Defendants for the causes of action alleged herein;

5. That this Court award actual damages, compensatory damages, compensation for all hours worked but not paid, special damages according to proof, and general damages in amounts according to proof and in no event in an amount less than the jurisdictional limit of this court, as well as restitutionary relief to Plaintiffs and Class Members of all monies due to Plaintiffs and Class Members from the unlawful business practices of Defendants;

6. That this Court award injunctive relief, including that available under Labor Code section 226(h) and Business and Professions Code § 17203;

7. That this Court award penalties and liquidated damages including, but not limited to, those available under Labor Code §§ 203, 226, 226.7, and 1194.2;

8. For waiting time penalties pursuant to Labor Code sections 203 and 206;

9. For penalties pursuant to Labor Code sections 201, 226, 556, 1174(d), 1194, 1194.2, and 2698 *et seq.*, and any and all other provisions of the Labor Code which provide for penalties as a result of the conduct alleged herein;

10. For statutory penalties pursuant to, among others, the Private Attorney General

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

Act;

11. That this Court award statutory attorneys' fees and costs, including reasonable attorneys' fees and expert fees, including those available under Labor Code §§ 218.5, 226(e)(1), 226(h), 1194, and 2698 *et seq.*, and other provisions of the Labor Code, Government Code, and "private attorney general" statutes contained in Code of Civil Procedure section 1021.5;

12. That this Court award prejudgment and post-judgment interest according to any applicable provision of law or as otherwise permitted by law; and

13. That this Court award such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all issues and causes of action.

Respectfully submitted,

Dated: July 25, 2025

EMPLOYMENT LAWYERS

Leonard Emma
Cody Stroman
Attorneys for Plaintiffs

# Exhibit 2

FILED
SUPERIOR COURT
2025 SEP -2 PM 1:05
STEPHANIE BOHRER, CLERK
BY [signature] DEPUTY

**EMPLOYMENT LAWYERS**
LEONARD EMMA (SBN 224483)
lemma@employment-lawyers.com
CODY STROMAN (SBN 303413)
cstroman@employment-lawyers.com
1999 Harrison Street, 18th Floor
Oakland, CA 94612
Tel: (415) 362-1111

**LAVI & EBRAHIMIAN, LLP**
JOSEPH LAVI, ESQ. (SBN 209776)
Email: jlavi@lelawfirm.com
VINCENT C. GRANBERRY, ESQ. (SBN 276483)
vgranberry@lelawfirm.com
ALEXANDER J. AROESTE, ESQ. (SBN 332653)
aaroeste@lelawfirm.com
8889 W. Olympic Boulevard, Suite 200
Beverly Hills, California 90211
Telephone: (310) 432-0000

Attorneys for Plaintiffs
AUSTEN SHWIYHAT and
WALTER RAINES

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN JOAQUIN**

AUSTEN SHWIYHAT and WALTER RAINES, on behalf of themselves, all others similarly situated, and the State of California as private attorneys general,

Plaintiff,

vs.

MARTIN MARIETTA MATERIALS, INC.; MARTIN MARIETTA NORTHERN CALIFORNIA AGGREGATES, LLC; and DOES 1 through 100, inclusive,

Defendants.

Case No. STK-CV-UOE-2025-0010132

**DECLARATION OF LEONARD EMMA IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

I, Leonard Emma, declare as follows:

1. I am an attorney duly licensed to practice law in the State of California and before this Court. I am an attorney with Emma Law, P.C. dba Employment Lawyers, attorneys of record for Plaintiffs Austen Shwiyhat and Walter Raines (collectively, "Plaintiffs").

2. I have personal knowledge of the matters stated herein and, if called upon to testify as a witness, could and would competently testify thereto. I submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

3. Plaintiffs seek preliminary approval of a proposed settlement of wage and hour claims on behalf of themselves and the putative class against Defendants Martin Marietta Materials, Inc. and Martin Marietta Northern California Aggregates, LLC (collectively, "Martin Marietta" and/or "Defendants") (Plaintiffs and Defendants are collectively referred to herein as the "Parties"), upon the terms and conditions set out in the Class Action and PAGA Settlement Agreement ("Settlement"). A true and correct copy of the Settlement is attached hereto as **Exhibit A**. The Settlement provides for a fund of at least $1,350,000.00.

4. Plaintiffs worked for Martin Marietta as non-exempt hourly employees within California. Plaintiffs and other employees were entitled to the protections of the California Labor Code, including the following: (1) payment of overtime wages; (2) payment for all hours worked; (3) entitlement to meal periods; (4) entitlement to rest periods; (5) accurate record keeping; (6) accurate wage statements; (7) payment of timely final wages; and (8) reimbursement of necessary business expenses.

5. Defendant Martin Marietta Materials, Inc., is a North Carolina Corporation and Martin Marietta Northern California Aggregates is a Delaware Limited Liability Company. Defendants were and are doing business in San Joaquin County, California.

6. On December 6, 2022, Plaintiff Shwiyhat commenced his action by filing a Complaint alleging a PAGA cause of action against Martin Marietta for (1) failure to properly calculate and properly pay overtime wages, (2) failure to compensate for all hours worked (off-

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

the-clock work); (3) failure to provide meal periods, (4) failure to provide rest periods, (5) failure to maintain accurate records; (6) failure to furnish accurate itemized wage statements, and (7) failure to pay final wages on time. On January 19, 2023, Martin Marietta removed Plaintiff Shwiyhat's action to the Northern District of California, where it is currently pending.

7. On June 5, 2023, Plaintiff Raines filed a separate action against Martin Marietta in San Joaquin County Superior Court for (1) failure to properly pay wages including for all hours worked at minimum wage; (2) failure to pay reporting time pay; (3) failure to provide meal periods; (4) failure to furnish accurate wage statements; (5) failure to pay final wages on time; and (6) unfair business practices. On August 15, 2023, Plaintiff Raines also filed a separate PAGA action for the same claims in the San Joaquin County Superior Court. Martin Marietta removed Raines' action to Eastern District of California, and Plaintiff Raines has since filed a consolidated class and PAGA complaint, which was dismissed upon the filing of the instant action. The instant action consolidates both Shwiyhat's and Raines' claims against Martin Marietta into a single action.

8. Plaintiffs allege the following wage and hour class action claims against Martin Marietta: (1) Failure to Properly Calculate and/or Pay Overtime Wages; (2) Failure to Compensate for All Hours Worked; (3) Failure to Provide Meal Periods; (4) Failure to Provide Rest Periods; (5) Failure to Maintain Accurate Records; (6) Failure to Furnish Compliant Wage and Hour Statements; (7) Failure to Pay Final Wages on Time; (8) Failure to Reimburse Business Expenses; and (9) Unfair Business Practices. Plaintiffs also bring a cause of action under the Private Attorneys General Act ("PAGA"), which is predicted on these class claims. Defendants deny Plaintiffs' allegations.

9. The Parties have conducted discovery and investigation of the facts and law at issue in this matter. Such discovery and investigation have included, *inter alia*: (1) propounding and responding to written discovery (including extensive special interrogatories to Martin Marietta, and extensive document requests to Martin Marietta); (2) depositions of Martin

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

Marietta's persons most knowledgeable; (3) interviewing Plaintiffs and putative class members; (4) production and review of thousands of pages of documents; (5) production and review of class member wage and hour records, including but not limited to pay stubs and time sheets containing clocking data and wage data; (6) engagement of an expert statistician; (7) development of a class-wide damages model; and (8) legal research into the merits and certifiability of Plaintiffs' claims. Class Counsel recommends that the Court approve the Settlement.

10. On October 22, 2024, the Parties mediated this matter before Jill Sperber -- a highly experienced and well-regarded mediator in wage and hour employment litigation. After a full day of mediation, the Parties continued to negotiate through Ms. Sperber and accepted her recommended to resolve the matter on November 18, 2024. The Parties entered into a binding MOU and continued to negotiate the details of their agreement in a long-form settlement agreement, which was finalized in July 2025. There was no fraud or collusion in the negotiation of the Settlement.

11. Plaintiffs allege that Martin Marietta required Plaintiffs and Class Members to work "off-the-clock" during meal periods and did not otherwise pay employees for all time spent working. Accordingly, Plaintiffs allege that employees were not properly paid for all work in excess of eight hours in one workday and in excess of 40 hours in a workweek (as well as the first eight hours worked on the seventh day of work in any one workweek) at the rate of one and one-half times the regular rate of pay no less than twice the regular rate of pay for work in excess of 12 hours in one day or for work in excess of eight hours on any seventh day of a workweek. In addition, Plaintiffs allege that employees' regular rate of pay did not incorporate all remuneration which they were entitled. Martin Marietta contends that it properly paid all employees for overtime.

12. Plaintiffs allege that Martin Marietta had a policy and practice of not permitting employees to take legally compliant meal and rest periods. Plaintiffs allege that Martin Marietta expected employees to work through their breaks to meet business requirements. Due to this

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

expectation, Plaintiffs allege that employees were routinely unable to take full 30-minute meal periods. In addition, Plaintiffs allege that Martin Marietta did not always authorize or permit employees to take meal periods at all or within the first five hours of their shifts. Plaintiffs further allege that employees were not consistently provided with compliant 10-minute rest breaks. Plaintiffs allege that, despite these practices, Martin Marietta did not properly pay premium payments to employees for its failure to provide meal and rest periods.

13. Martin Marietta contends that its meal and rest period policies are compliant with California law and that all employees are provided with meal and rest breaks required by law and that Martin Marietta properly provided premium payments for missed meal and rest periods. Martin Marietta contends that, at trial, Class Members will testify to their ability to take compliant meal and rest breaks.

14. Plaintiffs allege that Martin Marietta failed to accurately record and pay Class Members for all hours worked by "rounding" hours worked, requiring employees to work "off-the-clock" when their meal periods were interrupted or truncated, and not paying employees for calling in prior to their shifts. Martin Marietta contends that it did not require employees to work "off-the-clock," contends that any rounding of hours worked inured to the benefit of its employees, and otherwise properly compensated employees for all time spent working as required by California law.

15. Plaintiffs allege that Martin Marietta violated Labor Code § 226(a)(9) by failing to pay its employees for all hours that they worked at the proper rate of pay. Plaintiffs allege that Martin Marietta violated Labor Code § 226(a)(2) by rounding hours and requiring its employees to work off-the-clock. Thus, Plaintiffs and Class Members are entitled to damages pursuant to Labor Code § 226(e)(1) of fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000). Martin Marietta contends that this claim is derivative of the claims listed above and, as such, it must fail.

16. Plaintiffs allege that, due to (1) Martin Marietta's failure to pay employees for all hours worked and overtime at the proper rate, (2) Martin Marietta's requirement that employees perform work off-the-clock during meal and rest periods (and rounding of their meal periods and time records), and (3) Martin Marietta's failure to pay premiums for all late or short meal periods and miss rest periods, Martin Marietta failed to pay all wages owed to Plaintiffs and members of the Terminated Subclass upon separation of employment. Martin Marietta contends that this claim is derivative of the claims listed above and, as such, it must fail. Martin Marietta further contends, *inter alia*, that any failure to pay final wages was not willful because a good faith dispute exists as to whether or not its employees were underpaid wages.

17. Plaintiffs allege that Martin Marietta did not reimburse employees for necessary business expenses, including for purchase of personal protective equipment such as steel toed boots. Martin Marietta denies that they failed to properly reimburse Plaintiffs and Class Members.

18. Plaintiffs allege that, due to the conduct described above, Martin Marietta has violated California's Unfair Competition Law ("UCL"), codified in Cal. Bus. and Prof. Code § 17200 *et seq*. Plaintiffs also assert claims under the Private Attorneys General Act ("PAGA"), codified in Cal. Lab Code § 2698 *et seq*. Because Plaintiffs' UCL and PAGA claims are derived from the claims discussed above, the same arguments will apply.

19. The Settlement Class consists of (1) all persons employed by Martin Marietta in the State of California in non-exempt positions at any time from June 20, 2022 through March 31, 2025 (the "Settlement Class" or "Settlement Class Members") and (2) all person who were employed by Martin Marietta in the State of California in non-exempt positions at any time from June 20, 2022 through March 31, 2025 (the "PAGA Group Employees"). Members of the Settlement Class worked approximately 54,000 workweeks between June 20, 2022, and March 31, 2025. (Settlement ¶ 8.)

20. A true and correct copy of the proposed Notice is attached hereto as **Exhibit B.**

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

21. The proposed Settlement has been submitted to the LWDA pursuant to Cal. Lab. Code § 2699(l)(2). Class Counsel submits the amount allocated for distribution to the LWDA under PAGA is reasonable and should be approved by the Court. There is no articulated standard for approving PAGA settlements. The Court has discretion to award lesser civil penalties under Labor Code § 2699(e)(2), and PAGA settlements for as little as $0 have been approved. *See Nordstrom Com'n Cases*, 186 Cal. App. 4th 576, 589 (2010) (approving PAGA settlement and release that allocated $0 to PAGA claim). Courts routinely approve PAGA settlements of $20,000 or less. *See, e.g., Hicks v. Toys 'R' Us–Delaware, Inc.*, No. 13-cv-1302-DSF (Dkt. 7 at p. 2), 2014 WL 4703915, at *1 (C.D. Cal. Sept. 2, 2014) (approving $5,000 PAGA payment in a case involving $4 million settlement); *Franco v. Ruiz Food Prods., Inc.*, 10-cv-02354-SKO (Dkt. 53 at p. 4), 2012 WL 5941801 at *14 (E.D. Cal. Nov. 27, 2012) (approving PAGA penalties of $10,000 as part of $2.5 million settlement); *Chu v. Wells Fargo Invest. LLC*, 05-cv-04526-MHP (Dkt. 128 at pp. 2-3), 2011 WL 672645, at *1 (N.D. Cal. Feb. 16, 2011) (approving PAGA payment of $7,500 in $6.9 million settlement); *Williams v. Brinderson Constructors*, 15-cv-02474-MWF (Dkt. 50 at pp. 9-10), 2017 WL 490901, at *5 (C.D. Cal. Feb. 6, 2017) ($10,000 PAGA settlement in $300,000 settlement).

22. I have litigated this case for nearly three years now. I have considerable experience with this type of litigation. I have been practicing in California for over 21 years and have served as class counsel in dozens of wage and hour class action matters during this time. Some of these matters include the following:

- *Brewer v. General Nutrition Corporation*, 11-CV-03587-YGR (United States District Court, N.D. Cal.). Wage and hour class action on behalf of non-exempt sales associates and assistant managers alleging various wage and hour violations. The Court approved a class settlement.
- *Martinez v. Occidental Petroleum*, S1500CV282523 (Kern Superior Court). Class action on behalf of non-exempt plant employees alleging unpaid wages for off-the-clock work, meal and rest breaks, and derivative claims. The Court approved a class settlement.
- *Dillard v. Fidelity*, MSC18-00394 (Contra Costa Superior Court). Class action on behalf of non-exempt customer service representatives alleging wage and hour violations based on regular rate miscalculation. The Court approved a class

settlement.

- *Sampino v. Versace*, 16-CV-07198 (United States District Court, N.D. Cal.). Wage and hour class action on behalf of non-exempt retail store employees alleging various wage and hour violations. The Court approved a class settlement.

- *James v. Park 'N' Fly*, 17-CIV-05465 (San Mateo Superior Court). Class action on behalf of non-exempt employees of off-site airport parking company alleging wage and hour violations. The Court approved a class settlement.

- *Fernando v. Burroughs*, RG18906875 (Alameda Superior Court). Class action on behalf of non-exempt field service technicians alleging myriad wage and hour violations. The Court approved a class settlement.

- *Donald v. Xanitos*, 14-CV-05416 (United States District Court, N.D. Cal.). Wage and hour class action alleging that Defendant misclassified its environmental services supervisors as exempt employees and independent contractors. The Court approved a class settlement.

- *Amenya v. Henry Industries*, RG15754205 (Alameda Superior Court). Class action on behalf of drivers classified as independent contractors. Various wage and hour claims were asserted as a result of alleged misclassification. The Court approved a class settlement.

- *Buck v. Saputo Cheese USA*, VCU 256347 (Tulare Superior Court). Wage and hour class action on behalf of non-exempt plant production employees alleging off-the-clock violations, meal and rest period violations, and derivative claims. The Court approved a class settlement.

- *Newman v. All-Pro Bail Bonds*, RG16825571 (Alameda Superior Court). Class action on behalf of non-exempt bail agents alleging wage and hour violations. The Court approved a class settlement.

- *Carranza v. Arctic Glacier USA*, RG13692993 (Alameda Superior Court). Wage and hour class action on behalf of drivers and other non-exempt hourly employees alleging off-the-clock, meal period, rest period and derivative violations. The Court approved a class settlement.

- *Dilliehunt v. Togos*, RG14750133 (Alameda Superior Court). Wage and hour class action on behalf of store employees alleging off-the-clock violations, meal and rest period violations, and derivative claims. The Court approved a class settlement.

- *Villanueva v. Morpho Detection*, 13-CV-05390-HSG (United States District Court, N.D. Cal.). Wage and hour class action on behalf of service technicians alleging off-the-clock, missed meal/rest periods, and related violations. The Court approved a class settlement.

- *Kellenbenz v. Seton Medical Center*, CIV514600 (San Mateo Superior Court). Class action on behalf of registered nurses alleging failure to pay for all hours worked, missed meal/rest periods, and other wage and hour violations. The Court approved a class settlement.

- *Yoquelet v. Lindamood-Bell Learning Processes*, RG09460465 (Alameda Superior Court). Wage and hour class action on behalf of instructors alleging off-the-clock and rest period violations. The Court approved a class settlement.

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

- *Tinio v. Seton Medical Center,* CIV508557 (San Mateo Superior Court). Class action on behalf of certified nurse assistants and unit coordinators alleging failure to pay for all hours worked, missed meal/rest periods, and other wage and hour violations. The Court approved a class settlement.

- *Davison v. Academy of Art,* CGC-10-497727 (San Francisco Superior Court). Wage and hour class action alleging that Defendant misclassified its directed study advisors as exempt employees and independent contractors. The Court approved a class settlement.

- *Garcia v. Hoffman Southwest,* 37-2010-00094333-CU-OE-CTL (San Diego Superior Court). Wage and hour class action on behalf of service technicians. The Court approved a class settlement.

- *Robinson v. Nestle,* 30-2011-00463094-CU-OE-CXC (Orange County Superior Court). Wage and hour class action on behalf of route sales representatives. The Court approved a class settlement.

- *Lewis v. NAVCO,* RG09480367 (Alameda County Superior Court). Wage and hour class action on behalf of field service employees. The Court approved a class settlement.

- *McClellan v. SFN Group,* C10-05972 SBA (United States District Court, N.D. Cal.). Wage and hour class action on behalf of recruiters alleging unpaid overtime based on misclassification as exempt employees. The Court approved a class settlement.

- *Nettles v. Pitney Bowes,* RG08397421 (Alameda County Superior Court). Wage and hour class action on behalf of field service technicians alleging unpaid overtime, missed meal and rest breaks and related claims. The Court approved a class settlement.

- *Flores v. Zales,* CV-00539-TEH (United States District Court, N.D. Cal.). Class action on behalf of retail store managers classified by Defendant as exempt. Lawsuit alleged unpaid overtime, missed meal and rest breaks and related wage and hour claims. The Court approved a class settlement.

- *Stymest v. Bill Howe Plumbing,* 37-2007-00069216-CU-OE-CTL (San Diego County Superior Court). Wage and hour class action on behalf of service technicians alleging unpaid overtime, missed meal and rest breaks and related claims. The Court approved a class settlement.

- *Harris v. Kiddie Kandids,* C-08-0852-PJH-MEJ (United States District Court, N.D. Cal.). Class action on behalf of retail store managers classified by Defendant as exempt. Lawsuit alleged unpaid overtime, missed meal and rest breaks and related wage and hour claims. The Court approved a class settlement.

- *Ita v. Roto-Rooter,* CIV 462474 (San Mateo County Superior Court). Wage and hour class action on behalf of service technicians alleging unpaid overtime, missed meal and rest breaks and related claims. The Court approved a class settlement.

- *Tomerlin v. Berkeley Towing,* RG08421484 (Alameda County Superior Court). Wage and hour class action on behalf of tow truck drivers alleging unpaid overtime, missed meal and rest breaks and related claims. The Court approved a class settlement.

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

- *Perkins v. Exclusive Wireless*, 17CECG04108 (Fresno Superior Court). Class action on behalf of exempt and non-exempt employees of T-Mobile retailer alleging wage and hour violations. The Court approved a class settlement.
- *Nam v. Flexport*, CGC-18-565169 (San Francisco Superior Court). Class action on behalf of operations associates at technology company alleging exempt misclassification and derivative wage and hour violations. The Court approved a class settlement.
- *Derain Clark v. American Residential Services, LLC* (2009) 175 Cal.App.4th 785. Successfully appealed trial court's approval of class action settlement on behalf of objectors.
- *Serrone, et al. v. Adrienne Mattos Swim School, Inc., et al.* 23CV033052 (Alameda County Superior Court) Class action on behalf of non-exempt swim school employees alleging wage and hour violations. The Court approved a class and PAGA settlement.

23. Despite the arguments advanced by Defendants, Plaintiffs and Class Counsel believe the action has merit. However, Plaintiffs and Class Counsel acknowledge the uncertainty inherent in litigation, as well as the difficulties and delays inherent in complex class action litigation, such as obtaining and maintaining certification through trial and the expense and length of continued proceedings necessary to prevail through litigation, pre-trial motions, trial, and appeals. Plaintiffs and Class Counsel are also aware of the burdens of proof to establish liability, Defendants' defenses thereto, and the challenges in establishing entitlement to monetary relief. The Settlement avoids such risks.

24. If Plaintiffs and the Settlement Class were to prevail on all claims, with all factual findings and legal inferences being drawn in their favor, Class Counsel estimates that class-wide damages would max out at approximately $6,486,480.00. Class Counsel submits that this Settlement of $1,350,000 represents approximately 20% of the realistic maximum potential recovery and is an excellent result for the Settlement Class given the risks of continued litigation. The basis for this estimate is provided below.

a. Overtime Pay and Off-the-Clock Violations: Defendants' alleged Overtime Pay and Off-the-clock violations are predicated on Defendants' alleged failure to accurately pay Settlement Class Members for all hours they worked, including

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

relieving employees of all work during meal breaks (while they are "off-the-clock"). Thus, class members must be paid for these hours worked at their regular (or overtime) rate of pay. Based on the wage and hour records produced by Defendants, witness interviews conducted by Class Counsel, and the statute of limitations, Plaintiffs estimate that Defendants' maximum potential exposure for off-the-clock violations is $443,880.00.

b. Meal and Rest Period Penalties: Meal and rest period penalties are calculated at the rate of one hour of pay per missed meal or rest period. Based on the wage and hour records produced by Defendants, analysis conducted by Plaintiffs' expert, witness interviews conducted by Class Counsel, and the statute of limitations, Plaintiffs estimate that Defendants' maximum realistic potential exposure for meal and rest period violations is $1,890,000.00.

c. Wage Statement Penalties: Wage statement penalties are calculated at $50.00 for the first violation and $100.00 for each subsequent violation, up to a maximum of $4,000 per person. Cal. Lab. Code § 226(e). Based on the wage and hour records produced by Defendants and the statute of limitations for this claim, Plaintiffs estimates that Defendants' maximum potential exposure for derivative wage statement penalties is $1,200,000.

d. Waiting Time Penalties: California provides for penalties to workers who are not paid all wages due at termination. These "waiting time penalties" are in the amount of wages and accrue for a maximum of 30 days. Cal. Lab. Code § 201-203. Based on the wage and hour records produced by Defendants, Plaintiffs estimate that Defendants' maximum potential exposure for derivative waiting time penalties is $2,847,600.

e. Business Expenses: California requires that employers reimburse necessary business expenses including for purchase of personal protective equipment. Cal.

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

Lab. Code § 2802. Plaintiffs estimate that Defendants' maximum potential exposure is $105,000.

25. Class Counsel submits that the settlement amount of $1,350,000 falls within the normal range for settlements of wage and hour disputes of this size and concerning these types of issues and facts. The average recovery per employee will exceed $775, with many Settlement Class Members receiving much more.

26. The Notice describes the litigation, the terms of the Settlement, and the right of Settlement Class Members to opt-out or object. The Notice provides an estimate of the amount of money they will receive under the Settlement. The Notice includes contact information for Class Counsel and Atticus Administration LLC so Settlement Class Members may obtain more information. The Notice specifies the date, time and location of the final approval hearing, and explains the process of objecting and/or appearing at the final approval hearing. *See* Cal. Rules of Court 3.769(f). The Notice fulfills the requirement of neutrality in class notices. *See* 4 Newberg § 8:39.

27. Pursuant to protocol, Plaintiffs will present evidence supporting attorneys fees and costs following completion of the notice procedure. Unless otherwise ordered by the Court, Plaintiffs will file their Motion for Attorneys' Fees, Costs and Service Payments to be heard contemporaneously with Plaintiffs' Motion for Final Approval.

28. Martin Marietta has ascertained the Settlement Class from its records and represents that members of the Settlement Class worked approximately 54,000 and there are approximately 1,012 Settlement Class Members during the Class Period. Given the large number of Settlement Class Members, joinder would be impracticable.

29. The claims herein are suited for certification because they concern company policies and practices that uniformly apply to all class members. For example, Martin Marietta's form of wage statement does not vary from employee to employee -- the same information is contained in every wage statement issued to every employee. Similarly, Martin Marietta's

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

method of tracking employee time does not vary from employee to employee -- the same method is used for all employees. Furthermore, the laws that are implicated by Plaintiffs' allegations do not vary from employee to employee. Thus, common questions of fact and law predominate.

30. Plaintiffs' claims are typical of the Settlement Class. Plaintiffs' certification allegations are based on: (1) Defendants' alleged failure to properly pay the Settlement Class all wages due; (2) Defendants' alleged failure to provide compliant meal and rest periods; (3) Defendants' alleged failure to pay for hours worked while clocked out for meal periods; (4) Defendants' failure to provide accurate records, including wage statements; (5) Defendants' alleged failure to timely pay wages at separation; and (6) Defendants' alleged failure to reimburse necessary business expenses. This conduct is not unique to Plaintiffs because it was uniformly applied to all Settlement Class Members. Thus, Plaintiffs present claims that are typical of the Settlement Class.

31. Plaintiffs have and will continue to adequately represent all Settlement Class Members as a whole. Plaintiffs retained a firm with extensive experience as lead counsel or co-lead counsel in dozens of wage and hour class actions. Plaintiffs have actively facilitated the prosecution of this action on behalf of all Class Members for almost two years now. Plaintiffs and Class Counsel have no conflicts of interest.

32. Given the timeframes provided for in the Settlement, a final approval hearing should be scheduled to take place no sooner than February 27, 2026. Plaintiffs therefore request a final approval hearing on February 27, 2026, or as soon thereafter as the Court is available to hear the motion, at which time Plaintiffs request that the Court also consider their anticipated concurrent motion for attorneys' fees, costs and service payment.

33. I concurrently served the California Labor and Workforce Development Agency with a copy of the Settlement and Plaintiff's Motion for Preliminary Approval of Class Action Settlement and supporting papers.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Oakland, California, this 29th day of August 2025.

Leonard Emma

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

# EXHIBIT A

# CLASS ACTION AND PAGA SETTLEMENT AGREEMENT AND CLASS NOTICE

This Class Action and PAGA Settlement Agreement ("Agreement") is made by and between Plaintiffs Austen Shwiyhat ("Plaintiff Shwiyhat") and Walter L. Raines ("Plaintiff Raines") (together, the "Plaintiffs") and Defendants Martin Marietta Materials, Inc. and Martin Marietta Northern California Aggregates, LLC (collectively "MMM" or "Defendant"). The Agreement refers to Plaintiffs and Defendant collectively as "Parties," or individually as "Party."

## 1. DEFINITIONS.

1.1. "Action" means Plaintiff Austen Shwiyhat's lawsuit alleging wage and hour violations against Defendant currently pending in the Northern District of California, Case No. 24-CV-00283-JSC, and Plaintiff Walter L. Raines's lawsuit alleging wage and hour violations against Defendant currently pending in the Eastern District of California, Case No. 2:23-cv-01539-DJC-CKD. To effectuate approval of this Agreement, the Parties agree that Plaintiff Shwiyhat shall file a consolidated lawsuit in the San Joaquin County Superior Court in substantially the form contained in Exhibit A. Defendant will file a general denial answer within seven business days of receiving a file-stamped copy of the consolidated complaint filed in San Joaquin County Superior Court via email from Plaintiffs' counsel.

1.2. "Administrator" means Atticus Administration LLC, the neutral entity the Parties have agreed to appoint to administer the Settlement.

1.3. "Administration Expenses Payment" means the amount the Administrator will be paid from the Gross Settlement Amount to reimburse its reasonable fees and expenses in accordance with the Administrator's "not to exceed" bid submitted to the Court in connection with Preliminary Approval of the Settlement.

1.4. "Class" means a person employed by Defendant in California and classified as an hourly, non-exempt employee who worked for Defendant during the Class Period. Conditional Certification of the Class is a condition of settlement.

1.5. "Class Counsel" means Joseph Lavi, Vincent C. Granberry, Alexander J. Aroeste, and all lawyers affiliated with Lavi & Ebrahimian, LLP, and Leonard Emma, Cody Stroman, and all lawyers affiliated with Employment Lawyers.

1.6. "Class Counsel Fees Payment" and "Class Counsel Litigation Expenses Payment" mean the amounts allocated to Class Counsel for reimbursement of reasonable attorneys' fees and expenses, respectively, incurred to prosecute the Action.

1.7. "Class Data" means Class Member identifying information in Defendant's possession including the Class Member's name, last-known mailing address, Social Security number, and number of Class Period Workweeks and PAGA Pay Periods.

1.8. "Class Member" or "Settlement Class Member" means a member of the Class, as either a Participating Class Member or Non-Participating Class Member (including a Non- Participating Class Member who qualifies as an PAGA Group Employee).

1.9. "Class Member Address Search" means the Administrator's investigation and search



WLR

The signed document can be validated at https://app.vinesign.com/Verify

for current Class Member mailing addresses using all reasonably available sources, methods and means including, but not limited to, the National Change of Address database, skip traces, and direct contact by the Administrator with Class Members.

1.10. "Class Notice" means the COURT APPROVED NOTICE OF CLASS ACTION SETTLEMENT AND HEARING DATE FOR FINAL COURT APPROVAL, to be mailed to Class Members in English with a Spanish translation, without material variation, attached as Exhibit B and incorporated by reference into this Agreement.

1.11. "Class Period" means the period from June 20, 2022, through March 31, 2025 unless modified to expand or contract the Class Period pursuant to Paragraph 8 below.

1.12. "Class Representative" means the named Plaintiffs in the operative complaint in the Action seeking Court approval to serve as Class Representatives.

1.13. "Class Representative Service Payments" means the payments to the Class Representatives for initiating the Action and providing services in support of the Action.

1.14. "Court" means the Superior Court of California, County of San Joaquin.

1.15. "Defendant" means named Defendants Martin Marietta Materials, Inc. and Martin Marietta Northern California Aggregates, LLC.

1.16. "Defense Counsel" means Mike Birrer, Kelli Hinson, and Jordan Brownlow Perry of Carrington, Coleman, Sloman & Blumenthal LLP, and Cassandra Ferrannini and Daria Gossett of Downey Brand LLP.

1.17. "Effective Date" means the date by when both of the following have occurred: (1) the Court enters a Judgment on its Order Granting Final Approval of the Settlement; and (2) the Judgment is final. The Judgment is final as of the latest of the following occurrences: (a) if no Participating Class Member objects to the Settlement, the day the Court enters Judgment; (b) if one or more Participating Class Members objects to the Settlement, 61 days after the Court enters Judgment; or (c) if a timely appeal from the Judgment is filed, the day after the appellate court affirms the Judgment and issues a remittitur.

1.18. "Final Approval" means the Court's order granting final approval of the Settlement.

1.19. "Final Approval Hearing" means the Court's hearing on the Motion for Final Approval of the Settlement.

1.20. "Final Judgment" means the Judgment Entered by the Court upon Granting Final Approval of the Settlement.

1.21. "Gross Settlement Amount" means $1,350,000.00, which is the total amount Defendant agrees to pay under the Settlement except as provided in Paragraph 8 below. The Gross Settlement Amount will be used to pay Individual Class Payments, Individual PAGA Payments, the LWDA PAGA Payment, Class Counsel Fees, Class Counsel Litigation Expenses, Class Representative Service Payments and the Administration Expenses Payment.



W.L.R

1.22. "Individual Class Payment" means the Participating Class Member's pro rata share of the Net Settlement Amount calculated according to the number of Workweeks worked during the Class Period.

1.23. "Individual PAGA Payment" means the PAGA Group Employee's pro rata share of 25% of the PAGA Penalties calculated according to the number of Workweeks worked during the PAGA Period.

1.24. "Judgment" means the judgment entered by the Court based upon the Final Approval.

1.25. "LWDA" means the California Labor and Workforce Development Agency.

1.26. "LWDA PAGA Payment" means the 75% of the PAGA Penalties paid to the LWDA under Labor Code section 2699, subd. (i).

1.27. "Net Settlement Amount" means the Gross Settlement Amount, less the following payments in the amounts approved by the Court: Individual PAGA Payments, the LWDA PAGA Payment, Class Representative Service Payments, Class Counsel Fees Payment, Class Counsel Litigation Expenses Payment, and the Administration Expenses Payment. The remainder is to be paid to Participating Class Members as Individual Class Payments.

1.28. "Non-Participating Class Member" means any Class Member who opts out of the Settlement by sending the Administrator a valid and timely Request for Exclusion.

1.29. "PAGA Group Employee" means a person employed by Defendant in California and classified as an hourly, non-exempt employee who worked for Defendant during the PAGA Period.

1.30. "PAGA Pay Period" means any pay period during which a PAGA Group Employee worked for Defendant for at least one day during the PAGA Period.

1.31. "PAGA Period" means the period from June 20, 2022 through March 31, 2025, unless modified pursuant to Paragraph 8 below.

1.32. "PAGA" means the Private Attorneys General Act (Labor Code §§ 2698. et seq.).

1.33. "PAGA Notice" means Plaintiffs' letters to Defendant and the LWDA providing notice pursuant to Labor Code section 2699.3, subd.(a).

1.34. "PAGA Penalties" means the total amount of PAGA civil penalties to be paid from the Gross Settlement Amount, allocated 25% to the PAGA Group Employees ($12,500.00) and the 75% to the LWDA ($37,500.00) in settlement of PAGA claims.

1.35. "Participating Class Member" means a Class Member who does not submit a valid and timely Request for Exclusion from the Settlement.

1.36. "Plaintiffs" means Austen Shwiyhat and Walter L. Raines, the named Plaintiffs in the Action.

1.37. "Preliminary Approval Order" means the Court's Order Granting Preliminary Approval of the Settlement.

1.38. "Released Class Claims" means the claims being released as described in Paragraph 5.1 below.



W.L.R

1.39. "Released PAGA Claims" means the claims being released as described in Paragraph 5.2 below.

1.40. "Released Parties" means: Defendant and each of its former and present directors, officers, shareholders, owners, members, attorneys, insurers, predecessors, successors, joint employers, agents, and assigns.

1.41. "Request for Exclusion" means a Class Member's submission of a valid request to be excluded from the Class Settlement, prior to or by the Response Deadline.

1.42. "Response Deadline" means 45 calendar days after the Administrator mails Notice to Class Members and PAGA Group Employees, and is the last date on which Class Members may (a) fax, email, or mail Requests for Exclusion from the Settlement, or (b) fax, email, or mail Objection(s) to the Settlement. Class Members to whom Notice Packets are resent after having been returned undeliverable to the Administrator will have an additional 14 calendar days beyond the Response Deadline.

1.43. "Settlement" means the disposition of the Action effected by this Agreement and the Judgment.

1.44. "Workweek" means any week during which a Class Member worked for Defendant for at least one day during the Class Period.

2. **RECITALS.**

2.1. On December 6, 2022, Plaintiff Shwiyhat commenced his action by filing a Complaint alleging a PAGA cause of action against Defendant for (1) failure to properly calculate and properly pay overtime wages, (2) failure to compensate for all hours worked (off-the-clock work); (3) failure to provide meal periods, (4) failure to provide rest periods, (5) failure to maintain accurate records; (6) failure to furnish accurate itemized wage statements, and (7) failure to pay final wages on time. On January 19, 2023, Defendant removed Plaintiff Shwiyhat's action to the Northern District of California where it is currently pending. On June 5, 2023, Plaintiff Raines filed a separate class action in San Joaquin County Superior Court for (1) failure to properly pay wages including for all hours worked at minimum wage; (2) failure to pay reporting time pay; (3) failure to provide meal periods; (4) failure to furnish accurate wage statements; (5) failure to pay final wages on time; and (6) unfair business practices. On August 15, 2023, Plaintiff Raines also filed a separate PAGA action for the same claims in the San Joaquin County Superior Court. Defendant removed Raines' action to Eastern District of California and Plaintiff Raines has since filed a consolidated class and PAGA complaint where Plaintiff Raines's action is currently pending. Only for the purposes of effectuating and obtaining approval of this Agreement, the Parties agree that Plaintiffs Shwiyhat and Raines will file a consolidated complaint in the San Joquin County Superior Court alleging all claims and covering all Class Members to be released under this Agreement a copy of which is attached as Exhibit A to this Agreement (the "Operative Complaint"). Defendant denies Plaintiffs' allegations and denies any failure to comply with the law and denies



WLR

any and all liability for any and all causes of action alleged. Defendant will file a general denial answer within seven business days of receiving a file-stamped copy of the consolidated complaint filed in San Joaquin County Superior Court via email from Plaintiffs' counsel.

2.2. Pursuant to Labor Code section 2699.3,[ *former*] subd.(a), Plaintiffs gave timely written notice to Defendant and the LWDA by sending the PAGA Notice.

2.3. On October 22, 2024, Plaintiffs and Defendant participated in an all-day mediation presided over by Jill Sperber, which led to this Agreement to settle the Action.

2.4. Prior to mediation, Plaintiffs obtained, through informal discovery, time records, pay records, and information relating to the size and scope of the Class, as well as data permitting Plaintiffs to fully understand the nature and scope of the allegations in the Complaint. Plaintiffs' investigation was sufficient to satisfy the criteria for court approval set forth in *Dunk v. Foot Locker Retail, Inc.* (1996) 48 Cal.App.4th 1794, 1801 and *Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 129-130 ("*Dunk/Kullar*").

2.5. The Court has not granted class certification in any case defined in the Action.

2.6. The Parties represent that they are not aware of any other pending matter or action asserting claims that will be extinguished or affected by the Settlement.

3. **MONETARY TERMS.**

3.1. Gross Settlement Amount. Except as otherwise provided by Paragraph 8 below, Defendant promises to pay $1,350,000.00 and no more as the Gross Settlement Amount and to separately pay any and all employer payroll taxes owed on the Wage Portions of the Individual Class Payments. Defendant has no obligation to pay the Gross Settlement Amount (or any payroll taxes) prior to the deadline stated in Paragraph 4.3 of this Agreement. The Administrator will disburse the entire Gross Settlement Amount without asking or requiring Participating Class Members or PAGA Group Employees to submit any claim as a condition of payment. None of the Gross Settlement Amount will revert to Defendant.

3.2. Payments from the Gross Settlement Amount. The Administrator will make and deduct the following payments from the Gross Settlement Amount, in the amounts specified by the Court in the Final Approval:

3.2.1 To Plaintiffs: Class Representative Service Payment to the Class Representatives of not more than $10,000.00 each (in addition to any Individual Class Payment and any Individual PAGA Payment the Class Representatives are entitled to receive as Participating Class Members). Defendant will not oppose Plaintiffs' request for a Class Representative Service Payment that does not exceed this amount. If the Court approves a Class Representative Service Payment less than the amount requested, the Administrator will retain the remainder in the Net Settlement



WLR

Amount. The Administrator will pay the Class Representative Service Payment using IRS Form 1099.

3.2.2 To Class Counsel: A Class Counsel Fees Payment of not more than 35% of the Gross Settlement Amount, which is currently estimated to be $472,500.00, and a Class Counsel Litigation Expenses Payment of not more than $50,000.00. In the event that the escalator clause described in Paragraph 8 herein is triggered and the Gross Settlement Amount is increased, the amount of Class Counsel Fees Payment will increase in order to remain 35% of the Gross Settlement Amount. Defendant will not oppose requests for these payments provided that they do not exceed these amounts. If the Court approves a Class Counsel Fees Payment and/or a Class Counsel Litigation Expenses Payment less than the amounts requested, the Administrator will allocate the remainder to the Net Settlement Amount. The Administrator will pay the Class Counsel Fees Payment and Class Counsel Expenses Payment using one or more IRS 1099-MISC Form(s).

3.2.3 To the Administrator: An Administration Expenses Payment not to exceed $20,000 except for a showing of good cause and as approved by the Court. To the extent the Administrator's expenses are less or the Court approves payment less than $20,000, the Administrator will retain the remainder in the Net Settlement Amount.

3.2.4 To Each Participating Class Member: An Individual Class Payment calculated by (a) dividing the Net Settlement Amount by the total number of Workweeks worked by all Participating Class Members during the Class Period and (b) multiplying the result by each Participating Class Member's Workweeks.

3.2.4.1. Tax Allocation of Individual Class Payments. 40% of each Participating Class Member's Individual Class Payment will be allocated to settlement of wage claims (the "Wage Portion"). The Wage Portions are subject to tax withholding and will be reported on an IRS W-2 Form. The other 60% of each Participating Class Member's Individual Class Payment will be allocated to settlement of claims for interest and penalties (the "Non-Wage Portion"). The Non-Wage Portions are not subject to wage withholdings and will be reported on IRS 1099 Forms. Participating Class Members assume full responsibility and liability for any employee taxes owed on their Individual Class Payment.

3.2.4.2. Effect of Non-Participating Class Members on Calculation of Individual Class Payments. Non-Participating Class Members will not receive any Individual Class Payments. The Administrator will retain amounts equal to their Individual Class Payments in the Net Settlement Amount for distribution to Participating Class Members on a pro rata basis.



WLR

3.2.5 To the LWDA and PAGA Group Employees: PAGA Penalties in the amount of $50,000.00 to be paid from the Gross Settlement Amount, with 75% ($37,500.00) allocated to the LWDA PAGA Payment and 25% ($12,500.00) allocated to the Individual PAGA Payments.

3.2.5.1. The Administrator will calculate each Individual PAGA Payment by (a) dividing the amount of the PAGA Group Employees' 25% share of PAGA Penalties ($12,500.00) by the total number of PAGA Pay Periods worked by all PAGA Group Employees during the PAGA Period and (b) multiplying the result by each PAGA Group Employee's PAGA Pay Periods.

3.2.5.2. If the Court approves PAGA Penalties of less than the amount requested, the Administrator will allocate the remainder to the Net Settlement Amount. The Administrator will report the Individual PAGA Payments on IRS 1099 Forms.

3.2.6 In the event that the Court reduces or does not approve the requested Class Counsel Fees Payment and/or Class Litigation Expenses Payment, Class Counsel reserve their right to appeal such order, however, in no event shall Plaintiffs and/or Class Counsel request, demand, or be entitled to an increase to the Gross Settlement Amount on that basis.

4. **SETTLEMENT FUNDING AND PAYMENTS.**

4.1. Class Data. Not later than 30 days after the Court grants Preliminary Approval of the Settlement, Defendant will deliver the Class Data to the Administrator, in the form of a Microsoft Excel spreadsheet. To protect Class Members' privacy rights, the Administrator must maintain the Class Data in confidence, use the Class Data only for purposes of this Settlement and for no other purpose, and restrict access to the Class Data to Administrator employees who need access to the Class Data to effect and perform under this Agreement. Defendant has a continuing duty to immediately notify Class Counsel if it discovers that the Class Data omitted class member identifying information and to provide corrected or updated Class Data as soon as reasonably feasible. Without any extension of the deadline by which Defendant must send the Class Data to the Administrator, the Parties and their counsel will expeditiously use best efforts, in good faith, to reconstruct or otherwise resolve any issues related to missing or omitted Class Data.

4.2. Funding of Gross Settlement Amount. Defendant shall fully fund the Gross Settlement Amount, and also fund the amounts necessary to fully pay Defendant's share of payroll taxes by transmitting the total funds to the Administrator no later than 14 days after the Effective Date. In no event shall Defendant pay more than the Gross Settlement Amount and its portion of payroll taxes.

4.3. Payments from the Gross Settlement Amount. Within 14 days after Defendant funds the Gross Settlement Amount, the Administrator will mail checks for all Individual Class Payments, all Individual PAGA Payments, the LWDA PAGA Payment, the Administration Expenses Payment, the Class Counsel Fees Payment, the Class



WLR

Counsel Litigation Expenses Payment, and the Class Representative Service Payment. Disbursement of the Class Counsel Fees Payment, the Class Counsel Litigation Expenses Payment and the Class Representative Service Payment shall not precede disbursement of Individual Class Payments and Individual PAGA Payments.

4.3.1 The Administrator will issue checks for the Individual Class Payments and/or Individual PAGA Payments and send them to the Class Members via First Class U.S. Mail, postage prepaid. The face of each check shall prominently state the date (not less than 180 days after the date of mailing) when the check will be voided. The Administrator will cancel all checks not cashed by the void date. The Administrator will send checks for Individual Settlement Payments to all Participating Class Members (including those for whom Class Notice was returned undelivered). The Administrator will send checks for Individual PAGA Payments to all PAGA Group Employees including Non-Participating Class Members who qualify as PAGA Group Employees (including those for whom Class Notice was returned undelivered). The Administrator may send Participating Class Members a single check combining the Individual Class Payment and the Individual PAGA Payment. Before mailing any checks, the Settlement Administrator must update the recipients' mailing addresses using the National Change of Address Database.

4.3.2 The Administrator must conduct a Class Member Address Search for all other Class Members whose checks are returned undelivered without USPS forwarding address. Within 7 days of receiving a returned check the Administrator must re-mail checks to the USPS forwarding address provided or to an address ascertained through the Class Member Address Search. The Administrator need not take further steps to deliver checks to Class Members whose re-mailed checks are returned as undelivered. The Administrator shall promptly send a replacement check to any Class Member whose original check was lost or misplaced, requested by the Class Member prior to the void date.

4.3.3 For any Class Member whose Individual Class Payment check or Individual PAGA Payment check is uncashed and cancelled after the void date, the Administrator shall transmit the funds represented by such checks to the California Controller's Unclaimed Property Fund in the name of the Class Member thereby leaving no "unpaid residue" subject to the requirements of California Code of Civil Procedure Section 384, subd. (b).

4.3.4 The payment of Individual Class Payments and Individual PAGA Payments shall not obligate Defendant to confer any additional benefits or make any additional payments to Class Members (such as 401(k)



WLR

contributions or bonuses) beyond those specified in this Agreement.

5. **RELEASES OF CLAIMS.** Effective on the date when Defendant fully funds the entire Gross Settlement Amount and funds all employer payroll taxes owed on the Wage Portion of the Individual Class Payments, Plaintiffs and Class Members will release claims against all Released Parties as follows:

5.1. Release by Participating Class Members: All Participating Class Members release Released Parties from all claims that were alleged, or reasonably could have been alleged, based on the Class Period facts stated in the Operative Complaint including, any claims under the California Labor Code, PAGA, Fair Labor Standards Act, applicable California Wage Orders, and any other local, state, or federal laws on PAGA/wage/hour issues (including but not limited to claims which could have been plead related to or arising from facts or issues alleged within the Operative Complaint or claims which could have been plead related to or arising from facts or issues alleged in the PAGA Notices sent to the LWDA by Plaintiffs Shwiyhat and Raines). This includes but is not limited to claims related to or arising from alleged wages, overtime, calculation of wages and overtime, off-the-clock work, minimum wages, plus related liquidated damages, interest, or penalties. For the avoidance of doubt, workers' compensation benefits claims and unemployment benefits claims are not released. In addition, see *Edwards v. Arthur Andersen,* 44 Cal. 4th 937 (Cal. S. Ct. 2008) (non-waivable claims are excluded from broad, general release).

5.2. Release by PAGA Group Employees: All PAGA Group Employees are deemed to release he Released Parties from all claims for PAGA penalties that were alleged, or reasonably could have been alleged, based on the facts stated in the Operative Complaint and PAGA Notice during the PAGA Period.

5.3. Plaintiffs' Release. Plaintiffs for themselves and on behalf of their respective former and present spouses, representatives, agents, heirs, administrators, successors, and assigns generally, release and discharge Released Parties from all claims, transactions, or occurrences that occurred during the Class Period, including, but not limited to: (a) all claims that were, or reasonably could have been, alleged, based on the facts contained, in the Operative Complaint and (b) all PAGA claims that were, or reasonably could have been, alleged based on facts contained in the Operative Complaint or Plaintiffs' PAGA Notices. ("Plaintiffs' Release.") Plaintiffs acknowledge that Plaintiffs may discover facts or law different from, or in addition to, the facts or law that Plaintiffs now knows or believes to be true but agrees, nonetheless, that Plaintiffs' Release shall be and remain effective in all respects, notwithstanding such different or additional facts or Plaintiffs' discovery of them. Notwithstanding the above, this does not release claims of wrongful termination or harassment if (1) unrelated to wage/hour/compensation/rest period/meal period issues or PAGA issues <u>and</u> (2) alleged in the lawsuit filed by Plaintiff Austen Shwiyhat in the Alameda County Superior Court in the matter titled Austen Shwiyhat v. Martin Marietta Materials, Inc., Case No. 24CV096407. For the avoidance of doubt,



WLR

workers' compensation benefits claims and unemployment benefits claims are not released. In addition, see *Edwards v. Arthur Andersen,* 44 Cal. 4th 937 (Cal. S. Ct. 2008) (all legally non-waivable claims are excluded from the general release).

5.3.1 Plaintiffs' Waiver of Rights Under California Civil Code Section 1542. For purposes of Plaintiffs' Release, Plaintiffs expressly waive and relinquishes the provisions, rights, and benefits, if any, of section 1542 of the California Civil Code, which reads:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

6. **MOTION FOR PRELIMINARY APPROVAL.** The Parties agree that Plaintiffs will prepare a draft motion for preliminary approval ("Motion for Preliminary Approval") and provide it to Defendant for review with sufficient time to review before Plaintiffs file it. If the Court does not grant Preliminary Approval or conditions Preliminary Approval on any material change to this Agreement, the Parties, by and through their respective Counsel, will expeditiously work together by meeting in person or by telephone, and in good faith, to modify the Agreement and otherwise satisfy the Court's concerns. However, in no event, other than the exceptions in Section 8, shall the Gross Settlement Amount increase.

7. **SETTLEMENT ADMINISTRATION.**

7.1. Selection of Administrator. The Parties have selected Atticus Administration LLC to serve as the Administrator and verified that, as a condition of appointment, Atticus Administration LLC agrees to be bound by this Agreement and to perform, as a fiduciary, all duties specified in this Agreement in exchange for the Administration Expenses Payment. The Parties and their Counsel represent that they have no interest or relationship, financial or otherwise, with the Administrator other than a professional relationship arising out of prior experiences administering settlements.

7.2. Employer Identification Number. The Administrator shall have and use its own Employer Identification Number for purposes of calculating payroll tax withholdings and providing reports state and federal tax authorities.

7.3. Qualified Settlement Fund. The Administrator shall establish a settlement fund that meets the requirements of a Qualified Settlement Fund ("QSF") under US Treasury Regulation section 468B-1.

7.4. Notice to Class Members.

7.4.1 No later than three (3) business days after receipt of the Class Data, the

4790834.1



W.J.R

Administrator shall notify Class Counsel that it has received the list and state the number of Class Members, PAGA Members, Workweeks, and PAGA Pay Periods in the Class Data.

7.4.2 Using best efforts to perform as soon as possible, and in no event later than 14 days after receiving the Class Data, the Administrator will send to all Class Members identified in the Class Data, via first-class United States Postal Service ("USPS") mail, the Class Notice with Spanish translation substantially in the form attached to this Agreement as Exhibit B. The Class Notice shall prominently estimate the dollar amounts of any Individual Class Payment and/or Individual PAGA Payment payable to the Class Member, and the number of Workweeks and PAGA Pay Periods (if applicable) used to calculate these amounts. Before mailing Class Notices, the Administrator shall update Class Member addresses using the National Change of Address database.

7.4.3 Not later than 3 business days after the Administrator's receipt of any Class Notice returned by the USPS as undelivered, the Administrator shall re-mail the Class Notice using any forwarding address provided by the USPS. If the USPS does not provide a forwarding address, the Administrator shall conduct a Class Member Address Search, and re-mail the Class Notice to the most current address obtained. The Administrator has no obligation to make further attempts to locate or send Class Notice to Class Members whose Class Notice is returned by the USPS a second time.

7.4.4 The deadlines for Class Members' written objections, Challenges to Workweeks and/or PAGA Pay Periods, and Requests for Exclusion will be extended an additional 14 days beyond the 45 days otherwise provided in the Class Notice for all Class Members whose notice is re-mailed. The Administrator will inform the Class Member of the extended deadline with the re-mailed Class Notice.

7.4.5 If the Administrator, Defense Counsel or Class Counsel is contacted by or otherwise discovers any persons who believe they should have been included in the Class Data and should have received Class Notice, the Parties will expeditiously meet and confer in person or by telephone, and in good faith, in an effort to agree on whether to include them as Class Members. If the Parties agree, such persons will be Class Members entitled to the same rights as other Class Members, and the Administrator will send, via email or overnight delivery, a Class Notice requiring them to exercise options under this Agreement not later than 14 days after receipt of Class Notice, or the deadline dates in the Class Notice, which ever are later.



WLR

7.5. Requests for Exclusion (Opt-Outs).

7.5.1 Class Members who wish to exclude themselves (opt-out of) the Class Settlement must send the Administrator, by fax, email, or mail, a signed written Request for Exclusion not later than the Response Deadline (plus an additional 14 days for Class Members whose Class Notice is re-mailed). A Request for Exclusion is a letter from a Class Member or his/her representative that reasonably communicates the Class Member's election to be excluded from the Settlement and includes the Class Member's name, address and email address or telephone number. To be valid, a Request for Exclusion must be timely faxed, emailed, or postmarked by the Response Deadline.

7.5.2 The Administrator cannot reject a Request for Exclusion as invalid because it fails to contain all the information specified in the Class Notice. The Administrator will accept any Request for Exclusion as valid if the Administrator can reasonably ascertain the identity of the person as a Class Member and the Class Member's desire to be excluded. If the Administrator has reason to question the authenticity of a Request for Exclusion, the Administrator may demand additional proof of the Class Member's identity. The Administrator's determination of validity and/or authenticity will be final and not appealable or otherwise susceptible to challenge.

7.5.3 Each Class Member who does not submit a timely and valid Request for Exclusion is deemed to be a Participating Class Member under this Agreement, entitled to all benefits and bound by all terms and conditions of the Settlement, including the releases under Paragraphs 5.1 and 5.2 of this Agreement, regardless of whether the Participating Class Member actually receives the Class Notice or objects to the Settlement.

7.5.4 Each Class Member who submits a valid and timely Request for Exclusion is a Non-Participating Class Member and shall not receive an Individual Class Payment or have the right to object to the class action components of the Settlement. Because future PAGA claims are subject to claim preclusion upon entry of the Judgment, Non-Participating Class Members who are PAGA Group Employees are deemed to release the claims identified in Paragraph 5.2 of this Agreement and are eligible for an Individual PAGA Payment

7.6. Challenges to Calculation of Workweeks. Each Class Member will have until the Response Deadline (plus an additional 14 days for Class Members whose Class Notice is re-mailed) to challenge the number of Class Workweeks and PAGA Pay Periods (if any) allocated to the Class Member in the Class Notice. The Class Member may challenge the allocation by communicating with the Administrator via fax, email or



W.L.R

mail. The Administrator must encourage the challenging Class Member to submit supporting documentation. In the absence of any contrary documentation, the Administrator is entitled to presume that the Workweeks contained in the Class Notice are correct so long as they are consistent with the Class Data. The Administrator's determination of each Class Member's allocation of Workweeks and/or PAGA Pay Periods shall be final and not appealable or otherwise susceptible to challenge. The Administrator shall promptly provide copies of all challenges to calculation of Workweeks and/or PAGA Pay Periods to Defense Counsel and Class Counsel and the Administrator's determination of the challenges.

7.7. Objections to Settlement.

7.7.1 Only Participating Class Members may object to the class action components of the Settlement and/or this Agreement (e.g., contesting the fairness of the Settlement, and/or amounts requested for the Class Counsel Fees Payment, Class Counsel Litigation Expenses Payment and/or Class Representative Service Payment).

7.7.2 Participating Class Members may send written objections to the Administrator, by fax, email, or mail. In the alternative, Participating Class Members may appear in Court (or hire an attorney to appear in Court) to present verbal objections at the Final Approval Hearing. A Participating Class Member who elects to send a written objection to the Administrator must do so not later than the Response Deadline (plus an additional 14 days for Class Members whose Class Notice was re-mailed).

7.7.3 Non-Participating Class Members have no right to object to the Settlement.

7.8. Administrator Duties. The Administrator has a duty to perform or observe all tasks to be performed or observed by the Administrator contained in this Agreement or otherwise.

7.8.1 Requests for Exclusion (Opt-outs) and Exclusion List. The Administrator will promptly review on a rolling basis Requests for Exclusion to ascertain their validity. Not later than 5 days after the expiration of the deadline for submitting Requests for Exclusion, the Administrator shall email a list to Class Counsel and Defense Counsel containing (a) the names and other identifying information of Class Members who have timely submitted valid Requests for Exclusion ("Exclusion List"); (b) the names and other identifying information of Class Members who have submitted invalid Requests for Exclusion; and (c) copies of all Requests for Exclusion from Settlement submitted (whether valid or invalid).

7.8.2 Weekly Reports. The Administrator must, on a weekly basis, provide



W.J.R

written reports to Class Counsel and Defense Counsel that, among other things, tally the number of: Class Notices mailed or re-mailed, Class Notices returned undelivered, Requests for Exclusion (whether valid or invalid) received, objections received, challenges to Workweeks and/or PAGA Pay Periods received and/or resolved, and checks mailed for Individual Class Payments and Individual PAGA Payments ("Weekly Report"). The Weekly Reports must include the Administrator's assessment of the validity of Requests for Exclusion and attach copies of all Requests for Exclusion and objections received.

7.8.3 Workweek and/or PAGA Pay Period Challenges. The Administrator has the authority to address and make final decisions consistent with the terms of this Agreement on all Class Member challenges over the calculation of Workweeks and/or PAGA Pay Periods. The Administrator's decision shall be final and not appealable or otherwise susceptible to challenge.

7.8.4 Administrator's Declaration. Not later than 14 days before the date by which Plaintiffs are required to file the Motion for Final Approval of the Settlement, the Administrator will provide to Class Counsel and Defense Counsel, a signed declaration suitable for filing in Court attesting to its due diligence and compliance with all of its obligations under this Agreement, including, but not limited to, its mailing of Class Notice, the Class Notices returned as undelivered, the re-mailing of Class Notices, attempts to locate Class Members, the total number of Requests for Exclusion from Settlement it received (both valid or invalid), the number of written objections and attach the Exclusion List. The Administrator will supplement its declaration as needed or requested by the Parties and/or the Court. Plaintiffs are responsible for filing the Administrator's declaration(s) in Court.

7.8.5 Final Report by Settlement Administrator. Within 10 days after the Administrator disburses all funds in the Gross Settlement Amount, the Administrator will provide Class Counsel and Defense Counsel with a final report detailing its disbursements by employee identification number only of all payments made under this Agreement. At least 15 days before any deadline set by the Court, the Administrator will prepare, and submit to Class Counsel and Defense Counsel, a signed declaration suitable for filing in Court attesting to its disbursement of all payments required under this Agreement. Plaintiffs are responsible for filing the Administrator's declaration in Court.

8. **CLASS SIZE ESTIMATES AND ESCALATOR CLAUSE.** Based on its records, Defendant estimates that, as of the date of this Settlement Agreement, there are 54,000 Total Workweeks worked by Class Members during the Class Period.



W.L.R

8.1. First Escalator Provision. If the total number of Workweeks as of the end of the Class Period exceeds the above figure by greater than 59,400, then the Gross Settlement Amount shall increase pro rata based on the number of additional Workweeks above 10% (i.e., if the number of Workweeks is 11% greater than the above figure, then the Gross Settlement Amount shall increase by 1%). In the event that any increase in payment pursuant to this provision exceeds $50,000, Defendant shall have the option to modify the end of the Class Period to the last day that the increased payment pursuant to this provision does not exceed $50,000 (e.g., to modify it from March 31, 2025, to March 15, 2025).

8.2. Second Escalator Provision. In addition, Defendant shall have the option to extend the end of the Class Period beyond March 31, 2025 up until the date of the Court's order granting preliminary approval provided that each additional Class Member Workweek worked after March 31, 2025 will be paid at $25.00 ($1.35 million divided by 54,000) regardless of whether the First Escalator Provision was triggered.

9. **DEFENDANT'S RIGHT TO WITHDRAW.** If the number of valid Requests for Exclusion identified in the Exclusion List exceeds 10% of the total of all Class Members, Defendant may, but is not obligated, elect to withdraw from the Settlement. The Parties agree that, if Defendant withdraws, the Settlement shall be void ab initio, have no force or effect whatsoever, and that neither Party will have any further obligation to perform under this Agreement; provided, however, Defendant will remain responsible for paying all settlement administration expenses incurred to that point. Defendant must notify Class Counsel and the Court of its election to withdraw not later than 7 days after the Administrator sends the final Exclusion List to Defense Counsel; late elections will have no effect.

10. **MOTION FOR FINAL APPROVAL.** Plaintiffs will file in Court a motion for final approval of the Settlement that includes a request for approval of the PAGA settlement under Labor Code section 2699,[ *former*] subd. (l), a Proposed Final Approval Order and a proposed Judgment (collectively "Motion for Final Approval"). Prior to filing, Plaintiffs will provide a draft of the documents to Defendant for its review.

10.1. Response to Objections. Each Party retains the right to respond to any objection raised by a Participating Class Member, including the right to file responsive documents in Court no later than 5 court days prior to the Final Approval Hearing, or as otherwise ordered or accepted by the Court.

10.2. Duty to Cooperate. If the Court does not grant Final Approval or conditions Final Approval on any material change to the Settlement (including, but not limited to, the scope of release to be granted by Class Members), the Parties will expeditiously work together in good faith to address the Court's concerns by revising the Agreement as necessary to obtain Final Approval. However, in no event, other than the exceptions in Section 8, shall the Gross Settlement Amount increase. The Court's decision to award less than the amounts requested for the Class Representative Service Payment, Class Counsel Fees Payment, Class Counsel Litigation Expenses Payment and/or



WLR

Administration Expenses Payment shall not constitute a material modification to the Agreement within the meaning of this paragraph.

10.3. Continuing Jurisdiction of the Court. The Parties agree that, after entry of Judgment, the Court will retain jurisdiction over the Parties, Action, and the Settlement solely for purposes of (i) enforcing this Agreement and/or Judgment, (ii) addressing settlement administration matters, and (iii) addressing such post-Judgment matters as are permitted by law.

10.4. Waiver of Right to Appeal. Provided the Judgment is consistent with the terms and conditions of this Agreement, specifically including the Class Counsel Fees Payment and Class Counsel Litigation Expenses Payment reflected set forth in this Settlement, the Parties, their respective counsel, and all Participating Class Members who did not object to the Settlement as provided in this Agreement, waive all rights to appeal from the Judgment, including all rights to post-judgment and appellate proceedings, the right to file motions to vacate judgment, motions for new trial, extraordinary writs, and appeals. The waiver of appeal does not include any waiver of the right to oppose such motions, writs or appeals. If an objector appeals the Judgment, the Parties' obligations to perform under this Agreement will be suspended until such time as the appeal is finally resolved and the Judgment becomes final, except as to matters that do not affect the amount of the Net Settlement Amount.

10.5. Appellate Court Orders to Vacate, Reverse, or Materially Modify Judgment. If the reviewing Court vacates, reverses, or modifies the Judgment in a manner that requires a material modification of this Agreement (including, but not limited to, the scope of release to be granted by Class Members), this Agreement shall be null and void. The Parties shall nevertheless expeditiously work together in good faith to address the appellate court's concerns and to obtain Final Approval and entry of Judgment, sharing, on a 50-50 basis, any additional administration expenses reasonably incurred after remittitur. An appellate decision to vacate, reverse, or modify the Court's award of the Class Representative Service Payment or any payments to Class Counsel shall not constitute a material modification of the Judgment within the meaning of this paragraph, as long as the Gross Settlement Amount remains unchanged.

11. **AMENDED JUDGMENT.** If any amended judgment is required under California Code of Civil Procedure section 384, the Parties will work together in good faith to jointly submit and a proposed amended judgment.

12. **ADDITIONAL PROVISIONS.**

12.1. No Admission of Liability, Class Certification or Representative Manageability for Other Purposes. This Agreement represents a compromise and settlement of highly disputed claims. Nothing in this Agreement is intended or should be construed as an admission by Defendant that any of the allegations in the Operative Complaint have merit or that Defendant has any liability for any claims asserted; nor should it be intended or construed as an admission by Plaintiffs that Defendant's defenses in the



WLR

Action have merit. The Parties agree that class certification and representative treatment is conditional and for purposes of this Settlement only. If, for any reason the Court does not grant Preliminary Approval, Final Approval or enter Final Judgment, Defendant reserves the right to contest certification of any class for any reasons, and Defendant reserves all available defenses to the claims in the Action, and Plaintiffs reserve the right to move for class certification on any grounds available and to contest Defendant's defenses. The Settlement, this Agreement and Parties' willingness to settle the Action will have no bearing on, and will not be admissible in connection with, any litigation (except for proceedings to enforce or effectuate the Settlement and this Agreement).

12.2. Confidentiality Prior to Preliminary Approval. The Parties separately agree that, until the Motion for Preliminary Approval of Settlement is filed, they and each of them will not disclose, disseminate and/or publicize, or cause or permit another person to disclose, disseminate or publicize, any of the terms of the Agreement directly or indirectly, specifically or generally, to any person, corporation, association, government agency, or other entity except: (1) to the Parties' attorneys, accountants, or spouses, all of whom will be instructed to keep this Agreement confidential; (2) counsel in a related matter; (3) to the extent necessary to report income to appropriate taxing authorities; (4) in response to a court order or subpoena; or (5) in response to an inquiry or subpoena issued by a state or federal government agency. Each Party agrees to immediately notify each other Party of any judicial or agency order, inquiry, or subpoena seeking such information. The Parties separately agree not to, directly or indirectly, initiate any conversation or other communication, before the filing of the Motion for Preliminary Approval, with any third party regarding this Agreement or the matters giving rise to this Agreement except to respond only that "the matter was resolved," or words to that effect. This paragraph does not restrict Class Counsel's communications with Class Members in accordance with Class Counsel's ethical obligations owed to Class Members.

12.3. No Solicitation. The Parties separately agree that they and their respective counsel and employees will not solicit any Class Member to opt out of or object to the Settlement, or appeal from the Judgment.' Nothing in this paragraph shall be construed to restrict Class Counsel's ability to communicate with Class Members in accordance with Class Counsel's ethical obligations owed to Class Members.

12.4. Integrated Agreement. Upon execution by all Parties and their counsel, this Agreement together with its attached exhibits shall constitute the entire agreement between the Parties relating to the Settlement, superseding any and all oral representations, warranties, covenants, or inducements made to or by any Party.

12.5. Attorney Authorization. The Parties separately warrant and represent that they have authorized their respective Counsel to take all appropriate action required or permitted to be taken pursuant to this Agreement to effectuate its terms, and to execute any other documents reasonably required to effectuate the terms of this Agreement including



W.L.R

any amendments to this Agreement.

12.6. Cooperation. The Parties and their counsel will cooperate with each other and use their best efforts, in good faith, to implement the Settlement by, among other things, modifying the Settlement Agreement, submitting supplemental evidence and supplementing points and authorities as requested by the Court. In the event the Parties are unable to agree upon the form or content of any document necessary to implement the Settlement, or on any modification of the Agreement that may become necessary to implement the Settlement, the Parties will seek the assistance of a mediator and/or the Court for resolution. However, in no event shall the Gross Settlement Amount increase except as adjusted pursuant to Paragraph 8's Escalator Clause.

12.7. No Prior Assignments. The Parties separately represent and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity and portion of any liability, claim, demand, action, cause of action, or right released and discharged by the Party in this Settlement.

12.8. No Tax Advice. The Parties are not providing any advice regarding taxes or taxability, nor shall anything in this Settlement be relied upon as such within the meaning of United States Treasury Department Circular 230 (31 CFR Part 10, as amended) or otherwise.

12.9. Modification of Agreement. This Agreement, and all parts of it, may be amended, modified, changed, or waived only by an express written instrument signed by all Parties or their representatives. After the Preliminary Approval Order is entered, such amendment, modification, change, or waiver also requires Court approval.

12.10. Agreement Binding on Successors. This Agreement will be binding upon, and inure to the benefit of, the successors of each of the Parties.

12.11. Applicable Law. The internal laws of the State of California govern all terms and conditions of this Agreement and its exhibits, without regard to conflict of law principles.

12.12. Cooperation in Drafting. The Parties have cooperated in the drafting and preparation of this Agreement. This Agreement will not be construed against any Party on the basis that the Party was the drafter or participated in the drafting.

12.13. Confidentiality. To the extent permitted by law, all agreements made, and orders entered during Action and in this Agreement relating to the confidentiality of information shall survive the execution of this Agreement.

12.14. Use and Return of Class Data. Information provided to Class Counsel pursuant to Cal. Evid. Code §1152, and all copies and summaries of the Class Data provided to Class Counsel by Defendant in connection with the mediation, other settlement negotiations, or in connection with the Settlement, may be used only with respect to this Settlement, and no other purpose, and may not be used in any way that violates



WLR

any existing contractual agreement, statute, or rule of court. Not later than 90 days after the date when the Court discharges the Administrator's obligation to provide a Declaration confirming the final pay out of all Settlement funds, Plaintiffs shall destroy all paper and electronic versions of Class Data received from Defendant unless, prior to the Court's discharge of the Administrator's obligation, Defendant makes a written request to Class Counsel for the return, rather than the destruction, of Class Data.

12.15. Headings. The descriptive heading of any section or paragraph of this Agreement is inserted for convenience of reference only and does not constitute a part of this Agreement.

12.16. Calendar Days. Unless otherwise noted, all reference to "days" in this Agreement shall be to calendar days. In the event any date or deadline set forth in this Agreement falls on a weekend or federal legal holiday, such date or deadline shall be on the first business day thereafter.

12.17. Notice. All notices, demands or other communications between the Parties in connection with this Agreement will be in writing and deemed to have been duly given as of the third business day after mailing by United States mail, or the day sent by email or messenger, to the other Party's respective counsel of record.

12.18. Execution in Counterparts. This Agreement may be executed in one or more counterparts by facsimile, electronically (e.g., DocuSign), or email which for purposes of this Agreement shall be accepted as an original. If an electronic method of execution is chosen, like DocuSign, said signatory must provide the associated authentication certification. All executed counterparts and each of them will be deemed to be one and the same instrument if counsel for the Parties will exchange between themselves signed counterparts. Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

12.19. Stay of Litigation. The Parties agree that upon the execution of this Agreement the litigation shall be stayed, except to effectuate the terms of this Agreement or comply with any applicable Court Orders. The Parties further agree that upon the signing of this Agreement that pursuant to CCP section 583.330 to extend the date to bring a case to trial under CCP section 583.310 for the entire period of this settlement process.

12.20. Bankruptcy. In the event that any Defendant files for bankruptcy prior to the final disbursement of the Gross Settlement Amount, Plaintiffs shall be permitted to file the claims asserted in the Action in the bankruptcy proceedings, and such claims are not limited by the amount of the Gross Settlement Amount as set forth in this Settlement Agreement. If any settlement funds have been disbursed as provided in this agreement as of the date Defendant files for bankruptcy, Defendant shall not be entitled to a return of such funds from the recipients. However, Defendant will be entitled to claim a credit for any previously disbursed funds in the bankruptcy proceedings.

12.21. Enforcement Action. In the event that one or more of the Parties institutes any legal



WLR

action or other proceeding against any other Party or Parties to enforce the provisions of this Settlement or to declare rights and/or obligations under this Settlement, the successful Party or Parties will be entitled to recover from the unsuccessful Party or Parties reasonable attorney's fees and costs, including expert witness fees in connection with any enforcement actions.



WLR

Dated: ____________________

**AUSTEN SHWIYHAT**

____________________

Dated: 07/22/2025

**WALTER RAINES**

W. L Raines

Dated: ____________________

**DEFENDANTS MARTIN MARIETTA MATERIALS, INC. AND MARTIN MARIETTA NORTHERN CALIFORNIA AGGREGATES, LLC**

____________________

Name:____________________

Title:____________________

APPROVED **AS TO FORM ONLY:**

Dated: 07/22/2025

**LAVI & EBRAHIMIAN, LLP**

Joseph Lavi

Joseph Lavi, Esq.
Vincent C. Granberry, Esq.
Alexander J. Aroeste, Esq.
Attorneys for WALTER L. RAINES, on behalf of Himself and all others similarly situated

Dated: ____________________

**EMPLOYMENT LAWYERS**

____________________

Leonard Emma, Esq.
Cody Stroman, Esq.
Attorneys for AUSTEN SHWIYHAT, on behalf of Himself and all others similarly situated

Dated: ______________________

**CARRINGTON, COLEMAN, SLOMAN AND BLUMENTHAL, LLP**

______________________________

Mike Birrer, Esq.
Attorney for Defendants

Dated: ____________________

**AUSTEN SHWIYHAT**

____________________

Dated: ____________________

**WALTER RAINES**

____________________

Dated: 7/22/25

**DEFENDANTS MARTIN MARIETTA MATERIALS, INC. AND MARTIN MARIETTA NORTHERN CALIFORNIA AGGREGATES, LLC**

____________________

Name: Robert Holland

Title: Assist. Gen. Counsel

APPROVED **AS TO FORM ONLY:**

Dated: ____________________

**LAVI & EBRAHIMIAN, LLP**

____________________

Joseph Lavi, Esq.
Vincent C. Granberry, Esq.
Alexander J. Aroeste, Esq.
Attorneys for WALTER L. RAINES, on behalf of Himself and all others similarly situated

Dated: ____________________

**EMPLOYMENT LAWYERS**

____________________

Leonard Emma, Esq.
Cody Stroman, Esq.
Attorneys for AUSTEN SHWIYHAT, on behalf of Himself and all others similarly situated

Dated: 7/22/2025

**AUSTEN SHWIYHAT**

DocuSigned by:
Austen Shwiyhat
54C1B271465D439...

Dated: ____________________

**WALTER RAINES**

______________________________

Dated: ____________________

**DEFENDANTS MARTIN MARIETTA MATERIALS, INC. AND MARTIN MARIETTA NORTHERN CALIFORNIA AGGREGATES, LLC**

______________________________

Name:____________________________

Title:____________________________

APPROVED **AS TO FORM ONLY:**

Dated: ____________________

**LAVI & EBRAHIMIAN, LLP**

______________________________

Joseph Lavi, Esq.
Vincent C. Granberry, Esq.
Alexander J. Aroeste, Esq.
Attorneys for WALTER L. RAINES, on behalf of Himself and all others similarly situated

Dated: 7/22/2025

**EMPLOYMENT LAWYERS**

______________________________

Leonard Emma, Esq.
Cody Stroman, Esq.
Attorneys for AUSTEN SHWIYHAT, on behalf of Himself and all others similarly situated

Dated: 2/24/25

CARRINGTON, COLEMAN, SLOMAN AND BLUMENTHAL, LLP

Mike Birrer, Esq.
Attorney for Defendants

# EXHIBIT B

# COURT APPROVED NOTICE OF CLASS ACTION SETTLEMENT AND HEARING DATE FOR FINAL COURT APPROVAL

Shwiyhat, et al. v. Martin Marietta Materials, Inc. et al. Case No. CASE NUMBER

***The Superior Court for the State of California authorized this Notice. Read it carefully! It's not junk mail, spam, an advertisement, or solicitation by a lawyer. You are not being sued.***

**You may be eligible to receive money** from an employee class action lawsuit ("Action") entitled *Austen Shwiyhat, et al. v. Martin Marietta Materials, Inc., et al.* for alleged wage and hour violations. The Action was filed by former employees Austen Shwiyhat and Walter Raines ("Plaintiffs") and seeks payment of (1) back wages and other relief for a class of hourly, non-exempt employees ("Class Members") who worked for Defendants Martin Marietta Materials, Inc. and Martin Marietta Northern California Aggregates, LLC during the Class Period from June 20, 2022 to and (2) penalties under the California Private Attorney General Act ("PAGA") for all hourly, non-exempt employees who worked for Defendants Martin Marietta Materials, Inc. and Martin Marietta Northern California Aggregates, LLC during the PAGA Period from June 20, 2022 to ("PAGA Group Employees"). For the purposes of this Notice, Defendants Martin Marietta Materials, Inc. and Martin Marietta Northern California Aggregates, LLC shall be referred to here as the "Company."

The proposed Settlement has two main parts: (1) a Class Settlement requiring Company to fund Individual Class Payments, and (2) a PAGA Settlement requiring Company to fund Individual PAGA Payments and pay penalties to the California Labor and Workforce Development Agency ("LWDA").

Based on the Company's records, and the Parties' current assumptions, **your Individual Class Payment is estimated to be $[redacted] (less withholding) and your Individual PAGA Payment is estimated to be $[redacted]**. The actual amount you may receive likely will be different and will depend on a number of factors. (If no amount is stated for your Individual PAGA Payment, then according to the Company's records you are not eligible for an Individual PAGA Payment under the Settlement because you didn't work during the PAGA Period.)

The above estimates are based on the Company's records showing that **you worked** [redacted] **workweeks** during the Class Period and **you worked** [redacted] **pay periods** during the PAGA Period. If you believe that you worked more workweeks or pay periods during either period, you can submit a challenge by the deadline date. See Section **4** of this Notice.

The Court has already preliminarily approved the proposed Settlement and approved this Notice. The Court has not yet decided whether to grant final approval. Your legal rights are affected whether you act or not act. Read this Notice carefully. You will be deemed to have carefully read and understood it. At the Final Approval Hearing, the Court will decide whether to finally approve the Settlement and how much of the Settlement will be paid to Plaintiffs and Plaintiffs' attorneys ("Class Counsel"). The Court will also decide whether to enter a judgment that requires the Company to make payments under the Settlement and requires Class Members and PAGA Group Employees to give up their rights to assert certain claims against the Company.

If you worked for the Company during the Class Period and/or the PAGA Period, you have two

basic options under the Settlement:

(1) **Do Nothing.** You don't have to do anything to participate in the proposed Settlement and be eligible for an Individual Class Payment and/or an Individual PAGA Payment. As a Participating Class Member, though, you will give up your right to assert Class Period wage claims and PAGA Period penalty claims against the Company.

(2) **Opt-Out of the Class Settlement.** You can exclude yourself from the Class Settlement (opt-out) by submitting the written Request for Exclusion or otherwise notifying the Administrator in writing. If you opt-out of the Settlement, you will not receive an Individual Class Payment. You will, however, preserve your right to personally pursue Class Period wage claims against the Company, and, if you are an PAGA Group Employee, remain eligible for an Individual PAGA Payment. You cannot opt-out of the PAGA portion of the proposed Settlement.

**The Company will not retaliate against you for any actions you take with respect to the proposed Settlement.**

**SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT**

| | |
|---|---|
| **You Don't Have to Do Anything to Participate in the Settlement** | If you do nothing, you will be a Participating Class Member, eligible for an Individual Class Payment and an Individual PAGA Payment (if any). In exchange, you will give up your right to assert the wage claims against the Company that are covered by this Settlement (Released Claims). |
| **You Can Opt-out of the Class Settlement but not the PAGA Settlement**<br><br>**The Opt-out Deadline is** [redacted] | If you don't want to fully participate in the proposed Settlement, you can opt-out of the Class Settlement by sending the Administrator a written Request for Exclusion. Once excluded, you will be a Non-Participating Class Member and no longer eligible for an Individual Class Payment. Non-Participating Class Members cannot object to any portion of the proposed Settlement. See Section **6** of this Notice.<br><br>You cannot opt-out of the PAGA portion of the proposed Settlement. The Company must pay Individual PAGA Payments to all PAGA Group Employees and the PAGA Group Employees must give up their rights to pursue Released Claims (defined below). |

| | |
|---|---|
| **Participating Class Members Can Object to the Class Settlement but not the PAGA Settlement**<br><br>**Written Objections Must be Submitted by [redacted]** | All Class Members who do not opt-out ("Participating Class Members") can object to any aspect of the proposed Settlement. The Court's decision whether to finally approve the Settlement will include a determination of how much will be paid to Class Counsel and Plaintiffs who pursued the Action on behalf of the Class. You are not personally responsible for any payments to Class Counsel or Plaintiffs, but every dollar paid to Class Counsel and Plaintiffs reduces the overall amount paid to Participating Class Members. You can object to the amounts requested by Class Counsel or Plaintiff if you think they are unreasonable. See Section 7 of this Notice. |
| **You Can Participate in the [redacted] Final Approval Hearing** | The Court's Final Approval Hearing is scheduled to take place on [redacted]. You don't have to attend but you do have the right to appear (or hire an attorney to appear on your behalf at your own cost), in person, by telephone or by using the Court's virtual appearance platform. Participating Class Members can verbally object to the Settlement at the Final Approval Hearing. See Section 8 of this Notice. |
| **You Can Challenge the Calculation of Your Workweeks/Pay Periods**<br><br>**Written Challenges Must be Submitted by [redacted]** | The amount of your Individual Class Payment and PAGA Payment (if any) depends on how many workweeks you worked at least one day during the Class Period and how many Pay Periods you worked at least one day during the PAGA Period, respectively. The number of Class Period Workweeks and number of PAGA Period Pay Periods you worked according to the Company's records is stated on the first page of this Notice. If you disagree with either of these numbers, you must challenge it by [redacted]. See Section 4 of this Notice. |

## 1. WHAT IS THE ACTION ABOUT?

Plaintiffs are former employees of the Company. The Action accuses the Company of violating California labor laws by failing to pay overtime wages, minimum wages, wages due upon termination and reimbursable expenses and failing to provide meal periods, rest breaks and accurate itemized wage statements. Based on the same claims, Plaintiffs have also asserted a claim for civil penalties under the California Private Attorneys General Act (Labor Code §§ 2698, et seq.) ("PAGA").

## 2. WHAT DOES IT MEAN THAT THE ACTION HAS SETTLED?

So far, the Court has made no determination whether the Company or Plaintiffs are correct on the merits. In the meantime, Plaintiffs and the Company hired an experienced, neutral mediator in an effort to resolve the Action through a negotiated agreement (settle the case) rather than continuing the expensive and time-consuming process of litigation. The negotiations were successful. By signing a written settlement agreement ("Agreement") and agreeing to jointly ask the Court to enter

a judgment ending the Action and enforcing the Agreement, Plaintiffs and the Company have negotiated a proposed Settlement that is subject to the Court's Final Approval. Both sides agree the proposed Settlement is a compromise of disputed claims. By agreeing to settle, the Company does not admit any violations or concede the merit of any claims.

Plaintiffs and Class Counsel strongly believe the Settlement is a good deal for you because they believe that: (1) the Company has agreed to pay a fair, reasonable and adequate amount considering the strength of the claims and the risks and uncertainties of continued litigation; and (2) Settlement is in the best interests of the Class Members and PAGA Group Employees. The Court preliminarily approved the proposed Settlement as fair, reasonable and adequate, authorized this Notice, and scheduled a hearing to determine Final Approval.

**3. WHAT ARE THE IMPORTANT TERMS OF THE PROPOSED SETTLEMENT?**

a. The Company Will Pay $[illegible] as the Gross Settlement Amount (Gross Settlement). The Company has agreed to deposit the Gross Settlement into an account controlled by the Administrator of the Settlement. The Administrator will use the Gross Settlement to pay the Individual Class Payments, Individual PAGA Payments, Class Representative Service Payment, Class Counsel's attorney's fees and expenses, the Administrator's expenses, and penalties to be paid to the California Labor and Workforce Development Agency ("LWDA"). Assuming the Court grants Final Approval, the Company will fund the Gross Settlement not more than 14 days after the Judgment entered by the Court becomes final. The Judgment will be final on the date the Court enters Judgment, or a later date if Participating Class Members object to the proposed Settlement or the Judgment is appealed.

b. Court Approved Deductions from Gross Settlement. At the Final Approval Hearing, Plaintiffs and/or Class Counsel will ask the Court to approve the following deductions from the Gross Settlement, the amounts of which will be decided by the Court at the Final Approval Hearing:

   i. Up to $[illegible] (35% of the Gross Settlement) to Class Counsel for attorneys' fees and up to $50,000.00 for their litigation expenses. To date, Class Counsel have worked and incurred expenses on the Action without payment.

   ii. Up to $10,000 each to Plaintiffs as a Class Representative Award for filing the Action, working with Class Counsel and representing the Class. A Class Representative Award will be the only monies Plaintiffs will receive other than Plaintiffs' Individual Class Payment and any Individual PAGA Payment.

   iii. Up to $20,000 to the Administrator for services administering the Settlement.

   iv. Up to $50,000 for PAGA Penalties, allocated 75% to the LWDA PAGA Payment and 25% in Individual PAGA Payments to the PAGA Group Employees based on their PAGA Period Pay Periods.

Participating Class Members have the right to object to any of these deductions. The Court will consider all objections.

c. Net Settlement Distributed to Class Members. After making the above deductions in amounts approved by the Court, the Administrator will distribute the rest of the Gross Settlement (the "Net Settlement") by making Individual Class Payments to Participating Class Members based on their Class Period Workweeks.

d. Taxes Owed on Payments to Class Members. The Settlement shall be broken down as follows: 40% ("Wage Portion") of each Individual Class Payment to taxable wages and 60% ("Non-Wage Portion") to penalties and interest. The Wage Portion is subject to withholding and will be reported on IRS W-2 Forms. The Company will separately pay employer payroll taxes it owes on the Wage Portion. The Individual PAGA Payments are counted as penalties rather than wages for tax purposes. The Administrator will report the Individual PAGA Payments and the Non-Wage Portions of the Individual Class Payments on IRS 1099 Forms.

Although Plaintiffs and the Company have agreed to these allocations, neither side is giving you any advice on whether your Payments are taxable or how much you might owe in taxes. You are responsible for paying all taxes (including penalties and interest on back taxes) on any Payments received from the proposed Settlement. You should consult a tax advisor if you have any questions about the tax consequences of the proposed Settlement.

e. Need to Promptly Cash Payment Checks. The front of every check issued for Individual Class Payments and Individual PAGA Payments will show the date when the check expires (the void date). If you don't cash it by the void date, your check will be automatically cancelled, and the monies will be deposited with the California Controller's Unclaimed Property Fund in your name. If the monies represented by your check are sent to the Controller's Unclaimed Property, you should consult the rules of the Fund for instructions on how to retrieve your money.

f. Requests for Exclusion from the Class Settlement (Opt-Outs). You will be treated as a Participating Class Member, participating fully in the Class Settlement, unless you notify the Administrator in writing, not later than 45 days after the mailing of the Notice (plus an additional 14 days for Class Members whose Class Notice was re-mailed), that you wish to opt-out. The easiest way to notify the Administrator is to send a written and signed Request for Exclusion by the Response Deadline. The Request for Exclusion should be a letter from a Class Member or his/her representative setting forth a Class Member's name, present address, telephone number, and a simple statement electing to be excluded from the Settlement. Excluded Class Members (i.e., Non-Participating Class Members) will not receive Individual Class Payments but will preserve their rights to personally pursue wage

and hour claims against the Company.

g. You cannot opt-out of the PAGA portion of the Settlement. Class Members who exclude themselves from the Class Settlement (Non-Participating Class Members) remain eligible for Individual PAGA Payments and are required to give up their right to assert PAGA claims against the Company based on the PAGA Period facts alleged in the Action.

h. <u>The Proposed Settlement Will be Void if the Court Denies Final Approval</u>. It is possible the Court will decline to grant Final Approval of the Settlement or decline to enter a Judgment. It is also possible the Court will enter a Judgment that is reversed on appeal. Plaintiffs and the Company have agreed that, in either case, the Settlement will be void: the Company will not pay any money and Class Members will not release any claims against the Company.

i. <u>Administrator</u>. The Court has appointed a neutral company, Atticus Administration LLC (the "Administrator") to send this Notice, calculate and make payments, and process Class Members' Requests for Exclusion. The Administrator will also decide Class Member Challenges over Workweeks, mail and re-mail settlement checks and tax forms, and perform other tasks necessary to administer the Settlement. The Administrator's contact information is contained in Section **9** of this Notice.

j. <u>Participating Class Members' Release</u>. After the Judgment is final and the Company has fully funded the Gross Settlement and separately paid all employer payroll taxes, Participating Class Members will be legally barred from asserting any of the claims released under the Settlement. This means that unless you opted out by validly excluding yourself from the Class Settlement, you cannot sue, continue to sue, or be part of any other lawsuit against the Company or related entities for wages based on the Class Period facts and PAGA penalties based on PAGA Period facts, as alleged in the Action and resolved by this Settlement.

The Participating Class Members will be bound by the following release:

All Participating Class Members, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, release Released Parties from (i) all claims that were alleged, or reasonably could have been alleged, based on the Class Period and facts stated in the Operative Complaint, including any claims under the California Labor Code, PAGA, FLSA, applicable Wage Order, and any other local, state, or federal laws on pay/wage/hour issues. This includes but is not limited to claims related to or arising from alleged wages, overtime, calculation of wages and overtime, off-the-clock work, minimum wages plus related liquidated damages, interest, or penalties. Except as set forth in Section 5.3 of the Settlement Agreement, Participating Class Members do not release any claims of wrongful termination or harassment if unrelated to wage/hour/compensation/rest period/meal period issues

or PAGA issues. Participating Class Members do not release any other claims, including claims for vested benefits, violation of the Fair Employment and Housing Act, unemployment insurance, disability, social security, workers' compensation, or claims occurring outside the Class Period.

k. PAGA Group Employees' PAGA Release. After the Court's judgment is final, and the Company has fully funded the Gross Settlement and separately paid all employer payroll taxes, all PAGA Group Employees will be barred from asserting PAGA claims against the Company, whether or not they exclude themselves from the Settlement. This means that all PAGA Group Employees, including those who are Participating Class Members and those who opt-out of the Class Settlement, cannot sue, continue to sue, or participate in any other PAGA claim against the Company or its related entities based on the PAGA Period facts alleged in the Action and resolved by this Settlement.

The PAGA Group Employees' Releases for Participating and Non-Participating Class Members are as follows:

All Participating and Non-Participating Class Members who are PAGA Group Employees are deemed to release, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, the Released Parties, from all claims for PAGA penalties that were alleged, or reasonably could have been alleged, based on the PAGA Period facts stated in the Operative Complaint, and the PAGA Notice.

## 4. HOW WILL THE ADMINISTRATOR CALCULATE MY PAYMENT?

a. Individual Class Payments. The Administrator will calculate Individual Class Payments by (a) dividing the Net Settlement Amount by the total number of Workweeks worked by all Participating Class Members, and (b) multiplying the result by the number of Workweeks worked by each individual Participating Class Member.

b. Individual PAGA Payments. The Administrator will calculate Individual PAGA Payments by (a) dividing $12,500 by the total number of PAGA Period Pay Periods worked by all PAGA Group Employees and (b) multiplying the result by the number of PAGA Period Pay Periods worked by each individual PAGA Group Employee.

c. Workweek/Pay Period Challenges. The number of Class Workweeks you worked during the Class Period and the number of Pay Periods you worked during the PAGA Period, as recorded in the Company's records, are stated on the first page of this Notice. You have until [redacted] to challenge the number of Workweeks and/or Pay Periods credited to you. You can submit your challenge by signing and sending a letter to the Administrator via mail, email or fax. Section 9 of this Notice has the Administrator's contact information.

You need to support your challenge by sending copies of pay stubs or other records.

The Administrator will accept the Company's calculation of Workweeks and/or Pay Periods based on the Company's records as accurate unless you send copies of records containing contrary information. You should send copies rather than originals because the documents will not be returned to you. The Administrator will resolve Workweek and/or Pay Period challenges based on your submission and on input from Class Counsel (who will advocate on behalf of Participating Class Members) and the Company's Counsel. The Administrator's decision is final. You can't appeal or otherwise challenge its final decision.

**5. HOW WILL I GET PAID?**

a. Participating Class Members. The Administrator will send, by U.S. mail, a single check to every Participating Class Member (i.e., every Class Member who doesn't opt-out) including those who also qualify as PAGA Group Employees. The single check will combine the Individual Class Payment and the Individual PAGA Payment.

b. Non-Participating Class Members. The Administrator will send, by U.S. mail, a single Individual PAGA Payment check to every PAGA Group Employee who opts out of the Class Settlement (i.e., every Non-Participating Class Member).

**Your check will be sent to the same address as in this Notice. If you change your address, be sure to notify the Administrator as soon as possible. Section 9 of this Notice has the Administrator's contact information.**

**6. HOW DO I OPT-OUT OF THE CLASS SETTLEMENT?**

Submit a written and signed letter with your name, present address, telephone number, and a simple statement that you do not want to participate in the Settlement. This may be sent via email or certified mail to the Administrator using the contact information provided below. The Administrator will exclude you based on any writing communicating your request to be excluded. Be sure to personally sign your request, identify the Action as Shwiyhat, et al. v. Martin Marietta Materials, Inc., et al., Case No. ______ and include your identifying information (full name, address, telephone number, approximate dates of employment, and social security number for verification purposes). You must make the request yourself. If someone else makes the request for you, it will not be valid. The Administrator must be sent your request to be excluded by [redacted], or it will be invalid. Section 9 of the Notice has the Administrator's contact information.

**7. HOW DO I OBJECT TO THE SETTLEMENT?**

Only Participating Class Members have the right to object to the Settlement. Before deciding whether to object, you may wish to see what Plaintiffs and the Company are asking the Court to approve. At least 16 court days before the [redacted] Final Approval Hearing, Class Counsel and/or Plaintiffs will file in Court (1) a Motion for Final Approval that includes, among other things, the reasons why the proposed Settlement is fair, and (2) a Motion for Fees, Litigation Expenses and Service Award stating (i) the amount Class Counsel is requesting for attorneys' fees and litigation expenses; and (ii) the amount Plaintiffs are requesting as Class Representative Service Awards.

Upon reasonable request, Class Counsel (whose contact information is in Section 9 of this Notice) will send you copies of these documents at no cost to you. You can also view them on the Administrator's Website [redacted] or the Court's website [redacted].

A Participating Class Member who disagrees with any aspect of the Agreement, the Motion for Final Approval and/or Motion for Fees, Litigation Expenses and Service Award may wish to object, for example, that the proposed Settlement is unfair, or that the amounts requested by Class Counsel or Plaintiffs are too high or too low. The deadline for sending written objections to the Administrator is [redacted]. Be sure to tell the Administrator what you object to, why you object, and any facts that support your objection. Make sure you identify the Action Shwiyhat, et al. v. Martin Marietta Materials, Inc., et al., Case No. ________________, and include your name, current address, telephone number, and approximate dates of employment for the Company and sign the objection. Section 9 of this Notice has the Administrator's contact information.

Alternatively, a Participating Class Member can object (or personally retain a lawyer to object at your own cost) by attending the Final Approval Hearing. You (or your attorney) should be ready to tell the Court what you object to, why you object, and any facts that support your objection. See Section 8 of this Notice (immediately below) for specifics regarding the Final Approval Hearing.

## 8. CAN I ATTEND THE FINAL APPROVAL HEARING?

You can, but don't have to, attend the Final Approval Hearing on [redacted] at [redacted] in Department _ of the San Joaquin County Superior Court, located at 222 E. Weber Ave. Ste 303, Stockton, CA 95202. At the Hearing, the judge will decide whether to grant Final Approval of the Settlement and how much of the Gross Settlement will be paid to Class Counsel, Plaintiffs, and the Administrator. The Court will invite comments from objectors, Class Counsel and Defense Counsel before making a decision. You can attend (or hire a lawyer to attend). Check the Court's website for the most current information.

It's possible the Court will reschedule the Final Approval Hearing. You should check the Administrator's website ([redacted]) beforehand or contact Class Counsel to verify the date and time of the Final Approval Hearing.

## 9. HOW CAN I GET MORE INFORMATION?

The Agreement sets forth everything the Company and Plaintiffs have promised to do under the proposed Settlement. The easiest way to read the Agreement, the Judgment or any other Settlement documents is to go to the Administrator's website at [redacted]. You can also telephone or send an email to Class Counsel or the Administrator using the contact information listed below or consult the Superior Court website at https://cms.sjcourts.org/fullcourtweb/civilCase.do?CourtCaseId=0 and enter case number: ______________________.

In addition, you may inspect the Court's files
and the Stipulation for Class Action Settlement and Release of Claims (the Settlement

Agreement) at Office of the Clerk, San Joaquin County Superior Court, located at 180 E Weber Ave., Suite 200 Stockton, CA 95202, during regular court hours. You may also contact Class Counsel or the Settlement Administrator using the contact information listed above for more information.

**DO NOT TELEPHONE THE SUPERIOR COURT TO OBTAIN INFORMATION ABOUT THE SETTLEMENT.**

**The Contact information for the Settlement Administrator is as follows:**

Email Address:
Mailing Address:
Telephone:
Fax Number:

**The addresses for the Parties' counsel are as follows:**

| Class Counsel | Counsel for Defendant |
|---|---|
| Leonard Emma<br>Cody Stroman<br>Employment Lawyers<br>1999 Harrison Street, 18th Floor<br>Oakland, CA 94612<br>Tel.: (415) 362-1111<br>E-Mail: lemma@employment-lawyers.com<br>cstroman@employment-lawyers.com | Mike Birrer<br>Jordan Perry<br>Carrington Coleman LLP<br>901 Main St., Suite 5500<br>Dallas, TX 75202<br>Tel: (214) 855-3113<br>E-Mail: mbirrer@ccsb.com<br>jperry@ccsb.com |
| Joseph Lavi<br>Vincent Granberry<br>Lavi & Ebrahimian, LLP<br>8889 W. Olympic Blvd., Suite 200<br>Beverly Hills, CA 90211<br>Tel.: (310) 432-0000<br>Fax: (310) 432-0001<br>E-Mail: jlavi@lelawfirm.com<br>vgranberry@lelawfirm.com | Cassandra M. Ferrannini<br>Daria Gossett<br>Downey Brand LLP<br>621 Capitol Mall, 18th Floor<br>Sacramento, CA 95814<br>Tel: (916) 444-1000<br>cferrannini@DowneyBrand.com<br>dgossett@downeybrand.com |

## 10. WHAT IF I LOSE MY SETTLEMENT CHECK?

If you lose or misplace your settlement check before cashing it, the Administrator will replace it as long as you request a replacement before the void date on the face of the original check. If your check is already void you should consult the Unclaimed Property Fund for instructions on how to retrieve the funds.

## 11. WHAT IF I CHANGE MY ADDRESS?

To receive your check, you should immediately notify the Administrator if you move or otherwise change your mailing address.

# Exhibit 3

# COURT APPROVED NOTICE OF CLASS ACTION SETTLEMENT AND HEARING DATE FOR FINAL COURT APPROVAL

Shwiyhat, et al. v. Martin Marietta Materials, Inc. et al. Case No. CASE NUMBER

***The Superior Court for the State of California authorized this Notice. Read it carefully! It's not junk mail, spam, an advertisement, or solicitation by a lawyer. You are not being sued.***

**You may be eligible to receive money** from an employee class action lawsuit ("Action") entitled *Austen Shwiyhat, et al. v. Martin Marietta Materials, Inc., et al.* for alleged wage and hour violations. The Action was filed by former employees Austen Shwiyhat and Walter Raines ("Plaintiffs") and seeks payment of (1) back wages and other relief for a class of hourly, non-exempt employees ("Class Members") who worked for Defendants Martin Marietta Materials, Inc. and Martin Marietta Northern California Aggregates, LLC during the Class Period from June 20, 2022 to and (2) penalties under the California Private Attorney General Act ("PAGA") for all hourly, non-exempt employees who worked for Defendants Martin Marietta Materials, Inc. and Martin Marietta Northern California Aggregates, LLC during the PAGA Period from June 20, 2022 to ("PAGA Group Employees"). For the purposes of this Notice, Defendants Martin Marietta Materials, Inc. and Martin Marietta Northern California Aggregates, LLC shall be referred to here as the "Company."

The proposed Settlement has two main parts: (1) a Class Settlement requiring Company to fund Individual Class Payments, and (2) a PAGA Settlement requiring Company to fund Individual PAGA Payments and pay penalties to the California Labor and Workforce Development Agency ("LWDA").

Based on the Company's records, and the Parties' current assumptions, **your Individual Class Payment is estimated to be $[redacted] (less withholding) and your Individual PAGA Payment is estimated to be $[redacted].** The actual amount you may receive likely will be different and will depend on a number of factors. (If no amount is stated for your Individual PAGA Payment, then according to the Company's records you are not eligible for an Individual PAGA Payment under the Settlement because you didn't work during the PAGA Period.)

The above estimates are based on the Company's records showing that **you worked** [redacted] **workweeks** during the Class Period and **you worked** [redacted] **pay periods** during the PAGA Period. If you believe that you worked more workweeks or pay periods during either period, you can submit a challenge by the deadline date. See Section 4 of this Notice.

The Court has already preliminarily approved the proposed Settlement and approved this Notice. The Court has not yet decided whether to grant final approval. Your legal rights are affected whether you act or not act. Read this Notice carefully. You will be deemed to have carefully read and understood it. At the Final Approval Hearing, the Court will decide whether to finally approve the Settlement and how much of the Settlement will be paid to Plaintiffs and Plaintiffs' attorneys ("Class Counsel"). The Court will also decide whether to enter a judgment that requires the Company to make payments under the Settlement and requires Class Members and PAGA Group Employees to give up their rights to assert certain claims against the Company.

If you worked for the Company during the Class Period and/or the PAGA Period, you have two

basic options under the Settlement:

(1) **Do Nothing**. You don't have to do anything to participate in the proposed Settlement and be eligible for an Individual Class Payment and/or an Individual PAGA Payment. As a Participating Class Member, though, you will give up your right to assert Class Period wage claims and PAGA Period penalty claims against the Company.

(2) **Opt-Out of the Class Settlement**. You can exclude yourself from the Class Settlement (opt-out) by submitting the written Request for Exclusion or otherwise notifying the Administrator in writing. If you opt-out of the Settlement, you will not receive an Individual Class Payment. You will, however, preserve your right to personally pursue Class Period wage claims against the Company, and, if you are an PAGA Group Employee, remain eligible for an Individual PAGA Payment. You cannot opt-out of the PAGA portion of the proposed Settlement.

**The Company will not retaliate against you for any actions you take with respect to the proposed Settlement.**

**SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT**

| | |
|---|---|
| **You Don't Have to Do Anything to Participate in the Settlement** | If you do nothing, you will be a Participating Class Member, eligible for an Individual Class Payment and an Individual PAGA Payment (if any). In exchange, you will give up your right to assert the wage claims against the Company that are covered by this Settlement (Released Claims). |
| **You Can Opt-out of the Class Settlement but not the PAGA Settlement**<br><br>**The Opt-out Deadline is** [redacted] | If you don't want to fully participate in the proposed Settlement, you can opt-out of the Class Settlement by sending the Administrator a written Request for Exclusion. Once excluded, you will be a Non-Participating Class Member and no longer eligible for an Individual Class Payment. Non-Participating Class Members cannot object to any portion of the proposed Settlement. See Section **6** of this Notice.<br><br>You cannot opt-out of the PAGA portion of the proposed Settlement. The Company must pay Individual PAGA Payments to all PAGA Group Employees and the PAGA Group Employees must give up their rights to pursue Released Claims (defined below). |

| | |
|---|---|
| **Participating Class Members Can Object to the Class Settlement but not the PAGA Settlement**<br><br>**Written Objections Must be Submitted by** [redacted] | All Class Members who do not opt-out ("Participating Class Members") can object to any aspect of the proposed Settlement. The Court's decision whether to finally approve the Settlement will include a determination of how much will be paid to Class Counsel and Plaintiffs who pursued the Action on behalf of the Class. You are not personally responsible for any payments to Class Counsel or Plaintiffs, but every dollar paid to Class Counsel and Plaintiffs reduces the overall amount paid to Participating Class Members. You can object to the amounts requested by Class Counsel or Plaintiff if you think they are unreasonable. See Section **7** of this Notice. |
| **You Can Participate in the** [redacted] **Final Approval Hearing** | The Court's Final Approval Hearing is scheduled to take place on [redacted]. You don't have to attend but you do have the right to appear (or hire an attorney to appear on your behalf at your own cost), in person, by telephone or by using the Court's virtual appearance platform. Participating Class Members can verbally object to the Settlement at the Final Approval Hearing. See Section **8** of this Notice. |
| **You Can Challenge the Calculation of Your Workweeks/Pay Periods**<br><br>**Written Challenges Must be Submitted by** [redacted] | The amount of your Individual Class Payment and PAGA Payment (if any) depends on how many workweeks you worked at least one day during the Class Period and how many Pay Periods you worked at least one day during the PAGA Period, respectively. The number of Class Period Workweeks and number of PAGA Period Pay Periods you worked according to the Company's records is stated on the first page of this Notice. If you disagree with either of these numbers, you must challenge it by [redacted]. See Section **4** of this Notice. |

## 1. WHAT IS THE ACTION ABOUT?

Plaintiffs are former employees of the Company. The Action accuses the Company of violating California labor laws by failing to pay overtime wages, minimum wages, wages due upon termination and reimbursable expenses and failing to provide meal periods, rest breaks and accurate itemized wage statements. Based on the same claims, Plaintiffs have also asserted a claim for civil penalties under the California Private Attorneys General Act (Labor Code §§ 2698, et seq.) ("PAGA").

## 2. WHAT DOES IT MEAN THAT THE ACTION HAS SETTLED?

So far, the Court has made no determination whether the Company or Plaintiffs are correct on the merits. In the meantime, Plaintiffs and the Company hired an experienced, neutral mediator in an effort to resolve the Action through a negotiated agreement (settle the case) rather than continuing the expensive and time-consuming process of litigation. The negotiations were successful. By signing a written settlement agreement ("Agreement") and agreeing to jointly ask the Court to enter

a judgment ending the Action and enforcing the Agreement, Plaintiffs and the Company have negotiated a proposed Settlement that is subject to the Court's Final Approval. Both sides agree the proposed Settlement is a compromise of disputed claims. By agreeing to settle, the Company does not admit any violations or concede the merit of any claims.

Plaintiffs and Class Counsel strongly believe the Settlement is a good deal for you because they believe that: (1) the Company has agreed to pay a fair, reasonable and adequate amount considering the strength of the claims and the risks and uncertainties of continued litigation; and (2) Settlement is in the best interests of the Class Members and PAGA Group Employees. The Court preliminarily approved the proposed Settlement as fair, reasonable and adequate, authorized this Notice, and scheduled a hearing to determine Final Approval.

### 3. WHAT ARE THE IMPORTANT TERMS OF THE PROPOSED SETTLEMENT?

a. The Company Will Pay $[illegible] as the Gross Settlement Amount (Gross Settlement). The Company has agreed to deposit the Gross Settlement into an account controlled by the Administrator of the Settlement. The Administrator will use the Gross Settlement to pay the Individual Class Payments, Individual PAGA Payments, Class Representative Service Payment, Class Counsel's attorney's fees and expenses, the Administrator's expenses, and penalties to be paid to the California Labor and Workforce Development Agency ("LWDA"). Assuming the Court grants Final Approval, the Company will fund the Gross Settlement not more than 14 days after the Judgment entered by the Court becomes final. The Judgment will be final on the date the Court enters Judgment, or a later date if Participating Class Members object to the proposed Settlement or the Judgment is appealed.

b. Court Approved Deductions from Gross Settlement. At the Final Approval Hearing, Plaintiffs and/or Class Counsel will ask the Court to approve the following deductions from the Gross Settlement, the amounts of which will be decided by the Court at the Final Approval Hearing:

i. Up to $[illegible] (35% of the Gross Settlement) to Class Counsel for attorneys' fees and up to $50,000.00 for their litigation expenses. To date, Class Counsel have worked and incurred expenses on the Action without payment.

ii. Up to $10,000 each to Plaintiffs as a Class Representative Award for filing the Action, working with Class Counsel and representing the Class. A Class Representative Award will be the only monies Plaintiffs will receive other than Plaintiffs' Individual Class Payment and any Individual PAGA Payment.

iii. Up to $20,000 to the Administrator for services administering the Settlement.

iv. Up to $50,000 for PAGA Penalties, allocated 75% to the LWDA PAGA Payment and 25% in Individual PAGA Payments to the PAGA Group Employees based on their PAGA Period Pay Periods.

Participating Class Members have the right to object to any of these deductions. The Court will consider all objections.

c. Net Settlement Distributed to Class Members. After making the above deductions in amounts approved by the Court, the Administrator will distribute the rest of the Gross Settlement (the "Net Settlement") by making Individual Class Payments to Participating Class Members based on their Class Period Workweeks.

d. Taxes Owed on Payments to Class Members. The Settlement shall be broken down as follows: 40% ("Wage Portion") of each Individual Class Payment to taxable wages and 60% ("Non-Wage Portion") to penalties and interest. The Wage Portion is subject to withholding and will be reported on IRS W-2 Forms. The Company will separately pay employer payroll taxes it owes on the Wage Portion. The Individual PAGA Payments are counted as penalties rather than wages for tax purposes. The Administrator will report the Individual PAGA Payments and the Non-Wage Portions of the Individual Class Payments on IRS 1099 Forms.

Although Plaintiffs and the Company have agreed to these allocations, neither side is giving you any advice on whether your Payments are taxable or how much you might owe in taxes. You are responsible for paying all taxes (including penalties and interest on back taxes) on any Payments received from the proposed Settlement. You should consult a tax advisor if you have any questions about the tax consequences of the proposed Settlement.

e. Need to Promptly Cash Payment Checks. The front of every check issued for Individual Class Payments and Individual PAGA Payments will show the date when the check expires (the void date). If you don't cash it by the void date, your check will be automatically cancelled, and the monies will be deposited with the California Controller's Unclaimed Property Fund in your name. If the monies represented by your check are sent to the Controller's Unclaimed Property, you should consult the rules of the Fund for instructions on how to retrieve your money.

f. Requests for Exclusion from the Class Settlement (Opt-Outs). You will be treated as a Participating Class Member, participating fully in the Class Settlement, unless you notify the Administrator in writing, not later than 45 days after the mailing of the Notice (plus an additional 14 days for Class Members whose Class Notice was re-mailed), that you wish to opt-out. The easiest way to notify the Administrator is to send a written and signed Request for Exclusion by the Response Deadline. The Request for Exclusion should be a letter from a Class Member or his/her representative setting forth a Class Member's name, present address, telephone number, and a simple statement electing to be excluded from the Settlement. Excluded Class Members (i.e., Non-Participating Class Members) will not receive Individual Class Payments but will preserve their rights to personally pursue wage

and hour claims against the Company.

g. You cannot opt-out of the PAGA portion of the Settlement. Class Members who exclude themselves from the Class Settlement (Non-Participating Class Members) remain eligible for Individual PAGA Payments and are required to give up their right to assert PAGA claims against the Company based on the PAGA Period facts alleged in the Action.

h. <u>The Proposed Settlement Will be Void if the Court Denies Final Approval</u>. It is possible the Court will decline to grant Final Approval of the Settlement or decline to enter a Judgment. It is also possible the Court will enter a Judgment that is reversed on appeal. Plaintiffs and the Company have agreed that, in either case, the Settlement will be void: the Company will not pay any money and Class Members will not release any claims against the Company.

i. <u>Administrator</u>. The Court has appointed a neutral company, Atticus Administration LLC (the "Administrator") to send this Notice, calculate and make payments, and process Class Members' Requests for Exclusion. The Administrator will also decide Class Member Challenges over Workweeks, mail and re-mail settlement checks and tax forms, and perform other tasks necessary to administer the Settlement. The Administrator's contact information is contained in Section **9** of this Notice.

j. <u>Participating Class Members' Release</u>. After the Judgment is final and the Company has fully funded the Gross Settlement and separately paid all employer payroll taxes, Participating Class Members will be legally barred from asserting any of the claims released under the Settlement. This means that unless you opted out by validly excluding yourself from the Class Settlement, you cannot sue, continue to sue, or be part of any other lawsuit against the Company or related entities for wages based on the Class Period facts and PAGA penalties based on PAGA Period facts, as alleged in the Action and resolved by this Settlement.

The Participating Class Members will be bound by the following release:

All Participating Class Members, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, release Released Parties from (i) all claims that were alleged, or reasonably could have been alleged, based on the Class Period and facts stated in the Operative Complaint, including any claims under the California Labor Code, PAGA, FLSA, applicable Wage Order, and any other local, state, or federal laws on pay/wage/hour issues. This includes but is not limited to claims related to or arising from alleged wages, overtime, calculation of wages and overtime, off-the-clock work, minimum wages plus related liquidated damages, interest, or penalties. Except as set forth in Section 5.3 of the Settlement Agreement, Participating Class Members do not release any claims of wrongful termination or harassment if unrelated to wage/hour/compensation/rest period/meal period issues

or PAGA issues. Participating Class Members do not release any other claims, including claims for vested benefits, violation of the Fair Employment and Housing Act, unemployment insurance, disability, social security, workers' compensation, or claims occurring outside the Class Period.

k. PAGA Group Employees' PAGA Release. After the Court's judgment is final, and the Company has fully funded the Gross Settlement and separately paid all employer payroll taxes, all PAGA Group Employees will be barred from asserting PAGA claims against the Company, whether or not they exclude themselves from the Settlement. This means that all PAGA Group Employees, including those who are Participating Class Members and those who opt-out of the Class Settlement, cannot sue, continue to sue, or participate in any other PAGA claim against the Company or its related entities based on the PAGA Period facts alleged in the Action and resolved by this Settlement.

The PAGA Group Employees' Releases for Participating and Non-Participating Class Members are as follows:

All Participating and Non-Participating Class Members who are PAGA Group Employees are deemed to release, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, the Released Parties, from all claims for PAGA penalties that were alleged, or reasonably could have been alleged, based on the PAGA Period facts stated in the Operative Complaint, and the PAGA Notice.

## 4. HOW WILL THE ADMINISTRATOR CALCULATE MY PAYMENT?

a. Individual Class Payments. The Administrator will calculate Individual Class Payments by (a) dividing the Net Settlement Amount by the total number of Workweeks worked by all Participating Class Members, and (b) multiplying the result by the number of Workweeks worked by each individual Participating Class Member.

b. Individual PAGA Payments. The Administrator will calculate Individual PAGA Payments by (a) dividing $12,500 by the total number of PAGA Period Pay Periods worked by all PAGA Group Employees and (b) multiplying the result by the number of PAGA Period Pay Periods worked by each individual PAGA Group Employee.

c. Workweek/Pay Period Challenges. The number of Class Workweeks you worked during the Class Period and the number of Pay Periods you worked during the PAGA Period, as recorded in the Company's records, are stated on the first page of this Notice. You have until [redacted] to challenge the number of Workweeks and/or Pay Periods credited to you. You can submit your challenge by signing and sending a letter to the Administrator via mail, email or fax. Section 9 of this Notice has the Administrator's contact information.

You need to support your challenge by sending copies of pay stubs or other records.

The Administrator will accept the Company's calculation of Workweeks and/or Pay Periods based on the Company's records as accurate unless you send copies of records containing contrary information. You should send copies rather than originals because the documents will not be returned to you. The Administrator will resolve Workweek and/or Pay Period challenges based on your submission and on input from Class Counsel (who will advocate on behalf of Participating Class Members) and the Company's Counsel. The Administrator's decision is final. You can't appeal or otherwise challenge its final decision.

## 5. HOW WILL I GET PAID?

a. Participating Class Members. The Administrator will send, by U.S. mail, a single check to every Participating Class Member (i.e., every Class Member who doesn't opt-out) including those who also qualify as PAGA Group Employees. The single check will combine the Individual Class Payment and the Individual PAGA Payment.

b. Non-Participating Class Members. The Administrator will send, by U.S. mail, a single Individual PAGA Payment check to every PAGA Group Employee who opts out of the Class Settlement (i.e., every Non-Participating Class Member).

**Your check will be sent to the same address as in this Notice. If you change your address, be sure to notify the Administrator as soon as possible. Section 9 of this Notice has the Administrator's contact information.**

## 6. HOW DO I OPT-OUT OF THE CLASS SETTLEMENT?

Submit a written and signed letter with your name, present address, telephone number, and a simple statement that you do not want to participate in the Settlement. This may be sent via email or certified mail to the Administrator using the contact information provided below. The Administrator will exclude you based on any writing communicating your request to be excluded. Be sure to personally sign your request, identify the Action as Shwiyhat, et al. v. Martin Marietta Materials, Inc., et al., Case No. ______ and include your identifying information (full name, address, telephone number, approximate dates of employment, and social security number for verification purposes). You must make the request yourself. If someone else makes the request for you, it will not be valid. The Administrator must be sent your request to be excluded by [redacted], or it will be invalid. Section **9** of the Notice has the Administrator's contact information.

## 7. HOW DO I OBJECT TO THE SETTLEMENT?

Only Participating Class Members have the right to object to the Settlement. Before deciding whether to object, you may wish to see what Plaintiffs and the Company are asking the Court to approve. At least 16 court days before the [redacted] Final Approval Hearing, Class Counsel and/or Plaintiffs will file in Court (1) a Motion for Final Approval that includes, among other things, the reasons why the proposed Settlement is fair, and (2) a Motion for Fees, Litigation Expenses and Service Award stating (i) the amount Class Counsel is requesting for attorneys' fees and litigation expenses; and (ii) the amount Plaintiffs are requesting as Class Representative Service Awards.

Upon reasonable request, Class Counsel (whose contact information is in Section 9 of this Notice) will send you copies of these documents at no cost to you. You can also view them on the Administrator's Website [redacted] or the Court's website [redacted].

A Participating Class Member who disagrees with any aspect of the Agreement, the Motion for Final Approval and/or Motion for Fees, Litigation Expenses and Service Award may wish to object, for example, that the proposed Settlement is unfair, or that the amounts requested by Class Counsel or Plaintiffs are too high or too low. The deadline for sending written objections to the Administrator is [redacted]. Be sure to tell the Administrator what you object to, why you object, and any facts that support your objection. Make sure you identify the Action Shwiyhat, et al. v. Martin Marietta Materials, Inc., et al., Case No. ________________, and include your name, current address, telephone number, and approximate dates of employment for the Company and sign the objection. Section 9 of this Notice has the Administrator's contact information.

Alternatively, a Participating Class Member can object (or personally retain a lawyer to object at your own cost) by attending the Final Approval Hearing. You (or your attorney) should be ready to tell the Court what you object to, why you object, and any facts that support your objection. See Section 8 of this Notice (immediately below) for specifics regarding the Final Approval Hearing.

## 8. CAN I ATTEND THE FINAL APPROVAL HEARING?

You can, but don't have to, attend the Final Approval Hearing on [redacted] at [redacted] in Department _ of the San Joaquin County Superior Court, located at 222 E. Weber Ave. Ste 303, Stockton, CA 95202. At the Hearing, the judge will decide whether to grant Final Approval of the Settlement and how much of the Gross Settlement will be paid to Class Counsel, Plaintiffs, and the Administrator. The Court will invite comments from objectors, Class Counsel and Defense Counsel before making a decision. You can attend (or hire a lawyer to attend). Check the Court's website for the most current information.

It's possible the Court will reschedule the Final Approval Hearing. You should check the Administrator's website ([redacted]) beforehand or contact Class Counsel to verify the date and time of the Final Approval Hearing.

## 9. HOW CAN I GET MORE INFORMATION?

The Agreement sets forth everything the Company and Plaintiffs have promised to do under the proposed Settlement. The easiest way to read the Agreement, the Judgment or any other Settlement documents is to go to the Administrator's website at [redacted]. You can also telephone or send an email to Class Counsel or the Administrator using the contact information listed below or consult the Superior Court website at https://cms.sjcourts.org/fullcourtweb/civilCase.do?CourtCaseId=0 and enter case number: ____________________.

In addition, you may inspect the Court's files
and the Stipulation for Class Action Settlement and Release of Claims (the Settlement

Agreement) at Office of the Clerk, San Joaquin County Superior Court, located at 180 E Weber Ave., Suite 200 Stockton, CA 95202, during regular court hours. You may also contact Class Counsel or the Settlement Administrator using the contact information listed above for more information.

**DO NOT TELEPHONE THE SUPERIOR COURT TO OBTAIN INFORMATION ABOUT THE SETTLEMENT.**

**The Contact information for the Settlement Administrator is as follows:**

Email Address:
Mailing Address:
Telephone:
Fax Number:

**The addresses for the Parties' counsel are as follows:**

| Class Counsel | Counsel for Defendant |
|---|---|
| Leonard Emma<br>Cody Stroman<br>Employment Lawyers<br>1999 Harrison Street, 18th Floor<br>Oakland, CA 94612<br>Tel.: (415) 362-1111<br>E-Mail: lemma@employment-lawyers.com<br>cstroman@employment-lawyers.com | Mike Birrer<br>Jordan Perry<br>Carrington Coleman LLP<br>901 Main St., Suite 5500<br>Dallas, TX 75202<br>Tel: (214) 855-3113<br>E-Mail: mbirrer@ccsb.com<br>jperry@ccsb.com |
| Joseph Lavi<br>Vincent Granberry<br>Lavi & Ebrahimian, LLP<br>8889 W. Olympic Blvd., Suite 200<br>Beverly Hills, CA 90211<br>Tel.: (310) 432-0000<br>Fax: (310) 432-0001<br>E-Mail: jlavi@lelawfirm.com<br>vgranberry@lelawfirm.com | Cassandra M. Ferrannini<br>Daria Gossett<br>Downey Brand LLP<br>621 Capitol Mall, 18th Floor<br>Sacramento, CA 95814<br>Tel: (916) 444-1000<br>cferrannini@DowneyBrand.com<br>dgossett@downeybrand.com |

## 10. WHAT IF I LOSE MY SETTLEMENT CHECK?

If you lose or misplace your settlement check before cashing it, the Administrator will replace it as long as you request a replacement before the void date on the face of the original check. If your check is already void you should consult the Unclaimed Property Fund for instructions on how to retrieve the funds.

## 11. WHAT IF I CHANGE MY ADDRESS?

To receive your check, you should immediately notify the Administrator if you move or otherwise change your mailing address.

# Exhibit 4

**Superior Court of California, County of San Joaquin**

**MINUTE ORDER**

**Date:** 02/26/2026 09:00 AM

**Case Number:** STK-CV-UOE-2025-0010132

**Austen Shwiyhat and Walter Raines on behalf of themselves, all others similarly situated, and the State of California as private attorneys general vs Martin Marietta Materials, Inc et al.**

**Event Type:** Motion for Final Approval of Class Settlement, Case Management Conference, Motion for Attorney Fees and Costs

**Department:** 11B

**Appearances:** Presiding Judge: Robert T. Waters. Also attending: thiedeman Court Clerk.

Telephonic appearance by Leonard Emma counsel for Plaintiff.

Telephonic appearance by Mike Birrer and Daria Gossett counsel for Defendants.

No parties having requested oral argument, the Court hereby adopts the tentative ruling as the final ruling on the motion.

The Court affirms the tentative ruling as follows:

No opposition on file. A failure to oppose a motion may be deemed a consent to the granting of the motion. (California Rules of Court, Rule 8.54(c).)

Based on the moving papers the court finds moving papers and authority cited therein establishes: the class members received the best practicable notice; final settlement approval is appropriate; that the PAGA penalty portion of the settlement is fair, reasonable, and adequate; the attorney fees and class costs requested are reasonable and sufficient; the administrative costs are appropriate; and the service awards are appropriate and reasonable. The Order for Final Approval is GRANTED. The Order for Attorneys' Fees, Costs, and Service Payments is GRANTED. The Court shall retain jurisdiction over the parties to interpret, implement and enforce this Judgment. The court will sign the proposed orders submitted by moving party.

Honorable Robert T. Waters
Judge of the Superior Court of California

The formal order was signed and filed this date.

Case Management Conference dropped from calendar.

Future Court Dates:
Tuesday February 23, 2027 at 9:00 AM in Department 11B for Miscellaneous Hearing; Non-Appearance Compliance Hearing

# Exhibit 5

115
2/23

**EMPLOYMENT LAWYERS**
LEONARD EMMA (SBN 224483)
lemma@employment-lawyers.com
CODY STROMAN (SBN 303413)
cstroman@employment-lawyers.com
1999 Harrison Street, 18th Floor
Oakland, CA 94612
Tel: (415) 362-1111

**LAVI & EBRAHIMIAN, LLP**
JOSEPH LAVI, ESQ. (SBN 209776)
Email: jlavi@lelawfirm.com
VINCENT C. GRANBERRY, ESQ. (SBN 276483)
vgranberry@lelawfirm.com
ALEXANDER J. AROESTE, ESQ. (SBN 332653)
aaroeste@lelawfirm.com
8889 W. Olympic Boulevard, Suite 200
Beverly Hills, California 90211
Telephone: (310) 432-0000

Attorneys for Plaintiffs
AUSTEN SHWIYHAT and
WALTER RAINES

FILED
SUPERIOR COURT SAN JOAQUIN
2026 OCT -6 A 10: 38
STEPHANIE BOHRER, CLERK
BY DEPUTY

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN JOAQUIN**

AUSTEN SHWIYHAT and WALTER RAINES, on behalf of themselves, all others similarly situated, and the State of California as private attorneys general,

Plaintiff,

vs.

MARTIN MARIETTA MATERIALS, INC.; MARTIN MARIETTA NORTHERN CALIFORNIA AGGREGATES, LLC; and DOES 1 through 100 inclusive,

Defendants.

Case No. STK-CV-UOE-2025-0010132

**DECLARATION OF BRYN BRIDLEY ON SETTLEMENT DISTRIBUTION**

FILE BY FAX

I, BRYN BRIDLEY, declare as follows:

1. I am the Vice President of Business Development at Atticus Administration, LLC ("Atticus"), a firm providing class action and claims administration services. I have extensive experience with class action notice and claims administration. I am fully familiar with the facts contained herein based upon my personal knowledge and involvement with the above-captioned Action.

2. Atticus is the Administrator for the above-captioned action and is responsible for carrying out the terms of the *Class Action and PAGA Settlement Agreement and Class Notice* ("Settlement Agreement") pursuant to the *Order Granting Motion for Preliminary Approval of Class Action Settlement* ("Preliminary Approval Order") entered by the Court on September 25, 2025, and the *Final Approval Order and Judgment* ("Judgment") entered by the Court on February 26, 2026.

3. Atticus previously reported on the dissemination of the Class Notice, exclusion requests and objections in a declaration executed January 28, 2026. I submit this declaration to report on the distribution of the Settlement funds.

## I. SETTLEMENT FUNDING AND ALLOCATION

4. On March 10, 2026, Defendants deposited a total of $1,590,080.10 into the Qualified Settlement Fund ("QSF") Atticus established for this matter, comprising the $1,521,125.00 Gross Settlement Amount, as increased under Paragraph 8.2 of the Settlement Agreement, and $68,955.10 for Defendants' share of employer payroll taxes on the wage portion of the Individual Class Payments, which the Settlement Agreement requires Defendants to pay separately. The $1,521,125.00 Gross Settlement Amount was allocated as follows:

a. $532,393.75 in Court-approved attorneys' fees to Class Counsel,

b. $35,429.11 in Court-approved litigation costs and expenses to Class Counsel,

c. $20,000.00 in Court-approved Class Representative Service Payments, $10,000.00 each to Plaintiffs Austen Shwiyhat and Walter Raines,

d. $37,500.00, or 75% of the $50,000.00 in PAGA Penalties, to the California Labor and Workforce Development Agency,

e. $14,850.00 in Court-approved Administration Expenses to Atticus, and

f. $880,952.14 for payments to Participating Class Members and PAGA Group Employees, comprising $12,500.00 in Individual PAGA Payments and the $868,452.14 Net Settlement Amount allocated to Individual Class Payments.

## II. <u>INDIVIDUAL SETTLEMENT PAYMENTS</u>

5. Atticus calculated each Individual Class Payment in accordance with Paragraph 3.2.4 of the Settlement Agreement, by dividing the Net Settlement Amount by the total number of Workweeks worked by all Participating Class Members during the Class Period and multiplying the result by each Participating Class Member's Workweeks. 1,016 Participating Class Members received an Individual Class Payment. Individual Class Payments ranged from $13.58 to $2,389.83, with an $854.78 average payment and a $583.78 median payment.

6. Atticus calculated each Individual PAGA Payment in accordance with Paragraph 3.2.5.1 of the Settlement Agreement, by dividing the $12,500.00 PAGA Group Employees' share of the PAGA Penalties by the 62,764 PAGA Pay Periods worked by all PAGA Group Employees during the PAGA Period and multiplying the result by each PAGA Group Employee's PAGA Pay Periods. 1,017 PAGA Group Employees received an Individual PAGA Payment. Individual PAGA Payments ranged from $0.20 to $34.06, with a $12.29 average payment and an $8.36 median payment.

7. The one (1) Class Member who submitted a timely and valid Request for Exclusion, whose opt-out the Court noted in Paragraph 6 of the Judgment, did not receive an Individual Class

Payment but, as a PAGA Group Employee, received an Individual PAGA Payment in accordance with Paragraph 7.5.4 of the Settlement Agreement.

8. On March 24, 2026, settlement payments were sent by U.S. First Class Mail to 1,017 Participating Class Members and PAGA Group Employees, in checks totaling $750,510.23 after $130,441.91 in employee payroll tax withholding. Individuals who were both a Participating Class Member and a PAGA Group Employee received a single check combining both payments. Before mailing the checks, Atticus updated the recipients' mailing addresses using the National Change of Address database maintained by the United States Postal Service. Individual Class Payments were allocated 40% to wages and 60% to interest and penalties, and Individual PAGA Payments were allocated entirely to penalties; IRS Forms W-2 and 1099 were provided with the mailed checks. The face of each check prominently stated a September 21, 2026 expiration date, which allowed recipients at least one hundred eighty (180) days to cash, deposit, or otherwise negotiate their payments. A true and correct copy of the form of the check and cover letter, which was mailed in English and Spanish, is attached hereto as Exhibit A.

9. Atticus reissued settlement checks to eleven (11) Participating Class Members and PAGA Group Employees, totaling $16,291.62. Nine (9) of the reissued checks were negotiated; the remaining two (2), totaling $2,848.94, were not, and are included in the unclaimed amounts reported below.

10. Of the 1,017 checks mailed, thirty-eight (38) were returned to Atticus. Two (2) included forwarding addresses from the USPS and were promptly remailed. The remaining thirty-six (36) undeliverable records were sent to a professional service for address tracing, where new addresses were obtained for twenty-six (26) records and were not obtained for ten (10) records. Checks were promptly remailed to the twenty-six (26) trace addresses, so that twenty-eight (28) checks in total were remailed. Three (3) of the remailed checks were returned a second time and, consistent with Paragraph 4.3.2 of the

Settlement Agreement, no further attempt was made to deliver them. Thus, 1,004 or 98.72% of the settlement checks were successfully mailed.

## III. PAYMENTS NEGOTIATED AND UNCLAIMED FUNDS

11. The settlement checks expired on September 21, 2026. In total, 874 checks totaling $717,964.41 were cashed, deposited, or otherwise negotiated, and 143 checks totaling $32,545.82 were not and thus remain unclaimed.

12. The balance remaining in the QSF following the check expiration date is $35,671.55, comprising $32,545.82 in unclaimed Individual Class Payments and Individual PAGA Payments, $2,431.58 in employer payroll taxes funded in excess of the amount owed, and a $694.15 California payroll tax refund. The $2,431.58 in excess employer payroll tax funding and the $694.15 California payroll tax refund, totaling $3,125.73, will be returned to Defendants. Pursuant to Paragraph 4.3.3 of the Settlement Agreement, Atticus has cancelled the uncashed checks and, beginning October 21, 2026, will transmit the funds represented by those checks to the California Controller's Unclaimed Property Fund, in the names of and for the benefit of the corresponding Class Members and PAGA Group Employees, thereby leaving no "unpaid residue" subject to the requirements of California Code of Civil Procedure section 384, subdivision (b). No settlement funds will revert to Defendants.

**I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this declaration was executed on the 1st day of October 2026 in St. Paul, Minnesota.**

Bryn Bridley

# EXHIBIT A

SHWIYHAT, ET AL V MARTIN MARIETTA MATERIALS, INC, ET AL
ATTICUS ADMINISTRATION
PO BOX 64053
SAINT PAUL, MN 55164

CHECK DATE: «IssueDate»
CHECK NUMBER: «CheckNum»
CHECK AMOUNT: «CheckAmountT»
CHECK EXPIRATION: «VoidDate»
CLAIMANT ID: «clmnt_id»
SECONDARY ID: «secondary_id_number»

«clmnt_id»«F7»

«clmnt_id»-«SEQ»
«Name1»
«addr1»
«city», «st» «Zip»

Dear «Name1»,

This check is issued pursuant to the terms of the settlement in *Shwiyhat, et al. v. Martin Marietta Materials, Inc. et al.* Case No. STK-CV-UOE-2025-0010132.

Please be advised you have until «VoidDate» to deposit, cash, or otherwise convert this check. If you do not deposit, cash, or otherwise convert your check by «VoidDate», it will become void.

If you need to request re-issuance of your check, please provide your update or correction to: Shwiyhat, et al. v. Martin Marietta Materials, Inc. Settlement, c/o Atticus Administration, PO Box 64053, Saint Paul, MN 55164 or call (800) 279-0331 or email MartinMariettaMaterialsSettlement@atticusadmin.com.

Regards,
Office of the Settlement Administrator

| | |
|---|---|
| 1 Wages, tips, other compensation<br>«GROSS_WAGEST» | 2 Federal income tax withheld<br>«FITT» |
| 3 Social security wages<br>«GROSS_WAGEST» | 4 Social security tax withheld<br>«FICAT» |
| 5 Medicare wages and tips<br>«GROSS_WAGEST» | 6 Medicare tax withheld<br>«FICAMT» |
| Employee's social security number<br>«SSN» | |
| Employer identification number (EIN)<br>«FEDERAL_ID» | |
| Employer's name, address, and ZIP code<br>Martin Marietta Settlement Fund<br>1295 Northland Dr, Suite 160<br>Saint Paul, MN 55120 | |
| Employee's name and address<br>«Name1»<br>«addr1»<br>«city», «st» «Zip» | |
| 15 State Employer's state ID Number<br>«TS» \| «StateID» | 14 Other<br>SDI «SDIT» |
| 16 State wages, tips, etc.<br>«GROSS_WAGEST» | 17 State income tax<br>«SITT» |
| Copy B To Be Filed With Employee's FEDERAL Tax Return | |

**Form W-2** Wage and Tax Statement **2026** Department of the Treasury – Internal Revenue Service

| |
|---|
| 3 Other Income<br>«GROSS_PENALTY_PAYMENTT» |
| 4 Federal income tax withheld<br>«MISC_FIT_WITHHOLDINGT» |
| Recipient's social security number<br>«SSN» |
| Payer identification number (EIN)<br>«FEDERAL_ID» |
| Payer's name, address, and ZIP code<br>Martin Marietta Settlement Fund<br>1295 Northland Dr, Suite 160<br>Saint Paul, MN 55120 |
| Recipient's name<br>«Name1»<br>«addr1»<br>«city», «st» «Zip» |
| Copy B For Recipient<br>This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported |

Form 1099-MISC Miscellaneous Income **2026** OMB No. 1545-0115

Martin Marietta Settlement Fund Platinum Bank

CHEQUE FECHA: «IssueDate»
CHEQUE EL NUMERO: «CheckNum»
CHEQUE CANTIDAD: «CheckAmountT»
FECHA DE VENCIMIENTO: «VoidDate»
ID DE RECLAMANTE: «clmnt_id»

«clmnt_id»-«SEQ»
«Name1»
«addr1»
«city», «st» «Zip»

Estimado(a) «Name1»

Este cheque se emite de conformidad con los términos del acuerdo de la demanda colectiva Shwiyhat, et al. v. Martin Marietta Materials, Inc. et al. Case No. STK-CV-UOE-2025-0010132.

Tenga en cuenta que tiene hasta «VoidDate» para depositar, cobrar o convertir este cheque. Si no cobra o convierte antes de «VoidDate», quedará anulado.

Si necesita solicitar la reemisión de su cheque, proporcione su actualización o corrección a: Shwiyhat, et al. v. Martin Marietta Materials, Inc. Settlement, c/o Atticus Administration, PO Box 64053, Saint Paul, MN 55164 o llame al (800) 279-0331 o correo electrónico MartinMariettaMaterialsSettlement@atticusadmin.com.

Atentamente,
Oficina del Administrador del Acuerdo

**1099-Misc Instructions for Recipient**

**Recipient's taxpayer identification number (TIN).** For your protection, this form may show only the last four digits of your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN). However, the payer has reported your complete TIN to the IRS

**Account number.** May show an account or other unique number the payer assigned to distinguish your account.

**Amounts shown may be subject to self-employment (SE) tax.** Individuals should see the Instructions for Schedule SE (Form 1040). Corporations, fiduciaries, or partnerships must report the amounts on the appropriate line of their tax returns.

**Form 1099-MISC incorrect?** If this form is incorrect or has been issued in error, contact the payer. If you cannot get this form corrected, attach an explanation to your tax return and report your information correctly.

**Box 3.** Generally, report this amount on the "Other income" line of Schedule 1 (Form 1040) and identify the payment. The amount shown may be payments received as the beneficiary of a deceased employee, prizes, awards, taxable damages, Indian gaming profits, or other taxable income. See Pub. 525. If it is trade or business income, report this amount on Schedule C or F (Form 1040).

**Box 4.** Shows backup withholding or withholding on Indian gaming profits. Generally, a payer must backup withhold if you did not furnish your TIN. See Form W-9 and Pub. 505 for more information. Report this amount on your income tax return as tax withheld.

**Earned income tax credit (EITC).** You may be able to take the EITC for 2026 if your adjusted gross income (AGI) is less than a certain amount. The amount of the credit is based on income and family size. Workers without children could qualify for a smaller credit. You and any qualifying children must have valid social security numbers (SSNs). You can't take the EITC if your investment income is more than the specified amount for 2026 or if income is earned for services provided while you were an inmate at a penal institution. For 2026 income limits and more information, visit www.irs.gov/EITC. See also Pub. 596. **Any EITC that is more than your tax liability is refunded to you, but only if you file a tax return.**

**Instructions for Employee**

Box 1. Enter this amount on the wages line of your tax return unless those instructions direct you to report it elsewhere.

Box 2. Enter this amount on the federal income tax withheld line of your tax return.

Box 5. You may be required to report this amount on Form 8959. See the Form 1040 instructions to determine if you are required to complete Form 8959.

Box 6. This amount includes the 1.45% Medicare tax withheld on all Medicare wages and tips shown in box 5, as well as the 0.9% Additional Medicare Tax on any of those Medicare wages and tips above $200,000.

Box 14. Employers may use this box to report information such as state disability insurance taxes withheld, union dues, uniform payments, health insurance premiums deducted, nontaxable income, educational assistance payments, or a member of the clergy's parsonage allowance and utilities. Railroad employers use this box to report railroad retirement (RRTA) compensation, Tier 1 tax, Tier 2 tax, Medicare tax, and Additional Medicare Tax. Include tips reported by the employee to the employer in railroad retirement (RRTA) compensation. Note: Keep Copy C of Form W-2 for at least 3 years after the due date for filing your income tax return. However, to help protect your social security benefits, keep Copy C until you begin receiving social security benefits, just in case there is a question about your work record and/or earnings in a particular year.