SCHWARTZ SEMERDJIAN CAULEY SCHENA & BUSH LLP
Dick A. Semerdjian (SBN 123630)
101 West Broadway, Suite 810
San Diego, CA 92101
Telephone No. 619.236.8821
Facsimile No. 619.236.8827
Email: das@sscelaw.com

**CARRINGTON, COLEMAN, SLOMAN & BLUMENTHAL, L.L.P.**
Parker Graham (Texas Bar No. 24087612) (admitted *Pro Hac Vice*)
pgraham@ccsb.com
Jordan Perry (Texas Bar No. 24120729) (*Pro Hac Vice* forthcoming)
jperry@ccsb.com
2200 Ross Ave, Suite 1800
Dallas, Texas 75201
Telephone: 214-855-3000
Facsimile: 214-580-2641

Attorneys for Defendant
MARTIN MARIETTA MATERIALS, INC.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA, SAN DIEGO DIVISION**

| | |
|---|---|
| SHAYNA HILL, on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MARTIN MARIETTA MATERIALS, INC.; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 3:26-cv-04529-LL-VET<br><br>**DECLARATION IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S REQUEST FOR PRE-CERTIFICATION DISCOVERY** |

## DECLARATION OF MIKE BIRRER

1. My name is Mike Birrer. I am an attorney with Carrington, Coleman, Sloman & Blumenthal, L.L.P. I represent Defendant Martin Marietta Materials, Inc. ("Martin Marietta"). I have personal knowledge of the facts stated here, which are true and correct.

2. I represented Martin Marietta in the prior class action and PAGA settlement, *Shwiyhat v. Martin Marietta Materials, Inc.*, San Joaquin County Superior Court, No. STK-CV-UOE-2025-0010132. This lawsuit combined two separate lawsuits against Martin Marietta (described below) into one lawsuit.

3. Austen Shwiyhat originally filed a PAGA lawsuit against Martin Marietta on December 6, 2022, in Alameda County Superior Court. Martin Marietta removed that case to the Northern District of California. In that case, Plaintiff Shwiyhat alleged a variety of Labor Code violations against Martin Marietta, primarily focused on alleged overtime and meal and rest break violations.

4. On June 5, 2023, Walter Raines filed a class action against Martin Marietta in San Joaquin County Superior Court, alleging similar Labor Code violations primarily focused on reporting time pay, minimum wage, and overtime. On August 15, 2023, Plaintiff Raines filed a separate lawsuit in San Joaquin County alleging similar claims, but seeking relief under PAGA. Martin Marietta separately removed those cases to the Central District of California, and they were consolidated into a single lawsuit.

5. On October 22, 2024, the parties jointly mediated the *Shwiyhat* and *Raines* matters. Following that mediation, the parties entered into a memorandum of understanding and continued to negotiate the details of their agreement in a long-form settlement agreement, which was finalized in July 2025.

6. As part of the settlement, Plaintiff Raines and Plaintiff Shwiyhat agreed to refile their claims in a consolidated complaint in San Joaquin County Superior Court (the "Operative Complaint").

7. The Operative Complaint was filed on July 25, 2025, as *Shwiyhat v. Martin Marietta Materials, Inc.*, San Joaquin County Superior Court, No. STK-CV-UOE-2025-0010132. Among other things, the Operative Complaint alleged that Martin Marietta did not properly calculate the regular rate of pay, and/or did not properly prorate all non-discretionary compensation into the regular rate of pay for overtime. A true and correct copy of the Operative Complaint is attached hereto as Exhibit A. A true and correct copy of the Memorandum and Points and Authorities in Support of the Settlement Agreement is attached hereto as Exhibit B. And a true and correct copy of the Declaration of Leonard Emma (Plaintiff's counsel) in Support of the Settlement is attached hereto as Exhibit C, which includes a true and correct copy of the settlement agreement.

8. The settlement agreement was preliminarily approved on September 25, 2025. The settlement agreement had a base class period of June 20, 2022 through March 31, 2025, but Martin Marietta utilized the escalator provision, which extended the class period through the date of the preliminary approval order, i.e., through September 25, 2025. A true and correct copy of the final class notice that was sent to employees, showing that the final settlement period ran from June 20, 2022 through September 25, 2025 is attached hereto as Exhibit D.

9. Shayna Hill was included as a class member in the *Shwiyhat* settlement. Ms. Hill did not opt out, nor did she object. Based on my review of communications with the settlement administrator, it is my understanding that Ms. Hill cashed her settlement check.

10. As outside counsel for Martin Marietta, I have worked with its payroll and IT departments and, on occasion, an outside vendor to collect wage statements, hours data, and related documents in both individual and group matters. The current document collection in this case covers just over one year. Ms. Hill's demand that Martin Marietta extend that collection back to June 2022—roughly tripling the volume of wage statements, hours data, and other records through September 2025—would dramatically increase the time and expense of collection. And it would not just entail document collection. It would also require review and redaction of personal employee confidential information.

11. Because the *Shwiyhat* settlement already released claims based on the regular rate of pay, regular rate calculations, overtime, and numerous other matters, tripling Martin Marietta's discovery collection while providing no added benefit to a future prospective class or collective in this case (because the claims have been settled and released) is disproportional to the needs of the case.

*Signature follows on next page*

I declare under penalty of perjury that the foregoing is true and correct.

Mike Birrer
Executed on November 13, 2026

EXHIBIT A

$1435 | #1050480

FILED
SUPERIOR COURT
2025 JUL 25 PM 12: 16
STEPHANIE BOHRER, CLERK
BY ________ DEPUTY

EMPLOYMENT LAWYERS
LEONARD EMMA (SBN 224483)
lemma@employment-lawyers.com
CODY STROMAN (SBN 303413)
cstroman@employment-lawyers.com
1999 Harrison Street, 18th Floor
Oakland, CA 94612
Tel: (415) 362-1111
[Additional Attorneys Listed On Next Page]

Attorneys for Plaintiffs
AUSTEN SHWIYHAT and
WALTER RAINES

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN JOAQUIN**

AUSTEN SHWIYHAT and WALTER RAINES, on behalf of themselves, all others similarly situated, and the State of California as private attorneys general,

Plaintiff,

vs.

MARTIN MARIETTA MATERIALS, INC.; MARTIN MARIETTA NORTHERN CALIFORNIA AGGREGATES, LLC; and DOES 1 through 100, inclusive,

Defendants.

Case No. STK-CV-UOE-2025-10132

**CLASS AND REPRESENTATIVE ACTION COMPLAINT**

1. **FAILURE TO PAY OVERTIME WAGES (Lab. Code §§ 200-204, 218.6, 512, 558, 1194, 1198);**
2. **FAILURE TO COMPENSATE FOR ALL HOURS WORKED (Lab. Code §§ 200-204, 216, 225.5, 226, 500, 510, 558, 1197, 1198);**
3. **FAILURE TO PROVIDE MEAL PERIODS (Lab. Code §§ 226.7, 512);**
4. **FAILURE TO PROVIDE REST PERIODS (Lab. Code § 226.7);**
5. **FAILURE TO MAINTAIN ACCURATE RECORDS (Lab. Code §§ 1174, 1174.5);**
6. **FAILURE TO FURNISH COMPLIANT WAGE AND HOUR STATEMENTS (Lab. Code §§ 226(e), 226.3);**
7. **FAILURE TO PAY FINAL WAGES ON TIME (Lab. Code §§ 201-204);**
8. **FAILURE TO REIMBURSE BUSINESS EXPENSES (Lab. Code § 2802);**
9. **UNFAIR BUSINESS PRACTICES (Bus. & Prof. Code § 17200 *et seq.*); &**
10. **PRIVATE ATTORNEYS GENERAL ACT (Lab. Code § 2698, *et seq.*)**

**JURY TRIAL DEMANDED**



EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

Joseph Lavi, Esq. (SBN 209776)
Email: jlavi@lelawfirm.com
Vincent C. Granberry, Esq. (SBN 276483)
vgranberry@lelawfirm.com
Alexander J. Aroeste, Esq. (SBN 332653)
aboal@lelawfirm.com
**LAVI & EBRAHIMIAN, LLP**
8889 W. Olympic Boulevard, Suite 200
Beverly Hills, California 90211
Telephone: (310) 432-0000
Facsimile: (310) 432-0001

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

Plaintiffs AUSTEN SHWIYHAT and WALTER RAINES (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated ("Class Members"), bring this Complaint against their former employers, Defendants MARTIN MARIETTA MATERIALS, INC., MARTIN MARIETTA NORTHERN CALIFORNIA AGGREGATES, LLC, and DOES 1-100, inclusive ("Doe Defendants") (collectively "Defendants") and hereby demand a jury trial on all causes of action. Plaintiffs' allegations are as follows:

**PLAINTIFFS**

1. At all times material herein, Plaintiff AUSTEN SHWIYHAT was and is a competent adult and resident of the State of California. During all times relevant to this Complaint, Plaintiff SHWIYHAT was employed by Defendants as a non-exempt hourly employee.

2. At all times material herein, Plaintiff WALTER RAINES was and is a competent adult and resident of the State of California. During all times relevant to this Complaint, Plaintiff RAINES was employed by Defendants as a non-exempt hourly employee.

**DEFENDANTS**

3. At all times material herein, Defendant MARTIN MARIETTA MATERIALS, INC. was and is a corporation doing business in the State of California.

4. At all times material herein, Defendant MARTIN MARIETTA NORTHERN CALIFORNIA AGGREGATES, LLC was and is a limited liability company doing business in the State of California.

5. The Defendants identified as DOES 1 through 100, inclusive, were, at all times herein-mentioned, agents, business affiliates, successors- and/or predecessors-in-interest, officers, directors, partners, and/or managing agents of some or each of the remaining Defendants. Plaintiffs are informed and believe and, on that basis, allege that, at all times herein-mentioned, each of the Defendants identified as DOES 1 through 100, inclusive, employed, and/or exercised control over the wages, hours, and/or working conditions of Plaintiffs and Class Members throughout California. In doing the acts herein alleged, each Defendant is liable and responsible to Plaintiffs and Class Members for the acts of every other Defendant. The true names and

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

capacities of the Doe Defendants, whether individual, corporate, associate or otherwise, are unknown to Plaintiffs who therefore sue such Doe Defendants by fictitious names pursuant to California Code of Civil Procedure § 474. Plaintiffs are informed and believe that the Doe Defendants are residents of the State of California. Plaintiffs will amend this complaint to show such Doe Defendants' true names and capacities when they are known.

6. Plaintiffs are informed and believe and thereon allege that, unless otherwise indicated, each Defendant was the agent and/or employee of every other Defendant within the course and scope of said agency and/or employment, with the knowledge and/or consent of said Defendant.

7. Plaintiffs are informed and believe and, based thereon, allege that, from June 20, 2022 through March 31, 2025 (the "Class Period"), Defendants have employed over five hundred Class Members who are entitled to timely payment for all hours worked, including minimum wages and overtime rate of pay, meal and rest periods, accurate timekeeping and payroll documents, and reimbursement for business expenses, among other things.

## JURISDICTION AND VENUE

8. This Court is the proper Court, and this action is properly filed in the Superior Court for the State of California, County of San Joaquin, because Plaintiffs performed work for Defendants in the County of San Joaquin and Defendants employ Class Members in this County.

9. This Court has jurisdiction over the Plaintiffs' and Class Members' claims for unpaid wages, meal and rest period violations, failure to reimburse business expenses, interest thereon, related penalties, injunctive and other equitable relief, and attorneys' fees and costs pursuant to, *inter alia*, the applicable California Industrial Welfare Commission, Wage Order, Title 8 of the California Code of Regulations, Labor Code §§ 202, 203, 226, 226.7, 510, 512, 558, 1194, 1197, 1198, 2802, 2698-99, *et seq*., and/or California Code of Civil Procedure section 1021.5.

10. This Court also has jurisdiction over the Plaintiffs' and Class Members' claims for injunctive relief and restitution of ill-gotten benefits arising from Defendants' unlawful, unfair, and/or fraudulent business practices under California Business and Professions Code § 17200 *et*

*seq.*

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff AUSTEN SHWIYHAT satisfied all administrative requirements prior to adding a claim pursuant to the Private Attorneys General Act, California Labor Code § 2698 *et seq.* On August 31, 2022, Plaintiff SHWIYHAT gave written notice by online filing to the Labor and Workforce Development Agency ("LWDA") of Defendants' violations of various provisions of the California Labor Code as alleged in this First Amended Complaint. On August 31, 2022, Plaintiff SHWIYHAT gave written notice by certified mail to Defendants of Defendants' violations of various provisions of the California Labor Code as alleged in this Complaint. Cal. Lab. Code § 2699.3(a)(1). Plaintiff SHWIYHAT has also paid the $75.00 filing fee to the LWDA. By November 4, 2022 – 65 days after Plaintiff SHWIYHAT gave written notice to the LWDA - the LWDA did not respond. Cal. Lab. Code § 2699.3(a)(2)(A). Plaintiff SHWIYHAT is therefore entitled to pursue his penalty claims pursuant to California Labor Code section 2699 *et seq.*, the Private Attorneys General Act. Cal. Lab. Code § 2699.3(a)(2)(C).

12. On June 5, 2023, Plaintiff WALTER RAINES gave written notice by certified mail to the LWDA and Defendants of Defendants' violations of various provisions of the California Labor Code as alleged in this Complaint. Plaintiff RAINES is therefore entitled to pursue his penalty claims pursuant to California Labor Code section 2699 *et seq.*, the Private Attorneys General Act. Cal. Lab. Code § 2699.3(a)(2)(C).

## FACTS COMMON TO PLAINTIFFS' CLASS ACTION CAUSES OF ACTION

13. At all times relevant to the Complaint, Plaintiffs were employed by Defendants as non-exempt hourly employees in California.

14. At all times relevant, Plaintiffs and Class Members were non-exempt hourly employees. As such, Plaintiffs and Class Members were and are eligible for minimum wages and overtime compensation.

15. Plaintiffs and Class Members were not properly paid for all hours that they spent working, including for off-the-clock work, reporting time pay, hours, and overtime hours worked, despite routinely and consistently working more than 8 hours per day and 40 hours per week in

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

violation of the California Labor Code.

16. At all times relevant, Plaintiffs and Class Members were required to be paid for all hours worked but Defendants rounded their clock-in and clock-out times to the benefit of Defendants. In addition, Defendants required Plaintiffs and Class Members to call in prior to the start of their shift to determine whether or not they were scheduled to work for that day but did not pay Plaintiffs and Class Members for reporting time pay. Accordingly, Defendants failed to pay all wages owing to Plaintiffs and Class Members, and Plaintiffs and Class Members were underpaid.

17. At all times relevant, Defendants required Plaintiffs and Class Members to work through meal and rest periods to assist Defendants' customers, including when Plaintiffs and Class Members were "clocked out" for meal periods.

18. Plaintiffs and Class Members were frequently not provided with an opportunity to take a legally compliant meal period prior to the end of their fifth hour of work. Plaintiffs and Class Members never received second meal periods when they worked shifts of 10 hours or more.

19. At all times relevant, Defendants failed to relieve Plaintiffs and Class Members of employer control during rest periods. Plaintiffs and Class Members never received third rest periods when they worked shifts of 10 hours or more.

20. Pursuant to California law, an employee is entitled to one ten-minute rest period if required to work at least three and one-half hours, two ten-minute rest periods if required to work more than six hours, and three ten-minute rest periods if required to work more than ten hours. Pursuant to California law, an employee is entitled to one thirty-minute meal period if required to work at least five hours and two thirty-minute meal periods if required to work at least ten hours.

21. Defendants did not consistently provide meal and rest periods because business needs took precedence, routinely interfering with what should be break periods. If Plaintiffs or Class Members failed to address business needs at any time, including during breaks, they were subject to discipline. Despite these policies and practices, Defendants have not paid any missed meal or rest period premiums to Plaintiffs or Class Members.

22. By requiring Plaintiffs and Class Members to work off-the-clock during meal

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

periods, Defendants failed to pay Plaintiffs and Class Members for all hours worked.

23. Defendants also failed to provide Plaintiffs and Class Members with accurate semimonthly itemized statements of the total number of hours worked by each, and all applicable hourly rates in effect during each pay period, in violation of California Labor Code § 226 and/or 1174(d). In doing so, Defendants have not only failed to pay their workers the full amount of compensation due, they have, until now, effectively shielded themselves from their employees' scrutiny for their unlawful conduct by concealing the magnitude (e.g., the full number of hours worked) and financial impact of their wrongdoing.

24. Defendants also failed to reimburse Plaintiffs and Class Members for business expenses that they incurred related to, among other things, the required use of their personal cellular telephones and purchase of work materials for work-related purposes in violation of California Labor Code § 2802.

25. All policies and practices described herein were in place at all of Defendants' business locations in California. As such, all Class Members were subject to these same policies in violation of California law. Plaintiffs are informed and believe that Defendants knowingly failed to pay all wages owed (including overtime, minimum, and meal and rest period premium payments), failed to provide meal and rest periods, failed to reimburse for business expenses, failed to maintain and provide accurate time and payroll records, and failed to pay final wages to Class Members whose employment has ended, thereby enjoying a significant competitive edge over other companies within its industry. Even after Plaintiffs and Class Members were terminated or voluntarily resigned, Defendants still failed to pay all wages owed upon separation, despite the penalty provisions of California Labor Code §§ 201-204. More than 30 days have passed since certain Class Members have left Defendants' employ, entitling those Class Members to the maximum penalties.

26. In sum, Defendants failed to maintain time records accurately setting forth the amount of hours that Plaintiffs and Class Members worked. Defendants failed to pay for all hours worked, including overtime hours worked. Defendants failed to provide meal and rest periods and failed to make premium payments for missed meal and rest breaks. Defendants failed to issue

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

wage statements accounting for the number of hours actually worked by Plaintiffs and Class Members. Defendants failed to timely pay all wages owing upon separation of employment. Defendants also failed to reimburse Plaintiffs and Class Members for business expenses that they incurred.

27. As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiffs and Class Members have sustained damages, as described above, including loss of earnings for hours worked and for unreimbursed business expenses, in an amount to be established at trial. As a further direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiffs and Class Members are entitled to recover penalties/wages for failure to pay wages owed upon termination (pursuant to California Labor Code §§ 201-204 and 227.3), for failure to maintain and provide semimonthly itemized wage statements of hours worked and all applicable hourly rates (pursuant to California Labor Code § 226 and/or 1174) in an amount to be established at trial. As a further direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiffs and Class Members are also entitled to recover attorneys' fees, litigation costs, restitution of ill-gotten gains, and injunctive relief, pursuant to statute.

## CALIFORNIA CLASS ACTION ALLEGATIONS

28. Plaintiffs bring this action on behalf of themselves and as a class action on behalf of the following Classes and Subclass:

> Class: *All persons employed by Defendants in the State of California in a non-exempt position who performed work for Defendants at any time from June 20, 2022, through March 31, 2025.*

> Terminated Subclass: *All persons who are eligible for membership in the Class and who are no longer employed by Defendants at any time from June 20, 2022, through March 31, 2025.*

29. Defendants and their officers and directors are excluded from any class defined in the preceding paragraphs.

30. This action has been brought and may properly be maintained as a class action under California Code of Civil Procedure § 382 because there is a well-defined community of interest in the litigation and the proposed Classes are easily ascertainable. The classes and subclasses defined herein satisfy all class action requirements:

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

a. Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy. The Class Members are so numerous that joinder of all Class Members is impractical, if not impossible, insofar as Plaintiffs are informed and believe and, on that basis, allege that the total number of Class Members is, at least, in the hundreds of individuals. Membership in the Classes will be determined by and upon analysis of employee and payroll records, among other records maintained by Defendants.

b. Commonality: Plaintiffs and Class Members share a community of interest in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

1) Whether Defendants violated one or more of California's Wage Orders, the California Labor Code and/or California Business and Professions Code § 17200 *et seq.* by failing to pay overtime wages due to Plaintiffs and Class Members at the proper rate of pay;
2) Whether Defendants violated one or more of California's Wage Orders, the California Labor Code and/or California Business and Professions Code § 17200 *et seq.* by failing to pay minimum wages due to Plaintiffs and Class Members at the proper rate of pay and failure to pay reporting time pay;
3) Whether Defendants violated one or more of California's Wage Orders, the California Labor Code and/or California Business and Professions Code § 17200 *et seq.* by failing to authorize and permit meal periods;
4) Whether Defendants violated one or more of California's Wage Orders, the California Labor Code and/or California Business and Professions Code § 17200 *et seq.* by failing to authorize and permit rest periods;
5) Whether Defendants violated one or more of California's Wage Orders, the California Labor Code and/or California Business and Professions Code § 17200 *et seq.* by failing to pay Plaintiffs and Class Members for all hours worked, including overtime hours worked;
6) Whether Defendants violated California Labor Code § 1174 by failing to maintain records of hours worked by Plaintiffs and Class Members;
7) Whether Defendants violated California Labor Code §§ 201-204 by failing to pay all wages due and owing to Plaintiffs and Class Members upon separation of employment;
8) Whether Defendants violated California Labor Code § 226 by failing to provide accurate semi-monthly itemized wage statements to Plaintiffs and Class Members stating the total hours worked and all applicable hourly rates in effect during each relevant pay period, among other things;
9) Whether Defendants violated California Labor Code § 2802 and/or California Business and Professions Code § 17200 *et seq.* by failing to reimburse Plaintiffs and Class Members for necessary business expenses that they incurred.

c. Typicality: Plaintiffs' claims are typical of the claims of the Class Members. Plaintiffs and all Class Members sustained injuries and damages arising out of and caused by Defendants' common course of conduct in

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

violation of state law, as alleged herein.

d. Superiority of Class Action: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes, or may make it, impractical for Class Members to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought by each individual Class Member, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of other Class Members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests. Additionally, a class action will allow resolution of multiple claims in one forum where evidence is shared which will conserve judicial resources and the resources of the parties.

e. Adequacy of Representation: Plaintiffs are adequate representatives of the Classes, in that Plaintiffs' claims are typical of those of the Classes and Plaintiffs have the same interests in the litigation of this case as Class Members. Plaintiffs are committed to vigorous prosecution of this case and have retained competent counsel experienced in wage and hour litigation in California. Plaintiffs are not subject to any individual defenses unique from those conceivably applicable to the Classes as a whole. Plaintiffs anticipate no management difficulties in this litigation.

31. This action is appropriate and practical as a class action because the prosecution of individual actions for each Class Member would likely result in inconsistent and varying rulings that could and likely would impede the interests of other Class Members in protecting their rights, as well as potentially establishing incompatible patterns of conduct for Defendants.

**FIRST CAUSE OF ACTION**
**FAILURE TO PROPERLY PAY OVERTIME WAGES**
(Lab. Code §§ 200-204, 218.6, 512, 558, 1194, 1198; IWC Wage Orders)
(*On behalf of Plaintiffs and Class Members against Defendants*)

32. Plaintiffs and Class Members incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

33. Plaintiffs and Class Members were employed by Defendant within the State of California.

34. Labor Code § 510 defines a day's work as 8 hours and states that any work in excess of 8 hours in one workday and any work in excess of 40 hours in any one workweek must be compensated at the rate of no less than one and one-half times the regular rate of pay. Pursuant

to Labor Code § 1194(a), a plaintiff may bring a civil action for overtime wages to recover wages, interest, penalties, attorney's fees, and costs.

35. Plaintiffs and Class Members are not exempt from receiving overtime compensation. Defendants required Plaintiffs and Class Members to work in excess of 8 hours per day, and/or in excess of 40 hours per week without paying the applicable overtime rates.

36. Plaintiffs and Class Members were entitled to receive one-and-one half times their regular rate of pay for each hour worked past 8 hours in one day, one-and-one half times their regular rate of pay for each hour worked past 40 hours in one week, and twice the regular rate of pay for each hour worked past 12 hours in one day and for all hours over 8 during their seventh consecutive day of work in one week. Plaintiffs and Class Members were entitled to receive overtime pay calculated using the appropriate regular rate of pay calculations under all applicable laws.

37. Defendants violated Labor Code §§ 510, 1194, and 1198 and IWC Wage Orders when they failed to pay Plaintiffs and Class Members the proper overtime rate for work performed in excess of 8 hours per day and/or for work performed in excess of 40 hours per week, within the time frame set forth under the law. By requiring Plaintiffs and Class Members to work off-the-clock, by underpaying overtime, by not properly calculating the regular rate of pay, or by not properly prorating all non-discretionary compensation into the regular rate of pay for overtime, Defendants violated these same provisions. As a consequence for violating Labor Code §§ 510, 1194, 1198, and IWC Wage Orders, Defendants are liable to Plaintiffs and Class Members for unpaid overtime wages.

38. At all relevant times, Defendants were aware of, and were under a duty to comply with, the wage and overtime provisions of the California Labor Code, including, but not limited to California Labor Code §§ 200 *et seq.*, 510, 1194, and 1198. Defendants violated Labor Code § 204 when they failed to pay Plaintiffs and Class Members all wages earned for labor in excess of the normal work period no later than the pay day for the next regular payroll period.

39. Plaintiffs and Class Members seek and are entitled to interest on all due and unpaid wages pursuant to Labor Code § 218.6.

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

40. Pursuant to Labor Code § 1194, Plaintiffs and Class Members seek to recover in a civil action the unpaid balance of the full amount of and and all unpaid wages and overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

**SECOND CAUSE OF ACTION**
**FAILURE TO COMPENSATE FOR ALL HOURS WORKED**
(Lab. Code §§ 200-204, 216, 225.5, 226, 500, 510, 558, 1197, 1198 and IWC Wage Order)
*(On behalf of Plaintiffs and Class Members against Defendants)*

41. Plaintiffs and Class Members incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

42. Defendants were required to compensate Plaintiffs and Class Members for all hours worked, including reporting time pay, pursuant to the applicable Industrial Welfare Commission Wage Order and Labor Code §§ 200-204, 216, 225.5, 500, 510, 558, 1197, and 1198.

43. Plaintiffs and Class Members routinely performed work for Defendants "off-the-clock" which resulted in Defendants underpaying Plaintiffs and Class Members because they did not accurately record the hours that Plaintiffs and Class Members spent working. In addition, Defendants failed to pay Plaintiffs and Class Members reporting time pay when they reported to work for their shift but did not work their entire scheduled shift.

44. Defendants refused to compensate Plaintiffs and Class Members for some and/or all of the wages earned (including overtime and minimum wages), in violation of the applicable California Wage Order, Title 8 of the California Code of Regulations and the California Labor Code.

45. At all relevant times, Defendants were aware of, and were under a duty to comply with, the wage and overtime provisions of the California Labor Code, including, but not limited to California Labor Code §§ 200-204, 216, 225.5, 500, 510, 558, 1197, and 1198. Plaintiffs and Class Members have been deprived of their rightfully earned compensation as a direct and proximate result of Defendants' failure and refusal to pay said compensation. Plaintiffs and Class Members are entitled to recover compensation for all hours worked, in addition to reasonable attorney's fees and costs of suit.

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

46. As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiffs and Class Members have sustained damages, including loss of earnings for hours worked, including overtime hours worked, on behalf of Defendants, in an amount to be established at trial, and are entitled to recover attorneys' fees and costs of suit.

## THIRD CAUSE OF ACTION
## FAILURE TO PROVIDE MEAL PERIODS
(Lab. Code §§ 226.7, 512; IWC Wage Orders)
(*On behalf of Plaintiffs and Class Members against Defendants*)

47. Plaintiffs and Class Members incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

48. At all relevant times, Defendants were aware of, and were under a duty to comply with, California Labor Code §§ 226.7 and 512.

49. California Labor Code § 226.7(b-c) provides that "(b) [a]n employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission. . . . (c) If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."

50. California Labor Code § 512(a) provides that "[a]n employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer shall not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

period was not waived."

51. Section 11 of the applicable Wage Order provides that "(A) [n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes . . . (B) [a]n employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes . . . and (D) [i]f an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided."

52. Defendants routinely failed to authorize and permit meal periods by failing to inform Plaintiffs and Class Members of their entitlement to meal periods. Despite Plaintiffs and Class Members routinely missing their meal periods or having to take short or interrupted meal periods in order to complete their work, Defendants never provided Plaintiffs and Class Members with meal period premium payments.

53. By failing to provide uninterrupted and unrestricted meal periods, Defendant violated California Labor Code §§ 226.7 and 512, and section 11 of the applicable IWC Wage Order.

54. By failing to consistently (1) provide meal breaks within the first five hours of a work shift, and (2) provide uninterrupted thirty-minute meal periods, Defendants violated the California Labor Code and section 11 of the applicable IWC Wage Order.

55. At all relevant times herein, Defendants required Plaintiffs and Class Members to work shifts of more than ten (10) hours without a second meal period of not less than 30 minutes. Defendants thus required Plaintiffs and Class Members to work for longer hours than those fixed, or under conditions prohibited by order of the IWC, in violation of those orders.

56. Despite failing to authorize and permit compliant meal periods, Defendants failed to compensate Plaintiffs and Class Members for missed meal periods as required by Cal. Labor Code §§ 226.7, 512, and other applicable sections of the Labor Code and applicable Industrial Wage Order. Plaintiffs are informed and believe, and on that basis allege, that Defendants have

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

never paid one hour of premium compensation to Plaintiffs and/or Class Members for missed meal periods.

57. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Class Members have sustained damages, including unpaid meal period premiums, in an amount to be established at trial.

58. Plaintiffs and Class Members are not exempt from meal period requirements.

59. Plaintiffs and Class Members did not willfully waive, through mutual consent with Defendants, any such meal periods.

60. Plaintiffs and Class Members have been deprived of their rightfully earned compensation for meal periods as a direct and proximate result of Defendants' failure and refusal to pay said compensation. Plaintiffs and Class Members are entitled to recover such amounts pursuant to California Labor Code § 226.7(b), plus interest thereon, attorneys' fees, and costs of suit.

## FOURTH CAUSE OF ACTION
## FAILURE TO PROVIDE REST PERIODS
(Lab. Code § 226.7; IWC Wage Orders)
*(On behalf of Plaintiffs and Class Members against Defendants)*

61. Plaintiffs and Class Members incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

62. At all relevant times, Defendants were aware of and were under a duty to comply with California Labor Code § 226.7.

63. California Labor Code § 226.7(b-c) provides that "(b) [a]n employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission. . . . (c) If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."

64. Section 12 of the applicable Wage Order provides that "(A) [e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof . . . (B) [i]f an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the ret period is not provided."

65. Defendants routinely failed to authorize and permit rest periods by failing to inform Plaintiffs and Class Members of their entitlement to rest periods and also by requiring them to work through rest periods.

66. By failing to provide uninterrupted and unrestricted rest periods, Defendants violated California Labor Code § 226.7, and section 12 of the applicable IWC Wage Order.

67. At all relevant times herein, Defendants required Plaintiffs and Class Members to work for shifts of more than ten (10) hours without a timely third rest period. Defendants failed to compensate Plaintiffs and Class Members for missed rest periods as required by Cal. Labor Code § 226.7, and other applicable sections of the Labor Code and applicable Industrial Wage Order. Defendants thus required Plaintiffs and Class Members to work for longer hours than those fixed, or under conditions prohibited by order of the IWC, in violation of those orders.

68. Despite failing to authorize and permit compliant rest periods, Defendants refused to provide Plaintiffs and Class Members with one hour of compensation for these violations as mandated by California law.

69. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Class Members have sustained damages, including unpaid rest period premiums, in an amount to be established at trial.

70. Plaintiffs and Class Members are not exempt from rest period requirements.

71. Plaintiffs and Class Members have been deprived of their rightfully earned compensation for rest periods as a direct and proximate result of Defendants' failure and refusal to pay said compensation. Plaintiffs and Class Members are entitled to recover such amounts

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

pursuant to California Labor Code § 226.7(b), plus interest thereon, attorneys' fees, and costs of suit.

**FIFTH CAUSE OF ACTION**
**FAILURE TO MAINTAIN ACCURATE RECORDS**
(Lab. Code §§ 1174, 1174.5)
*(On behalf of Plaintiffs and Class Members against Defendants)*

72. Plaintiffs and Class Members incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

73. California Labor Code § 1174(d) provides that every person employing labor in this state shall keep, at a central location in the state, payroll records showing the hours worked daily by, and the wages paid to, employees. These records must be kept in accordance with rules established by the IWC, and must be kept on file for not less than three years.

74. Defendants failed to maintain accurate records of the hours worked and the wages paid to Plaintiffs and Class Members.

75. Plaintiffs and Class Members were injured by Defendants' failure to maintain accurate records because, as alleged above, Plaintiffs and Class Members were not paid for all hours worked and did not receive proper compensation for all overtime hours worked, and thus suffered monetary damages due to Defendants' policies described above.

76. Based on Defendants' conduct as alleged herein, Defendants are liable for damages and statutory penalties pursuant to California Labor Code §§ 1174, 1174.5, and other applicable provisions in amounts to be established at trial, as well as attorneys' fees and costs, pursuant to statute.

**SIXTH CAUSE OF ACTION**
**FAILURE TO FURNISH ACCURATE WAGE AND HOUR STATEMENTS**
(Lab. Code §§ 226(e), 226.3)
*(On behalf of Plaintiffs and Class Members against Defendants)*

77. Plaintiffs and Class Members incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

78. California Labor Code § 226(a) requires an employer to furnish its employees with

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

accurate itemized wage statements in writing, showing: (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece rate units earned and any applicable piece-rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

79. Defendants failed to provide Plaintiffs and Class Members with timely and accurate wage and hour statements showing: (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece rate units earned and any applicable piece-rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer, and/or (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

80. Plaintiffs and Class Members were injured by Defendants' failure to provide accurate itemized wage statements, because, *inter alia*, Plaintiffs and Class Members were not paid for all hours worked at the appropriate rate of pay, including overtime hours worked, Plaintiffs and Class Members were not paid premiums for missed meal and rest breaks, and thus suffered monetary damages due to Defendants' policies and practices alleged herein.

81. Defendants are liable for damages and statutory penalties pursuant to California Labor Code § 226, in amounts to be established at trial, as well as attorneys' fees and costs, pursuant to statute.

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

**SEVENTH CAUSE OF ACTION**
**FAILURE TO PAY FINAL WAGES ON TIME**
(Lab. Code §§ 201-204)
*(On behalf of Plaintiffs and Terminated Subclass Members against Defendants)*

82. Plaintiffs and Class Members incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

83. California Labor Code § 201 provides that all earned and unpaid wages of an employee who is discharged are due and payable immediately at the time of discharge. California Labor Code § 202 provides that all earned and unpaid wages of an employee who resigns are due and payable immediately if the employee provided at least seventy-two hours' notice; otherwise, wages of an employee who resigns are due within seventy-two hours of resignation.

84. At all relevant times herein, Defendants failed to pay Terminated Subclass Members, including Plaintiffs, all accrued wages and other compensation owing immediately upon termination or within seventy-two hours of resignation, as required by the California Labor Code.

85. Based on Defendants' conduct as alleged herein, Defendants are liable for statutory penalties pursuant to California Labor Code § 203 in amounts to be established at trial, as well as attorneys' fees and costs, pursuant to statute.

**EIGHTH CAUSE OF ACTION**
**FAILURE TO REIMBURSE BUSINESS EXPENSES**
(Lab. Code §2802)
*(On behalf of Plaintiffs and Class Members against Defendants)*

86. Plaintiffs and Class Members incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

87. California Labor Code § 2802 requires an employer to reimburse its employees for all necessary business expenditures incurred by the employee in direct consequence of the discharge of his or her job duties or in direct consequence of his or her obedience to the direction of the employer.

88. Defendants have intentionally and willfully failed to reimburse Plaintiffs and Class

Members for all necessary business related expenses and costs. Plaintiffs and Class Members are entitled to recover from Defendants their business related expenses and costs incurred during the course and scope of their employment, plus interest accrued form the date on which the employee incurred the necessary expenditures at the same rate as judgments in civil actions in the State of California.

**NINTH CAUSE OF ACTION**
**UNFAIR BUSINESS PRACTICES**
(Bus. & Prof. Code § 17200 *et seq.*)
(*On behalf of Plaintiffs and Class Members against Defendants*)

89. Plaintiffs and Class Members incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

90. Plaintiffs -- on behalf of themselves, on behalf of the general public, and on behalf of Class Members -- bring this unfair business practices claim pursuant to Business & Professions Code § 17200, *et seq*. The conduct of Defendants as alleged in this Complaint has been and continues to be unfair, unlawful, and harmful to Plaintiffs, the general public, and Class Members. Plaintiffs seek to enforce important rights affecting the public interest within the meaning of Cal. Code of Civil Procedure § 1021.5.

91. Plaintiffs are "persons" within the meaning of Business & Professions Code § 17204, and therefore have standing to bring this cause of action for injunctive relief, restitution, and other appropriate equitable relief.

92. Business & Professions Code § 17200, *et seq.* prohibits unlawful and unfair business practices.

93. California's wage and hour laws express fundamental public policies. Providing employees with proper wages and compensation are fundamental public policies of the State of California. Labor Code § 90.5(a) articulates the public policies of California to enforce vigorously minimum labor standards, to ensure that employees are not required or permitted to work under substandard and unlawful conditions, and to protect law-abiding employers and their employees from competitors who lower their costs by failing to comply with minimum labor standards.

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

94. Defendants have violated statutes and public policies as alleged herein. Through the conduct alleged herein, Defendants have acted contrary to these public policies, have violated specific provisions of the Labor Code, and have engaged in other unlawful and unfair business practices in violation of Business & Professions Code § 17200, *et seq.*, depriving Plaintiffs, and all persons similarly situated, and all interested persons of rights, benefits, and privileges guaranteed to all employees under law.

95. Defendants' conduct, as alleged hereinabove, constitutes unfair competition in violation of Business & Professions Code § 17200, *et seq.*

96. Defendants, by engaging in the conduct herein alleged, either knew or in the exercise of reasonable care, should have known that the conduct was unlawful. As such, it is a violation of Business & Professions Code § 17200, *et seq.*

97. As a proximate result of Defendants' conduct, Plaintiffs and Class Members have been damaged in a sum as may be proven.

98. Unless restrained, Defendants will continue to engage in the unlawful conduct as alleged above. Pursuant to the Business & Professions Code, this Court should make such orders or judgment, including the appointment of a receiver, as may be necessary to prevent the use or employment by Defendants, their agents, or employees, of any unlawful or deceptive practices prohibited by the Business & Professions Code, and/or, including by not limited to, restitution and disgorgement of profits which may be necessary to restore Plaintiffs and Class Members the money Defendants have unlawfully failed to pay.

**TENTH CAUSE OF ACTION**
**VIOLATIONS OF THE PRIVATE ATTORNEYS GENERAL ACT ("PAGA")**
(Lab. Code § 2698 *et seq.*)
*(On behalf of Plaintiffs and Class Members against Defendants)*

99. Plaintiffs and Class Members incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

100. Plaintiffs are "aggrieved employees" under the California Labor Code Private Attorneys General Act ("PAGA") as they were employed by Defendants during the applicable

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

statutory period and suffered one or more of the Labor Code violations alleged herein. As such, they seek to recover, on behalf of themselves and all other current and former aggrieved employees of Defendants, the civil penalties provided by PAGA, plus reasonable attorney's fees and costs.

101. Plaintiffs seek to recover the PAGA civil penalties through a representative action as permitted by PAGA and the California Supreme Court in *Arias v. Superior Court*, 46 Cal. 4th 969 (2009).

102. Plaintiffs allege that Defendants violated the provisions detailed herein, and thus seek to enforce civil penalties against Defendants for these violations. The PAGA allows a private individual to recover civil penalties previously only recoverable by the State. Although some of the labor provisions referenced herein do not themselves provide the amount of any penalty, the PAGA states that for all provisions of the Labor Code for which no civil penalty is established, including but not limited to the provisions referenced herein, the penalty shall be one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation, and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation. Accordingly, these are the penalties that Plaintiffs seek to enforce to the extent civil penalties are not already provided for in the Labor Code. If the Labor Code already provides penalties for particular violations, Plaintiffs seek those penalties.

103. Plaintiffs are also entitled to recover for themselves, other aggrieved employees, and the State of California, civil penalties pursuant to California Labor Code § 210 in the amount of $100 per employee per initial violation of the timely payment requirements of California Labor Code § 204 and $200 per employee for each subsequent violation, plus 25% of the amount unlawfully withheld. Plaintiffs seek to pursue remedies pursuant to PAGA for these violations.

104. California Labor Code § 226.3 imposes a civil penalty in addition to any other penalty provided by law of two hundred fifty dollars ($250) per aggrieved employee for the first violation, and one thousand dollars ($1,000) per aggrieved employee for each subsequent violation under California Labor Code § 226(a).

105. Pursuant to California Labor Code § 203, for an employer who willfully fails to

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

pay any wages of an employee who is discharged or quits, that employee's wages shall continue as a penalty from the due date at the same rate until paid, but shall not continue for more than thirty (30) days. California Labor Code § 256 imposes a civil penalty in an amount not exceeding thirty (30) days pay as waiting time under the terms of California Labor Code § 203.

106. California Labor Code § 558 provides: "Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (3) Wages recovered pursuant to this section shall be paid to the affected employee."

107. Under California Labor Code § 1174.5, Defendants are subject to a civil penalty of five hundred dollars ($500) for failing to keep records as required by section 1174(d).

108. California Labor Code § 2698 *et seq.* imposes a civil penalty of one hundred dollars ($100) per pay period, per aggrieved employee for the initial violation of California Labor Code §§ 204, 510, 512, 1174, 1194, 1198, and 2802 and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

109. Plaintiffs have fully complied with the procedural requirements specified in California Labor Code § 2699.3 as to each of the alleged violations. Plaintiffs are therefore entitled to pursue his penalty claims pursuant to California Labor Code section 2699 *et seq.*, the Private Attorneys General Act. Cal. Lab. Code § 2699.3(a)(2)(C).

110. Enforcement of statutory provisions to protect workers and to ensure proper and prompt payment of wages is a fundamental public interest. Plaintiffs' successful enforcement of important rights affecting the public interest will confer a significant benefit upon the general public. Private enforcement of these rights is necessary, as no public agency has pursued enforcement.

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

111. As a result of the violations alleged, Plaintiffs, as aggrieved employees on behalf of themselves and other similarly situated employees employed by Defendants, seeks all civil penalties available pursuant to California Labor Code § 2699, including all civil penalties, attorneys' fees, expenses, and costs of suit.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment for themselves and all others on whose behalf this suit is brought against Defendants, jointly and severally, as follows:

1. For an order certifying this action as a class action on behalf of the classes defined herein;

2. For an order designating Plaintiffs as representative of the Classes as described herein;

3. For an order appointing Counsel for Plaintiffs as Class Counsel;

4. That this Court award damages, restitution, statutory penalties, and civil penalties to be paid by Defendants for the causes of action alleged herein;

5. That this Court award actual damages, compensatory damages, compensation for all hours worked but not paid, special damages according to proof, and general damages in amounts according to proof and in no event in an amount less than the jurisdictional limit of this court, as well as restitutionary relief to Plaintiffs and Class Members of all monies due to Plaintiffs and Class Members from the unlawful business practices of Defendants;

6. That this Court award injunctive relief, including that available under Labor Code section 226(h) and Business and Professions Code § 17203;

7. That this Court award penalties and liquidated damages including, but not limited to, those available under Labor Code §§ 203, 226, 226.7, and 1194.2;

8. For waiting time penalties pursuant to Labor Code sections 203 and 206;

9. For penalties pursuant to Labor Code sections 201, 226, 556, 1174(d), 1194, 1194.2, and 2698 *et seq.*, and any and all other provisions of the Labor Code which provide for penalties as a result of the conduct alleged herein;

10. For statutory penalties pursuant to, among others, the Private Attorney General

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

Act;

11. That this Court award statutory attorneys' fees and costs, including reasonable attorneys' fees and expert fees, including those available under Labor Code §§ 218.5, 226(e)(1), 226(h), 1194, and 2698 *et seq.*, and other provisions of the Labor Code, Government Code, and "private attorney general" statutes contained in Code of Civil Procedure section 1021.5;

12. That this Court award prejudgment and post-judgment interest according to any applicable provision of law or as otherwise permitted by law; and

13. That this Court award such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs hereby demand a jury trial on all issues and causes of action.

Respectfully submitted,

Dated: July 25, 2025

EMPLOYMENT LAWYERS

[signature]

Leonard Emma
Cody Stroman
Attorneys for Plaintiffs

EXHIBIT
B

**EMPLOYMENT LAWYERS**
LEONARD EMMA (SBN 224483)
lemma@employment-lawyers.com
CODY STROMAN (SBN 303413)
cstroman@employment-lawyers.com
1999 Harrison Street, 18th Floor
Oakland, CA 94612
Tel: (415) 362-1111

**LAVI & EBRAHIMIAN, LLP**
JOSEPH LAVI, ESQ. (SBN 209776)
Email: jlavi@lelawfirm.com
VINCENT C. GRANBERRY, ESQ. (SBN 276483)
vgranberry@lelawfirm.com
ALEXANDER J. AROESTE, ESQ. (SBN 332653)
aaroeste@lelawfirm.com
8889 W. Olympic Boulevard, Suite 200
Beverly Hills, California 90211
Telephone: (310) 432-0000

Attorneys for Plaintiffs
AUSTEN SHWIYHAT and
WALTER RAINES

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN JOAQUIN**

AUSTEN SHWIYHAT and WALTER RAINES, on behalf of themselves, all others similarly situated, and the State of California as private attorneys general,

Plaintiff,

vs.

MARTIN MARIETTA MATERIALS, INC.; MARTIN MARIETTA NORTHERN CALIFORNIA AGGREGATES, LLC; and DOES 1 through 100, inclusive,

Defendants.

Case No. STK-CV-UOE-2025-0010132

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1
II. BACKGROUND AND PROCEDURAL HISTORY .......... 1
A. The Parties .......... 1
B. The Consolidated Action .......... 2
C. Investigation and Discovery .......... 3
D. Settlement Negotiations .......... 3
III. DESCRIPTION OF CLAIMS AND ARGUMENTS .......... 3
A. Underpayment of Overtime Wages .......... 3
B. Failure to Provide Compliant Meal and Rest Periods .......... 4
1. Meal Period Requirements .......... 4
2. Rest Period Requirements .......... 5
3. Premium Payments for Failure to Provide Meal and Rest Periods .......... 5
4. Martin Marietta's Alleged Meal and Rest Period Violations .......... 5
C. Failure to Compensate for All Hours Worked .......... 6
1. Defendant Must Accurately Record and Pay for All Hours Worked .......... 6
2. Plaintiffs Allege Failure to Record and Pay for All Hours Worked .......... 6
D. Wage Statement Penalties .......... 6
E. Waiting Time Penalties .......... 7
F. Failure to Reimburse Business Expenses .......... 7
G. Derivative Claims (UCL and PAGA) .......... 8
IV. KEY SETTLEMENT TERMS .......... 8
A. The Settlement Class .......... 8
B. Settlement Amount and Distribution .......... 8
C. Settlement Administration and Class Notice .......... 9
D. Attorneys' Fees, Costs and Class Representative Service Payment .......... 9
E. PAGA Allocation .......... 9
F. Release of Claims .......... 10

G. TAX TREATMENT ........ 10
H. UNCLAIMED RESIDUAL ........ 10
V. THE SETTLEMENT MEETS PRELIMINARY APPROVAL CRITERIA ........ 11
A. EVALUATION OF THE SETTLEMENT SUPPORTS APPROVAL ........ 11
1. SETTLEMENT IS THE RESULT OF ARM'S-LENGTH BARGAINING ........ 11
2. SETTLEMENT REACHED AFTER SUFFICIENT INVESTIGATION AND DISCOVERY ........ 12
3. CLASS COUNSEL IS EXPERIENCED AND RECOMMENDS SETTLEMENT ........ 12
4. THE SETTLEMENT AVOIDS RISKS INHERENT IN FURTHER LITIGATION ........ 12
5. THE SETTLEMENT PROVIDES SUBSTANTIAL VALUE TO THE CLASS ........ 13
B. THE PROPOSED CLASS NOTICE SATISFIES DUE PROCESS ........ 14
C. PROPOSED SERVICE PAYMENT, ATTORNEYS' FEES, AND COSTS ARE JUSTIFIED ........ 15
VI. CONDITIONAL CLASS CERTIFICATION IS APPROPRIATE ........ 17
A. THE CLASS IS NUMEROUS AND ASCERTAINABLE ........ 17
B. THE COMMUNITY OF INTEREST REQUIREMENT IS MET ........ 17
C. CLASS ACTION IS SUPERIOR ........ 18
VII. FINAL APPROVAL HEARING SHOULD BE SCHEDULED ........ 19
VIII. CONCLUSION ........ 19

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

## TABLE OF AUTHORITIES

**Cases**

*7–Eleven Owners for Fair Franchising v. Southland Corp*., 85 Cal. App. 4th 1135, 1146 (2000) ........ 11
*Aguiar v. Cintas Corporation No. 2,* 144 Cal.App.4th 121, 132-33 (2006). ........ 18
*Alyeska Pipeline Co. v. Wilderness Society* (1995) 421 U.S. 240, 257) ........ 16
*Benitez et al. v. Wilbur*, USDC Eastern District, Case No. 1:08-cv-01122; ........ 16
*Chavez et al. v. Petrissans et al.,* USDC Eastern District, Case No. 1:08-cv-00122 ........ 16
*Chu v. Wells Fargo Invest. LLC,* 2011 WL 672645, at *1 (N.D. Cal. Feb. 16, 2011) ........ 10
*Clark v. American Residential Services LLC* (2009) 175 Cal. App. 4th 785, 804 ........ 15
*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992 ........ 11
*Dirienzo v. Dunbar Armored, Inc.*, USDC Southern District, Case No. 3:09-cv-02745 ........ 16
*Dunk v. Ford Motor Co*., 48 Cal. App. 4th 1794, 1801 (2008). ........ 11
*Eisner v. Carlisle & Jacquelyn*, 417 U.S. 156, 174-175 (1974). ........ 14
*Franco v. Ruiz Food Prods., Inc*., 2012 WL 5941801 at *14 (E.D. Cal. Nov. 27, 2012) ........ 10
*Hicks v. Toys 'R' Us–Delaware, Inc*., 2014 WL 4703915, at *1 (C.D. Cal. Sept. 2, 2014) ........ 10
*In re Activision Sec. Litigation*, 723 F.Supp. 1373, 1379 (N.D. Cal. 1989) ........ 16
*In re Microsoft I–V Cases*, 135 Cal. App. 4th 706, 723 (2006), ........ 11
*Kullar v. Foot Locker Retail Inc.,* 168 Cal. App. 4th 116, 128 (2008) ........ 11
*Lindner vs. Thrifty Oil,* 23 Cal.4th 429, 435 (2000). ........ 17
*Lockheed Martin Corp. v. Super. Court,* 29 Cal. 4th 1096, 1104 (2003) ........ 17
*Mulvane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950) ........ 14
Newberg, §11.51 ........ 11
*Nordstrom Com'n Cases*, 186 Cal.App.4th 576, 589 (2010) ........ 10
*North County Contractor's Assn., Inc. v. Touchstone Ins. Services*, 27 Cal. App. 4th 1085, 1089-1090 (1994) ........ 11
*Phillips Petroleum Co. v. Shuts*, 472 U.S. 797, 811-12 (1985); ........ 14

*Potter v. Pac. Coast Lumber Co*., 37 Cal. 2d 592, 602 (1951) .................. 11
*Romero v. Producers Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270, 2007 WL 3492841 (E.D. Ca. Nov. 14, 2007) .................. 16
*Seastrom v. Neways, Inc.,* 149 Cal.App.4th 1496, 1502 (2007 .................. 18
*Serrano v. Priest* (1977) 20 Cal. 3d 25, 35 .................. 16
*Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) .................. 11
*Watson v. Raytheon Company*, USDC Southern District, Case No. 3:10-cv-00634 .................. 16
*Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224 (2001) .................. 13, 15
*Williams v. Brinderson Constructors*, 2017 WL 490901, at *5 (C.D. Cal. Feb. 6, 2017) .................. 10
*Willis et al. v. Cal-Western Transport,* USDC Eastern District, Case No. 1:00-cv-05695 .................. 16

**Statutes**

Cal. Lab. Code § 201-203 .................. 15
Cal. Lab. Code § 2699 .................. 10
Cal. Rule of Court 3.769 .................. 11, 16, 19, 21
Civ. Code § 1781 .................. 11
Labor Code Section 201 .................. 7
Labor Code Section 202 .................. 7
Labor Code Section 203 .................. 7

**Other Authorities**

4 Conte & Newberg, Newberg on Class Actions .................. passim
4 Conte & Newberg, Newberg on Class Actions, §11.22 *et seq*. .................. 11
4 Newberg, § 11.25. .................. 12
*Manual for Complex Litigation*, § 30.41. .................. 19

**Rules**

Cal. Code Regs., tit. 8, § 13520 .................. 6

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs Austen Shwiyhat and Walter Raines (collectively, "Plaintiffs") seek preliminary approval of a proposed settlement of wage and hour claims on behalf of themselves and the putative class against Defendants Martin Marietta Materials, Inc. and Martin Marietta Northern California Aggregates, LLC (collectively, "Martin Marietta" and/or "Defendants") (Plaintiffs and Defendants are collectively referred to herein as the "Parties"), upon the terms and conditions set out in the Class Action and PAGA Settlement Agreement ("Settlement"), a copy of which is attached as Exhibit A to the Declaration of Leonard Emma ("Emma Decl.") submitted in support hereof. (Emma Decl. ¶ 3.) The Settlement provides for a fund of at least $1,350,000.00. (*Id.*)

Plaintiffs request that the Court take the following actions in response to this Motion: (1) preliminarily approve the Settlement; (2) preliminarily certify the class defined in the Settlement Agreement ("Settlement Class" and/or "Class Members"); (3) preliminarily appoint Leonard Emma of Emma Law, P.C. dba Employment Lawyers and Joseph Lavi of Lavi & Ebrahimian, LLP as counsel for the class ("Class Counsel"); (4) approve the proposed notice to the Settlement Class (the "Notice") and direct that the Notice be mailed by a third-party settlement administrator ("Administrator"); (5) appoint Atticus Administration LLC as Administrator; and (6) set a date for final settlement approval by this Court.

As shown below, all criteria for preliminary approval are satisfied. The Settlement resulted from mediation following discovery and investigation by both Parties into the strength of Plaintiffs' claims and Defendants' defenses thereto. The terms of the Settlement are objectively fair, adequate, and reasonable to the Settlement Class and are the product of arm's-length negotiations.

## II. BACKGROUND AND PROCEDURAL HISTORY

### A. The Parties

Plaintiffs worked for Martin Marietta as non-exempt hourly employees within California. Plaintiffs and other employees were entitled to the protections of the California Labor Code, including the following: (1) payment of overtime wages; (2) payment for all hours worked; (3)

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

entitlement to meal periods; (4) entitlement to rest periods; (5) accurate record keeping; (6) accurate wage statements; (7) payment of timely final wages; and (8) reimbursement of necessary business expenses. (Emma Decl. ¶ 4.) Defendant Martin Marietta Materials, Inc. is a North Carolina Corporation and Martin Marietta Northern California Aggregates is a Delaware Limited Liability Company. Defendants were and are doing business in San Joaquin County, California. (Emma Decl. ¶ 5.)

On December 6, 2022, Plaintiff Shwiyhat commenced his action by filing a Complaint alleging a PAGA cause of action against Martin Marietta for (1) failure to properly calculate and properly pay overtime wages, (2) failure to compensate for all hours worked (off-the-clock work); (3) failure to provide meal periods, (4) failure to provide rest periods, (5) failure to maintain accurate records; (6) failure to furnish accurate itemized wage statements, and (7) failure to pay final wages on time. On January 19, 2023, Martin Marietta removed Plaintiff Shwiyhat's action to the Northern District of California, where it is currently pending.

On June 5, 2023, Plaintiff Raines filed a separate action against Martin Marietta in San Joaquin County Superior Court for (1) failure to properly pay wages including for all hours worked at minimum wage; (2) failure to pay reporting time pay; (3) failure to provide meal periods; (4) failure to furnish accurate wage statements; (5) failure to pay final wages on time; and (6) unfair business practices. On August 15, 2023, Plaintiff Raines also filed a separate PAGA action for the same claims in the San Joaquin County Superior Court. Martin Marietta removed Raines' action to Eastern District of California, and Plaintiff Raines has since filed a consolidated class and PAGA complaint, which was dismissed upon the filing of the instant action. The instant action consolidates both Shwiyhat's and Raines' claims against Martin Marietta into a single action. (Emma Decl. ¶¶ 6-7.)

**B. The Consolidated Action**

Plaintiffs allege the following wage and hour class action claims against Martin Marietta in this action: (1) Failure to Properly Calculate and/or Pay Overtime Wages; (2) Failure to Compensate for All Hours Worked; (3) Failure to Provide Meal Periods; (4) Failure to Provide Rest Periods; (5) Failure to Maintain Accurate Records; (6) Failure to Furnish Compliant Wage

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

and Hour Statements; (7) Failure to Pay Final Wages on Time; (8) Failure to Reimburse Business Expenses; and (9) Unfair Business Practices.[1] (Emma Decl. ¶ 8.) Defendants deny Plaintiffs' allegations.

### C. Investigation and Discovery

The Parties have conducted discovery and investigation of the facts and law at issue in this matter. Such discovery and investigation have included, *inter alia*: (1) propounding and responding to written discovery (including extensive special interrogatories to Martin Marietta, and extensive document requests to Martin Marietta); (2) depositions of Martin Marietta's persons most knowledgeable; (3) interviewing Plaintiffs and putative class members; (4) production and review of thousands of pages of documents; (5) production and review of class member wage and hour records, including but not limited to pay stubs and time sheets containing clocking data and wage data; (6) engagement of an expert statistician; (7) development of a class-wide damages model; and (8) legal research into the merits and certifiability of Plaintiffs' claims. (Emma Decl. ¶ 9.)

### D. Settlement Negotiations

On October 22, 2024, the Parties mediated this matter before Jill Sperber -- a highly experienced and well-regarded mediator in wage and hour employment litigation. After a full day of mediation, the Parties continued to negotiate through Ms. Sperber and ultimately accepted her recommendation to resolve the matter on November 18, 2024, for $1,350,000.00. The Parties entered into a binding MOU and continued to negotiate the details of their agreement in a long-form settlement agreement, which was finalized in July 2025. (Emma Decl. ¶ 10.)

## III. <u>DESCRIPTION OF CLAIMS AND ARGUMENTS</u>

### A. Underpayment of Overtime Wages

#### 1. Overtime Pay Requirements

Pursuant to California Labor Code § 510, any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek (as well as the first eight hours

---

[1] Plaintiffs also bring a cause of action under the Private Attorneys General Act ("PAGA"), which is predicated on these class claims.

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

worked on the seventh day of work in any one workweek) shall be compensated at the rate of no less than one and one-half times the "regular rate of pay" for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay.

**2. Martin Marietta's Alleged Failure to Pay Overtime**

Plaintiffs allege that Martin Marietta required Plaintiffs and Class Members to work "off-the-clock" during meal periods and did not otherwise pay employees for all time spent working. Accordingly, Plaintiffs allege that employees were not properly paid for all work in excess of eight hours in one workday and in excess of 40 hours in a workweek (as well as the first eight hours worked on the seventh day of work in any one workweek) at the rate of one and one-half times the regular rate of pay no less than twice the regular rate of pay for work in excess of 12 hours in one day or for work in excess of eight hours on any seventh day of a workweek. In addition, Plaintiffs allege that employees' regular rate of pay did not incorporate all remuneration which they were entitled. Martin Marietta contends that it properly paid all employees for overtime. (Emma Dec. ¶ 11.)

**B. Failure to Provide Compliant Meal and Rest Periods**

**1. Meal Period Requirements**

California Labor Code §226.7(b-c) provides that "(b) An employer shall not require an employee to work during a meal or rest or recovery period." If an employer fails to provide a meal or rest period meeting the above criteria, the employer must pay for one hour at the employee's regular rate of compensation. Lab. Code § 226.7(c). The IWC Wage Orders set forth the timing requirements for meal periods in Section 11. When an employee works for a period of more than five hours, a meal period must be provided no later than the end of the employee's fifth hour of work. IWC Wage Orders at § 11(A). When an employee works for a period of more than 10 hours, a second meal period must be provided no later than the end of the employee's tenth hour of work. IWC Wage Orders at § 11(B). See *Brinker Rest. Corp. v. Superior Court* (2012) 53 Cal.4th 1004.

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

**2. Rest Period Requirements**

The IWC Wage Orders set forth the timing requirements for rest periods in Section 12. Employers must "authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period." IWC Wage Orders at § 12(A). The rest periods shall be paid and shall be "10 minutes net rest time per four (4) hours or major fraction thereof," although "a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours." *Id.*

**3. Premium Payments for Failure to Provide Meal and Rest Periods**

California Labor Code § 226.7(b) states that "[i]f an employer fails to provide an employee meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."

**4. Martin Marietta's Alleged Meal and Rest Period Violations**

Plaintiffs allege that Martin Marietta had a policy and practice of not permitting employees to take legally compliant meal and rest periods. Plaintiffs allege that Martin Marietta expected employees to work through their breaks to meet business requirements. Due to this expectation, Plaintiffs allege that employees were routinely unable to take full 30-minute meal periods. In addition, Plaintiffs allege that Martin Marietta did not always authorize or permit employees to take meal periods at all or within the first five hours of their shifts. Plaintiffs further allege that employees were not consistently provided with compliant 10-minute rest breaks. Plaintiffs allege that, despite these practices, Martin Marietta did not properly pay premium payments to employees for its failure to provide meal and rest periods. (Emma Dec. ¶ 12.)

Martin Marietta contends that its meal and rest period policies are compliant with California law and that all employees are provided with meal and rest breaks required by law and that Martin Marietta properly provided premium payments for missed meal and rest periods. Martin Marietta contends that, at trial, Class Members will testify to their ability to take compliant meal and rest breaks. (Emma Decl. ¶ 13.)

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

**C. Failure to Compensate for All Hours Worked**

**1. Defendant Must Accurately Record and Pay for All Hours Worked**

Martin Marietta has an obligation to accurately record all hours worked and meal periods provided. Wage Order 7-2001(7) ("Every employer shall keep accurate information with respect to each employee including the following: (3) … Meal periods … (5) Total hours worked….") California law defines "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." IWC Wage Order 7-2001, subd. 2(G).

**2. Plaintiffs Allege Failure to Record and Pay for All Hours Worked**

Plaintiffs allege that Martin Marietta failed to accurately record and pay Class Members for all hours worked by "rounding" hours worked, requiring employees to work "off-the-clock" when their meal periods were interrupted or truncated, and not paying employees for calling in prior to their shifts. Martin Marietta contends that it did not require employees to work "off-the-clock", contends that any rounding of hours worked inured to the benefit of its employees, and otherwise properly compensated employees for all time spent working as required by California law. (Emma Decl. ¶ 14.)

**D. Wage Statement Penalties**

Labor Code § 226(a) provides:

> An employer … shall furnish to his or her employee … an accurate itemized statement in writing showing … (2) total hours worked by the employee ... and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee…

Plaintiffs allege that Martin Marietta violated Labor Code § 226(a)(9) by failing to pay its employees for all hours that they worked at the proper rate of pay. Plaintiffs allege that Martin Marietta violated Labor Code § 226(a)(2) by rounding hours and requiring its employees to work off-the-clock. Thus, Plaintiffs and Class Members are entitled to damages pursuant to Labor Code § 226(e)(1) of fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000). Martin Marietta contends that this claim

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

is derivative of the claims listed above and, as such, it must fail. (Emma Decl. ¶ 15.)

**E. Waiting Time Penalties**

Labor Code Section 201 requires that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Labor Code Section 202 states "[i]f an employee . . . quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter…" Labor Code Section 203 provides that, "[i]f an employer "willfully fails to pay wages due under sections 201 or 202, the wages of the employee shall continue as a penalty from the due date at the employee's usual rate until the wages owed are paid but not more than 30 days."

Plaintiffs allege that, due to (1) Martin Marietta's failure to pay employees for all hours worked and overtime at the proper rate, (2) Martin Marietta's requirement that employees perform work off-the-clock during meal and rest periods (and rounding of their meal periods and time records), and (3) Martin Marietta's failure to pay premiums for all late or short meal periods and miss rest periods, Martin Marietta failed to pay all wages owed to Plaintiffs and members of the Terminated Subclass upon separation of employment. (Emma Decl. ¶ 16.)

Martin Marietta contends that this claim is derivative of the claims listed above and, as such, it must fail. Martin Marietta further contends, *inter alia*, that any failure to pay final wages was not willful because a good faith dispute exists as to whether or not its employees were underpaid wages. (Emma Decl. ¶ 16; Cal. Code Regs., tit. 8, § 13520 ["A 'good faith dispute' that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist. Defenses presented which, under all the circumstances, are unsupported by any evidence, are unreasonable, or are presented in bad faith, will preclude a finding of a 'good faith dispute.'"].)

**F. Failure to Reimburse Business Expenses**

Labor Code Section 2802 requires an employer to reimburse its employees for all necessary business expenditures incurred by the employee in direct consequence of the discharge of job duties or in direct consequence of his or her obedience to the direction of the employer.

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

Plaintiffs allege that Martin Marietta did not reimburse employees for necessary business expenses, including for purchase of personal protective equipment such as steel toed boots. Martin Marietta denies that they failed to properly reimburse Plaintiffs and Class Members. (Emma Dec. ¶ 17.)

### G. Derivative Claims (UCL and PAGA)

Plaintiffs allege that, due to the conduct described above, Martin Marietta has violated California's Unfair Competition Law ("UCL"), codified in Cal. Bus. and Prof. Code § 17200 *et seq*. Plaintiffs also assert claims under the Private Attorneys General Act ("PAGA"), codified in Cal. Lab Code § 2698 *et seq*. Because Plaintiffs' UCL and PAGA claims are derived from the claims discussed above, the same arguments will apply. (Emma Decl. ¶ 18.)

## IV. KEY SETTLEMENT TERMS

### A. The Settlement Class

The Settlement Class consists of (1) all persons employed by Martin Marietta in the State of California in non-exempt positions at any time from June 20, 2022 through March 31, 2025 (the "Settlement Class" or "Settlement Class Members") and (2) all person who were employed by Martin Marietta in the State of California in non-exempt positions at any time from June 20, 2022 through March 31, 2025 (the "PAGA Group Employees")[2]. Members of the Settlement Class worked approximately 54,000 workweeks between June 20, 2022, and March 31, 2025. (Settlement ¶ 8.)

### B. Settlement Amount and Distribution

The Parties agreed to a non-reversionary settlement of $1,350,000 (the "Gross Settlement Amount"). (Settlement ¶ 3.1.) The amount that will be available for distribution to Class Members is the "Net Settlement Amount."[3] The Net Settlement Amount shall be the Gross

[2] The Class Period commences on June 20, 2022, because Martin Marietta's predecessor corporations settled prior class actions wherein Martin Marietta obtained a release through that date. (Emma Decl. ¶ __.) The Class Period's end date is subject to Escalator Provisions. (Settlement ¶ 8.1 and ¶ 8.2)

[3] The Settlement provides for two separate escalator provisions ("Escalator Provisions") which Martin Marietta may elect to utilize to extend the end date of the Class Period up until the date of preliminary approval, which would increase the Gross Settlement Amount and Net

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

Settlement Amount, less the following: costs of settlement administration, Class Counsel's attorneys' fees and costs, Plaintiffs' service fee awards, and the Labor and Workforce Development Agency ("LWDA")'s share of the PAGA Allocation. (Settlement ¶ 3.2.) The Net Settlement Amount shall be distributed among the participating Settlement Class Members (i.e., those who do not request exclusion) as follows: (1) 25% of the PAGA Amount shall be distributed to the PAGA Group Employee proportionate to the number of pay periods worked during the PAGA Period (defined as the period from June 20, 2022 through March 31, 2025); and (2) the remainder of the Net Settlement Amount shall be distributed to participating Settlement Class Members proportionate to the estimated number of workweeks they worked during the Class Period (defined as the period from June 20, 2022 through March 31, 2025). (Settlement ¶ 3.2.4.)

**C. Settlement Administration and Class Notice**

Administration fees and costs are estimated to be no more than $20,000. (Settlement ¶ 3.2.3.) The Settlement Class will have forty-five (45) calendar days to opt-out or object to the Settlement. (Settlement ¶ 7.4.4.) A copy of the proposed Notice is attached as Exhibit B to the Declaration of Leonard Emma. (Emma Decl. ¶ 20.)

**D. Attorneys' Fees, Costs and Class Representative Service Payment**

Class Counsel requests attorneys' fees not to exceed thirty-five percent (35%) of the Gross Settlement Amount, or $472,500.00 (subject to Defendants' election to increase the Gross Settlement Amount by utilizing the Escalator Provisions). Class Counsel requests reimbursement of litigation costs not to exceed $50,000. (Settlement ¶ 3.2.2.) Each Plaintiff requests a service payment of $10,000 for his service as a class representative. (Settlement ¶ 3.2.1.)

**E. PAGA Allocation**

$50,000 of the Gross Settlement Amount will allocated to PAGA penalties under Cal. Lab. Code § 2699 *et seq*. (Settlement ¶ 3.2.5.) Of this amount, $37,500 will be paid to the LWDA and the remainder will be distributed amongst PAGA Group Employee based on the estimated number

---

Settlement Amount. If Martin Marietta elects to utilize the Escalator Provisions, it must pay an additional twenty-five dollars ($25.00) per additional workweek, which is the per-workweek value of the negotiated settlement. (Settlement ¶¶ 8.1 & 8.2.)

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

of pay periods that they worked during the PAGA Period.[4] The proposed Settlement has been submitted to the LWDA pursuant to Cal. Lab. Code § 2699(l)(2). (Emma Decl. ¶ 21.)

**F. Release of Claims**

The release for Settlement Class Members who do not request exclusion is tailored to the claims and allegations at issue in the lawsuit. Participating Settlement Class Members agree to release any and all claims against Defendants for wage and hour claims and related wages, penalties and/or relief that were alleged or could have been alleged based on the factual allegations and claims in the operative complaint. (Settlement ¶ 5.1.)

**G. Tax Treatment**

For tax purposes, settlement payments shall be allocated as follows: (1) forty percent (40%) wages subject to reduction for payroll tax and withholding requirements and (2) sixty percent (60%) as interest and penalties. (Settlement ¶ 3.2.4.1.) Martin Marietta will separately pay its share of employer-side payroll taxes. (Settlement ¶ 3.1.)

**H. Unclaimed Residual**

Settlement checks shall be negotiable for a period of 180 calendar days. (Settlement ¶ 4.3.1.) Any settlement checks that are not negotiated within 180 calendar days shall be distributed California Controller's Unclaimed Property Fund in the name of the Class Member thereby leaving no "unpaid residue" subject to the requirements of California Code of Civil Procedure

---

[4] Class Counsel submits the amount allocated for distribution to the LWDA under PAGA is reasonable and should be approved by the Court. There is no articulated standard for approving PAGA settlements. The Court has discretion to award lesser civil penalties under Labor Code § 2699(e)(2), and PAGA settlements for as little as $0 have been approved. *See Nordstrom Com'n Cases*, 186 Cal. App. 4th 576, 589 (2010) (approving PAGA settlement and release that allocated $0 to PAGA claim). Courts routinely approve PAGA settlements of $20,000 or less. *See, e.g., Hicks v. Toys 'R' Us–Delaware, Inc.*, No. 13-cv-1302-DSF (Dkt. 7 at p. 2), 2014 WL 4703915, at *1 (C.D. Cal. Sept. 2, 2014) (approving $5,000 PAGA payment in a case involving $4 million settlement); *Franco v. Ruiz Food Prods., Inc.*, 10-cv-02354-SKO (Dkt. 53 at p. 4), 2012 WL 5941801 at *14 (E.D. Cal. Nov. 27, 2012) (approving PAGA penalties of $10,000 as part of $2.5 million settlement); *Chu v. Wells Fargo Invest. LLC,* 05-cv-04526-MHP (Dkt. 128 at pp. 2-3), 2011 WL 672645, at *1 (N.D. Cal. Feb. 16, 2011) (approving PAGA payment of $7,500 in $6.9 million settlement); *Williams v. Brinderson Constructors*, 15-cv-02474-MWF (Dkt. 50 at pp. 9-10), 2017 WL 490901, at *5 (C.D. Cal. Feb. 6, 2017) ($10,000 PAGA settlement in $300,000 settlement). (Emma Decl. ¶ __.)

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

Section 384, subd. (b). (Settlement ¶ 4.3.3.)

## V. THE SETTLEMENT MEETS PRELIMINARY APPROVAL CRITERIA

A class action may not be dismissed, compromised, or settled without approval of the Court. *See* Cal. Civ. Code § 1781(f). The three-step procedure of preliminary approval, dissemination of notices to all class members, and a final settlement approval hearing serves class members' procedural due process rights and the court's role as the guardian of class members' interests. *See* Cal. Rule of Court 3.769; 4 Conte & Newberg, Newberg on Class Actions, §11.22 *et seq*. (4th Ed. 2002) ("4 Newberg"). Preliminary approval is warranted if the settlement falls within "the range of reasonableness." *See North County Contractor's Assn., Inc. v. Touchstone Ins. Services*, 27 Cal. App. 4th 1085, 1089-1090 (1994); *See also* 4 Newberg, § 11.25.

### A. Evaluation of the Settlement Supports Approval

The settlement should be fair, reasonable, and adequate for class members overall. *Dunk v. Ford Motor Co*., 48 Cal. App. 4th 1794, 1801 (2008). The law favors settlement, particularly in complex class actions where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *See* 4 Newberg § 11:41; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976); *see also Potter v. Pac. Coast Lumber Co*., 37 Cal. 2d 592, 602 (1951). To make the fairness determination, the court considers several factors, including "the strength of plaintiff's case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, [and] the experience and views of counsel […]." *Kullar v. Foot Locker Retail Inc.,* 168 Cal. App. 4th 116, 128 (2008) (quoting *Dunk*, 48 Cal. App. 4th at 1801).

#### 1. Settlement is the Result of Arm's-Length Bargaining

Courts presume the absence of fraud or collusion in the negotiation of a settlement unless evidence to the contrary is offered. There is a presumption that negotiations were conducted in good faith. Newberg, §11.51; *In re Microsoft I–V Cases*, 135 Cal. App. 4th 706, 723 (2006), *7–Eleven Owners for Fair Franchising v. Southland Corp*., 85 Cal. App. 4th 1135, 1146 (2000). As discussed above, the Settlement was negotiated at arm's length before an experienced mediator.

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

There was no fraud or collusion in the negotiation of the Settlement. (Emma Decl. ¶ 10.)

**2. Settlement Reached After Sufficient Investigation and Discovery**

As discussed above, Class Counsel conducted discovery, analyzed a wealth of evidence, engaged an expert, and thoroughly investigated claims prior to mediating. Class Counsel is sufficiently familiar with the facts and applicable laws to make an informed judgment as to the fairness of the Settlement. (Emma Decl. ¶ 10.)

**3. Class Counsel is Experienced and Recommends Settlement**

While the recommendations of counsel are not conclusive, the Court can properly take them into account, particularly where, as here, counsel have been involved in litigation for some period of time, have experience with this type of litigation, and have obtained substantial data from the opposing party. *See* Newberg, §11.47. Class Counsel began working on this matter in September 2022, and has been actively engaged with the case for nearly 3 years. Class Counsel has considerable experience with wage and hour class action litigation.[5] As discussed above, Class Counsel obtained and analyzed substantial data prior to agreeing to resolve the case. Class Counsel recommends that the Court approve the Settlement. (Emma Decl. ¶ 9.)

**4. The Settlement Avoids Risks Inherent in Further Litigation**

Despite the arguments advanced by Defendants, Plaintiffs and Class Counsel believe the action has merit. However, Plaintiffs and Class Counsel acknowledge the uncertainty inherent in litigation, as well as the difficulties and delays inherent in complex class action litigation, such as obtaining and maintaining certification through trial and the expense and length of continued proceedings necessary to prevail through litigation, pre-trial motions, trial, and appeals. Plaintiffs and Class Counsel are also aware of the burdens of proof to establish liability, Defendants' defenses thereto, and the challenges in establishing entitlement to monetary relief. The Settlement avoids such risks. (Emma Decl. ¶ 23.)

---

[5] Leonard Emma has been practicing in California for over 21 years and has served as class counsel in dozens of wage and hour class action matters during this time. (Emma Decl. ¶ 22.) Joseph Lavi has served as counsel in over 50 wage and hour class action matters during this time. (Aroeste Decl. ¶ 3.)

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

**5. The Settlement Provides Substantial Value to the Class**

A settlement is not judged against what might have been recovered had a plaintiff prevailed at trial, nor does the settlement have to provide 100% of the damages sought to be fair and reasonable. *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (2001) ("[c]ompromise is inherent and necessary in the settlement process . . . even if the relief afforded by the proposed settlement is substantially narrower than it would be if the suits were to be successfully litigated, this is no bar to a class settlement because the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation").

If Plaintiffs and the Settlement Class were to prevail on all claims, with all factual findings and legal inferences being drawn in their favor, Class Counsel estimates that class-wide damages would max out at approximately $6,486,480.00. (Emma Decl. ¶ 24.) Class Counsel submits that this Settlement of $1,350,000 represents approximately 20% of the realistic maximum potential recovery and is an excellent result for the Settlement Class given the risks of continued litigation. (*Id.*) The basis for this estimate is provided below.

Overtime Pay and Off-the-Clock Violations: Defendants' alleged Overtime Pay and Off-the-clock violations are predicated on Defendants' alleged failure to accurately pay Settlement Class Members for all hours they worked, including relieving employees of all work during meal breaks (while they are "off-the-clock"). Thus, class members must be paid for these hours worked at their regular (or overtime) rate of pay. Based on the wage and hour records produced by Defendants, witness interviews conducted by Class Counsel, and the statute of limitations, Plaintiffs estimate that Defendants' maximum potential exposure for off-the-clock violations is $443,880.00. (Emma Decl. ¶ 24a.)

Meal and Rest Period Penalties: Meal and rest period penalties are calculated at the rate of one hour of pay per missed meal or rest period. Based on the wage and hour records produced by Defendants, analysis conducted by Plaintiffs' expert, witness interviews conducted by Class Counsel, and the statute of limitations, Plaintiffs estimate that Defendants' maximum realistic potential exposure for meal and rest period violations is $1,890,000.00. (Emma Decl. ¶ 24b.)

Wage Statement Penalties: Wage statement penalties are calculated at $50.00 for the first

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

violation and $100.00 for each subsequent violation, up to a maximum of $4,000 per person. Cal. Lab. Code § 226(e). Based on the wage and hour records produced by Defendants and the statute of limitations for this claim, Plaintiffs estimates that Defendants' maximum potential exposure for derivative wage statement penalties is $1,200,000. (Emma Decl. ¶ 24c.)

<u>Waiting Time Penalties</u>: California provides for penalties to workers who are not paid all wages due at termination. These "waiting time penalties" are in the amount of wages and accrue for a maximum of 30 days. Cal. Lab. Code § 201-203. Based on the wage and hour records produced by Defendants, Plaintiffs estimate that Defendants' maximum potential exposure for derivative waiting time penalties is $2,847,600. (Emma Decl. ¶ 24d.)

<u>Business Expenses</u>: California requires that employers reimburse necessary business expenses including for purchase of personal protective equipment. Cal. Lab. Code § 2802. Plaintiffs estimate that Defendants' maximum potential exposure is $105,000. (Emma Decl. ¶ 24 e.)

Class Counsel submits that the settlement amount of $1,350,000 falls within the normal range for settlements of wage and hour disputes of this size and concerning these types of issues and facts. The average recovery per employee will exceed $775, with many Settlement Class Members receiving much more. (Emma Decl. ¶ 25.)

**B. The Proposed Class Notice Satisfies Due Process**

To protect the rights of absent class members, the court must provide the best notice practicable of a potential class action settlement. *See Phillips Petroleum Co. v. Shuts*, 472 U.S. 797, 811-12 (1985); *Eisner v. Carlisle & Jacquelyn*, 417 U.S. 156, 174-175 (1974). *See* Rule of Court 3.769(f); *Philips Petroleum Co*. 472 U.S. at 811-12 (1985) ("best practicable" notice provides a description of the litigation and explanation of the right to opt out or object); *Mulvane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950) (best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections"). The proposed Notice meets this standard and is attached to the Declaration of Leonard Emma as Exhibit B.

The Notice describes the litigation, the terms of the Settlement, and the right of Settlement

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

Class Members to opt-out or object. The Notice provides an estimate of the amount of money they will receive under the Settlement. The Notice includes contact information for Class Counsel and Atticus Administration LLC so Settlement Class Members may obtain more information. The Notice specifies the date, time and location of the final approval hearing, and explains the process of objecting and/or appearing at the final approval hearing. *See* Cal. Rules of Court 3.769(f). The Notice fulfills the requirement of neutrality in class notices. *See* 4 Newberg § 8:39. (Emma Decl. ¶ 26.)

Defendants will provide the Administrator with information for each Settlement Class Member such that Administrator may calculate estimated payments and mail the Notice. (Settlement ¶¶ 4.1, 7.4.2.) The Administrator will perform address verifications and updates prior to mailing. (Settlement ¶ 7.4.2.) Settlement Class Members will have 45 calendar days to opt-out of, or object to, the Settlement. (Settlement ¶ 7.4.4.)

**C. Proposed Service Payment, Attorneys' Fees, and Costs are Justified**

Plaintiffs will request $10,000 each for their service to the Settlement Class. Class representative service payments are justified by numerous public policies. *See Clark v. American Residential Services LLC*, 175 Cal. App. 4th 785, 804 (2009). "Since without a named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit could be thought the equivalent of the lawyers' nonlegal but essential case-specific expenses, such as long-distance phone calls, which are reimbursable.'" *Id.* [citation omitted].

Pursuant to the terms of the Settlement, Class Counsel may request up to thirty-five percent (35%) of the common fund for attorneys' fees. California courts recognize that an appropriate method for awarding attorneys' fees in class actions is to award a percentage of the "common fund" created by the settlement. *Wershba*, 91 Cal. App. 4th at 254 (recognizing both the "percentage of recovery" and "lodestar/ multiplier" methods).

Historically, attorneys' fee awards in common fund cases in general range from 20% to 50% of the fund, depending on the circumstances of the case. *See* Newberg on Class Actions, (3rd Ed.), 1992, §14.03 (finding 50% to be the upper limit). Awards ranging between 30% and

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

40% of the fund are generally approved as reasonable in wage and hour settlements below $10 million:

> More particularly, courts may award attorneys fees in the 30-40% range in wage and hour class actions that result in recovery of a common fund under $10 million. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-492 (E.D. Ca. 2010) (citing to five recent wage and hour class actions where federal district courts approved attorney fee awards ranging from 30 to 33%); *Singer v. Becton Dickenson and Co.*, 2010 U.S. Dist. LEXIS 53416, 2010 WL 2196104, *8 (S.D. Ca. June 1, 2010) (approving attorney fee award of 33.33% of the common fund and holding that award was similar to awards in three other wage and hour class action cases where fees ranged from 33% to 40%); *Romero v. Producers Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270, 2007 WL 3492841 (E.D. Ca. Nov. 14, 2007).

*See Martin v. Ameripride Servs.*, 2011 U.S. Dist. LEXIS 61796 at *22-23 (S.D. Cal. 2011). Plaintiffs' request of thirty-five percent (35%) of the settlement sum for attorneys' fees is within established rates for fee awards in class settlements pursuant to the common fund doctrine, especially in light of the excellent results achieved in this case. *See In re Activision Sec. Litigation*, 723 F.Supp. 1373, 1379 (N.D. Cal. 1989); *Watson v. Raytheon Company*, USDC Southern District, Case No. 3:10-cv-00634; *Dirienzo v. Dunbar Armored, Inc.*, USDC Southern District, Case No. 3:09-cv-02745; *Green, et al. v. Penske Logistics, L.L.C., et al.*, USDC Southern District, Case No. 3:09-cv-00069; *Benitez et al. v. Wilbur*, USDC Eastern District, Case No. 1:08-cv-01122; *Chavez et al. v. Petrissans et al.,* USDC Eastern District, Case No. 1:08-cv-00122; *Willis et al. v. Cal-Western Transport,* USDC Eastern District, Case No. 1:00-cv-05695.

Class Counsel seeks reimbursement of necessary litigation costs in an amount not to exceed $50,000. (Settlement ¶ 3.2.2.) Reimbursement of costs in a common fund case is "grounded in 'the historic power of equity to permit the trustee of a fund or property, or a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorneys' fees, from the fund or property.'" *Serrano v. Priest*, 20 Cal. 3d 25, 35 (1977) (citing *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 257 (1995)).

Plaintiffs will present evidence supporting these payments following completion of the notice procedure. Unless otherwise ordered by the Court, Plaintiffs will file their Motion for Attorneys' Fees, Costs and Service Payments to be heard contemporaneously with Plaintiffs'

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

Motion for Final Approval. (Emma Decl. ¶ 27.)

## VI. CONDITIONAL CLASS CERTIFICATION IS APPROPRIATE

Conditional class certification is proper at the preliminary approval stage where, as here, the class has not previously been certified and the requirements for certification are at least arguably met. 4 Newberg § 11.22. The purpose of conditional class certification is to facilitate distribution of notice and the final approval hearing. *See Manual for Complex Litigation*, § 30.41.

### A. The Class is Numerous and Ascertainable

Martin Marietta has ascertained the Settlement Class from its records and represents that members of the Settlement Class worked approximately 54,000 and there are approximately 1,012 Settlement Class Members during the Class Period. (Settlement ¶ 8; Emma Decl. ¶ 28.) Given the large number of Settlement Class Members, joinder would be impracticable. *Linder vs. Thrifty Oil,* 23 Cal. 4th 429, 435 (2000). (*Id.*)

### B. The Community of Interest Requirement is Met

The second requirement is a well-defined community of interest in the questions of law and fact involved in the case. This turns on three factors, including whether a common question of law or fact exists among the class members, whether the class representatives present claims that are typical of the class, and whether the representatives will adequately represent the class as a whole. *Lockheed Martin Corp. v. Super. Court,* 29 Cal. 4th 1096, 1104 (2003).

The claims herein are suited for certification because they concern company policies and practices that uniformly apply to all class members. For example, Martin Marietta's form of wage statement does not vary from employee to employee -- the same information is contained in every wage statement issued to every employee. Similarly, Martin Marietta's method of tracking employee time does not vary from employee to employee -- the same method is used for all employees. Furthermore, the laws that are implicated by Plaintiffs' allegations do not vary from employee to employee. Thus, common questions of fact and law predominate. (Emma Decl. ¶ 29.)

Plaintiffs' claims are typical of the Settlement Class. The test is "whether other [class] members have the same or similar injury, whether the action is based on conduct which is not

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

unique to the Plaintiffs and whether other class members have been injured by the same course of conduct." *Seastrom v. Neways, Inc.,* 149 Cal. App. 4th 1496, 1502 (2007). Plaintiffs' certification allegations are based on: (1) Defendants' alleged failure to properly pay the Settlement Class all wages due; (2) Defendants' alleged failure to provide compliant meal and rest periods; (3) Defendants' alleged failure to pay for hours worked while clocked out for meal periods; (4) Defendants' failure to provide accurate records, including wage statements; (5) Defendants' alleged failure to timely pay wages at separation; and (6) Defendants' alleged failure to reimburse necessary business expenses. This conduct is not unique to Plaintiffs because it was uniformly applied to all Settlement Class Members. Thus, Plaintiffs present claims that are typical of the Settlement Class. (Emma Decl. ¶ 30.)

Plaintiffs have and will continue to adequately represent all Settlement Class Members as a whole. Plaintiffs retained firms with extensive experience as lead counsel or co-lead counsel in dozens of wage and hour class actions. Plaintiffs have actively facilitated the prosecution of this action on behalf of all Class Members for almost three years now. Plaintiffs and Class Counsel have no conflicts of interest. (Emma Decl. ¶ 31.)

### C. Class Action is Superior

Courts have held that a "class action also must be the superior means of resolving the litigation, for both the Parties and the court." *Aguiar v. Cintas Corporation No. 2,* 144 Cal. App. 4th 121, 132-33 (2006). In this case, all Settlement Class Members are resolving their claims in one forum, at one time, without the expense or possibility of inconsistent results that could result from adjudicating hundreds of claims across multiple tribunals. The denial of a class-wide resolution would result in an unjust advantage to Defendants, in that Defendants would not have to account to Settlement Class Members for the violations of law alleged herein (unless each Settlement Class Member were to pursue an individual claim of his or his own, which is unlikely given the modest sums at stake per person). For these and other reasons, a class resolution is the superior means of resolving the litigation.

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

**VII. <u>FINAL APPROVAL HEARING SHOULD BE SCHEDULED</u>**

The last step in the settlement approval process is the formal final approval hearing, at which the Court may hear any further evidence and argument necessary to evaluate the proposed Settlement. *See* Cal. Rules of Court 3.769(b). Given the timeframes provided for in the Settlement, a final approval hearing should be scheduled to take place no sooner than February 27, 2026. Plaintiffs therefore request a final approval hearing on February 27, 2026, or as soon thereafter as the Court is available to hear the motion, at which time Plaintiffs request that the Court also consider their anticipated concurrent motion for attorneys' fees, costs and service payment. (Emma Decl. ¶ 32.)

**VIII. <u>CONCLUSION</u>**

The Settlement has been shown to be fair, adequate and reasonable. Plaintiffs respectfully request that the Court grant preliminary approval and set a final approval hearing.

Respectfully submitted,

Dated: August 29, 2025

EMPLOYMENT LAWYERS

[signature]

Leonard Emma
Attorneys for Plaintiffs

EXHIBIT C

**EMPLOYMENT LAWYERS**
LEONARD EMMA (SBN 224483)
lemma@employment-lawyers.com
CODY STROMAN (SBN 303413)
cstroman@employment-lawyers.com
1999 Harrison Street, 18th Floor
Oakland, CA 94612
Tel: (415) 362-1111

**LAVI & EBRAHIMIAN, LLP**
JOSEPH LAVI, ESQ. (SBN 209776)
Email: jlavi@lelawfirm.com
VINCENT C. GRANBERRY, ESQ. (SBN 276483)
vgranberry@lelawfirm.com
ALEXANDER J. AROESTE, ESQ. (SBN 332653)
aaroeste@lelawfirm.com
8889 W. Olympic Boulevard, Suite 200
Beverly Hills, California 90211
Telephone: (310) 432-0000

Attorneys for Plaintiffs
AUSTEN SHWIYHAT and
WALTER RAINES

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN JOAQUIN**

AUSTEN SHWIYHAT and WALTER RAINES, on behalf of themselves, all others similarly situated, and the State of California as private attorneys general,

Plaintiff,

vs.

MARTIN MARIETTA MATERIALS, INC.; MARTIN MARIETTA NORTHERN CALIFORNIA AGGREGATES, LLC; and DOES 1 through 100, inclusive,

Defendants.

Case No. STK-CV-UOE-2025-0010132

**DECLARATION OF LEONARD EMMA IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

I, Leonard Emma, declare as follows:

1. I am an attorney duly licensed to practice law in the State of California and before this Court. I am an attorney with Emma Law, P.C. dba Employment Lawyers, attorneys of record for Plaintiffs Austen Shwiyhat and Walter Raines (collectively, "Plaintiffs").

2. I have personal knowledge of the matters stated herein and, if called upon to testify as a witness, could and would competently testify thereto. I submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

3. Plaintiffs seek preliminary approval of a proposed settlement of wage and hour claims on behalf of themselves and the putative class against Defendants Martin Marietta Materials, Inc. and Martin Marietta Northern California Aggregates, LLC (collectively, "Martin Marietta" and/or "Defendants") (Plaintiffs and Defendants are collectively referred to herein as the "Parties"), upon the terms and conditions set out in the Class Action and PAGA Settlement Agreement ("Settlement"). A true and correct copy of the Settlement is attached hereto as **Exhibit A**. The Settlement provides for a fund of at least $1,350,000.00.

4. Plaintiffs worked for Martin Marietta as non-exempt hourly employees within California. Plaintiffs and other employees were entitled to the protections of the California Labor Code, including the following: (1) payment of overtime wages; (2) payment for all hours worked; (3) entitlement to meal periods; (4) entitlement to rest periods; (5) accurate record keeping; (6) accurate wage statements; (7) payment of timely final wages; and (8) reimbursement of necessary business expenses.

5. Defendant Martin Marietta Materials, Inc., is a North Carolina Corporation and Martin Marietta Northern California Aggregates is a Delaware Limited Liability Company. Defendants were and are doing business in San Joaquin County, California.

6. On December 6, 2022, Plaintiff Shwiyhat commenced his action by filing a Complaint alleging a PAGA cause of action against Martin Marietta for (1) failure to properly calculate and properly pay overtime wages, (2) failure to compensate for all hours worked (off-

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

the-clock work); (3) failure to provide meal periods, (4) failure to provide rest periods, (5) failure to maintain accurate records; (6) failure to furnish accurate itemized wage statements, and (7) failure to pay final wages on time. On January 19, 2023, Martin Marietta removed Plaintiff Shwiyhat's action to the Northern District of California, where it is currently pending.

7. On June 5, 2023, Plaintiff Raines filed a separate action against Martin Marietta in San Joaquin County Superior Court for (1) failure to properly pay wages including for all hours worked at minimum wage; (2) failure to pay reporting time pay; (3) failure to provide meal periods; (4) failure to furnish accurate wage statements; (5) failure to pay final wages on time; and (6) unfair business practices. On August 15, 2023, Plaintiff Raines also filed a separate PAGA action for the same claims in the San Joaquin County Superior Court. Martin Marietta removed Raines' action to Eastern District of California, and Plaintiff Raines has since filed a consolidated class and PAGA complaint, which was dismissed upon the filing of the instant action. The instant action consolidates both Shwiyhat's and Raines' claims against Martin Marietta into a single action.

8. Plaintiffs allege the following wage and hour class action claims against Martin Marietta: (1) Failure to Properly Calculate and/or Pay Overtime Wages; (2) Failure to Compensate for All Hours Worked; (3) Failure to Provide Meal Periods; (4) Failure to Provide Rest Periods; (5) Failure to Maintain Accurate Records; (6) Failure to Furnish Compliant Wage and Hour Statements; (7) Failure to Pay Final Wages on Time; (8) Failure to Reimburse Business Expenses; and (9) Unfair Business Practices. Plaintiffs also bring a cause of action under the Private Attorneys General Act ("PAGA"), which is predicted on these class claims. Defendants deny Plaintiffs' allegations.

9. The Parties have conducted discovery and investigation of the facts and law at issue in this matter. Such discovery and investigation have included, *inter alia*: (1) propounding and responding to written discovery (including extensive special interrogatories to Martin Marietta, and extensive document requests to Martin Marietta); (2) depositions of Martin

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

Marietta's persons most knowledgeable; (3) interviewing Plaintiffs and putative class members; (4) production and review of thousands of pages of documents; (5) production and review of class member wage and hour records, including but not limited to pay stubs and time sheets containing clocking data and wage data; (6) engagement of an expert statistician; (7) development of a class-wide damages model; and (8) legal research into the merits and certifiability of Plaintiffs' claims. Class Counsel recommends that the Court approve the Settlement.

10. On October 22, 2024, the Parties mediated this matter before Jill Sperber -- a highly experienced and well-regarded mediator in wage and hour employment litigation. After a full day of mediation, the Parties continued to negotiate through Ms. Sperber and accepted her recommended to resolve the matter on November 18, 2024. The Parties entered into a binding MOU and continued to negotiate the details of their agreement in a long-form settlement agreement, which was finalized in July 2025. There was no fraud or collusion in the negotiation of the Settlement.

11. Plaintiffs allege that Martin Marietta required Plaintiffs and Class Members to work "off-the-clock" during meal periods and did not otherwise pay employees for all time spent working. Accordingly, Plaintiffs allege that employees were not properly paid for all work in excess of eight hours in one workday and in excess of 40 hours in a workweek (as well as the first eight hours worked on the seventh day of work in any one workweek) at the rate of one and one-half times the regular rate of pay no less than twice the regular rate of pay for work in excess of 12 hours in one day or for work in excess of eight hours on any seventh day of a workweek. In addition, Plaintiffs allege that employees' regular rate of pay did not incorporate all remuneration which they were entitled. Martin Marietta contends that it properly paid all employees for overtime.

12. Plaintiffs allege that Martin Marietta had a policy and practice of not permitting employees to take legally compliant meal and rest periods. Plaintiffs allege that Martin Marietta expected employees to work through their breaks to meet business requirements. Due to this

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

expectation, Plaintiffs allege that employees were routinely unable to take full 30-minute meal periods. In addition, Plaintiffs allege that Martin Marietta did not always authorize or permit employees to take meal periods at all or within the first five hours of their shifts. Plaintiffs further allege that employees were not consistently provided with compliant 10-minute rest breaks. Plaintiffs allege that, despite these practices, Martin Marietta did not properly pay premium payments to employees for its failure to provide meal and rest periods.

13. Martin Marietta contends that its meal and rest period policies are compliant with California law and that all employees are provided with meal and rest breaks required by law and that Martin Marietta properly provided premium payments for missed meal and rest periods. Martin Marietta contends that, at trial, Class Members will testify to their ability to take compliant meal and rest breaks.

14. Plaintiffs allege that Martin Marietta failed to accurately record and pay Class Members for all hours worked by "rounding" hours worked, requiring employees to work "off-the-clock" when their meal periods were interrupted or truncated, and not paying employees for calling in prior to their shifts. Martin Marietta contends that it did not require employees to work "off-the-clock," contends that any rounding of hours worked inured to the benefit of its employees, and otherwise properly compensated employees for all time spent working as required by California law.

15. Plaintiffs allege that Martin Marietta violated Labor Code § 226(a)(9) by failing to pay its employees for all hours that they worked at the proper rate of pay. Plaintiffs allege that Martin Marietta violated Labor Code § 226(a)(2) by rounding hours and requiring its employees to work off-the-clock. Thus, Plaintiffs and Class Members are entitled to damages pursuant to Labor Code § 226(e)(1) of fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000). Martin Marietta contends that this claim is derivative of the claims listed above and, as such, it must fail.

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

16. Plaintiffs allege that, due to (1) Martin Marietta's failure to pay employees for all hours worked and overtime at the proper rate, (2) Martin Marietta's requirement that employees perform work off-the-clock during meal and rest periods (and rounding of their meal periods and time records), and (3) Martin Marietta's failure to pay premiums for all late or short meal periods and miss rest periods, Martin Marietta failed to pay all wages owed to Plaintiffs and members of the Terminated Subclass upon separation of employment. Martin Marietta contends that this claim is derivative of the claims listed above and, as such, it must fail. Martin Marietta further contends, *inter alia*, that any failure to pay final wages was not willful because a good faith dispute exists as to whether or not its employees were underpaid wages.

17. Plaintiffs allege that Martin Marietta did not reimburse employees for necessary business expenses, including for purchase of personal protective equipment such as steel toed boots. Martin Marietta denies that they failed to properly reimburse Plaintiffs and Class Members.

18. Plaintiffs allege that, due to the conduct described above, Martin Marietta has violated California's Unfair Competition Law ("UCL"), codified in Cal. Bus. and Prof. Code § 17200 *et seq.* Plaintiffs also assert claims under the Private Attorneys General Act ("PAGA"), codified in Cal. Lab Code § 2698 *et seq.* Because Plaintiffs' UCL and PAGA claims are derived from the claims discussed above, the same arguments will apply.

19. The Settlement Class consists of (1) all persons employed by Martin Marietta in the State of California in non-exempt positions at any time from June 20, 2022 through March 31, 2025 (the "Settlement Class" or "Settlement Class Members") and (2) all person who were employed by Martin Marietta in the State of California in non-exempt positions at any time from June 20, 2022 through March 31, 2025 (the "PAGA Group Employees"). Members of the Settlement Class worked approximately 54,000 workweeks between June 20, 2022, and March 31, 2025. (Settlement ¶ 8.)

20. A true and correct copy of the proposed Notice is attached hereto as **Exhibit B.**

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

21. The proposed Settlement has been submitted to the LWDA pursuant to Cal. Lab. Code § 2699(l)(2). Class Counsel submits the amount allocated for distribution to the LWDA under PAGA is reasonable and should be approved by the Court. There is no articulated standard for approving PAGA settlements. The Court has discretion to award lesser civil penalties under Labor Code § 2699(e)(2), and PAGA settlements for as little as $0 have been approved. *See Nordstrom Com'n Cases*, 186 Cal. App. 4th 576, 589 (2010) (approving PAGA settlement and release that allocated $0 to PAGA claim). Courts routinely approve PAGA settlements of $20,000 or less. *See, e.g., Hicks v. Toys 'R' Us–Delaware, Inc*., No. 13-cv-1302-DSF (Dkt. 7 at p. 2), 2014 WL 4703915, at *1 (C.D. Cal. Sept. 2, 2014) (approving $5,000 PAGA payment in a case involving $4 million settlement); *Franco v. Ruiz Food Prods., Inc*., 10-cv-02354-SKO (Dkt. 53 at p. 4), 2012 WL 5941801 at *14 (E.D. Cal. Nov. 27, 2012) (approving PAGA penalties of $10,000 as part of $2.5 million settlement); *Chu v. Wells Fargo Invest. LLC,* 05-cv-04526-MHP (Dkt. 128 at pp. 2-3), 2011 WL 672645, at *1 (N.D. Cal. Feb. 16, 2011) (approving PAGA payment of $7,500 in $6.9 million settlement); *Williams v. Brinderson Constructors*, 15-cv-02474-MWF (Dkt. 50 at pp. 9-10), 2017 WL 490901, at *5 (C.D. Cal. Feb. 6, 2017) ($10,000 PAGA settlement in $300,000 settlement).

22. I have litigated this case for nearly three years now. I have considerable experience with this type of litigation. I have been practicing in California for over 21 years and have served as class counsel in dozens of wage and hour class action matters during this time. Some of these matters include the following:

- *Brewer v. General Nutrition Corporation*, 11-CV-03587-YGR (United States District Court, N.D. Cal.). Wage and hour class action on behalf of non-exempt sales associates and assistant managers alleging various wage and hour violations. The Court approved a class settlement.

- *Martinez v. Occidental Petroleum*, S1500CV282523 (Kern Superior Court). Class action on behalf of non-exempt plant employees alleging unpaid wages for off-the-clock work, meal and rest breaks, and derivative claims. The Court approved a class settlement.

- *Dillard v. Fidelity*, MSC18-00394 (Contra Costa Superior Court). Class action on behalf of non-exempt customer service representatives alleging wage and hour violations based on regular rate miscalculation. The Court approved a class

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

settlement.

- *Sampino v. Versace*, 16-CV-07198 (United States District Court, N.D. Cal.). Wage and hour class action on behalf of non-exempt retail store employees alleging various wage and hour violations. The Court approved a class settlement.
- *James v. Park 'N' Fly*, 17-CIV-05465 (San Mateo Superior Court). Class action on behalf of non-exempt employees of off-site airport parking company alleging wage and hour violations. The Court approved a class settlement.
- *Fernando v. Burroughs*, RG18906875 (Alameda Superior Court). Class action on behalf of non-exempt field service technicians alleging myriad wage and hour violations. The Court approved a class settlement.
- *Donald v. Xanitos,* 14-CV-05416 (United States District Court, N.D. Cal.). Wage and hour class action alleging that Defendant misclassified its environmental services supervisors as exempt employees and independent contractors. The Court approved a class settlement.
- *Amenya v. Henry Industries*, RG15754205 (Alameda Superior Court). Class action on behalf of drivers classified as independent contractors. Various wage and hour claims were asserted as a result of alleged misclassification. The Court approved a class settlement.
- *Buck v. Saputo Cheese USA*, VCU 256347 (Tulare Superior Court). Wage and hour class action on behalf of non-exempt plant production employees alleging off-the-clock violations, meal and rest period violations, and derivative claims. The Court approved a class settlement.
- *Newman v. All-Pro Bail Bonds*, RG16825571 (Alameda Superior Court). Class action on behalf of non-exempt bail agents alleging wage and hour violations. The Court approved a class settlement.
- *Carranza v. Arctic Glacier USA*, RG13692993 (Alameda Superior Court). Wage and hour class action on behalf of drivers and other non-exempt hourly employees alleging off-the-clock, meal period, rest period and derivative violations. The Court approved a class settlement.
- *Dilliehunt v. Togos,* RG14750133 (Alameda Superior Court). Wage and hour class action on behalf of store employees alleging off-the-clock violations, meal and rest period violations, and derivative claims. The Court approved a class settlement.
- *Villanueva v. Morpho Detection,* 13-CV-05390-HSG (United States District Court, N.D. Cal.). Wage and hour class action on behalf of service technicians alleging off-the-clock, missed meal/rest periods, and related violations. The Court approved a class settlement.
- *Kellenbenz v. Seton Medical Center,* CIV514600 (San Mateo Superior Court). Class action on behalf of registered nurses alleging failure to pay for all hours worked, missed meal/rest periods, and other wage and hour violations. The Court approved a class settlement.
- *Yoquelet v. Lindamood-Bell Learning Processes,* RG09460465 (Alameda Superior Court). Wage and hour class action on behalf of instructors alleging off-the-clock and rest period violations. The Court approved a class settlement.

- *Tinio v. Seton Medical Center,* CIV508557 (San Mateo Superior Court). Class action on behalf of certified nurse assistants and unit coordinators alleging failure to pay for all hours worked, missed meal/rest periods, and other wage and hour violations. The Court approved a class settlement.

- *Davison v. Academy of Art,* CGC-10-497727 (San Francisco Superior Court). Wage and hour class action alleging that Defendant misclassified its directed study advisors as exempt employees and independent contractors. The Court approved a class settlement.

- *Garcia v. Hoffman Southwest,* 37-2010-00094333-CU-OE-CTL (San Diego Superior Court). Wage and hour class action on behalf of service technicians. The Court approved a class settlement.

- *Robinson v. Nestle,* 30-2011-00463094-CU-OE-CXC (Orange County Superior Court). Wage and hour class action on behalf of route sales representatives. The Court approved a class settlement.

- *Lewis v. NAVCO,* RG09480367 (Alameda County Superior Court). Wage and hour class action on behalf of field service employees. The Court approved a class settlement.

- *McClellan v. SFN Group,* C10-05972 SBA (United States District Court, N.D. Cal.). Wage and hour class action on behalf of recruiters alleging unpaid overtime based on misclassification as exempt employees. The Court approved a class settlement.

- *Nettles v. Pitney Bowes,* RG08397421 (Alameda County Superior Court). Wage and hour class action on behalf of field service technicians alleging unpaid overtime, missed meal and rest breaks and related claims. The Court approved a class settlement.

- *Flores v. Zales,* CV-00539-TEH (United States District Court, N.D. Cal.). Class action on behalf of retail store managers classified by Defendant as exempt. Lawsuit alleged unpaid overtime, missed meal and rest breaks and related wage and hour claims. The Court approved a class settlement.

- *Stymest v. Bill Howe Plumbing,* 37-2007-00069216-CU-OE-CTL (San Diego County Superior Court). Wage and hour class action on behalf of service technicians alleging unpaid overtime, missed meal and rest breaks and related claims. The Court approved a class settlement.

- *Harris v. Kiddie Kandids,* C-08-0852-PJH-MEJ (United States District Court, N.D. Cal.). Class action on behalf of retail store managers classified by Defendant as exempt. Lawsuit alleged unpaid overtime, missed meal and rest breaks and related wage and hour claims. The Court approved a class settlement.

- *Ita v. Roto-Rooter,* CIV 462474 (San Mateo County Superior Court). Wage and hour class action on behalf of service technicians alleging unpaid overtime, missed meal and rest breaks and related claims. The Court approved a class settlement.

- *Tomerlin v. Berkeley Towing,* RG08421484 (Alameda County Superior Court). Wage and hour class action on behalf of tow truck drivers alleging unpaid overtime, missed meal and rest breaks and related claims. The Court approved a class settlement.

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

- *Perkins v. Exclusive Wireless*, 17CECG04108 (Fresno Superior Court). Class action on behalf of exempt and non-exempt employees of T-Mobile retailer alleging wage and hour violations. The Court approved a class settlement.
- *Nam v. Flexport*, CGC-18-565169 (San Francisco Superior Court). Class action on behalf of operations associates at technology company alleging exempt misclassification and derivative wage and hour violations. The Court approved a class settlement.
- *Derain Clark v. American Residential Services, LLC* (2009) 175 Cal.App.4th 785. Successfully appealed trial court's approval of class action settlement on behalf of objectors.
- *Serrone, et al. v. Adrienne Mattos Swim School, Inc., et al.* 23CV033052 (Alameda County Superior Court) Class action on behalf of non-exempt swim school employees alleging wage and hour violations. The Court approved a class and PAGA settlement.

23. Despite the arguments advanced by Defendants, Plaintiffs and Class Counsel believe the action has merit. However, Plaintiffs and Class Counsel acknowledge the uncertainty inherent in litigation, as well as the difficulties and delays inherent in complex class action litigation, such as obtaining and maintaining certification through trial and the expense and length of continued proceedings necessary to prevail through litigation, pre-trial motions, trial, and appeals. Plaintiffs and Class Counsel are also aware of the burdens of proof to establish liability, Defendants' defenses thereto, and the challenges in establishing entitlement to monetary relief. The Settlement avoids such risks.

24. If Plaintiffs and the Settlement Class were to prevail on all claims, with all factual findings and legal inferences being drawn in their favor, Class Counsel estimates that class-wide damages would max out at approximately $6,486,480.00. Class Counsel submits that this Settlement of $1,350,000 represents approximately 20% of the realistic maximum potential recovery and is an excellent result for the Settlement Class given the risks of continued litigation. The basis for this estimate is provided below.

a. <u>Overtime Pay and Off-the-Clock Violations</u>: Defendants' alleged Overtime Pay and Off-the-clock violations are predicated on Defendants' alleged failure to accurately pay Settlement Class Members for all hours they worked, including

EMPLOYMENT LAWYERS
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

relieving employees of all work during meal breaks (while they are "off-the-clock"). Thus, class members must be paid for these hours worked at their regular (or overtime) rate of pay. Based on the wage and hour records produced by Defendants, witness interviews conducted by Class Counsel, and the statute of limitations, Plaintiffs estimate that Defendants' maximum potential exposure for off-the-clock violations is $443,880.00.

b. Meal and Rest Period Penalties: Meal and rest period penalties are calculated at the rate of one hour of pay per missed meal or rest period. Based on the wage and hour records produced by Defendants, analysis conducted by Plaintiffs' expert, witness interviews conducted by Class Counsel, and the statute of limitations, Plaintiffs estimate that Defendants' maximum realistic potential exposure for meal and rest period violations is $1,890,000.00.

c. Wage Statement Penalties: Wage statement penalties are calculated at $50.00 for the first violation and $100.00 for each subsequent violation, up to a maximum of $4,000 per person. Cal. Lab. Code § 226(e). Based on the wage and hour records produced by Defendants and the statute of limitations for this claim, Plaintiffs estimates that Defendants' maximum potential exposure for derivative wage statement penalties is $1,200,000.

d. Waiting Time Penalties: California provides for penalties to workers who are not paid all wages due at termination. These "waiting time penalties" are in the amount of wages and accrue for a maximum of 30 days. Cal. Lab. Code § 201-203. Based on the wage and hour records produced by Defendants, Plaintiffs estimate that Defendants' maximum potential exposure for derivative waiting time penalties is $2,847,600.

e. Business Expenses: California requires that employers reimburse necessary business expenses including for purchase of personal protective equipment. Cal.

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

Lab. Code § 2802. Plaintiffs estimate that Defendants' maximum potential exposure is $105,000.

25. Class Counsel submits that the settlement amount of $1,350,000 falls within the normal range for settlements of wage and hour disputes of this size and concerning these types of issues and facts. The average recovery per employee will exceed $775, with many Settlement Class Members receiving much more.

26. The Notice describes the litigation, the terms of the Settlement, and the right of Settlement Class Members to opt-out or object. The Notice provides an estimate of the amount of money they will receive under the Settlement. The Notice includes contact information for Class Counsel and Atticus Administration LLC so Settlement Class Members may obtain more information. The Notice specifies the date, time and location of the final approval hearing, and explains the process of objecting and/or appearing at the final approval hearing. *See* Cal. Rules of Court 3.769(f). The Notice fulfills the requirement of neutrality in class notices. *See* 4 Newberg § 8:39.

27. Pursuant to protocol, Plaintiffs will present evidence supporting attorneys fees and costs following completion of the notice procedure. Unless otherwise ordered by the Court, Plaintiffs will file their Motion for Attorneys' Fees, Costs and Service Payments to be heard contemporaneously with Plaintiffs' Motion for Final Approval.

28. Martin Marietta has ascertained the Settlement Class from its records and represents that members of the Settlement Class worked approximately 54,000 and there are approximately 1,012 Settlement Class Members during the Class Period. Given the large number of Settlement Class Members, joinder would be impracticable.

29. The claims herein are suited for certification because they concern company policies and practices that uniformly apply to all class members. For example, Martin Marietta's form of wage statement does not vary from employee to employee -- the same information is contained in every wage statement issued to every employee. Similarly, Martin Marietta's

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

method of tracking employee time does not vary from employee to employee -- the same method is used for all employees. Furthermore, the laws that are implicated by Plaintiffs' allegations do not vary from employee to employee. Thus, common questions of fact and law predominate.

30. Plaintiffs' claims are typical of the Settlement Class. Plaintiffs' certification allegations are based on: (1) Defendants' alleged failure to properly pay the Settlement Class all wages due; (2) Defendants' alleged failure to provide compliant meal and rest periods; (3) Defendants' alleged failure to pay for hours worked while clocked out for meal periods; (4) Defendants' failure to provide accurate records, including wage statements; (5) Defendants' alleged failure to timely pay wages at separation; and (6) Defendants' alleged failure to reimburse necessary business expenses. This conduct is not unique to Plaintiffs because it was uniformly applied to all Settlement Class Members. Thus, Plaintiffs present claims that are typical of the Settlement Class.

31. Plaintiffs have and will continue to adequately represent all Settlement Class Members as a whole. Plaintiffs retained a firm with extensive experience as lead counsel or co-lead counsel in dozens of wage and hour class actions. Plaintiffs have actively facilitated the prosecution of this action on behalf of all Class Members for almost two years now. Plaintiffs and Class Counsel have no conflicts of interest.

32. Given the timeframes provided for in the Settlement, a final approval hearing should be scheduled to take place no sooner than February 27, 2026. Plaintiffs therefore request a final approval hearing on February 27, 2026, or as soon thereafter as the Court is available to hear the motion, at which time Plaintiffs request that the Court also consider their anticipated concurrent motion for attorneys' fees, costs and service payment.

33. I concurrently served the California Labor and Workforce Development Agency with a copy of the Settlement and Plaintiff's Motion for Preliminary Approval of Class Action Settlement and supporting papers.

**EMPLOYMENT LAWYERS**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Oakland, California, this 29th day of August 2025.



Leonard Emma

# EXHIBIT A

# CLASS ACTION AND PAGA SETTLEMENT AGREEMENT AND CLASS NOTICE

This Class Action and PAGA Settlement Agreement ("Agreement") is made by and between Plaintiffs Austen Shwiyhat ("Plaintiff Shwiyhat") and Walter L. Raines ("Plaintiff Raines") (together, the "Plaintiffs") and Defendants Martin Marietta Materials, Inc. and Martin Marietta Northern California Aggregates, LLC (collectively "MMM" or "Defendant"). The Agreement refers to Plaintiffs and Defendant collectively as "Parties," or individually as "Party."

1. **DEFINITIONS.**

1.1. "Action" means Plaintiff Austen Shwiyhat's lawsuit alleging wage and hour violations against Defendant currently pending in the Northern District of California, Case No. 24-CV-00283-JSC, and Plaintiff Walter L. Raines's lawsuit alleging wage and hour violations against Defendant currently pending in the Eastern District of California, Case No. 2:23-cv-01539-DJC-CKD. To effectuate approval of this Agreement, the Parties agree that Plaintiff Shwiyhat shall file a consolidated lawsuit in the San Joaquin County Superior Court in substantially the form contained in Exhibit A. Defendant will file a general denial answer within seven business days of receiving a file-stamped copy of the consolidated complaint filed in San Joaquin County Superior Court via email from Plaintiffs' counsel.

1.2. "Administrator" means Atticus Administration LLC, the neutral entity the Parties have agreed to appoint to administer the Settlement.

1.3. "Administration Expenses Payment" means the amount the Administrator will be paid from the Gross Settlement Amount to reimburse its reasonable fees and expenses in accordance with the Administrator's "not to exceed" bid submitted to the Court in connection with Preliminary Approval of the Settlement.

1.4. "Class" means a person employed by Defendant in California and classified as an hourly, non-exempt employee who worked for Defendant during the Class Period. Conditional Certification of the Class is a condition of settlement.

1.5. "Class Counsel" means Joseph Lavi, Vincent C. Granberry, Alexander J. Aroeste, and all lawyers affiliated with Lavi & Ebrahimian, LLP, and Leonard Emma, Cody Stroman, and all lawyers affiliated with Employment Lawyers.

1.6. "Class Counsel Fees Payment" and "Class Counsel Litigation Expenses Payment" mean the amounts allocated to Class Counsel for reimbursement of reasonable attorneys' fees and expenses, respectively, incurred to prosecute the Action.

1.7. "Class Data" means Class Member identifying information in Defendant's possession including the Class Member's name, last-known mailing address, Social Security number, and number of Class Period Workweeks and PAGA Pay Periods.

1.8. "Class Member" or "Settlement Class Member" means a member of the Class, as either a Participating Class Member or Non-Participating Class Member (including a Non- Participating Class Member who qualifies as an PAGA Group Employee).

1.9. "Class Member Address Search" means the Administrator's investigation and search



WLR

The signed document can be validated at https://app.vinesign.com/Verify

for current Class Member mailing addresses using all reasonably available sources, methods and means including, but not limited to, the National Change of Address database, skip traces, and direct contact by the Administrator with Class Members.

1.10. "Class Notice" means the COURT APPROVED NOTICE OF CLASS ACTION SETTLEMENT AND HEARING DATE FOR FINAL COURT APPROVAL, to be mailed to Class Members in English with a Spanish translation, without material variation, attached as Exhibit B and incorporated by reference into this Agreement.

1.11. "Class Period" means the period from June 20, 2022, through March 31, 2025 unless modified to expand or contract the Class Period pursuant to Paragraph 8 below.

1.12. "Class Representative" means the named Plaintiffs in the operative complaint in the Action seeking Court approval to serve as Class Representatives.

1.13. "Class Representative Service Payments" means the payments to the Class Representatives for initiating the Action and providing services in support of the Action.

1.14. "Court" means the Superior Court of California, County of San Joaquin.

1.15. "Defendant" means named Defendants Martin Marietta Materials, Inc. and Martin Marietta Northern California Aggregates, LLC.

1.16. "Defense Counsel" means Mike Birrer, Kelli Hinson, and Jordan Brownlow Perry of Carrington, Coleman, Sloman & Blumenthal LLP, and Cassandra Ferrannini and Daria Gossett of Downey Brand LLP.

1.17. "Effective Date" means the date by when both of the following have occurred: (1) the Court enters a Judgment on its Order Granting Final Approval of the Settlement; and (2) the Judgment is final. The Judgment is final as of the latest of the following occurrences: (a) if no Participating Class Member objects to the Settlement, the day the Court enters Judgment; (b) if one or more Participating Class Members objects to the Settlement, 61 days after the Court enters Judgment; or (c) if a timely appeal from the Judgment is filed, the day after the appellate court affirms the Judgment and issues a remittitur.

1.18. "Final Approval" means the Court's order granting final approval of the Settlement.

1.19. "Final Approval Hearing" means the Court's hearing on the Motion for Final Approval of the Settlement.

1.20. "Final Judgment" means the Judgment Entered by the Court upon Granting Final Approval of the Settlement.

1.21. "Gross Settlement Amount" means $1,350,000.00, which is the total amount Defendant agrees to pay under the Settlement except as provided in Paragraph 8 below. The Gross Settlement Amount will be used to pay Individual Class Payments, Individual PAGA Payments, the LWDA PAGA Payment, Class Counsel Fees, Class Counsel Litigation Expenses, Class Representative Service Payments and the Administration Expenses Payment.



WLR

1.22. "Individual Class Payment" means the Participating Class Member's pro rata share of the Net Settlement Amount calculated according to the number of Workweeks worked during the Class Period.

1.23. "Individual PAGA Payment" means the PAGA Group Employee's pro rata share of 25% of the PAGA Penalties calculated according to the number of Workweeks worked during the PAGA Period.

1.24. "Judgment" means the judgment entered by the Court based upon the Final Approval.

1.25. "LWDA" means the California Labor and Workforce Development Agency.

1.26. "LWDA PAGA Payment" means the 75% of the PAGA Penalties paid to the LWDA under Labor Code section 2699, subd. (i).

1.27. "Net Settlement Amount" means the Gross Settlement Amount, less the following payments in the amounts approved by the Court: Individual PAGA Payments, the LWDA PAGA Payment, Class Representative Service Payments, Class Counsel Fees Payment, Class Counsel Litigation Expenses Payment, and the Administration Expenses Payment. The remainder is to be paid to Participating Class Members as Individual Class Payments.

1.28. "Non-Participating Class Member" means any Class Member who opts out of the Settlement by sending the Administrator a valid and timely Request for Exclusion.

1.29. "PAGA Group Employee" means a person employed by Defendant in California and classified as an hourly, non-exempt employee who worked for Defendant during the PAGA Period.

1.30. "PAGA Pay Period" means any pay period during which a PAGA Group Employee worked for Defendant for at least one day during the PAGA Period.

1.31. "PAGA Period" means the period from June 20, 2022 through March 31, 2025, unless modified pursuant to Paragraph 8 below.

1.32. "PAGA" means the Private Attorneys General Act (Labor Code §§ 2698. et seq.).

1.33. "PAGA Notice" means Plaintiffs' letters to Defendant and the LWDA providing notice pursuant to Labor Code section 2699.3, subd.(a).

1.34. "PAGA Penalties" means the total amount of PAGA civil penalties to be paid from the Gross Settlement Amount, allocated 25% to the PAGA Group Employees ($12,500.00) and the 75% to the LWDA ($37,500.00) in settlement of PAGA claims.

1.35. "Participating Class Member" means a Class Member who does not submit a valid and timely Request for Exclusion from the Settlement.

1.36. "Plaintiffs" means Austen Shwiyhat and Walter L. Raines, the named Plaintiffs in the Action.

1.37. "Preliminary Approval Order" means the Court's Order Granting Preliminary Approval of the Settlement.

1.38. "Released Class Claims" means the claims being released as described in Paragraph 5.1 below.



WLR

1.39. "Released PAGA Claims" means the claims being released as described in Paragraph 5.2 below.

1.40. "Released Parties" means: Defendant and each of its former and present directors, officers, shareholders, owners, members, attorneys, insurers, predecessors, successors, joint employers, agents, and assigns.

1.41. "Request for Exclusion" means a Class Member's submission of a valid request to be excluded from the Class Settlement, prior to or by the Response Deadline.

1.42. "Response Deadline" means 45 calendar days after the Administrator mails Notice to Class Members and PAGA Group Employees, and is the last date on which Class Members may (a) fax, email, or mail Requests for Exclusion from the Settlement, or (b) fax, email, or mail Objection(s) to the Settlement. Class Members to whom Notice Packets are resent after having been returned undeliverable to the Administrator will have an additional 14 calendar days beyond the Response Deadline.

1.43. "Settlement" means the disposition of the Action effected by this Agreement and the Judgment.

1.44. "Workweek" means any week during which a Class Member worked for Defendant for at least one day during the Class Period.

2. **RECITALS.**

2.1. On December 6, 2022, Plaintiff Shwiyhat commenced his action by filing a Complaint alleging a PAGA cause of action against Defendant for (1) failure to properly calculate and properly pay overtime wages, (2) failure to compensate for all hours worked (off-the-clock work); (3) failure to provide meal periods, (4) failure to provide rest periods, (5) failure to maintain accurate records; (6) failure to furnish accurate itemized wage statements, and (7) failure to pay final wages on time. On January 19, 2023, Defendant removed Plaintiff Shwiyhat's action to the Northern District of California where it is currently pending. On June 5, 2023, Plaintiff Raines filed a separate class action in San Joaquin County Superior Court for (1) failure to properly pay wages including for all hours worked at minimum wage; (2) failure to pay reporting time pay; (3) failure to provide meal periods; (4) failure to furnish accurate wage statements; (5) failure to pay final wages on time; and (6) unfair business practices. On August 15, 2023, Plaintiff Raines also filed a separate PAGA action for the same claims in the San Joaquin County Superior Court. Defendant removed Raines' action to Eastern District of California and Plaintiff Raines has since filed a consolidated class and PAGA complaint where Plaintiff Raines's action is currently pending. Only for the purposes of effectuating and obtaining approval of this Agreement, the Parties agree that Plaintiffs Shwiyhat and Raines will file a consolidated complaint in the San Joquin County Superior Court alleging all claims and covering all Class Members to be released under this Agreement a copy of which is attached as Exhibit A to this Agreement (the "Operative Complaint"). Defendant denies Plaintiffs' allegations and denies any failure to comply with the law and denies



WLR

any and all liability for any and all causes of action alleged. Defendant will file a general denial answer within seven business days of receiving a file-stamped copy of the consolidated complaint filed in San Joaquin County Superior Court via email from Plaintiffs' counsel.

2.2. Pursuant to Labor Code section 2699.3,[ *former*] subd.(a), Plaintiffs gave timely written notice to Defendant and the LWDA by sending the PAGA Notice.

2.3. On October 22, 2024, Plaintiffs and Defendant participated in an all-day mediation presided over by Jill Sperber, which led to this Agreement to settle the Action.

2.4. Prior to mediation, Plaintiffs obtained, through informal discovery, time records, pay records, and information relating to the size and scope of the Class, as well as data permitting Plaintiffs to fully understand the nature and scope of the allegations in the Complaint. Plaintiffs' investigation was sufficient to satisfy the criteria for court approval set forth in *Dunk v. Foot Locker Retail, Inc.* (1996) 48 Cal.App.4th 1794, 1801 and *Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 129-130 ("*Dunk/Kullar*").

2.5. The Court has not granted class certification in any case defined in the Action.

2.6. The Parties represent that they are not aware of any other pending matter or action asserting claims that will be extinguished or affected by the Settlement.

3. **MONETARY TERMS.**

3.1. Gross Settlement Amount. Except as otherwise provided by Paragraph 8 below, Defendant promises to pay $1,350,000.00 and no more as the Gross Settlement Amount and to separately pay any and all employer payroll taxes owed on the Wage Portions of the Individual Class Payments. Defendant has no obligation to pay the Gross Settlement Amount (or any payroll taxes) prior to the deadline stated in Paragraph 4.3 of this Agreement. The Administrator will disburse the entire Gross Settlement Amount without asking or requiring Participating Class Members or PAGA Group Employees to submit any claim as a condition of payment. None of the Gross Settlement Amount will revert to Defendant.

3.2. Payments from the Gross Settlement Amount. The Administrator will make and deduct the following payments from the Gross Settlement Amount, in the amounts specified by the Court in the Final Approval:

3.2.1 To Plaintiffs: Class Representative Service Payment to the Class Representatives of not more than $10,000.00 each (in addition to any Individual Class Payment and any Individual PAGA Payment the Class Representatives are entitled to receive as Participating Class Members). Defendant will not oppose Plaintiffs' request for a Class Representative Service Payment that does not exceed this amount. If the Court approves a Class Representative Service Payment less than the amount requested, the Administrator will retain the remainder in the Net Settlement



WLR

Amount. The Administrator will pay the Class Representative Service Payment using IRS Form 1099.

3.2.2 To Class Counsel: A Class Counsel Fees Payment of not more than 35% of the Gross Settlement Amount, which is currently estimated to be $472,500.00, and a Class Counsel Litigation Expenses Payment of not more than $50,000.00. In the event that the escalator clause described in Paragraph 8 herein is triggered and the Gross Settlement Amount is increased, the amount of Class Counsel Fees Payment will increase in order to remain 35% of the Gross Settlement Amount. Defendant will not oppose requests for these payments provided that they do not exceed these amounts. If the Court approves a Class Counsel Fees Payment and/or a Class Counsel Litigation Expenses Payment less than the amounts requested, the Administrator will allocate the remainder to the Net Settlement Amount. The Administrator will pay the Class Counsel Fees Payment and Class Counsel Expenses Payment using one or more IRS 1099-MISC Form(s).

3.2.3 To the Administrator: An Administration Expenses Payment not to exceed $20,000 except for a showing of good cause and as approved by the Court. To the extent the Administrator's expenses are less or the Court approves payment less than $20,000, the Administrator will retain the remainder in the Net Settlement Amount.

3.2.4 To Each Participating Class Member: An Individual Class Payment calculated by (a) dividing the Net Settlement Amount by the total number of Workweeks worked by all Participating Class Members during the Class Period and (b) multiplying the result by each Participating Class Member's Workweeks.

3.2.4.1. Tax Allocation of Individual Class Payments. 40% of each Participating Class Member's Individual Class Payment will be allocated to settlement of wage claims (the "Wage Portion"). The Wage Portions are subject to tax withholding and will be reported on an IRS W-2 Form. The other 60% of each Participating Class Member's Individual Class Payment will be allocated to settlement of claims for interest and penalties (the "Non-Wage Portion"). The Non-Wage Portions are not subject to wage withholdings and will be reported on IRS 1099 Forms. Participating Class Members assume full responsibility and liability for any employee taxes owed on their Individual Class Payment.

3.2.4.2. Effect of Non-Participating Class Members on Calculation of Individual Class Payments. Non-Participating Class Members will not receive any Individual Class Payments. The Administrator will retain amounts equal to their Individual Class Payments in the Net Settlement Amount for distribution to Participating Class Members on a pro rata basis.



WLR

3.2.5 To the LWDA and PAGA Group Employees: PAGA Penalties in the amount of $50,000.00 to be paid from the Gross Settlement Amount, with 75% ($37,500.00) allocated to the LWDA PAGA Payment and 25% ($12,500.00) allocated to the Individual PAGA Payments.

3.2.5.1. The Administrator will calculate each Individual PAGA Payment by (a) dividing the amount of the PAGA Group Employees' 25% share of PAGA Penalties ($12,500.00) by the total number of PAGA Pay Periods worked by all PAGA Group Employees during the PAGA Period and (b) multiplying the result by each PAGA Group Employee's PAGA Pay Periods.

3.2.5.2. If the Court approves PAGA Penalties of less than the amount requested, the Administrator will allocate the remainder to the Net Settlement Amount. The Administrator will report the Individual PAGA Payments on IRS 1099 Forms.

3.2.6 In the event that the Court reduces or does not approve the requested Class Counsel Fees Payment and/or Class Litigation Expenses Payment, Class Counsel reserve their right to appeal such order, however, in no event shall Plaintiffs and/or Class Counsel request, demand, or be entitled to an increase to the Gross Settlement Amount on that basis.

4. **SETTLEMENT FUNDING AND PAYMENTS.**

4.1. Class Data. Not later than 30 days after the Court grants Preliminary Approval of the Settlement, Defendant will deliver the Class Data to the Administrator, in the form of a Microsoft Excel spreadsheet. To protect Class Members' privacy rights, the Administrator must maintain the Class Data in confidence, use the Class Data only for purposes of this Settlement and for no other purpose, and restrict access to the Class Data to Administrator employees who need access to the Class Data to effect and perform under this Agreement. Defendant has a continuing duty to immediately notify Class Counsel if it discovers that the Class Data omitted class member identifying information and to provide corrected or updated Class Data as soon as reasonably feasible. Without any extension of the deadline by which Defendant must send the Class Data to the Administrator, the Parties and their counsel will expeditiously use best efforts, in good faith, to reconstruct or otherwise resolve any issues related to missing or omitted Class Data.

4.2. Funding of Gross Settlement Amount. Defendant shall fully fund the Gross Settlement Amount, and also fund the amounts necessary to fully pay Defendant's share of payroll taxes by transmitting the total funds to the Administrator no later than 14 days after the Effective Date. In no event shall Defendant pay more than the Gross Settlement Amount and its portion of payroll taxes.

4.3. Payments from the Gross Settlement Amount. Within 14 days after Defendant funds the Gross Settlement Amount, the Administrator will mail checks for all Individual Class Payments, all Individual PAGA Payments, the LWDA PAGA Payment, the Administration Expenses Payment, the Class Counsel Fees Payment, the Class



WLR

Counsel Litigation Expenses Payment, and the Class Representative Service Payment. Disbursement of the Class Counsel Fees Payment, the Class Counsel Litigation Expenses Payment and the Class Representative Service Payment shall not precede disbursement of Individual Class Payments and Individual PAGA Payments.

4.3.1 The Administrator will issue checks for the Individual Class Payments and/or Individual PAGA Payments and send them to the Class Members via First Class U.S. Mail, postage prepaid. The face of each check shall prominently state the date (not less than 180 days after the date of mailing) when the check will be voided. The Administrator will cancel all checks not cashed by the void date. The Administrator will send checks for Individual Settlement Payments to all Participating Class Members (including those for whom Class Notice was returned undelivered). The Administrator will send checks for Individual PAGA Payments to all PAGA Group Employees including Non-Participating Class Members who qualify as PAGA Group Employees (including those for whom Class Notice was returned undelivered). The Administrator may send Participating Class Members a single check combining the Individual Class Payment and the Individual PAGA Payment. Before mailing any checks, the Settlement Administrator must update the recipients' mailing addresses using the National Change of Address Database.

4.3.2 The Administrator must conduct a Class Member Address Search for all other Class Members whose checks are returned undelivered without USPS forwarding address. Within 7 days of receiving a returned check the Administrator must re-mail checks to the USPS forwarding address provided or to an address ascertained through the Class Member Address Search. The Administrator need not take further steps to deliver checks to Class Members whose re-mailed checks are returned as undelivered. The Administrator shall promptly send a replacement check to any Class Member whose original check was lost or misplaced, requested by the Class Member prior to the void date.

4.3.3 For any Class Member whose Individual Class Payment check or Individual PAGA Payment check is uncashed and cancelled after the void date, the Administrator shall transmit the funds represented by such checks to the California Controller's Unclaimed Property Fund in the name of the Class Member thereby leaving no "unpaid residue" subject to the requirements of California Code of Civil Procedure Section 384, subd. (b).

4.3.4 The payment of Individual Class Payments and Individual PAGA Payments shall not obligate Defendant to confer any additional benefits or make any additional payments to Class Members (such as 401(k)



WLR

contributions or bonuses) beyond those specified in this Agreement.

5. **RELEASES OF CLAIMS.** Effective on the date when Defendant fully funds the entire Gross Settlement Amount and funds all employer payroll taxes owed on the Wage Portion of the Individual Class Payments, Plaintiffs and Class Members will release claims against all Released Parties as follows:

5.1. Release by Participating Class Members: All Participating Class Members release Released Parties from all claims that were alleged, or reasonably could have been alleged, based on the Class Period facts stated in the Operative Complaint including, any claims under the California Labor Code, PAGA, Fair Labor Standards Act, applicable California Wage Orders, and any other local, state, or federal laws on PAGA/wage/hour issues (including but not limited to claims which could have been plead related to or arising from facts or issues alleged within the Operative Complaint or claims which could have been plead related to or arising from facts or issues alleged in the PAGA Notices sent to the LWDA by Plaintiffs Shwiyhat and Raines). This includes but is not limited to claims related to or arising from alleged wages, overtime, calculation of wages and overtime, off-the-clock work, minimum wages, plus related liquidated damages, interest, or penalties. For the avoidance of doubt, workers' compensation benefits claims and unemployment benefits claims are not released. In addition, see *Edwards v. Arthur Andersen,* 44 Cal. 4th 937 (Cal. S. Ct. 2008) (non-waivable claims are excluded from broad, general release).

5.2. Release by PAGA Group Employees: All PAGA Group Employees are deemed to release he Released Parties from all claims for PAGA penalties that were alleged, or reasonably could have been alleged, based on the facts stated in the Operative Complaint and PAGA Notice during the PAGA Period.

5.3. Plaintiffs' Release. Plaintiffs for themselves and on behalf of their respective former and present spouses, representatives, agents, heirs, administrators, successors, and assigns generally, release and discharge Released Parties from all claims, transactions, or occurrences that occurred during the Class Period, including, but not limited to: (a) all claims that were, or reasonably could have been, alleged, based on the facts contained, in the Operative Complaint and (b) all PAGA claims that were, or reasonably could have been, alleged based on facts contained in the Operative Complaint or Plaintiffs' PAGA Notices. ("Plaintiffs' Release.") Plaintiffs acknowledge that Plaintiffs may discover facts or law different from, or in addition to, the facts or law that Plaintiffs now knows or believes to be true but agrees, nonetheless, that Plaintiffs' Release shall be and remain effective in all respects, notwithstanding such different or additional facts or Plaintiffs' discovery of them. Notwithstanding the above, this does not release claims of wrongful termination or harassment if (1) unrelated to wage/hour/compensation/rest period/meal period issues or PAGA issues and (2) alleged in the lawsuit filed by Plaintiff Austen Shwiyhat in the Alameda County Superior Court in the matter titled Austen Shwiyhat v. Martin Marietta Materials, Inc., Case No. 24CV096407. For the avoidance of doubt,



WLR

workers' compensation benefits claims and unemployment benefits claims are not released. In addition, see *Edwards v. Arthur Andersen,* 44 Cal. 4th 937 (Cal. S. Ct. 2008) (all legally non-waivable claims are excluded from the general release).

5.3.1 Plaintiffs' Waiver of Rights Under California Civil Code Section 1542. For purposes of Plaintiffs' Release, Plaintiffs expressly waive and relinquishes the provisions, rights, and benefits, if any, of section 1542 of the California Civil Code, which reads:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

6. **MOTION FOR PRELIMINARY APPROVAL.** The Parties agree that Plaintiffs will prepare a draft motion for preliminary approval ("Motion for Preliminary Approval") and provide it to Defendant for review with sufficient time to review before Plaintiffs file it. If the Court does not grant Preliminary Approval or conditions Preliminary Approval on any material change to this Agreement, the Parties, by and through their respective Counsel, will expeditiously work together by meeting in person or by telephone, and in good faith, to modify the Agreement and otherwise satisfy the Court's concerns. However, in no event, other than the exceptions in Section 8, shall the Gross Settlement Amount increase.

7. **SETTLEMENT ADMINISTRATION.**

7.1. Selection of Administrator. The Parties have selected Atticus Administration LLC to serve as the Administrator and verified that, as a condition of appointment, Atticus Administration LLC agrees to be bound by this Agreement and to perform, as a fiduciary, all duties specified in this Agreement in exchange for the Administration Expenses Payment. The Parties and their Counsel represent that they have no interest or relationship, financial or otherwise, with the Administrator other than a professional relationship arising out of prior experiences administering settlements.

7.2. Employer Identification Number. The Administrator shall have and use its own Employer Identification Number for purposes of calculating payroll tax withholdings and providing reports state and federal tax authorities.

7.3. Qualified Settlement Fund. The Administrator shall establish a settlement fund that meets the requirements of a Qualified Settlement Fund ("QSF") under US Treasury Regulation section 468B-1.

7.4. Notice to Class Members.

7.4.1 No later than three (3) business days after receipt of the Class Data, the



WLR

Administrator shall notify Class Counsel that it has received the list and state the number of Class Members, PAGA Members, Workweeks, and PAGA Pay Periods in the Class Data.

7.4.2 Using best efforts to perform as soon as possible, and in no event later than 14 days after receiving the Class Data, the Administrator will send to all Class Members identified in the Class Data, via first-class United States Postal Service ("USPS") mail, the Class Notice with Spanish translation substantially in the form attached to this Agreement as Exhibit B. The Class Notice shall prominently estimate the dollar amounts of any Individual Class Payment and/or Individual PAGA Payment payable to the Class Member, and the number of Workweeks and PAGA Pay Periods (if applicable) used to calculate these amounts. Before mailing Class Notices, the Administrator shall update Class Member addresses using the National Change of Address database.

7.4.3 Not later than 3 business days after the Administrator's receipt of any Class Notice returned by the USPS as undelivered, the Administrator shall re-mail the Class Notice using any forwarding address provided by the USPS. If the USPS does not provide a forwarding address, the Administrator shall conduct a Class Member Address Search, and re-mail the Class Notice to the most current address obtained. The Administrator has no obligation to make further attempts to locate or send Class Notice to Class Members whose Class Notice is returned by the USPS a second time.

7.4.4 The deadlines for Class Members' written objections, Challenges to Workweeks and/or PAGA Pay Periods, and Requests for Exclusion will be extended an additional 14 days beyond the 45 days otherwise provided in the Class Notice for all Class Members whose notice is re-mailed. The Administrator will inform the Class Member of the extended deadline with the re-mailed Class Notice.

7.4.5 If the Administrator, Defense Counsel or Class Counsel is contacted by or otherwise discovers any persons who believe they should have been included in the Class Data and should have received Class Notice, the Parties will expeditiously meet and confer in person or by telephone, and in good faith, in an effort to agree on whether to include them as Class Members. If the Parties agree, such persons will be Class Members entitled to the same rights as other Class Members, and the Administrator will send, via email or overnight delivery, a Class Notice requiring them to exercise options under this Agreement not later than 14 days after receipt of Class Notice, or the deadline dates in the Class Notice, which ever are later.



WLR

7.5. Requests for Exclusion (Opt-Outs).

7.5.1 Class Members who wish to exclude themselves (opt-out of) the Class Settlement must send the Administrator, by fax, email, or mail, a signed written Request for Exclusion not later than the Response Deadline (plus an additional 14 days for Class Members whose Class Notice is re-mailed). A Request for Exclusion is a letter from a Class Member or his/her representative that reasonably communicates the Class Member's election to be excluded from the Settlement and includes the Class Member's name, address and email address or telephone number. To be valid, a Request for Exclusion must be timely faxed, emailed, or postmarked by the Response Deadline.

7.5.2 The Administrator cannot reject a Request for Exclusion as invalid because it fails to contain all the information specified in the Class Notice. The Administrator will accept any Request for Exclusion as valid if the Administrator can reasonably ascertain the identity of the person as a Class Member and the Class Member's desire to be excluded. If the Administrator has reason to question the authenticity of a Request for Exclusion, the Administrator may demand additional proof of the Class Member's identity. The Administrator's determination of validity and/or authenticity will be final and not appealable or otherwise susceptible to challenge.

7.5.3 Each Class Member who does not submit a timely and valid Request for Exclusion is deemed to be a Participating Class Member under this Agreement, entitled to all benefits and bound by all terms and conditions of the Settlement, including the releases under Paragraphs 5.1 and 5.2 of this Agreement, regardless of whether the Participating Class Member actually receives the Class Notice or objects to the Settlement.

7.5.4 Each Class Member who submits a valid and timely Request for Exclusion is a Non-Participating Class Member and shall not receive an Individual Class Payment or have the right to object to the class action components of the Settlement. Because future PAGA claims are subject to claim preclusion upon entry of the Judgment, Non-Participating Class Members who are PAGA Group Employees are deemed to release the claims identified in Paragraph 5.2 of this Agreement and are eligible for an Individual PAGA Payment

7.6. Challenges to Calculation of Workweeks. Each Class Member will have until the Response Deadline (plus an additional 14 days for Class Members whose Class Notice is re-mailed) to challenge the number of Class Workweeks and PAGA Pay Periods (if any) allocated to the Class Member in the Class Notice. The Class Member may challenge the allocation by communicating with the Administrator via fax, email or



WLR

mail. The Administrator must encourage the challenging Class Member to submit supporting documentation. In the absence of any contrary documentation, the Administrator is entitled to presume that the Workweeks contained in the Class Notice are correct so long as they are consistent with the Class Data. The Administrator's determination of each Class Member's allocation of Workweeks and/or PAGA Pay Periods shall be final and not appealable or otherwise susceptible to challenge. The Administrator shall promptly provide copies of all challenges to calculation of Workweeks and/or PAGA Pay Periods to Defense Counsel and Class Counsel and the Administrator's determination of the challenges.

7.7. Objections to Settlement.

7.7.1 Only Participating Class Members may object to the class action components of the Settlement and/or this Agreement (e.g., contesting the fairness of the Settlement, and/or amounts requested for the Class Counsel Fees Payment, Class Counsel Litigation Expenses Payment and/or Class Representative Service Payment).

7.7.2 Participating Class Members may send written objections to the Administrator, by fax, email, or mail. In the alternative, Participating Class Members may appear in Court (or hire an attorney to appear in Court) to present verbal objections at the Final Approval Hearing. A Participating Class Member who elects to send a written objection to the Administrator must do so not later than the Response Deadline (plus an additional 14 days for Class Members whose Class Notice was re-mailed).

7.7.3 Non-Participating Class Members have no right to object to the Settlement.

7.8. Administrator Duties. The Administrator has a duty to perform or observe all tasks to be performed or observed by the Administrator contained in this Agreement or otherwise.

7.8.1 Requests for Exclusion (Opt-outs) and Exclusion List. The Administrator will promptly review on a rolling basis Requests for Exclusion to ascertain their validity. Not later than 5 days after the expiration of the deadline for submitting Requests for Exclusion, the Administrator shall email a list to Class Counsel and Defense Counsel containing (a) the names and other identifying information of Class Members who have timely submitted valid Requests for Exclusion ("Exclusion List"); (b) the names and other identifying information of Class Members who have submitted invalid Requests for Exclusion; and (c) copies of all Requests for Exclusion from Settlement submitted (whether valid or invalid).

7.8.2 Weekly Reports. The Administrator must, on a weekly basis, provide



WLR

written reports to Class Counsel and Defense Counsel that, among other things, tally the number of: Class Notices mailed or re-mailed, Class Notices returned undelivered, Requests for Exclusion (whether valid or invalid) received, objections received, challenges to Workweeks and/or PAGA Pay Periods received and/or resolved, and checks mailed for Individual Class Payments and Individual PAGA Payments ("Weekly Report"). The Weekly Reports must include the Administrator's assessment of the validity of Requests for Exclusion and attach copies of all Requests for Exclusion and objections received.

7.8.3 Workweek and/or PAGA Pay Period Challenges. The Administrator has the authority to address and make final decisions consistent with the terms of this Agreement on all Class Member challenges over the calculation of Workweeks and/or PAGA Pay Periods. The Administrator's decision shall be final and not appealable or otherwise susceptible to challenge.

7.8.4 Administrator's Declaration. Not later than 14 days before the date by which Plaintiffs are required to file the Motion for Final Approval of the Settlement, the Administrator will provide to Class Counsel and Defense Counsel, a signed declaration suitable for filing in Court attesting to its due diligence and compliance with all of its obligations under this Agreement, including, but not limited to, its mailing of Class Notice, the Class Notices returned as undelivered, the re-mailing of Class Notices, attempts to locate Class Members, the total number of Requests for Exclusion from Settlement it received (both valid or invalid), the number of written objections and attach the Exclusion List. The Administrator will supplement its declaration as needed or requested by the Parties and/or the Court. Plaintiffs are responsible for filing the Administrator's declaration(s) in Court.

7.8.5 Final Report by Settlement Administrator. Within 10 days after the Administrator disburses all funds in the Gross Settlement Amount, the Administrator will provide Class Counsel and Defense Counsel with a final report detailing its disbursements by employee identification number only of all payments made under this Agreement. At least 15 days before any deadline set by the Court, the Administrator will prepare, and submit to Class Counsel and Defense Counsel, a signed declaration suitable for filing in Court attesting to its disbursement of all payments required under this Agreement. Plaintiffs are responsible for filing the Administrator's declaration in Court.

8. **CLASS SIZE ESTIMATES AND ESCALATOR CLAUSE.** Based on its records, Defendant estimates that, as of the date of this Settlement Agreement, there are 54,000 Total Workweeks worked by Class Members during the Class Period.



WLR

8.1. First Escalator Provision. If the total number of Workweeks as of the end of the Class Period exceeds the above figure by greater than 59,400, then the Gross Settlement Amount shall increase pro rata based on the number of additional Workweeks above 10% (i.e., if the number of Workweeks is 11% greater than the above figure, then the Gross Settlement Amount shall increase by 1%). In the event that any increase in payment pursuant to this provision exceeds $50,000, Defendant shall have the option to modify the end of the Class Period to the last day that the increased payment pursuant to this provision does not exceed $50,000 (e.g., to modify it from March 31, 2025, to March 15, 2025).

8.2. Second Escalator Provision. In addition, Defendant shall have the option to extend the end of the Class Period beyond March 31, 2025 up until the date of the Court's order granting preliminary approval provided that each additional Class Member Workweek worked after March 31, 2025 will be paid at $25.00 ($1.35 million divided by 54,000) regardless of whether the First Escalator Provision was triggered.

9. **DEFENDANT'S RIGHT TO WITHDRAW.** If the number of valid Requests for Exclusion identified in the Exclusion List exceeds 10% of the total of all Class Members, Defendant may, but is not obligated, elect to withdraw from the Settlement. The Parties agree that, if Defendant withdraws, the Settlement shall be void ab initio, have no force or effect whatsoever, and that neither Party will have any further obligation to perform under this Agreement; provided, however, Defendant will remain responsible for paying all settlement administration expenses incurred to that point. Defendant must notify Class Counsel and the Court of its election to withdraw not later than 7 days after the Administrator sends the final Exclusion List to Defense Counsel; late elections will have no effect.

10. **MOTION FOR FINAL APPROVAL.** Plaintiffs will file in Court a motion for final approval of the Settlement that includes a request for approval of the PAGA settlement under Labor Code section 2699,[ *former*] subd. (l), a Proposed Final Approval Order and a proposed Judgment (collectively "Motion for Final Approval"). Prior to filing, Plaintiffs will provide a draft of the documents to Defendant for its review.

10.1. Response to Objections. Each Party retains the right to respond to any objection raised by a Participating Class Member, including the right to file responsive documents in Court no later than 5 court days prior to the Final Approval Hearing, or as otherwise ordered or accepted by the Court.

10.2. Duty to Cooperate. If the Court does not grant Final Approval or conditions Final Approval on any material change to the Settlement (including, but not limited to, the scope of release to be granted by Class Members), the Parties will expeditiously work together in good faith to address the Court's concerns by revising the Agreement as necessary to obtain Final Approval. However, in no event, other than the exceptions in Section 8, shall the Gross Settlement Amount increase. The Court's decision to award less than the amounts requested for the Class Representative Service Payment, Class Counsel Fees Payment, Class Counsel Litigation Expenses Payment and/or



WLR

Administration Expenses Payment shall not constitute a material modification to the Agreement within the meaning of this paragraph.

10.3. Continuing Jurisdiction of the Court. The Parties agree that, after entry of Judgment, the Court will retain jurisdiction over the Parties, Action, and the Settlement solely for purposes of (i) enforcing this Agreement and/or Judgment, (ii) addressing settlement administration matters, and (iii) addressing such post-Judgment matters as are permitted by law.

10.4. Waiver of Right to Appeal. Provided the Judgment is consistent with the terms and conditions of this Agreement, specifically including the Class Counsel Fees Payment and Class Counsel Litigation Expenses Payment reflected set forth in this Settlement, the Parties, their respective counsel, and all Participating Class Members who did not object to the Settlement as provided in this Agreement, waive all rights to appeal from the Judgment, including all rights to post-judgment and appellate proceedings, the right to file motions to vacate judgment, motions for new trial, extraordinary writs, and appeals. The waiver of appeal does not include any waiver of the right to oppose such motions, writs or appeals. If an objector appeals the Judgment, the Parties' obligations to perform under this Agreement will be suspended until such time as the appeal is finally resolved and the Judgment becomes final, except as to matters that do not affect the amount of the Net Settlement Amount.

10.5. Appellate Court Orders to Vacate, Reverse, or Materially Modify Judgment. If the reviewing Court vacates, reverses, or modifies the Judgment in a manner that requires a material modification of this Agreement (including, but not limited to, the scope of release to be granted by Class Members), this Agreement shall be null and void. The Parties shall nevertheless expeditiously work together in good faith to address the appellate court's concerns and to obtain Final Approval and entry of Judgment, sharing, on a 50-50 basis, any additional administration expenses reasonably incurred after remittitur. An appellate decision to vacate, reverse, or modify the Court's award of the Class Representative Service Payment or any payments to Class Counsel shall not constitute a material modification of the Judgment within the meaning of this paragraph, as long as the Gross Settlement Amount remains unchanged.

11. **AMENDED JUDGMENT.** If any amended judgment is required under California Code of Civil Procedure section 384, the Parties will work together in good faith to jointly submit and a proposed amended judgment.

12. **ADDITIONAL PROVISIONS.**

12.1. No Admission of Liability, Class Certification or Representative Manageability for Other Purposes. This Agreement represents a compromise and settlement of highly disputed claims. Nothing in this Agreement is intended or should be construed as an admission by Defendant that any of the allegations in the Operative Complaint have merit or that Defendant has any liability for any claims asserted; nor should it be intended or construed as an admission by Plaintiffs that Defendant's defenses in the



WLR

Action have merit. The Parties agree that class certification and representative treatment is conditional and for purposes of this Settlement only. If, for any reason the Court does not grant Preliminary Approval, Final Approval or enter Final Judgment, Defendant reserves the right to contest certification of any class for any reasons, and Defendant reserves all available defenses to the claims in the Action, and Plaintiffs reserve the right to move for class certification on any grounds available and to contest Defendant's defenses. The Settlement, this Agreement and Parties' willingness to settle the Action will have no bearing on, and will not be admissible in connection with, any litigation (except for proceedings to enforce or effectuate the Settlement and this Agreement).

12.2. Confidentiality Prior to Preliminary Approval. The Parties separately agree that, until the Motion for Preliminary Approval of Settlement is filed, they and each of them will not disclose, disseminate and/or publicize, or cause or permit another person to disclose, disseminate or publicize, any of the terms of the Agreement directly or indirectly, specifically or generally, to any person, corporation, association, government agency, or other entity except: (1) to the Parties' attorneys, accountants, or spouses, all of whom will be instructed to keep this Agreement confidential; (2) counsel in a related matter; (3) to the extent necessary to report income to appropriate taxing authorities; (4) in response to a court order or subpoena; or (5) in response to an inquiry or subpoena issued by a state or federal government agency. Each Party agrees to immediately notify each other Party of any judicial or agency order, inquiry, or subpoena seeking such information. The Parties separately agree not to, directly or indirectly, initiate any conversation or other communication, before the filing of the Motion for Preliminary Approval, with any third party regarding this Agreement or the matters giving rise to this Agreement except to respond only that "the matter was resolved," or words to that effect. This paragraph does not restrict Class Counsel's communications with Class Members in accordance with Class Counsel's ethical obligations owed to Class Members.

12.3. No Solicitation. The Parties separately agree that they and their respective counsel and employees will not solicit any Class Member to opt out of or object to the Settlement, or appeal from the Judgment. Nothing in this paragraph shall be construed to restrict Class Counsel's ability to communicate with Class Members in accordance with Class Counsel's ethical obligations owed to Class Members.

12.4. Integrated Agreement. Upon execution by all Parties and their counsel, this Agreement together with its attached exhibits shall constitute the entire agreement between the Parties relating to the Settlement, superseding any and all oral representations, warranties, covenants, or inducements made to or by any Party.

12.5. Attorney Authorization. The Parties separately warrant and represent that they have authorized their respective Counsel to take all appropriate action required or permitted to be taken pursuant to this Agreement to effectuate its terms, and to execute any other documents reasonably required to effectuate the terms of this Agreement including



WLR

any amendments to this Agreement.

12.6. Cooperation. The Parties and their counsel will cooperate with each other and use their best efforts, in good faith, to implement the Settlement by, among other things, modifying the Settlement Agreement, submitting supplemental evidence and supplementing points and authorities as requested by the Court. In the event the Parties are unable to agree upon the form or content of any document necessary to implement the Settlement, or on any modification of the Agreement that may become necessary to implement the Settlement, the Parties will seek the assistance of a mediator and/or the Court for resolution. However, in no event shall the Gross Settlement Amount increase except as adjusted pursuant to Paragraph 8's Escalator Clause.

12.7. No Prior Assignments. The Parties separately represent and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity and portion of any liability, claim, demand, action, cause of action, or right released and discharged by the Party in this Settlement.

12.8. No Tax Advice. The Parties are not providing any advice regarding taxes or taxability, nor shall anything in this Settlement be relied upon as such within the meaning of United States Treasury Department Circular 230 (31 CFR Part 10, as amended) or otherwise.

12.9. Modification of Agreement. This Agreement, and all parts of it, may be amended, modified, changed, or waived only by an express written instrument signed by all Parties or their representatives. After the Preliminary Approval Order is entered, such amendment, modification, change, or waiver also requires Court approval.

12.10. Agreement Binding on Successors. This Agreement will be binding upon, and inure to the benefit of, the successors of each of the Parties.

12.11. Applicable Law. The internal laws of the State of California govern all terms and conditions of this Agreement and its exhibits, without regard to conflict of law principles.

12.12. Cooperation in Drafting. The Parties have cooperated in the drafting and preparation of this Agreement. This Agreement will not be construed against any Party on the basis that the Party was the drafter or participated in the drafting.

12.13. Confidentiality. To the extent permitted by law, all agreements made, and orders entered during Action and in this Agreement relating to the confidentiality of information shall survive the execution of this Agreement.

12.14. Use and Return of Class Data. Information provided to Class Counsel pursuant to Cal. Evid. Code §1152, and all copies and summaries of the Class Data provided to Class Counsel by Defendant in connection with the mediation, other settlement negotiations, or in connection with the Settlement, may be used only with respect to this Settlement, and no other purpose, and may not be used in any way that violates



WLR

any existing contractual agreement, statute, or rule of court. Not later than 90 days after the date when the Court discharges the Administrator's obligation to provide a Declaration confirming the final pay out of all Settlement funds, Plaintiffs shall destroy all paper and electronic versions of Class Data received from Defendant unless, prior to the Court's discharge of the Administrator's obligation, Defendant makes a written request to Class Counsel for the return, rather than the destruction, of Class Data.

12.15. Headings. The descriptive heading of any section or paragraph of this Agreement is inserted for convenience of reference only and does not constitute a part of this Agreement.

12.16. Calendar Days. Unless otherwise noted, all reference to "days" in this Agreement shall be to calendar days. In the event any date or deadline set forth in this Agreement falls on a weekend or federal legal holiday, such date or deadline shall be on the first business day thereafter.

12.17. Notice. All notices, demands or other communications between the Parties in connection with this Agreement will be in writing and deemed to have been duly given as of the third business day after mailing by United States mail, or the day sent by email or messenger, to the other Party's respective counsel of record.

12.18. Execution in Counterparts. This Agreement may be executed in one or more counterparts by facsimile, electronically (e.g., DocuSign), or email which for purposes of this Agreement shall be accepted as an original. If an electronic method of execution is chosen, like DocuSign, said signatory must provide the associated authentication certification. All executed counterparts and each of them will be deemed to be one and the same instrument if counsel for the Parties will exchange between themselves signed counterparts. Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

12.19. Stay of Litigation. The Parties agree that upon the execution of this Agreement the litigation shall be stayed, except to effectuate the terms of this Agreement or comply with any applicable Court Orders. The Parties further agree that upon the signing of this Agreement that pursuant to CCP section 583.330 to extend the date to bring a case to trial under CCP section 583.310 for the entire period of this settlement process.

12.20. Bankruptcy. In the event that any Defendant files for bankruptcy prior to the final disbursement of the Gross Settlement Amount, Plaintiffs shall be permitted to file the claims asserted in the Action in the bankruptcy proceedings, and such claims are not limited by the amount of the Gross Settlement Amount as set forth in this Settlement Agreement. If any settlement funds have been disbursed as provided in this agreement as of the date Defendant files for bankruptcy, Defendant shall not be entitled to a return of such funds from the recipients. However, Defendant will be entitled to claim a credit for any previously disbursed funds in the bankruptcy proceedings.

12.21. Enforcement Action. In the event that one or more of the Parties institutes any legal



WLR

action or other proceeding against any other Party or Parties to enforce the provisions of this Settlement or to declare rights and/or obligations under this Settlement, the successful Party or Parties will be entitled to recover from the unsuccessful Party or Parties reasonable attorney's fees and costs, including expert witness fees in connection with any enforcement actions.



WLR

Dated: ____________________

**AUSTEN SHWIYHAT**

____________________________________

Dated: 07/22/2025

**WALTER RAINES**

W. L. Raines
____________________________________

Dated: ____________________

**DEFENDANTS MARTIN MARIETTA MATERIALS, INC. AND MARTIN MARIETTA NORTHERN CALIFORNIA AGGREGATES, LLC**

____________________________________

Name:______________________________

Title:_______________________________

APPROVED **AS TO FORM ONLY:**

Dated: 07/22/2025

**LAVI & EBRAHIMIAN, LLP**

Joseph Lavi
____________________________________

Joseph Lavi, Esq.
Vincent C. Granberry, Esq.
Alexander J. Aroeste, Esq.
Attorneys for WALTER L. RAINES, on behalf of Himself and all others similarly situated

Dated: ____________________

**EMPLOYMENT LAWYERS**

____________________________________

Leonard Emma, Esq.
Cody Stroman, Esq.
Attorneys for AUSTEN SHWIYHAT, on behalf of Himself and all others similarly situated

Dated: ______________________

**CARRINGTON, COLEMAN, SLOMAN AND BLUMENTHAL, LLP**

______________________________

Mike Birrer, Esq.
Attorney for Defendants

Dated: ____________________

**AUSTEN SHWIYHAT**

______________________________

Dated: ____________________

**WALTER RAINES**

______________________________

Dated: 7/22/25

**DEFENDANTS MARTIN MARIETTA MATERIALS, INC. AND MARTIN MARIETTA NORTHERN CALIFORNIA AGGREGATES, LLC**

______________________________

Name: Robert Holland

Title: Assist. Gen. Counsel

APPROVED **AS TO FORM ONLY:**

Dated: ____________________

**LAVI & EBRAHIMIAN, LLP**

______________________________

Joseph Lavi, Esq.
Vincent C. Granberry, Esq.
Alexander J. Aroeste, Esq.
Attorneys for WALTER L. RAINES, on behalf of Himself and all others similarly situated

Dated: ____________________

**EMPLOYMENT LAWYERS**

______________________________

Leonard Emma, Esq.
Cody Stroman, Esq.
Attorneys for AUSTEN SHWIYHAT, on behalf of Himself and all others similarly situated

Dated: 7/22/2025 ____________

**AUSTEN SHWIYHAT**

DocuSigned by:
Austen Shwiyhat
54C1B271465D439...

Dated: ____________________

**WALTER RAINES**

______________________________

Dated: ____________________

**DEFENDANTS MARTIN MARIETTA MATERIALS, INC. AND MARTIN MARIETTA NORTHERN CALIFORNIA AGGREGATES, LLC**

______________________________

Name:__________________________

Title:___________________________

APPROVED **AS TO FORM ONLY:**

Dated: ____________________

**LAVI & EBRAHIMIAN, LLP**

______________________________

Joseph Lavi, Esq.
Vincent C. Granberry, Esq.
Alexander J. Aroeste, Esq.
Attorneys for WALTER L. RAINES, on behalf of Himself and all others similarly situated

Dated: 7/22/2025 ____________

**EMPLOYMENT LAWYERS**

______________________________

Leonard Emma, Esq.
Cody Stroman, Esq.
Attorneys for AUSTEN SHWIYHAT, on behalf of Himself and all others similarly situated

Dated: 7/24/25

**CARRINGTON, COLEMAN, SLOMAN AND BLUMENTHAL, LLP**

Mike Birrer, Esq.
Attorney for Defendants

# EXHIBIT B

# COURT APPROVED NOTICE OF CLASS ACTION SETTLEMENT AND HEARING DATE FOR FINAL COURT APPROVAL

Shwiyhat, et al. v. Martin Marietta Materials, Inc. et al. Case No. CASE NUMBER

***The Superior Court for the State of California authorized this Notice. Read it carefully! It's not junk mail, spam, an advertisement, or solicitation by a lawyer. You are not being sued.***

**You may be eligible to receive money** from an employee class action lawsuit ("Action") entitled *Austen Shwiyhat, et al. v. Martin Marietta Materials, Inc., et al.* for alleged wage and hour violations. The Action was filed by former employees Austen Shwiyhat and Walter Raines ("Plaintiffs") and seeks payment of (1) back wages and other relief for a class of hourly, non-exempt employees ("Class Members") who worked for Defendants Martin Marietta Materials, Inc. and Martin Marietta Northern California Aggregates, LLC during the Class Period from June 20, 2022 to  and (2) penalties under the California Private Attorney General Act ("PAGA") for all hourly, non-exempt employees who worked for Defendants Martin Marietta Materials, Inc. and Martin Marietta Northern California Aggregates, LLC during the PAGA Period from June 20, 2022 to __________ ("PAGA Group Employees"). For the purposes of this Notice, Defendants Martin Marietta Materials, Inc. and Martin Marietta Northern California Aggregates, LLC shall be referred to here as the "Company."

The proposed Settlement has two main parts: (1) a Class Settlement requiring Company to fund Individual Class Payments, and (2) a PAGA Settlement requiring Company to fund Individual PAGA Payments and pay penalties to the California Labor and Workforce Development Agency ("LWDA").

Based on the Company's records, and the Parties' current assumptions, **your Individual Class Payment is estimated to be $__________ (less withholding) and your Individual PAGA Payment is estimated to be $__________**. The actual amount you may receive likely will be different and will depend on a number of factors. (If no amount is stated for your Individual PAGA Payment, then according to the Company's records you are not eligible for an Individual PAGA Payment under the Settlement because you didn't work during the PAGA Period.)

The above estimates are based on the Company's records showing that **you worked __________ workweeks** during the Class Period and **you worked __________ pay periods** during the PAGA Period. If you believe that you worked more workweeks or pay periods during either period, you can submit a challenge by the deadline date. See Section **4** of this Notice.

The Court has already preliminarily approved the proposed Settlement and approved this Notice. The Court has not yet decided whether to grant final approval. Your legal rights are affected whether you act or not act. Read this Notice carefully. You will be deemed to have carefully read and understood it. At the Final Approval Hearing, the Court will decide whether to finally approve the Settlement and how much of the Settlement will be paid to Plaintiffs and Plaintiffs' attorneys ("Class Counsel"). The Court will also decide whether to enter a judgment that requires the Company to make payments under the Settlement and requires Class Members and PAGA Group Employees to give up their rights to assert certain claims against the Company.

If you worked for the Company during the Class Period and/or the PAGA Period, you have two

basic options under the Settlement:

(1) **Do Nothing**. You don't have to do anything to participate in the proposed Settlement and be eligible for an Individual Class Payment and/or an Individual PAGA Payment. As a Participating Class Member, though, you will give up your right to assert Class Period wage claims and PAGA Period penalty claims against the Company.

(2) **Opt-Out of the Class Settlement**. You can exclude yourself from the Class Settlement (opt-out) by submitting the written Request for Exclusion or otherwise notifying the Administrator in writing. If you opt-out of the Settlement, you will not receive an Individual Class Payment. You will, however, preserve your right to personally pursue Class Period wage claims against the Company, and, if you are an PAGA Group Employee, remain eligible for an Individual PAGA Payment. You cannot opt-out of the PAGA portion of the proposed Settlement.

**The Company will not retaliate against you for any actions you take with respect to the proposed Settlement.**

**SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT**

| | |
|---|---|
| **You Don't Have to Do Anything to Participate in the Settlement** | If you do nothing, you will be a Participating Class Member, eligible for an Individual Class Payment and an Individual PAGA Payment (if any). In exchange, you will give up your right to assert the wage claims against the Company that are covered by this Settlement (Released Claims). |
| **You Can Opt-out of the Class Settlement but not the PAGA Settlement**<br><br>**The Opt-out Deadline is __________** | If you don't want to fully participate in the proposed Settlement, you can opt-out of the Class Settlement by sending the Administrator a written Request for Exclusion. Once excluded, you will be a Non-Participating Class Member and no longer eligible for an Individual Class Payment. Non-Participating Class Members cannot object to any portion of the proposed Settlement. See Section **6** of this Notice.<br><br>You cannot opt-out of the PAGA portion of the proposed Settlement. The Company must pay Individual PAGA Payments to all PAGA Group Employees and the PAGA Group Employees must give up their rights to pursue Released Claims (defined below). |

| | |
|---|---|
| **Participating Class Members Can Object to the Class Settlement but not the PAGA Settlement**<br><br>**Written Objections Must be Submitted by ____________** | All Class Members who do not opt-out ("Participating Class Members") can object to any aspect of the proposed Settlement. The Court's decision whether to finally approve the Settlement will include a determination of how much will be paid to Class Counsel and Plaintiffs who pursued the Action on behalf of the Class. You are not personally responsible for any payments to Class Counsel or Plaintiffs, but every dollar paid to Class Counsel and Plaintiffs reduces the overall amount paid to Participating Class Members. You can object to the amounts requested by Class Counsel or Plaintiff if you think they are unreasonable. See Section **7** of this Notice. |
| **You Can Participate in the ____________ Final Approval Hearing** | The Court's Final Approval Hearing is scheduled to take place on ____________. You don't have to attend but you do have the right to appear (or hire an attorney to appear on your behalf at your own cost), in person, by telephone or by using the Court's virtual appearance platform. Participating Class Members can verbally object to the Settlement at the Final Approval Hearing. See Section **8** of this Notice. |
| **You Can Challenge the Calculation of Your Workweeks/Pay Periods**<br><br>**Written Challenges Must be Submitted by ____________** | The amount of your Individual Class Payment and PAGA Payment (if any) depends on how many workweeks you worked at least one day during the Class Period and how many Pay Periods you worked at least one day during the PAGA Period, respectively. The number of Class Period Workweeks and number of PAGA Period Pay Periods you worked according to the Company's records is stated on the first page of this Notice. If you disagree with either of these numbers, you must challenge it by ____________. See Section **4** of this Notice. |

## 1. WHAT IS THE ACTION ABOUT?

Plaintiffs are former employees of the Company. The Action accuses the Company of violating California labor laws by failing to pay overtime wages, minimum wages, wages due upon termination and reimbursable expenses and failing to provide meal periods, rest breaks and accurate itemized wage statements. Based on the same claims, Plaintiffs have also asserted a claim for civil penalties under the California Private Attorneys General Act (Labor Code §§ 2698, et seq.) ("PAGA").

## 2. WHAT DOES IT MEAN THAT THE ACTION HAS SETTLED?

So far, the Court has made no determination whether the Company or Plaintiffs are correct on the merits. In the meantime, Plaintiffs and the Company hired an experienced, neutral mediator in an effort to resolve the Action through a negotiated agreement (settle the case) rather than continuing the expensive and time-consuming process of litigation. The negotiations were successful. By signing a written settlement agreement ("Agreement") and agreeing to jointly ask the Court to enter

a judgment ending the Action and enforcing the Agreement, Plaintiffs and the Company have negotiated a proposed Settlement that is subject to the Court's Final Approval. Both sides agree the proposed Settlement is a compromise of disputed claims. By agreeing to settle, the Company does not admit any violations or concede the merit of any claims.

Plaintiffs and Class Counsel strongly believe the Settlement is a good deal for you because they believe that: (1) the Company has agreed to pay a fair, reasonable and adequate amount considering the strength of the claims and the risks and uncertainties of continued litigation; and (2) Settlement is in the best interests of the Class Members and PAGA Group Employees. The Court preliminarily approved the proposed Settlement as fair, reasonable and adequate, authorized this Notice, and scheduled a hearing to determine Final Approval.

### 3. WHAT ARE THE IMPORTANT TERMS OF THE PROPOSED SETTLEMENT?

a. The Company Will Pay $__________ as the Gross Settlement Amount (Gross Settlement). The Company has agreed to deposit the Gross Settlement into an account controlled by the Administrator of the Settlement. The Administrator will use the Gross Settlement to pay the Individual Class Payments, Individual PAGA Payments, Class Representative Service Payment, Class Counsel's attorney's fees and expenses, the Administrator's expenses, and penalties to be paid to the California Labor and Workforce Development Agency ("LWDA"). Assuming the Court grants Final Approval, the Company will fund the Gross Settlement not more than 14 days after the Judgment entered by the Court becomes final. The Judgment will be final on the date the Court enters Judgment, or a later date if Participating Class Members object to the proposed Settlement or the Judgment is appealed.

b. Court Approved Deductions from Gross Settlement. At the Final Approval Hearing, Plaintiffs and/or Class Counsel will ask the Court to approve the following deductions from the Gross Settlement, the amounts of which will be decided by the Court at the Final Approval Hearing:

i. Up to $__________ (35% of the Gross Settlement) to Class Counsel for attorneys' fees and up to $50,000.00 for their litigation expenses. To date, Class Counsel have worked and incurred expenses on the Action without payment.

ii. Up to $10,000 each to Plaintiffs as a Class Representative Award for filing the Action, working with Class Counsel and representing the Class. A Class Representative Award will be the only monies Plaintiffs will receive other than Plaintiffs' Individual Class Payment and any Individual PAGA Payment.

iii. Up to $20,000 to the Administrator for services administering the Settlement.

iv. Up to $50,000 for PAGA Penalties, allocated 75% to the LWDA PAGA Payment and 25% in Individual PAGA Payments to the PAGA Group Employees based on their PAGA Period Pay Periods.

Participating Class Members have the right to object to any of these deductions. The Court will consider all objections.

c. Net Settlement Distributed to Class Members. After making the above deductions in amounts approved by the Court, the Administrator will distribute the rest of the Gross Settlement (the "Net Settlement") by making Individual Class Payments to Participating Class Members based on their Class Period Workweeks.

d. Taxes Owed on Payments to Class Members. The Settlement shall be broken down as follows: 40% ("Wage Portion") of each Individual Class Payment to taxable wages and 60% ("Non-Wage Portion") to penalties and interest. The Wage Portion is subject to withholding and will be reported on IRS W-2 Forms. The Company will separately pay employer payroll taxes it owes on the Wage Portion. The Individual PAGA Payments are counted as penalties rather than wages for tax purposes. The Administrator will report the Individual PAGA Payments and the Non-Wage Portions of the Individual Class Payments on IRS 1099 Forms.

Although Plaintiffs and the Company have agreed to these allocations, neither side is giving you any advice on whether your Payments are taxable or how much you might owe in taxes. You are responsible for paying all taxes (including penalties and interest on back taxes) on any Payments received from the proposed Settlement. You should consult a tax advisor if you have any questions about the tax consequences of the proposed Settlement.

e. Need to Promptly Cash Payment Checks. The front of every check issued for Individual Class Payments and Individual PAGA Payments will show the date when the check expires (the void date). If you don't cash it by the void date, your check will be automatically cancelled, and the monies will be deposited with the California Controller's Unclaimed Property Fund in your name. If the monies represented by your check are sent to the Controller's Unclaimed Property, you should consult the rules of the Fund for instructions on how to retrieve your money.

f. Requests for Exclusion from the Class Settlement (Opt-Outs). You will be treated as a Participating Class Member, participating fully in the Class Settlement, unless you notify the Administrator in writing, not later than 45 days after the mailing of the Notice (plus an additional 14 days for Class Members whose Class Notice was re-mailed), that you wish to opt-out. The easiest way to notify the Administrator is to send a written and signed Request for Exclusion by the Response Deadline. The Request for Exclusion should be a letter from a Class Member or his/her representative setting forth a Class Member's name, present address, telephone number, and a simple statement electing to be excluded from the Settlement. Excluded Class Members (i.e., Non-Participating Class Members) will not receive Individual Class Payments but will preserve their rights to personally pursue wage

and hour claims against the Company.

g. You cannot opt-out of the PAGA portion of the Settlement. Class Members who exclude themselves from the Class Settlement (Non-Participating Class Members) remain eligible for Individual PAGA Payments and are required to give up their right to assert PAGA claims against the Company based on the PAGA Period facts alleged in the Action.

h. The Proposed Settlement Will be Void if the Court Denies Final Approval. It is possible the Court will decline to grant Final Approval of the Settlement or decline to enter a Judgment. It is also possible the Court will enter a Judgment that is reversed on appeal. Plaintiffs and the Company have agreed that, in either case, the Settlement will be void: the Company will not pay any money and Class Members will not release any claims against the Company.

i. Administrator. The Court has appointed a neutral company, Atticus Administration LLC (the "Administrator") to send this Notice, calculate and make payments, and process Class Members' Requests for Exclusion. The Administrator will also decide Class Member Challenges over Workweeks, mail and re-mail settlement checks and tax forms, and perform other tasks necessary to administer the Settlement. The Administrator's contact information is contained in Section **9** of this Notice.

j. Participating Class Members' Release. After the Judgment is final and the Company has fully funded the Gross Settlement and separately paid all employer payroll taxes, Participating Class Members will be legally barred from asserting any of the claims released under the Settlement. This means that unless you opted out by validly excluding yourself from the Class Settlement, you cannot sue, continue to sue, or be part of any other lawsuit against the Company or related entities for wages based on the Class Period facts and PAGA penalties based on PAGA Period facts, as alleged in the Action and resolved by this Settlement.

The Participating Class Members will be bound by the following release:

All Participating Class Members, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, release Released Parties from (i) all claims that were alleged, or reasonably could have been alleged, based on the Class Period and facts stated in the Operative Complaint, including any claims under the California Labor Code, PAGA, FLSA, applicable Wage Order, and any other local, state, or federal laws on pay/wage/hour issues. This includes but is not limited to claims related to or arising from alleged wages, overtime, calculation of wages and overtime, off-the-clock work, minimum wages plus related liquidated damages, interest, or penalties. Except as set forth in Section 5.3 of the Settlement Agreement, Participating Class Members do not release any claims of wrongful termination or harassment if unrelated to wage/hour/compensation/rest period/meal period issues

or PAGA issues. Participating Class Members do not release any other claims, including claims for vested benefits, violation of the Fair Employment and Housing Act, unemployment insurance, disability, social security, workers' compensation, or claims occurring outside the Class Period.

k. PAGA Group Employees' PAGA Release. After the Court's judgment is final, and the Company has fully funded the Gross Settlement and separately paid all employer payroll taxes, all PAGA Group Employees will be barred from asserting PAGA claims against the Company, whether or not they exclude themselves from the Settlement. This means that all PAGA Group Employees, including those who are Participating Class Members and those who opt-out of the Class Settlement, cannot sue, continue to sue, or participate in any other PAGA claim against the Company or its related entities based on the PAGA Period facts alleged in the Action and resolved by this Settlement.

The PAGA Group Employees' Releases for Participating and Non-Participating Class Members are as follows:

All Participating and Non-Participating Class Members who are PAGA Group Employees are deemed to release, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, the Released Parties, from all claims for PAGA penalties that were alleged, or reasonably could have been alleged, based on the PAGA Period facts stated in the Operative Complaint, and the PAGA Notice.

## 4. HOW WILL THE ADMINISTRATOR CALCULATE MY PAYMENT?

a. Individual Class Payments. The Administrator will calculate Individual Class Payments by (a) dividing the Net Settlement Amount by the total number of Workweeks worked by all Participating Class Members, and (b) multiplying the result by the number of Workweeks worked by each individual Participating Class Member.

b. Individual PAGA Payments. The Administrator will calculate Individual PAGA Payments by (a) dividing $12,500 by the total number of PAGA Period Pay Periods worked by all PAGA Group Employees and (b) multiplying the result by the number of PAGA Period Pay Periods worked by each individual PAGA Group Employee.

c. Workweek/Pay Period Challenges. The number of Class Workweeks you worked during the Class Period and the number of Pay Periods you worked during the PAGA Period, as recorded in the Company's records, are stated on the first page of this Notice. You have until ____________ to challenge the number of Workweeks and/or Pay Periods credited to you. You can submit your challenge by signing and sending a letter to the Administrator via mail, email or fax. Section **9** of this Notice has the Administrator's contact information.

You need to support your challenge by sending copies of pay stubs or other records.

The Administrator will accept the Company's calculation of Workweeks and/or Pay Periods based on the Company's records as accurate unless you send copies of records containing contrary information. You should send copies rather than originals because the documents will not be returned to you. The Administrator will resolve Workweek and/or Pay Period challenges based on your submission and on input from Class Counsel (who will advocate on behalf of Participating Class Members) and the Company's Counsel. The Administrator's decision is final. You can't appeal or otherwise challenge its final decision.

## 5. HOW WILL I GET PAID?

a. Participating Class Members. The Administrator will send, by U.S. mail, a single check to every Participating Class Member (i.e., every Class Member who doesn't opt-out) including those who also qualify as PAGA Group Employees. The single check will combine the Individual Class Payment and the Individual PAGA Payment.

b. Non-Participating Class Members. The Administrator will send, by U.S. mail, a single Individual PAGA Payment check to every PAGA Group Employee who opts out of the Class Settlement (i.e., every Non-Participating Class Member).

**Your check will be sent to the same address as in this Notice. If you change your address, be sure to notify the Administrator as soon as possible. Section 9 of this Notice has the Administrator's contact information.**

## 6. HOW DO I OPT-OUT OF THE CLASS SETTLEMENT?

Submit a written and signed letter with your name, present address, telephone number, and a simple statement that you do not want to participate in the Settlement. This may be sent via email or certified mail to the Administrator using the contact information provided below. The Administrator will exclude you based on any writing communicating your request to be excluded. Be sure to personally sign your request, identify the Action as Shwiyhat, et al. v. Martin Marietta Materials, Inc., et al., Case No. ____________________, and include your identifying information (full name, address, telephone number, approximate dates of employment, and social security number for verification purposes). You must make the request yourself. If someone else makes the request for you, it will not be valid. The Administrator must be sent your request to be excluded by ____________, or it will be invalid. Section **9** of the Notice has the Administrator's contact information.

## 7. HOW DO I OBJECT TO THE SETTLEMENT?

Only Participating Class Members have the right to object to the Settlement. Before deciding whether to object, you may wish to see what Plaintiffs and the Company are asking the Court to approve. At least 16 court days before the ____________ Final Approval Hearing, Class Counsel and/or Plaintiffs will file in Court (1) a Motion for Final Approval that includes, among other things, the reasons why the proposed Settlement is fair, and (2) a Motion for Fees, Litigation Expenses and Service Award stating (i) the amount Class Counsel is requesting for attorneys' fees and litigation expenses; and (ii) the amount Plaintiffs are requesting as Class Representative Service Awards.

Upon reasonable request, Class Counsel (whose contact information is in Section **9** of this Notice) will send you copies of these documents at no cost to you. You can also view them on the Administrator's Website ___________ or the Court's website ___________.

A Participating Class Member who disagrees with any aspect of the Agreement, the Motion for Final Approval and/or Motion for Fees, Litigation Expenses and Service Award may wish to object, for example, that the proposed Settlement is unfair, or that the amounts requested by Class Counsel or Plaintiffs are too high or too low. The deadline for sending written objections to the Administrator is ___________. Be sure to tell the Administrator what you object to, why you object, and any facts that support your objection. Make sure you identify the Action Shwiyhat, et al. v. Martin Marietta Materials, Inc., et al., Case No. _________________, and include your name, current address, telephone number, and approximate dates of employment for the Company and sign the objection. Section **9** of this Notice has the Administrator's contact information.

Alternatively, a Participating Class Member can object (or personally retain a lawyer to object at your own cost) by attending the Final Approval Hearing. You (or your attorney) should be ready to tell the Court what you object to, why you object, and any facts that support your objection. See Section **8** of this Notice (immediately below) for specifics regarding the Final Approval Hearing.

## 8. CAN I ATTEND THE FINAL APPROVAL HEARING?

You can, but don't have to, attend the Final Approval Hearing on _________ at ___________ in Department _ of the San Joaquin County Superior Court, located at 222 E. Weber Ave. Ste 303, Stockton, CA 95202. At the Hearing, the judge will decide whether to grant Final Approval of the Settlement and how much of the Gross Settlement will be paid to Class Counsel, Plaintiffs, and the Administrator. The Court will invite comments from objectors, Class Counsel and Defense Counsel before making a decision. You can attend (or hire a lawyer to attend). Check the Court's website for the most current information.

It's possible the Court will reschedule the Final Approval Hearing. You should check the Administrator's website (___________) beforehand or contact Class Counsel to verify the date and time of the Final Approval Hearing.

## 9. HOW CAN I GET MORE INFORMATION?

The Agreement sets forth everything the Company and Plaintiffs have promised to do under the proposed Settlement. The easiest way to read the Agreement, the Judgment or any other Settlement documents is to go to the Administrator's website at ___________. You can also telephone or send an email to Class Counsel or the Administrator using the contact information listed below or consult the Superior Court website at https://cms.sjcourts.org/fullcourtweb/civilCase.do?CourtCaseId=0 and enter case number: ____________________.

In addition, you may inspect the Court's files
and the Stipulation for Class Action Settlement and Release of Claims (the Settlement

Agreement) at Office of the Clerk, San Joaquin County Superior Court, located at 180 E Weber Ave., Suite 200 Stockton, CA 95202, during regular court hours. You may also contact Class Counsel or the Settlement Administrator using the contact information listed above for more information.

**DO NOT TELEPHONE THE SUPERIOR COURT TO OBTAIN INFORMATION ABOUT THE SETTLEMENT.**

**The Contact information for the Settlement Administrator is as follows:**

Email Address:
Mailing Address:
Telephone:
Fax Number:

**The addresses for the Parties' counsel are as follows:**

| Class Counsel | Counsel for Defendant |
|---|---|
| Leonard Emma<br>Cody Stroman<br>Employment Lawyers<br>1999 Harrison Street, 18th Floor<br>Oakland, CA 94612<br>Tel.: (415) 362-1111<br>E-Mail: lemma@employment-lawyers.com<br>cstroman@employment-lawyers.com | Mike Birrer<br>Jordan Perry<br>Carrington Coleman LLP<br>901 Main St., Suite 5500<br>Dallas, TX 75202<br>Tel: (214) 855-3113<br>E-Mail: mbirrer@ccsb.com<br>jperry@ccsb.com |
| Joseph Lavi<br>Vincent Granberry<br>Lavi & Ebrahimian, LLP<br>8889 W. Olympic Blvd., Suite 200<br>Beverly Hills, CA 90211<br>Tel.: (310) 432-0000<br>Fax: (310) 432-0001<br>E-Mail: jlavi@lelawfirm.com<br>vgranberry@lelawfirm.com | Cassandra M. Ferrannini<br>Daria Gossett<br>Downey Brand LLP<br>621 Capitol Mall, 18th Floor<br>Sacramento, CA 95814<br>Tel: (916) 444-1000<br>cferrannini@DowneyBrand.com<br>dgossett@downeybrand.com |

## 10. WHAT IF I LOSE MY SETTLEMENT CHECK?

If you lose or misplace your settlement check before cashing it, the Administrator will replace it as long as you request a replacement before the void date on the face of the original check. If your check is already void you should consult the Unclaimed Property Fund for instructions on how to retrieve the funds.

## 11. WHAT IF I CHANGE MY ADDRESS?

To receive your check, you should immediately notify the Administrator if you move or otherwise change your mailing address.

EXHIBIT
D

SHWIYHAT, ET AL V MARTIN MARIETTA MATERIALS, INC, ET AL
C/O ATTICUS ADMINISTRATION
PO BOX 64053
SAINT PAUL MN 55164

ÍHBcÈ_NbÎ

<<barcode text>>

<<Claimant ID>> <<SEQ ID>>
Claimant ID: <<secondary ID>>
<<FIRST NAME>> <<LAST NAME>>
<<ADDRESS>> <<ADDRESS 2>>
<<CITY>> <<STATE>> << ZIP>>

**COURT APPROVED NOTICE OF CLASS ACTION SETTLEMENT AND HEARING DATE FOR FINAL COURT APPROVAL**

Shwiyhat, et al. v. Martin Marietta Materials, Inc. et al. Case No. STK-CV-UOE-2025-0010132

***The Superior Court for the State of California authorized this Notice. Read it carefully!***
***It's not junk mail, spam, an advertisement, or solicitation by a lawyer. You are not being sued.***

**You may be eligible to receive money** from an employee class action lawsuit ("Action") entitled *Austen Shwiyhat, et al. v. Martin Marietta Materials, Inc., et al.* for alleged wage and hour violations. The Action was filed by former employees Austen Shwiyhat and Walter Raines ("Plaintiffs") and seeks payment of (1) back wages and other relief for a class of hourly, non-exempt employees ("Class Members") who worked for Defendants Martin Marietta Materials, Inc. and Martin Marietta Northern California Aggregates, LLC during the Class Period from June 20, 2022 through September 25, 2025 and (2) penalties under the California Private Attorney General Act ("PAGA") for all hourly, non-exempt employees who worked for Defendants Martin Marietta Materials, Inc. and Martin Marietta Northern California Aggregates, LLC during the PAGA Period from June 20, 2022 through September 25, 2025 ("PAGA Group Employees"). For the purposes of this Notice, Defendants Martin Marietta Materials, Inc. and Martin Marietta Northern California Aggregates, LLC shall be referred to here as the "Company."

The proposed Settlement has two main parts: (1) a Class Settlement requiring the Company to fund Individual Class Payments, and (2) a PAGA Settlement requiring the Company to fund Individual PAGA Payments and pay penalties to the California Labor and Workforce Development Agency ("LWDA").

Based on the Company's records, and the Parties' current assumptions, **your Individual Class Payment is estimated to be $**<<Estimated Ind. Class Pmt>> **(less withholding) and your Individual PAGA Payment is estimated to be $**<<Estimated PAGA Pmt>>. The actual amount you may receive likely will be different and will depend on a number of factors. (If no amount is stated for your Individual PAGA Payment, then according to the Company's records you are not eligible for an Individual PAGA Payment under the Settlement because you didn't work during the PAGA Period.)

The above estimates are based on the Company's records showing that **you worked <<Class period workweeks>> workweeks** during the Class Period and **you worked <<PAGA pay periods>> pay periods** during the PAGA Period. If you believe that you worked more workweeks or pay periods during either period, you can submit a challenge by the deadline date. See Section **4** of this Notice.

The Court has already preliminarily approved the proposed Settlement and approved this Notice. The Court has not yet decided whether to grant final approval. Your legal rights are affected whether you act or not act. Read this Notice carefully. You will be deemed to have carefully read and understood it. At the Final Approval Hearing, the Court will decide whether to finally approve the Settlement and how much of the Settlement will be paid to Plaintiffs and Plaintiffs' attorneys ("Class Counsel"). The Court will also decide whether to enter a judgment that requires the Company to make payments under the Settlement and requires Class Members and PAGA Group Employees to give up their rights to assert certain claims against the Company.

If you worked for the Company during the Class Period and/or the PAGA Period, you have two basic options under the Settlement:

(1) **Do Nothing**. You don't have to do anything to participate in the proposed Settlement and be eligible for an Individual Class Payment and/or an Individual PAGA Payment. As a Participating Class Member, though, you will give up your right to assert Class Period wage claims and PAGA Period penalty claims against the Company.

(2) **Opt-Out of the Class Settlement**. You can exclude yourself from the Class Settlement (opt-out) by submitting the written Request for Exclusion or otherwise notifying the Administrator in writing. If you opt-out of the Settlement, you will not receive an Individual Class Payment. You will, however, preserve your right to personally pursue Class Period wage claims against the Company, and, if you are a PAGA Group Employee, remain eligible for an Individual PAGA Payment. You cannot opt-out of the PAGA portion of the proposed Settlement.

**The Company will not retaliate against you for any actions you take with respect to the proposed Settlement.**

**SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT**

| | |
|---|---|
| **You Don't Have to Do Anything to Participate in the Settlement** | If you do nothing, you will be a Participating Class Member, eligible for an Individual Class Payment and an Individual PAGA Payment (if any). In exchange, you will give up your right to assert the wage claims against the Company that are covered by this Settlement (Released Claims). |
| **You Can Opt-Out of the Class Settlement but not the PAGA Settlement**<br><br>**The Opt-out Deadline is <u>December 26, 2025</u>** | If you don't want to fully participate in the proposed Settlement, you can opt-out of the Class Settlement by sending the Administrator a written Request for Exclusion. Once excluded, you will be a Non-Participating Class Member and no longer eligible for an Individual Class Payment. Non-Participating Class Members cannot object to any portion of the proposed Settlement. See Section **6** of this Notice.<br><br>You cannot opt-out of the PAGA portion of the proposed Settlement. The Company must pay Individual PAGA Payments to all PAGA Group Employees and the PAGA Group Employees must give up their rights to pursue Released Claims (defined below). |

| | |
|---|---|
| **Participating Class Members Can Object to the Class Settlement but not the PAGA Settlement**<br><br>**Written Objections Must be Submitted by <u>December 26, 2025</u>** | All Class Members who do not opt-out ("Participating Class Members") can object to any aspect of the proposed Settlement. The Court's decision whether to finally approve the Settlement will include a determination of how much will be paid to Class Counsel and Plaintiffs who pursued the Action on behalf of the Class. You are not personally responsible for any payments to Class Counsel or Plaintiffs, but every dollar paid to Class Counsel and Plaintiffs reduces the overall amount paid to Participating Class Members. You can object to the amounts requested by Class Counsel or Plaintiff if you think they are unreasonable. See Section **7** of this Notice. |
| **You Can Participate in the February 26, 2026 Final Approval Hearing** | The Court's Final Approval Hearing is scheduled to take place on February 26, 2026. You don't have to attend but you do have the right to appear (or hire an attorney to appear on your behalf at your own cost), in person, by telephone or by using the Court's virtual appearance platform. Participating Class Members can verbally object to the Settlement at the Final Approval Hearing. See Section **8** of this Notice. |
| **You Can Challenge the Calculation of Your Workweeks/Pay Periods**<br><br>**Written Challenges Must be Submitted by <u>December 26, 2025</u>** | The amount of your Individual Class Payment and PAGA Payment (if any) depends on how many workweeks you worked at least one day during the Class Period and how many Pay Periods you worked at least one day during the PAGA Period, respectively. The number of Class Period Workweeks and number of PAGA Period Pay Periods you worked according to the Company's records is stated on the first page of this Notice. If you disagree with either of these numbers, you must challenge it by December 26, 2025. See Section **4** of this Notice. |

## 1. WHAT IS THE ACTION ABOUT?

Plaintiffs are former employees of the Company. The Action accuses the Company of violating California labor laws by failing to pay overtime wages, minimum wages, wages due upon termination and reimbursable expenses and failing to provide meal periods, rest breaks and accurate itemized wage statements. Based on the same claims, Plaintiffs have also asserted a claim for civil penalties under the California Private Attorneys General Act (Labor Code §§ 2698, et seq.) ("PAGA").

## 2. WHAT DOES IT MEAN THAT THE ACTION HAS SETTLED?

So far, the Court has made no determination whether the Company or Plaintiffs are correct on the merits. In the meantime, Plaintiffs and the Company hired an experienced, neutral mediator in an effort to resolve the Action through a negotiated agreement (settle the case) rather than continuing the expensive and time-consuming process of litigation. The negotiations were successful. By signing a written settlement agreement ("Agreement") and agreeing to jointly ask the Court to enter a judgment ending the Action and enforcing the Agreement, Plaintiffs and the Company have negotiated a proposed Settlement that is subject to the Court's Final Approval. Both sides agree the proposed Settlement is a compromise of disputed claims. By agreeing to settle, the Company does not admit any violations or concede the merit of any claims.

Plaintiffs and Class Counsel strongly believe the Settlement is a good deal for you because they believe that: (1) the Company has agreed to pay a fair, reasonable and adequate amount considering the strength of the claims and the risks and uncertainties of continued litigation; and (2) Settlement is in the best interests of the Class Members and PAGA Group Employees. The Court preliminarily approved the proposed

Settlement as fair, reasonable and adequate, authorized this Notice, and scheduled a hearing to determine Final Approval.

## 3. WHAT ARE THE IMPORTANT TERMS OF THE PROPOSED SETTLEMENT?

a. The Company Will Pay $1,521,125.00 as the Gross Settlement Amount (Gross Settlement). The Company has agreed to deposit the Gross Settlement into an account controlled by the Administrator of the Settlement. The Administrator will use the Gross Settlement to pay the Individual Class Payments, Individual PAGA Payments, Class Representative Service Payment, Class Counsel's attorney's fees and expenses, the Administrator's expenses, and penalties to be paid to the California Labor and Workforce Development Agency ("LWDA"). Assuming the Court grants Final Approval, the Company will fund the Gross Settlement not more than 14 days after the Judgment entered by the Court becomes final. The Judgment will be final on the date the Court enters Judgment, or a later date if Participating Class Members object to the proposed Settlement or the Judgment is appealed.

b. Court Approved Deductions from Gross Settlement. At the Final Approval Hearing, Plaintiffs and/or Class Counsel will ask the Court to approve the following deductions from the Gross Settlement, the amounts of which will be decided by the Court at the Final Approval Hearing:

i. Up to $532,393.75 (35% of the Gross Settlement) to Class Counsel for attorneys' fees and up to $50,000.00 for their litigation expenses. To date, Class Counsel have worked and incurred expenses on the Action without payment.

ii. Up to $10,000 each to Plaintiffs as a Class Representative Award for filing the Action, working with Class Counsel and representing the Class. A Class Representative Award will be the only monies Plaintiffs will receive other than Plaintiffs' Individual Class Payment and any Individual PAGA Payment.

iii. Up to $20,000 to the Administrator for services administering the Settlement.

iv. Up to $50,000 for PAGA Penalties, allocated 75% to the LWDA PAGA Payment and 25% in Individual PAGA Payments to the PAGA Group Employees based on their PAGA Period Pay Periods.

Participating Class Members have the right to object to any of these deductions. The Court will consider all objections.

c. Net Settlement Distributed to Class Members. After making the above deductions in amounts approved by the Court, the Administrator will distribute the rest of the Gross Settlement (the "Net Settlement") by making Individual Class Payments to Participating Class Members based on their Class Period Workweeks.

d. Taxes Owed on Payments to Class Members. The Settlement shall be broken down as follows: 40% ("Wage Portion") of each Individual Class Payment to taxable wages and 60% ("Non-Wage Portion") to penalties and interest. The Wage Portion is subject to withholding and will be reported on IRS W-2 Forms. The Company will separately pay employer payroll taxes it owes on the Wage Portion. The Individual PAGA Payments are counted as penalties rather than wages for tax purposes. The Administrator will report the Individual PAGA Payments and the Non-Wage Portions of the Individual Class Payments on IRS 1099 Forms.

Although Plaintiffs and the Company have agreed to these allocations, neither side is giving you any advice on whether your Payments are taxable or how much you might owe in taxes. You are responsible for paying all taxes (including penalties and interest on back taxes) on any Payments received from the proposed Settlement. You should consult a tax advisor if you have any questions about the tax consequences of the proposed Settlement.

e. Need to Promptly Cash Payment Checks. The front of every check issued for Individual Class Payments and Individual PAGA Payments will show the date when the check expires (the void date). If you don't cash it by the void date, your check will be automatically cancelled, and the monies will be deposited with the California Controller's Unclaimed Property Fund in your name. If the monies represented by your check are sent to the Controller's Unclaimed Property, you should consult the rules of the Fund for instructions on how to retrieve your money.

f. Requests for Exclusion from the Class Settlement (Opt-Outs). You will be treated as a Participating Class Member, participating fully in the Class Settlement, unless you notify the Administrator in writing, not later than 45 days after the mailing of the Notice (plus an additional 14 days for Class Members whose Class Notice was re-mailed), that you wish to opt-out. The easiest way to notify the Administrator is to send a written and signed Request for Exclusion by the Response Deadline. The Request for Exclusion should be a letter from a Class Member or his/her representative setting forth a Class Member's name, present address, telephone number, and a simple statement electing to be excluded from the Settlement. Excluded Class Members (i.e., Non-Participating Class Members) will not receive Individual Class Payments but will preserve their rights to personally pursue wage and hour claims against the Company.

g. You cannot opt-out of the PAGA portion of the Settlement. Class Members who exclude themselves from the Class Settlement (Non-Participating Class Members) remain eligible for Individual PAGA Payments and are required to give up their right to assert PAGA claims against the Company based on the PAGA Period facts alleged in the Action.

h. The Proposed Settlement Will be Void if the Court Denies Final Approval. It is possible the Court will decline to grant Final Approval of the Settlement or decline to enter a Judgment. It is also possible the Court will enter a Judgment that is reversed on appeal. Plaintiffs and the Company have agreed that, in either case, the Settlement will be void: the Company will not pay any money and Class Members will not release any claims against the Company.

i. Administrator. The Court has appointed a neutral company, Atticus Administration LLC (the "Administrator") to send this Notice, calculate and make payments, and process Class Members' Requests for Exclusion. The Administrator will also decide Class Member Challenges over Workweeks, mail and re-mail settlement checks and tax forms, and perform other tasks necessary to administer the Settlement. The Administrator's contact information is contained in Section **9** of this Notice.

j. Participating Class Members' Release. After the Judgment is final and the Company has fully funded the Gross Settlement and separately paid all employer payroll taxes, Participating Class Members will be legally barred from asserting any of the claims released under the Settlement. This means that unless you opted out by validly excluding yourself from the Class Settlement, you cannot sue, continue to sue, or be part of any other lawsuit against the Company or related entities for wages based on the Class Period facts and PAGA

penalties based on PAGA Period facts, as alleged in the Action and resolved by this Settlement.

The Participating Class Members will be bound by the following release:

All Participating Class Members, on behalf of themselves and their respective former and present spouses, representatives, agents, attorneys, heirs, administrators, successors, and assigns, release Released Parties from (i) all claims that were alleged, or reasonably could have been alleged, based on the Class Period and facts stated in the Operative Complaint, including any claims under the California Labor Code, PAGA, FLSA, applicable Wage Order, and any other local, state, or federal laws on pay/wage/hour issues. This includes but is not limited to claims related to or arising from alleged wages, overtime, calculation of wages and overtime, off-the-clock work, minimum wages plus related liquidated damages, interest, or penalties. Except as set forth in Section 5.3 of the Settlement Agreement, Participating Class Members do not release any claims of wrongful termination or harassment if unrelated to wage/hour/compensation/rest period/meal period issues or PAGA issues. Participating Class Members do not release any other claims, including claims for vested benefits, violation of the Fair Employment and Housing Act, unemployment insurance, disability, social security, workers' compensation, or claims occurring outside the Class Period.

k. PAGA Group Employees' PAGA Release. After the Court's judgment is final, and the Company has fully funded the Gross Settlement and separately paid all employer payroll taxes, all PAGA Group Employees will be barred from asserting PAGA claims against the Company, whether or not they exclude themselves from the Settlement. This means that all PAGA Group Employees, including those who are Participating Class Members and those who opt-out of the Class Settlement, cannot sue, continue to sue, or participate in any other PAGA claim against the Company or its related entities based on the PAGA Period facts alleged in the Action and resolved by this Settlement.

The PAGA Group Employees' Releases for Participating and Non-Participating Class Members are as follows:

All Participating and Non-Participating Class Members who are PAGA Group Employees are deemed to release, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, the Released Parties, from all claims for PAGA penalties that were alleged, or reasonably could have been alleged, based on the PAGA Period facts stated in the Operative Complaint, and the PAGA Notice.

## 4. HOW WILL THE ADMINISTRATOR CALCULATE MY PAYMENT?

a. Individual Class Payments. The Administrator will calculate Individual Class Payments by (a) dividing the Net Settlement Amount by the total number of Workweeks worked by all Participating Class Members, and (b) multiplying the result by the number of Workweeks worked by each individual Participating Class Member.

b. Individual PAGA Payments. The Administrator will calculate Individual PAGA Payments by (a) dividing $12,500 by the total number of PAGA Period Pay Periods worked by all PAGA Group Employees and (b) multiplying the result by the number of PAGA Period Pay Periods worked by each individual PAGA Group Employee.

c. Workweek/Pay Period Challenges. The number of Class Workweeks you worked during the Class Period and the number of Pay Periods you worked during the PAGA Period, as recorded in the Company's records, are stated on the first page of this Notice. You have until December 26, 2025 to challenge the number of Workweeks and/or Pay Periods credited to you. You can submit your challenge by signing and sending a letter to the Administrator via mail, email or fax. Section **9** of this Notice has the Administrator's contact information.

You need to support your challenge by sending copies of pay stubs or other records. The Administrator will accept the Company's calculation of Workweeks and/or Pay Periods based on the Company's records as accurate unless you send copies of records containing contrary information. You should send copies rather than originals because the documents will not be returned to you. The Administrator will resolve Workweek and/or Pay Period challenges based on your submission and on input from Class Counsel (who will advocate on behalf of Participating Class Members) and the Company's Counsel. The Administrator's decision is final. You can't appeal or otherwise challenge its final decision.

## 5. HOW WILL I GET PAID?

a. Participating Class Members. The Administrator will send, by U.S. mail, a single check to every Participating Class Member (i.e., every Class Member who doesn't opt-out) including those who also qualify as PAGA Group Employees. The single check will combine the Individual Class Payment and the Individual PAGA Payment.

b. Non-Participating Class Members. The Administrator will send, by U.S. mail, a single Individual PAGA Payment check to every PAGA Group Employee who opts out of the Class Settlement (i.e., every Non-Participating Class Member).

**Your check will be sent to the same address as in this Notice. If you change your address, be sure to notify the Administrator as soon as possible. Section 9 of this Notice has the Administrator's contact information.**

## 6. HOW DO I OPT-OUT OF THE CLASS SETTLEMENT?

Submit a written and signed letter with your name, present address, telephone number, and a simple statement that you do not want to participate in the Settlement. This may be sent via email or certified mail to the Administrator using the contact information provided below. The Administrator will exclude you based on any writing communicating your request to be excluded. Be sure to personally sign your request, identify the Action as Shwiyhat, et al. v. Martin Marietta Materials, Inc., et al., Case No. STK-CV-UOE-2025-0010132, and include your identifying information (full name, address, telephone number, approximate dates of employment, and social security number for verification purposes). You must make the request yourself. If someone else makes the request for you, it will not be valid. The Administrator must be sent your request to be excluded by December 26, 2025, or it will be invalid. Section **9** of the Notice has the Administrator's contact information.

## 7. HOW DO I OBJECT TO THE SETTLEMENT?

Only Participating Class Members have the right to object to the Settlement. Before deciding whether to object, you may wish to see what Plaintiffs and the Company are asking the Court to approve. At least 16 court days before the February 26, 2026 Final Approval Hearing, Class Counsel and/or Plaintiffs will file in Court (1) a Motion for Final Approval that includes, among other things, the reasons why the proposed

Settlement is fair, and (2) a Motion for Fees, Litigation Expenses and Service Award stating (i) the amount Class Counsel is requesting for attorneys' fees and litigation expenses; and (ii) the amount Plaintiffs are requesting as Class Representative Service Awards. Upon reasonable request, Class Counsel (whose contact information is in Section **9** of this Notice) will send you copies of these documents at no cost to you. You can also view them on the Administrator's Website https://www.atticusadmin.com/shwiyhat-et-al-v-martin-marietta-materials-inc-et-al/ or the Court's website https://www.sjcourts.org/.

A Participating Class Member who disagrees with any aspect of the Agreement, the Motion for Final Approval and/or Motion for Fees, Litigation Expenses and Service Award may wish to object, for example, that the proposed Settlement is unfair, or that the amounts requested by Class Counsel or Plaintiffs are too high or too low. The deadline for sending written objections to the Administrator is December 26, 2025. Be sure to tell the Administrator what you object to, why you object, and any facts that support your objection. Make sure you identify the Action *Shwiyhat, et al. v. Martin Marietta Materials, Inc., et al.*, Case No. STK-CV-UOE-2025-0010132, and include your name, current address, telephone number, and approximate dates of employment for the Company and sign the objection. Section **9** of this Notice has the Administrator's contact information.

Alternatively, a Participating Class Member can object (or personally retain a lawyer to object at your own cost) by attending the Final Approval Hearing. You (or your attorney) should be ready to tell the Court what you object to, why you object, and any facts that support your objection. See Section **8** of this Notice (immediately below) for specifics regarding the Final Approval Hearing.

## 8. CAN I ATTEND THE FINAL APPROVAL HEARING?

You can, but don't have to, attend the Final Approval Hearing on February 26, 2026 at 9:00 a.m. in Department 11B of the San Joaquin County Superior Court, located at 222 E. Weber Ave. Ste 303, Stockton, CA 95202. At the Hearing, the judge will decide whether to grant Final Approval of the Settlement and how much of the Gross Settlement will be paid to Class Counsel, Plaintiffs, and the Administrator. The Court will invite comments from objectors, Class Counsel and Defense Counsel before making a decision. You can attend (or hire a lawyer to attend). Check the Court's website for the most current information.

It's possible the Court will reschedule the Final Approval Hearing. You should check the Administrator's website (https://www.atticusadmin.com/shwiyhat-et-al-v-martin-marietta-materials-inc-et-al/) beforehand or contact Class Counsel to verify the date and time of the Final Approval Hearing.

## 9. HOW CAN I GET MORE INFORMATION?

The Agreement sets forth everything the Company and Plaintiffs have promised to do under the proposed Settlement. The easiest way to read the Agreement, the Judgment or any other Settlement documents is to go to the Administrator's website at https://www.atticusadmin.com/shwiyhat-et-al-v-martin-marietta-materials-inc-et-al/. You can also telephone or send an email to Class Counsel or the Administrator using the contact information listed below or consult the Superior Court website at https://cms.sjcourts.org/fullcourtweb/civilCase.do and enter case number: STK-CV-UOE-2025-0010132.

In addition, you may inspect the Court's files and the Stipulation for Class Action Settlement and Release of Claims (the Settlement Agreement) at Office of the Clerk, San Joaquin County Superior Court, located at 180 E Weber Ave., Suite 200 Stockton, CA 95202, during regular court hours. You may also contact Class Counsel or the Settlement Administrator using the contact information listed above for more information.

**DO NOT TELEPHONE THE SUPERIOR COURT TO OBTAIN INFORMATION ABOUT THE SETTLEMENT.**

**The Contact information for the Settlement Administrator is as follows:**

Shwiyhat, et al. v. Martin Marietta Materials, Inc. Settlement
c/o Atticus Administration
PO Box 64053
St. Paul, MN 55164
MartinMariettaMaterialsSettlement@atticusadmin.com
Telephone: (800) 279-0331
Fax: (888) 326-6411

**The addresses for the Parties' counsel are as follows:**

| Class Counsel | Counsel for Defendant |
|---|---|
| Leonard Emma<br>Cody Stroman<br>Employment Lawyers<br>1999 Harrison Street, 18th Floor<br>Oakland, CA 94612<br>Tel.: (415) 362-1111<br>E-Mail: lemma@employment-lawyers.com<br>cstroman@employment-lawyers.com | Mike Birrer<br>Jordan Perry<br>Carrington Coleman LLP<br>901 Main St., Suite 5500<br>Dallas, TX 75202<br>Tel: (214) 855-3113<br>E-Mail: mbirrer@ccsb.com<br>jperry@ccsb.com |
| Joseph Lavi<br>Vincent Granberry<br>Lavi & Ebrahimian, LLP<br>8889 W. Olympic Blvd., Suite 200<br>Beverly Hills, CA 90211<br>Tel.: (310) 432-0000<br>Fax: (310) 432-0001<br>E-Mail: jlavi@lelawfirm.com<br>vgranberry@lelawfirm.com | Cassandra M. Ferrannini<br>Daria Gossett<br>Downey Brand LLP<br>621 Capitol Mall, 18th Floor<br>Sacramento, CA 95814<br>Tel: (916) 444-1000<br>cferrannini@DowneyBrand.com<br>dgossett@downeybrand.com |

**10. WHAT IF I LOSE MY SETTLEMENT CHECK?**

If you lose or misplace your settlement check before cashing it, the Administrator will replace it as long as you request a replacement before the void date on the face of the original check. If your check is already void you should consult the Unclaimed Property Fund for instructions on how to retrieve the funds.

**11. WHAT IF I CHANGE MY ADDRESS?**

To receive your check, you should immediately notify the Administrator if you move or otherwise change your mailing address.

**AVISO APROBADO POR EL TRIBUNAL DE LA CONCILIACIÓN EN UNA DEMANDA COLECTIVA Y FECHA DE LA AUDIENCIA DE APROBACIÓN DEFINITIVA DEL TRIBUNAL**
Shwiyhat, et al. v. Martin Marietta Materials, Inc. et al. Caso n.º STK-CV-UOE-2025-0010132

***El Tribunal superior del estado de California autorizó este Aviso. Léalo detenidamente. No es correo basura, spam, publicidad ni una oferta de representación por parte de un abogado. Usted no está siendo demandado.***

**Puede calificar para recibir dinero** de una demanda de acción colectiva de empleados (la "Acción") titulada *Austen Shwiyhat, et al. v. Martin Marietta Materials, Inc., et al.* por presuntas infracciones salariales y trabajo por horas. La Acción fue presentada por los antiguos empleados Austen Shwiyhat y Walter Raines (los "Demandantes") y pretende obtener el pago de (1) salarios atrasados y otro tipo de reparación para un grupo de empleados por horas no exentos (los "Miembros del grupo de demandantes") que trabajaron para las Demandadas Martin Marietta Materials, Inc. y Martin Marietta Northern California Aggregates, LLC durante el Período de la demanda colectiva que se extiende desde el 20 de junio de 2022 hasta el 25 de septiembre de 2025 y (2) sanciones en virtud de la Ley de Abogado General Privado de California (California Private Attorney General Act, "PAGA") para todos los empleados por horas no exentos que trabajaron para las Demandadas Martin Marietta Materials, Inc. y Martin Marietta Northern California Aggregates, LLC durante el Período de PAGA desde el 20 de junio de 2022 hasta el 25 de septiembre de 2025 (los "Empleados del grupo de PAGA"). A los efectos de este Aviso, se hará referencia a las Demandadas Martin Marietta Materials, Inc. y Martin Marietta Northern California Aggregates, LLC como la "Empresa".

La propuesta de Conciliación consta de dos partes principales: (1) una Conciliación de la demanda colectiva que exige que la Empresa haga efectivo los Pagos del grupo de demandantes individuales y (2) una Conciliación en virtud de PAGA que exige que la Empresa haga efectivo los Pagos individuales en virtud de PAGA y pague sanciones a la Agencia de Desarrollo Laboral y de la Fuerza Laboral de California (Labor and Workforce Development Agency, "LWDA").

De acuerdo con los registros de la Empresa y las suposiciones actuales de las Partes, **se estima que su Pago individual** del grupo de demandantes asciende a USD <ins><<Pago estimado del gr. Dem. indiv.>></ins> **(menos la retención) y se estima que su Pago individual** de PAGA es de USD <<Pago estimado PAGA>>. Es probable que la suma real que recibiese fuese diferente y ello dependerá de varios factores. (Si no se indicase ningún importe para su Pago individual de PAGA, en ese caso, según los registros de la Empresa, usted no califica para recibir un Pago individual de PAGA en virtud de la Conciliación porque no trabajó durante el Período de PAGA.)

Las estimaciones anteriores se basan en los registros de la Empresa en los cuales se indica que **trabajó <ins><<semanas laborales del Período del grupo>></ins>** durante el Período del grupo y que **trabajó <<<ins>períodos de pago correspondientes a los períodos de Pago de PAGA</ins>>>** durante el Período de PAGA. Si creyese que trabajó más semanas laborales o períodos de pago durante cualquiera de estos períodos, puede presentar una objeción antes de la fecha límite. Consulte la Sección **4** de este Aviso.

El Tribunal ya aprobó preliminarmente la propuesta de Conciliación y aprobó este Aviso. El Tribunal aún no ha decidido si otorgará la aprobación definitiva. Sus derechos legales se verán afectados independientemente de que actuase o no. Lea este Aviso detenidamente. Se considerará que lo leyó detenidamente y lo comprendió. En la Audiencia de aprobación definitiva, el Tribunal decidirá si aprueba de manera definitiva la Conciliación y qué monto de la Conciliación se pagará a los Demandantes y a sus Abogados (los "Abogados del grupo de demandantes"). El Tribunal también decidirá si dicta una sentencia que exija que la Empresa realice los pagos en virtud de la Conciliación y que exija a los Miembros del

grupo de demandantes y a los Empleados miembro del Grupo de PAGA que renuncien a sus derechos de presentar ciertos reclamos contra la Empresa.

Si hubiese trabajado para la Empresa durante el Período de la Demanda colectiva o el Período de PAGA, tiene dos opciones básicas en virtud de la Conciliación:

(1) **No hacer nada:** no es necesario que haga nada para poder participar en la propuesta de Conciliación y calificar para recibir un Pago individual de la demanda colectiva o un Pago individual de PAGA. Sin embargo, como Miembro del grupo de demandantes participante, renunciará a su derecho de presentar reclamos salariales correspondientes al Período de la demanda colectiva y reclamos por sanciones por el Período de PAGA contra la Empresa.

(2) **Excluirse de la Conciliación en la demanda colectiva:** puede excluirse de la Conciliación en la demanda colectiva enviando la Solicitud de exclusión escrita o notificándoselo al Administrador por escrito. Si optase por excluirse de la Conciliación, no recibirá un Pago individual de la Demanda colectiva. Sin embargo, conservará su derecho a presentar reclamos salariales correspondientes al Período de la demanda colectiva contra la Empresa a título personal y, si fuese un Empleado del grupo de PAGA, seguirá calificando para recibir un Pago individual en virtud de PAGA. No puede excluirse de la parte de la Conciliación propuesta correspondiente a PAGA.

**La Empresa no tomará represalias en su contra por toda aquella acción que emprendiese con respecto a la propuesta de Conciliación.**

**RESUMEN DE SUS DERECHOS Y OPCIONES LEGALES EN ESTA CONCILIACIÓN**

| | |
|---|---|
| **No es necesario que hiciera nada para participar de la Conciliación** | Si no hiciera nada, será Miembro del grupo de demandantes participante y calificará para recibir un Pago individual de la demanda colectiva y un Pago individual de PAGA (si correspondiese). A cambio, renunciará a su derecho a presentar reclamos salariales contra la Empresa que estuviesen cubiertos por esta Conciliación (los Reclamos eximidos). |
| **Puede excluirse de la Conciliación en la demanda colectiva, pero no de la Conciliación de PAGA**<br><br>**La fecha límite para excluirse es el <u>26 de diciembre de 2025</u>** | Si no deseara participar plenamente en la propuesta de Conciliación, puede excluirse de la Conciliación en la demanda colectiva enviando una Solicitud de exclusión por escrito al Administrador. Una vez que se hubiese excluido, será un Miembro del grupo de demandantes no participante y ya no tendrá derecho a recibir el Pago individual de la demanda colectiva. Los Miembros del grupo de demandantes no participantes no pueden objetar ninguna parte de la Conciliación propuesta. Consulte la Sección **6** de este Aviso.<br><br>No puede excluirse de la parte de la Conciliación propuesta correspondiente a PAGA. La Empresa debe efectuar los Pagos individuales en virtud de PAGA a todos los Empleados del grupo de PAGA y los Empleados del grupo de PAGA deben renunciar a sus derechos de presentar Reclamos eximidos (conforme se define más adelante). |

| | |
|---|---|
| **Los Miembros del grupo de demandantes participantes pueden objetar la Conciliación en la demanda colectiva, pero no la Conciliación de PAGA**<br><br>**Objeciones escritas Deben enviarse antes del <u>26 de diciembre de 2025</u>** | Todos los Miembros del grupo que no se excluyesen (los "Miembros del grupo de demandantes participantes") podrán objetar cualquier aspecto de la propuesta de Conciliación. La decisión del Tribunal de conceder la aprobación definitiva a la Conciliación incluirá una determinación con respecto a cuánto se pagará a los Abogados del grupo y a los Demandantes que iniciaron la Demanda en nombre del Grupo. No es personalmente responsable de ningún pago a los Abogados del grupo o a los Demandantes, pero cada dólar que se pagase a los Abogados del grupo y a los Demandantes reducirá el monto total que se pagará a los Miembros del grupo de demandantes participantes. Puede objetar los montos solicitados por los Abogados del grupo de demandantes o los Demandantes si considerase que no son razonables. Consulte la Sección **7** de este Aviso. |
| **Puede participar en la Audiencia de aprobación definitiva del 26 de febrero de 2026** | La fecha programada para que el Tribunal llevase a cabo la Audiencia de aprobación definitiva es el 26 de febrero de 2026. No tiene que asistir, pero tiene derecho a comparecer (o contratar a un abogado para que compareciera en su nombre, asumiendo personalmente el costo), en persona, por teléfono o a través de la plataforma de comparecencia virtual del Tribunal. Los Miembros del grupo de demandantes participantes pueden objetar verbalmente la Conciliación en la Audiencia de aprobación definitiva. Consulte la sección **8** de este Aviso. |
| **Puede objetar el cálculo de sus semanas laborales/períodos de pago**<br><br>**Objeciones por escrito Deben enviarse antes del <u>26 de diciembre de 2025</u>** | El monto de su Pago individual en la Demanda colectiva y del Pago de PAGA (si correspondiese) dependen de cuántas semanas laborales trabajó al menos un día durante el Período de la demanda y cuántos Períodos de pago trabajó al menos un día durante el Período de PAGA, respectivamente. El número de Semanas laborales de la Demanda colectiva y el número de Períodos de pago de PAGA que trabajó según los registros de la Empresa se indican en la primera página de este Aviso. Si no estuviese de acuerdo con alguna de dichas cifras, debe objetarlas antes del 26 de diciembre de 2025. Consulte la Sección **4** de este Aviso. |

## 1. ¿DE QUÉ SE TRATA LA DEMANDA?

Los Demandantes son exempleados de la Empresa. En la Demanda, se acusa a la Empresa de infringir las leyes laborales de California al no pagar salarios por horas extra, salarios mínimos, salarios adeudados al momento de la extinción de la relación laboral y gastos reembolsables y al no proporcionar períodos para comer, recesos de descanso y recibos de sueldo detallados y precisos. En función de los mismos reclamos, los Demandantes también presentaron un reclamo por sanciones civiles en virtud de la Ley de Abogado General Privado de California (Código Laboral, secciones 2698 y siguientes) ("PAGA").

## 2. ¿QUÉ SIGNIFICA QUE SE HA LLEGADO A UNA CONCILIACIÓN EN LA DEMANDA?

Hasta ahora, el Tribunal no ha determinado si la Empresa o los Demandantes tienen razón en cuanto a la cuestión de fondo. Mientras tanto, los Demandantes y la Empresa contrataron a un mediador neutral y con experiencia en un esfuerzo por resolver la Acción a través de un acuerdo negociado (conciliar el caso) en lugar de continuar con el costoso y largo proceso de litigio. Las negociaciones fueron exitosas. Al firmar un acuerdo de conciliación por escrito (el "Acuerdo") y aceptar solicitar conjuntamente al Tribunal que dicte una sentencia que ponga fin a la Acción y haga valer el Acuerdo, los Demandantes y la Empresa han negociado una propuesta de Conciliación que está sujeta a la Aprobación definitiva del tribunal. Ambas

partes acuerdan que la propuesta de Conciliación constituye un compromiso respecto de los reclamos en disputa. Al aceptar la conciliación, la Empresa no admite ninguna infracción ni reconoce el mérito de reclamo alguno.

Los Demandantes y el Grupo de demandantes cree firmemente que la Conciliación es un buen trato para usted porque creen que: (1) la Empresa ha aceptado pagar una cantidad justa, razonable y adecuada teniendo en cuenta la solidez de los reclamos y los riesgos y las incertidumbres de continuar con el litigio y (2) la Conciliación es lo mejor para los Miembros del grupo de demandantes y los Empleados del grupo de PAGA. El Tribunal aprobó preliminarmente la propuesta de Conciliación por considerarla justa, razonable y adecuada, autorizó este Aviso y programó una audiencia para determinar la Aprobación definitiva.

**3. ¿CUÁLES SON LOS TÉRMINOS IMPORTANTES DE LA PROPUESTA DE CONCILIACIÓN?**

a. La Empresa pagará USD 1,521,125.00 como Importe bruto de la conciliación (el Importe bruto de la conciliación): la Empresa ha aceptado depositar el Importe bruto de la conciliación en una cuenta controlada por el Administrador de la conciliación. El Administrador utilizará el Importe bruto de la conciliación para hacer efectivo los Pagos individuales de la demanda colectiva, los Pagos individuales en virtud de PAGA, el Pago de indemnización servicio a los Representantes del grupo de demandantes, los honorarios y gastos de los Abogados del grupo de demandantes, los gastos del Administrador y las sanciones que se pagarán a la Agencia de Desarrollo del Trabajo y la Fuerza Laboral de California (Labor and Workforce Development Agency, "LWDA"). Suponiendo que el Tribunal otorgase la Aprobación definitiva, la Empresa hará efectivo el pago del Importe bruto de la conciliación en un plazo máximo de 14 días después de que la Sentencia dictada por el Tribunal quedase firme. La Sentencia quedará firme en la fecha en la que el Tribunal dicte sentencia o en una fecha posterior si los Miembros del grupo de demandantes participantes se oponen a la propuesta de Conciliación o se apela la Sentencia.

b. Deducciones del Importe bruto de la Conciliación aprobadas por el tribunal: en la Audiencia de aprobación definitiva, los Demandantes o los Abogados del grupo de demandantes solicitarán al Tribunal que apruebe las siguientes deducciones del Importe bruto de la conciliación, cuyos montos decidirá el Tribunal en la Audiencia de aprobación definitiva:

i. hasta USD 532,393.75 (el 35 % del Importe bruto de la conciliación) para los Abogados del grupo de demandantes en concepto de honorarios de abogados y hasta USD 50,000.00 en concepto de gastos de litigio. Hasta la fecha, los Abogados del grupo de demandantes han trabajado e incurrido en gastos en relación con la Acción sin que se les hubiese pagado;

ii. hasta USD 10,000 a cada uno de los Demandantes como Indemnización para el representante del grupo de demandantes por presentar la Acción, trabajar con los Abogados del grupo de demandantes y representar al Grupo. La Indemnización al representante del grupo de demandantes será el único dinero que recibirán los Demandantes, además del Pago individual de la demanda colectiva de los Demandantes y cualquier Pago individual de PAGA;

iii. hasta USD 20,000 al Administrador por los servicios de administración de la conciliación;

iv. hasta USD 50,000 para Sanciones en virtud de PAGA, asignados en un 75 % al Pago

de PAGA a la LWDA y en un 25 % a los Pagos individuales en virtud de PAGA a los Empleados del grupo de PAGA en función de sus Períodos de pago correspondientes al período de PAGA.

Los Miembros del grupo de demandantes participantes tienen derecho a objetar cualquiera de estas deducciones. El Tribunal analizará todas las objeciones.

c. Distribución de la conciliación neta a los Miembros del grupo de demandantes: después de realizar las deducciones anteriores en las cantidades aprobadas por el Tribunal, el Administrador distribuirá el resto del Importe bruto de la conciliación (el “Importe neto de la conciliación”) mediante Pagos individuales de la demanda colectiva a los Miembros del grupo de demandantes participantes en función de las Semanas laborales en el Período de la demanda colectiva.

d. Impuestos que deben pagarse sobre los pagos a los Miembros del grupo de demandantes: la Conciliación se desglosará de la manera siguiente: un 40 % (la “Parte salarial”) de cada Pago individual de la demanda colectiva a salarios imponibles y un 60 % (la “Parte no salarial”) en intereses y sanciones. La Parte salarial estará sujeta a retenciones y se declarará en los Formularios W-2 del Servicio de Impuestos Internos (Internal Revenue Service, IRS). La Empresa pagará por separado los impuestos sobre la nómina que debiese pagar por la Parte salarial. Los Pagos individuales de PAGA no se computan como salarios, sino como sanciones a los fines impositivos. El Administrador declarará los Pagos individuales de PAGA y las Partes no salariales de los Pagos individuales de la Demanda colectiva en los Formularios 1099 del IRS.

Aunque los Demandantes y la Empresa han convenido estas asignaciones, ninguna de las partes brinda asesoramiento en lo que respecta a si sus Pagos son imponibles o cuánto podría adeudar en impuestos. Es responsable de pagar todos los impuestos (incluidas las sanciones y los intereses sobre impuestos atrasados) respecto de cualquier Pago que recibiese de la propuesta de Conciliación. Debe consultar a un asesor fiscal si tiene alguna pregunta sobre las consecuencias fiscales de la Conciliación propuesta.

e. Necesidad de cobrar de inmediato los cheques de pago: en el anverso de cada cheque emitido para los Pagos individuales de la Demanda colectiva y los Pagos individuales de PAGA, se indicará la fecha en la que vence el cheque (la fecha de vencimiento). Si no lo cobrase antes de la fecha de vencimiento, el cheque se cancelará de manera automática y el dinero se depositará en el Fondo de bienes no reclamados del contralor de California a su nombre. Si el dinero que expresa el cheque se enviase al Fondo de bienes no reclamados del contralor, debe consultar las reglas del Fondo para obtener instrucciones sobre cómo recuperar su dinero.

f. Solicitudes de exclusión de la Conciliación en la demanda colectiva (exclusión voluntaria): se lo tratará como Miembro del grupo de demandantes participante y participará plenamente en la Conciliación de la demanda colectiva a menos que notificase al Administrador por escrito, antes de los 45 días después del envío por correo de la Notificación (más un plazo de 14 días adicionales para los Miembros del grupo de demandantes cuya Notificación de demanda colectiva se hubiese enviado nuevamente por correo), que desea excluirse. La forma más sencilla de notificar al Administrador es enviar una Solicitud de exclusión por escrito y firmada antes de la Fecha límite de respuesta. La Solicitud de exclusión debe ser una carta de un Miembro del grupo de demandantes o su representante en la que se indicará

el nombre del Miembro del grupo de demandantes, su dirección actual, su número de teléfono y una simple declaración en la que se expresara que decide excluirse de la Conciliación. Los Miembros del grupo de demandantes excluidos (es decir, los Miembros del grupo de demandantes no participantes) no recibirán Pagos individuales de la Demanda colectiva, pero conservarán sus derechos de presentar reclamos salariales y por horas contra la empresa a título personal.

g. No puede excluirse de la parte de la Conciliación correspondiente a PAGA. Los Miembros del grupo de demandantes que se excluyesen de la Conciliación en la demanda colectiva (los Miembros del grupo de demandantes no participantes) seguirán teniendo derecho a recibir los Pagos individuales de PAGA y deberán renunciar a su derecho de presentar reclamos según la PAGA contra la Empresa en función de los hechos correspondientes al Período de PAGA que se alegan en la Acción.

h. <u>La propuesta de Conciliación será nula si el Tribunal no otorgase la Aprobación definitiva:</u> es posible que el Tribunal se negase a otorgar la Aprobación definitiva a la Conciliación o se negase a dictar Sentencia. También es posible que el Tribunal dictase una Sentencia que se revocase en instancia de apelación. Los Demandantes y la Empresa han convenido que, en cualquier caso, la Conciliación será nula: la Empresa no pagará ninguna suma de dinero y los Miembros del grupo de demandantes no eximirán reclamo alguno contra la Empresa.

i. <u>Administrador:</u> el Tribunal ha designado a una empresa neutral, Atticus Administration, LLC (el "Administrador") para que enviase este Aviso, realizara los cálculos, efectuase los pagos y procesase las Solicitudes de exclusión de los Miembros del grupo de demandantes. El Administrador también decidirá las Objeciones de los miembros del grupo de demandantes con respecto a las Semanas laborales, enviará y reenviará por correo los cheques de la conciliación y los formularios de impuestos, pero también realizará otras tareas necesarias para administrar la Conciliación. La información de contacto del Administrador se encuentra en la sección 9 de este Aviso**.**

j. <u>Exención de derechos de los Miembros del grupo de demandantes participantes:</u> después de que la Sentencia quedase firme y la Empresa hubiese hecho efectivo el pago del Importe bruto de la conciliación en su totalidad y hubiese pagado por separado todos los impuestos sobre la nómina del empleador, los Miembros del grupo de demandantes participantes tendrán legalmente prohibido plantear cualquiera de los reclamos eximidos en virtud de la Conciliación. Esto significa que, a menos que hubiese optado por excluirse válidamente de la Conciliación en la demanda colectiva, no podrá demandar, continuar demandando ni formar parte de ninguna otra demanda contra la Empresa o las entidades relacionadas en lo que se refiere a salarios en función de los hechos del Período de la demanda colectiva y las sanciones de PAGA fundadas en los hechos correspondientes al Período de PAGA, según se plantea en la Acción y se resuelve en esta Conciliación.

Los Miembros del grupo de demandantes participantes estarán obligados por la siguiente renuncia de derechos:

Todos los Miembros del grupo de demandantes participantes, en su propio nombre y en nombre de sus respectivos cónyuges, representantes, agentes, abogados, herederos, administradores, sucesores y cesionarios pasados y actuales, eximen a las Partes eximidas de (i) todos los reclamos que se alegaron o que razonablemente podrían haberse alegado en función del Período de la demanda colectiva y los hechos expresados en la Demanda

operativa, incluido cualquier reclamo en virtud del Código Laboral de California, la PAGA, la Ley de Normas Justas de Trabajo (Fair Labor Standards Act, FLSA), cualquier Orden salarial aplicable y cualquier otra legislación local, estatal o federal referida a cuestiones de pagos/salarios/trabajo por horas. Esto incluye, entre otras cosas, los reclamos que se relacionan o se originan de supuestos salarios, horas extra, cálculo de salarios y horas extra, trabajo fuera del horario laboral, salarios mínimos más daños y perjuicios liquidados relacionados, intereses o sanciones. Excepto según se establece en la Sección 5.3 del Acuerdo de conciliación, los Miembros del grupo de demandantes participantes no eximen reclamo alguno por despido injustificado o acoso si no estuviese relacionado con las cuestiones de salarios/trabajo por horas/indemnización/período de descanso/período para comer u otras cuestiones de PAGA. Los Miembros del grupo de demandantes participantes no renuncian a ningún otro reclamo, lo que incluye, reclamos por beneficios adquiridos, incumplimiento de la Ley de Empleo y Vivienda Justos (Fair Employment and Housing Act), seguro de desempleo, discapacidad, seguro social, indemnización por accidente de trabajo del trabajador o reclamos que se originan fuera del Período de la demanda colectiva.

k. Exención de PAGA para los Empleados del grupo de PAGA: una vez que la Sentencia del tribunal quedase firme y la Empresa hubiese pagado en su totalidad el Importe bruto de la conciliación y hubiese pagado por separado los impuestos sobre la nómina del empleador, todos los Empleados del grupo de PAGA tendrán prohibido presentar reclamos en virtud de PAGA contra la Empresa, independientemente de que se excluyesen de la Conciliación. Esto significa que todos los Empleados del grupo de PAGA, incluidos los que fuesen Miembros del grupo de demandantes participantes y los que se hubiesen excluido de la Conciliación en la demanda colectiva, no podrán demandar ni seguir demandando o participar en ningún otro reclamo en virtud de PAGA contra la Empresa o sus entidades relacionadas en función de los hechos correspondientes al Período de PAGA planteados en la Acción y resueltos en esta Conciliación.

   Las Renuncias de derechos de los Empleados del grupo de PAGA en el caso de los Miembros del grupo de demandantes participantes y no participantes son las siguientes:

   se considera que todos los Miembros del grupo de demandantes participantes y no participantes que fuesen Empleados del grupo de PAGA eximen, en su propio nombre y en nombre de sus respectivos representantes, agentes, abogados, herederos, administradores, sucesores y cesionarios anteriores y actuales, a las Partes eximidas de todos los reclamos por sanciones en virtud de PAGA que se hubiesen planteado o razonablemente pudieran haberse planteado en función de los hechos del Período de PAGA expresados en la Demanda operativa y el Aviso en virtud de PAGA.

## 4. ¿CÓMO CALCULARÁ MI PAGO EL ADMINISTRADOR?

a. Pagos individuales de la demanda colectiva: el Administrador calculará los Pagos individuales de la demanda colectiva (a) dividiendo el Importe neto de la conciliación por la cantidad total de Semanas laborales trabajadas por todos los Miembros del grupo de demandantes participantes y (b) multiplicando el resultado por la cantidad de Semanas laborales trabajadas por cada Miembro del grupo de demandantes participante individual.

b. Pagos individuales en virtud de PAGA: el Administrador calculará los Pagos individuales en virtud de PAGA (a) dividiendo USD 12,500 por la cantidad total de Períodos de pago de PAGA trabajados por todos los Empleados del grupo de PAGA y (b) multiplicando el resultado por la cantidad de Períodos de pago del Período en virtud de PAGA que trabajó cada Empleado del grupo de PAGA individual.

c. Objeciones de la semana laboral/período de pago: la cantidad de Semanas laborales de la demanda colectiva que trabajó durante el Período de la demanda colectiva y la cantidad de Períodos de pago en virtud de PAGA que trabajó durante el Período de PAGA, según consta en los registros de la Empresa, se indican en la primera página de este Aviso. Tiene tiempo hasta el 26 de diciembre de 2025 para objetar la cantidad de Semanas laborales o Períodos de pago que se le han acreditado. Puede enviar su objeción firmando y enviando una carta al Administrador por correo postal, correo electrónico o fax. La Sección **9** de este Aviso incluye la información de contacto del Administrador.

   Debe respaldar su impugnación enviando copias de recibos de pago u otros registros. El Administrador aceptará el cálculo de Semanas laborales o Períodos de pago de la empresa basándose en sus registros y los considerará precisos a menos que usted enviase copias de registros que contuviesen información que indicasen lo contrario. Debe enviar copias, y no los originales, porque no se le devolverán los documentos. El Administrador resolverá las objeciones de las Semanas laborales o los Períodos de pago basándose en su presentación y en la información proporcionada por los Abogados del grupo de demandantes (que defenderán los intereses de los Miembros del grupo de demandantes participantes) y el Abogado de la empresa. La decisión del Administrador será definitiva. No podrá apelar ni objetar su decisión definitiva.

## 5. ¿CÓMO SE ME PAGARÁ?

a. Miembros del grupo de demandantes participantes: el Administrador enviará, por correo postal de los EE. UU., un único cheque a cada Miembro del grupo de demandantes participantes (es decir, a cada Miembro del grupo de demandantes que no se excluyese), incluidos aquellos que también reuniesen los requisitos para ser Empleados del grupo de PAGA. El cheque único combinará el Pago individual de la demanda colectiva y el Pago individual de PAGA.

b. Miembros del grupo de demandantes no participantes: el Administrador enviará, por correo postal de los EE. UU., un único cheque de Pago individual de PAGA a cada Empleado del grupo de PAGA que hubiese optado por excluirse de la Conciliación en la demanda colectiva (es decir, a cada Miembro del grupo de demandantes no participante).

**Su cheque se enviará a la misma dirección que figura en este Aviso. Si cambiase de dirección, asegúrese de notificar al Administrador lo antes posible. La Sección 9 de este Aviso contiene la información de contacto del Administrador.**

## 6. ¿CÓMO ME EXCLUYO DE LA CONCILIACIÓN EN LA DEMANDA COLECTIVA?

Envíe una carta escrita y firmada con su nombre, dirección actual, número de teléfono y una simple declaración que indicase que no desea participar en la Conciliación. Puede enviarla por correo electrónico o correo certificado al Administrador utilizando la información de contacto que se indica a continuación. El Administrador lo excluirá en función de cualquier escrito en el que se comunicase su solicitud de exclusión. Asegúrese de firmar personalmente su solicitud, identificar la Acción como Shwiyhat, et al. v. Martin Marietta Materials, Inc., et al., caso n.º STK-CV-UOE-2025-0010132 e incluir su información de identificación (nombre completo, dirección, número de teléfono, fechas aproximadas de empleo y número de seguro social para fines de verificación). Debe realizar la solicitud usted mismo. Si otra persona hiciera la solicitud por usted, no será válida. Debe enviar su solicitud de exclusión al Administrador antes del 26 de diciembre de 2025; de lo contrario, no tendrá validez. La Sección **9** del Aviso contiene la información de contacto del Administrador.

## 7. ¿CÓMO OBJETO LA CONCILIACIÓN?

Solo los Miembros del grupo de demandantes participantes tienen derecho a objetar la Conciliación. Antes de decidir si quiere objetar o no, es posible que deseara ver lo que los Demandantes y la Empresa solicitan que el Tribunal apruebe. Al menos 16 días hábiles del tribunal antes de la Audiencia de aprobación definitiva del 26 de febrero de 2026, los Abogados del grupo de demandantes o los Demandantes presentarán ante el Tribunal (1) una Moción de aprobación definitiva que incluirá, entre otras cosas, las razones por las cuales la propuesta de Conciliación es justa y (2) una Moción para el pago de honorarios, gastos de litigio e Indemnización por servicio en la que se indicará (i) la suma que los Abogados del grupo de demandantes solicitan en concepto de honorarios de abogados y gastos de litigio y (ii) la suma que los Demandantes solicitan como Indemnización por servicio como Representantes del grupo. Previa solicitud razonable a tal efecto, los Abogados del grupo de demandantes (cuya información de contacto se incluye en la Sección **9** de este Aviso) le enviarán copias de estos documentos sin costo alguno para usted. También puede verlos en el sitio web del Administrador en https://www.atticusadmin.com/shwiyhat-et-al-v-martin-marietta-materials-inc-et-al/ o en el sitio web del tribunal, en https://www.sjcourts.org/.

Es posible que un Miembro del grupo de demandantes participante que no estuviese de acuerdo con algún aspecto del Acuerdo, con la Moción de aprobación definitiva o con la Moción para el pago de honorarios, gastos de litigio e indemnización por servicio deseara presentar una objeción, por ejemplo, argumentando que la propuesta de Conciliación es injusta o que los importes solicitados por los Abogados del grupo de demandantes o los Demandantes son demasiado altos o demasiado bajos. La fecha límite para enviar objeciones por escrito al Administrador es el 26 de diciembre de 2025. Asegúrese de informarle al Administrador qué es lo que objeta, por qué lo hace y cualquier hecho que respaldase su objeción. Asegúrese de identificar la Acción, *Shwiyhat, et al. v. Martin Marietta Materials, Inc., et al.*, caso n.º STK-CV-UOE-2025-0010132 e incluir su nombre, dirección actual, número de teléfono y fechas aproximadas de empleo en la Empresa y firmar la objeción. La Sección **9** de este Aviso incluye la información de contacto del Administrador.

Como alternativa, un Miembro del grupo de demandantes participante podrá objetar (o contratar personalmente a un abogado para que lo hiciera, a su propio cargo) asistiendo a la Audiencia de aprobación definitiva. Usted (o su abogado) debe estar listo para decirle al Tribunal qué es lo que objeta, por qué lo hace y cualquier hecho que respaldase su objeción. Consulte la sección **8** de este Aviso (inmediatamente a continuación) para obtener detalles específicos sobre la Audiencia de aprobación definitiva.

## 8. ¿PUEDO ASISTIR A LA AUDIENCIA DE APROBACIÓN DEFINITIVA?

Si bien no es necesario, puede asistir a la Audiencia de aprobación definitiva del 26 de febrero de 2026 a las 9:00 a. m. en el Departamento 11B del Tribunal superior del condado de San Joaquin, ubicado en 222 E. Weber Ave. Ste 303, Stockton, CA 95202. En la Audiencia, el juez decidirá si otorgará la Aprobación definitiva a la Conciliación y qué parte del Monto bruto de la conciliación se les pagará a los Abogados del grupo de demandantes, a los Demandantes y al Administrador. Antes de tomar una decisión, el Tribunal invitará a hablar a quienes hubiesen presentado objeciones, a los Abogados del grupo de demandantes y a los Abogados de la defensa. Puede asistir (o contratar a un abogado para que asista en su lugar). Consulte el sitio web del Tribunal para conocer las últimas novedades.

Es posible que el Tribunal reprogramase la Audiencia de aprobación definitiva. Debe consultar el sitio web del Administrador (https://www.atticusadmin.com/shwiyhat-et-al-v-martin-marietta-materials-inc-et-al/) con antelación o ponerse en contacto con los Abogados del grupo de demandantes para verificar la fecha y hora de la Audiencia de aprobación definitiva.

## 9. ¿CÓMO PUEDO OBTENER MÁS INFORMACIÓN?

El Acuerdo establece todo lo que la Empresa y los Demandantes se han comprometido a hacer en virtud de la propuesta de Conciliación. La manera más fácil de leer el Acuerdo, la Sentencia o cualquier otro documento de la Conciliación es visitar el sitio web del Administrador en https://www.atticusadmin.com/shwiyhat-et-al-v-martin-marietta-materials-inc-et-al/. También puede llamar por teléfono o enviar un correo electrónico a los Abogados del grupo de demandantes o al Administrador utilizando la información de contacto que se indica a continuación o consultar el sitio web del Tribunal superior visitando https://cms.sjcourts.org/fullcourtweb/civilCase.do e ingresando el número de caso: STK-CV-UOE-2025-0010132.

Además, puede inspeccionar los archivos del Tribunal y la Estipulación para la conciliación y la Exención de reclamos en la demanda colectiva (el Acuerdo de conciliación) en la Oficina del Secretario del Tribunal, Tribunal Superior del Condado de San Joaquin, ubicado en 180 E Weber Ave., Suite 200 Stockton, CA 95202, en el horario de atención habitual del tribunal. También puede comunicarse con los Abogados del grupo de demandantes o con el Administrador de la conciliación utilizando la información de contacto indicada antes para obtener más información.

**NO LLAME POR TELÉFONO AL TRIBUNAL SUPERIOR PARA OBTENER INFORMACIÓN SOBRE LA CONCILIACIÓN.**

**La información de contacto del Administrador de la conciliación es la siguiente:**

Shwiyhat, et al. v. Martin Marietta Materials, Inc. Settlement
c/o Atticus Administration
PO Box 64053
St. Paul, MN 55164
MartinMariettaMaterialsSettlement@atticusadmin.com
Teléfono: (800) 279-0331
Fax: (888) 326-6411

**Las direcciones de los Abogados de las partes son las que se indican a continuación:**

| Abogados del grupo de demandantes | Abogados de la demandada |
|---|---|
| Leonard Emma<br>Cody Stroman<br>Employment Lawyers<br>1999 Harrison Street, 18th Floor<br>Oakland, CA 94612<br>Tel.: (415) 362-1111<br>Correo electrónico: lemma@employment-lawyers.com<br>cstroman@employment-lawyers.com<br><br>Joseph Lavi<br>Vincent Granberry<br>Lavi & Ebrahimian, LLP<br>8889 W. Olympic Blvd., Suite 200<br>Beverly Hills, CA 90211<br>Tel.: (310) 432-0000<br>Fax: (310) 432-0001<br>Correo electrónico: jlavi@lelawfirm.com<br>vgranberry@lelawfirm.com | Mike Birrer<br>Jordan Perry<br>Carrington Coleman LLP<br>901 Main St., Suite 5500<br>Dallas, TX 75202<br>Tel.: (214) 855-3113<br>Correo electrónico: mbirrer@ccsb.com<br>jperry@ccsb.com<br><br>Cassandra M. Ferrannini<br>Daria Gossett<br>Downey Brand LLP<br>621 Capitol Mall, 18th Floor<br>Sacramento, CA 95814<br>Tel.: (916) 444-1000<br>cferrannini@DowneyBrand.com<br>dgossett@downeybrand.com |

**10. ¿QUÉ SUCEDE SI PERDIESE MI CHEQUE DE LA CONCILIACIÓN?**

Si perdiese o extraviase su cheque de la conciliación antes de cobrarlo, el Administrador lo reemplazará siempre que lo solicitase antes de la fecha de vencimiento indicada en el frente del cheque original. Si su cheque ya hubiese vencido, debe consultar el Fondo de bienes no reclamados para obtener instrucciones sobre cómo recuperar los fondos.

**11. ¿QUÉ SUCEDE SI CAMBIASE DE DIRECCIÓN?**

Para recibir el cheque, debe notificar de inmediato al Administrador si se mudase o cambiase de dirección postal.